## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) | Case No. 22-90039 (MI) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

## DEBTORS' EMERGENCY APPLICATION
## FOR ENTRY OF AN ORDER AUTHORIZING EMPLOYMENT AND
## RETENTION OF KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS,
## NOTICING, AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE

**Emergency relief has been requested. Relief is requested not later than 1:30 p.m. on May 9, 2022.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on May 9, 2022 at 1:30 p.m. in Courtroom 404, 4th floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632). The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 300, Tulsa, Oklahoma 74105.

> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case and complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this application (this "Application"):

## **RELIEF REQUESTED**

1.       The Debtors seek entry of an order, substantially in the form attached hereto, authorizing the retention and appointment of Kurtzman Carson Consultants LLC ("KCC") as claims, noticing, and solicitation agent (the "Claims Agent") in lieu of the Clerk (the "Clerk") of the Court (as defined herein) in the Debtors' chapter 11 cases with full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtors' chapter 11 cases.

2.       In support of this Application, the Debtors submit the *Declaration of Evan Gershbein in Support of the Debtors' Emergency Application for Entry of an Order Authorizing Employment and Retention of Kurtzman Carson Consultants LLC as Claims, Noticing, and Solicitation Agent Effective as of the Petition Date* (the "Gershbein Declaration"), attached hereto as **Exhibit C** and incorporated by reference herein. The terms of KCC's retention are set forth in KCC Agreement for Services, dated April 26, 2022 (the "Retention Agreement"), attached hereto as **Exhibit B**.

2

## JURISDICTION AND VENUE

3.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are 28 U.S.C. § 156(c), sections 105(a), 327, and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002(f), 2014(a), 2016, and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1, 2014-1(b), and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").

## BACKGROUND

5.      On May 8, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committee has been appointed or designated.

6.      The Debtors provide inspection, water treatment, and other environmental services that help their customers protect people, property, infrastructure, and the environment with a focus on safety and sustainability.  The Debtors' primary business, inspection services, provides essential environmental services, including inspection and integrity services on a variety of infrastructure

assets such as midstream pipelines, oil and gas well gathering systems, natural gas plants, storage facilities, pumping stations, compression stations, and natural gas distribution systems. The Debtors' primary business includes visual inspection, non-destructive testing and examination, and in-line inspection support services for pipeline and energy infrastructure owners and operators and natural gas public utilities that serve our communities. Under the environmental services segment, the Debtors own and operate water treatment facilities in North Dakota where they specialize in the treatment, recovery, separation, and disposal of waste byproducts generated by their customers during the lifecycle of an oil or natural gas well. The Debtors provide quality services in a safe, professional, ethical, and cost-effective manner adding value to their clients throughout the life of their assets.

6.　　　Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, and the emergency need for the relief requested in this Application, are set forth in detail in the *Declaration of Peter C. Boylan III, Chairman & Chief Executive Officer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith and incorporated herein by reference

## KCC'S QUALIFICATIONS

7.　　　KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, solicitation, balloting, and other related services critical to the effective administration of chapter 11 cases. KCC has

---

[2]　　Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the First Day Declaration.

developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing, claims processing, solicitation, and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders, and all other parties in interest.  KCC will work with the Clerk's office to ensure that such methodology conforms to all of the Court's procedures, the Bankruptcy Local Rules, and the requirements of any Court orders.

8.      KCC has acted as the claims, noticing, and solicitation agent in numerous cases of comparable size, including several cases that were commenced in the United States Bankruptcy Court for this District.  *See, e.g.*, *Arena Energy*, Case No. 20-34215 (MI) (Bankr. S.D. Tex. Aug. 20, 2020); *In re High Crush Inc.*, Case No. 20-33495 (DRJ) (Bankr. S. D. Tex. Jul. 12, 2020); *In re Stage Stores Inc*., No. 20-32564 (DRJ) (Bankr. S.D. Tex. May 11, 2020); *In re EP Energy Corp.*, Case No. 19-35654 (MI) (Bankr. S.D. Tex. Oct. 3, 2019); *In re Halcón Resources Corp.*, Case No. 19-34446 (DRJ) (Bankr. S.D. Tex. Aug. 7, 2019); *In re Legacy Reserves Inc*., Case No. 19-33395 (MI) (Bankr. S.D. Tex. June 18, 2019); *In re Neighbors Legacy Holdings, Inc*., Case No. 18-33836 (MI) (Bankr. S.D. Tex. July 12, 2018); *In re Cobalt Int'l Energy, Inc*., Case No. 17-36709 (MI) (Bankr. S.D. Tex. Dec. 14, 2017); *In re Linc USA GP*, Case No. 16-32689 (DRJ) (Bankr. S.D. Tex. May 29, 2016); *In re Sherwin Alumina Co., LLC*, Case No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 11, 2016).

## KCC'S SERVICES

9.      This Application relates to the work to be performed by KCC under section 327(a) of the Bankruptcy Code and under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Bankruptcy Local Rule 2002-1(f).  KCC will follow the notice and claims procedures that conform to the guidelines promulgated by the Clerk's office and the Judicial Conference of the

United States, and as may be ordered by the Court.  KCC will perform the following tasks in its role as Claims Agent, as well as all quality control relating thereto (collectively, the "Services"):

(a)      assist the Debtors with the preparation and distribution of all required notices and documents in these chapter 11 cases, including: (i) notice of the commencement of the cases; (ii) notice of any claims bar date; (iii) notices of transfers of claims, (iv) notice of any hearings or combined hearing on chapter 11 plan(s) and disclosure statement(s) filed in these chapter 11 cases, including under Bankruptcy Rule 3017(d), (v) notice of the effective date of the chapter 11 plan, and (vi) all other notices, orders, pleadings, publications, and other documents as the Debtors may deem necessary or appropriate for an orderly administration of these cases;

(b)      maintain (i) a list of all potential creditors, equity holders and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010;

(c)      maintain a post office box or address for the purpose of receiving correspondence, proofs of claim, ballots, and returned mail, and process all mail received;

(d)      assist the Debtors with the preparation of the Debtors' Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs;

(e)      assist the Debtors with plan solicitation services including (i) balloting and solicitation materials, (ii) tabulation and calculation of votes, (iii) determining with respect to each ballot cast, its timeliness and its compliance with the Bankruptcy Code, (iv) preparing an official ballot certification and testifying, if necessary, in support of the ballot tabulation results, and (v) in connection with the foregoing services, processing requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices, and institutional holders;

(f)      for all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service no more frequently than every seven days that includes (i) either a copy of each notice served for the proceeding seven days or the docket number(s) and title(s) of the pleading(s) served during such period, (ii) a list of persons to whom such notice was mailed (in alphabetical order), with their addresses, (iii) the manner of service, and (iv) the date served;

(g)      receive and process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain any original proofs of claim received in a secure area; if a proof of claim is filed with the

6

Clerk, KCC will cause any such proof of claim to be copied into the Claims Register (as defined below);

(h)    provide an electronic interface for filing proofs of claim;

(i)    if a claims bar date is established, maintain an official claims register (the "Claims Register") fully accessible via KCC's website, which register shall include all claims filed either with the Clerk or otherwise with KCC, and specify therein the following information for each claim docketed: (i) any claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the address for payment, if different from the notice address; (v) the amount asserted, (vi) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vii) any disposition of the claim;

(j)    implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of any original claims;

(k)    record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(l)    upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(m)    monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(n)    assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases, as directed by the Debtors and/or the Court, including through the use of a case website and/or call center;

(o)    comply with all applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements;

(p)    if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to KCC of entry of the order converting the cases;

(q)    thirty days before the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing KCC as Claims Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(r)     within seven days of notice to KCC of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Register as of the date immediately before the close of these chapter 11 cases;

(s)     at the close of these chapter 11 cases, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (A) the Philadelphia Federal Records Center, 14700 Townsend Road, Philadelphia, PA 19154 or (B) any other location requested by the Clerk's office, and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims;

(t)     provide a confidential data room if requested; and

(u)     provide such other processing, solicitation, balloting, and other administrative services described in the Retention Agreement that may be requested from time to time by the Debtors, the Court, or the Clerk's office.

## **PROFESSIONAL COMPENSATION**

10.     The Debtors will compensate KCC for the Services in accordance with the Retention Agreement.  The Debtors respectfully request that the undisputed fees and expenses incurred by KCC in the performance of the above Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

11.     KCC agrees to maintain records of all Services, including showing dates, categories of Services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), counsel for the Debtors, counsel for the official committee of unsecured creditors appointed in these chapter 11 cases, if any, monitoring the expenses of the Debtors, and any party in interest that specifically requests service of the monthly invoices. If any dispute arises relating to the Retention Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties will seek resolution of the matter from the Court.

12.     Prior to the Petition Date, the Debtors provided KCC a retainer in the amount of $25,000.  KCC seeks to first apply the advance to all prepetition invoices, and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer as security of payment of KCC's final invoice for services rendered and expenses incurred in performing the Services.

### KCC'S DISINTERESTEDNESS

13.     KCC reviewed its conflicts system to determine whether it has any relationships with the creditors and parties in interest whose names the Debtors provided to KCC.  KCC has represented to the Debtors that, to the best of its knowledge, and except as set forth in the Gershbein Declaration, neither KCC nor any of its professional personnel have any relationship with the Debtors that would impair KCC's ability to serve as Claims Agent or otherwise pose any conflict. To the extent that KCC or its personnel have, or may have had, relationships with certain of the Debtors' creditors, as described in the Gershbein Declaration, KCC has represented to the Debtors that those matters are completely unrelated to the Debtors' bankruptcy cases.

14.     KCC represents in the Gershbein Declaration, among other things, that KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that KCC and its professional personnel:

(a)     Are not creditors, equity security holders, or insiders of the Debtors;

(b)     Are not, and were not, within two years before the date of the filing of the Debtors' bankruptcy cases, directors, officers, or employees of the Debtors; and

(c)     Do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

15.     KCC further represents, among other things, that:

(a)     KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims Agent;

(b)     By accepting employment in the Debtors' bankruptcy cases, KCC waives any rights to receive compensation from the United States government in connection with the Debtors' cases;

(c)     In its capacity as the Claims Agent, KCC will not be an agent of the United States and will not act on behalf of the United States;

(d)     KCC will not employ any past or present employees of the Debtors in connection with its work as the Claims Agent;

(e)     KCC will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(f)     None of the services provided by KCC as Claims Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

16.     KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## **INDEMNIFICATION PROVISIONS**

17.     As part of the overall compensation payable to KCC under the terms of the Retention Agreement, the Debtors have agreed to certain indemnification and contribution obligations as specifically enumerated in the Retention Agreement, to the extent permitted by applicable law and as modified in the Order attached hereto.

18.     The terms of the Retention Agreement and indemnification provisions included therein were negotiated at arm's-length between the Debtors and KCC, and the Debtors submit that these provisions of the Retention Agreement are reasonable and in the best interests of the Debtors and their estates and creditors.

19.     The Debtors request entry of the Order authorizing the Debtors to retain and employ KCC as Claims Agent.

## BASIS FOR RELIEF

20.     Section 156(c) of title 28 of the United States Code authorizes the Court to use facilities other than those of the Clerk's office for the administration of chapter 11 cases, and provides as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.

26 U.S.C. § 156(c).

21.     The Debtors' selection of KCC to act as the Claims Agent is appropriate under the circumstances and in the best interests of the estates. KCC's rates are competitive and reasonable given KCC's quality of services and expertise.

22.     Although the Debtors have not yet filed their Schedules, they anticipate that there will be approximately 20,000 persons and entities to be noticed and that many of these parties will file claims.  In view of the number of anticipated claimants and the complexity of the Debtors' business, the appointment of a claims and noticing agent will provide the most effective and efficient means of, and relieve the Debtors and/or the Clerk of the administrative burden of, noticing and soliciting and tabulating votes, and is in the best interests of both the Debtors' estates and creditors.

23.     The fees and expenses that would be incurred by KCC under the proposed engagement would be administrative in nature and, therefore, should not be subject to the standard fee application procedures of professionals.

## EMERGENCY CONSIDERATION

24.     The Debtors request emergency consideration of this Application pursuant to Bankruptcy Rule 6003, which allows this Court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations, and any delay in granting the relief requested could jeopardize the Debtors' ability to restructure. The Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Application on an emergency basis in order to preserve the ongoing value of the Debtors' estates.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

25.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

26.     Notice of this Application will be provided to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Prepetition First Lien Lender and Prepetition First Lien Agent (each as defined in the DIP Motion);[3] (d) the DIP Lender and DIP Agent (each

---

[3]     "DIP Motion" means the *Debtors' Emergency Motion for the Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Utilize Cash Collateral of the Prepetition First Lien Secured Parties, (II) Granting Adequate Protection to the Prepetition First Lien Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, filed contemporaneously herewith.

as defined in the DIP Motion); (e) the Office of the United States Attorney for the Southern District of Texas; (f) the state attorneys general for states in which the Debtors conduct business; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In view of the nature of the relief requested, the Debtors respectfully submit that no other or further notice need be provided.

[*Remainder of Page Intentionally Left Blank*]

The Debtors respectfully request entry of the Order, granting the relief requested in this Application and such other and further relief as the Court deems appropriate under the circumstances.

Dated:  May 9, 2022
Houston, Texas

/s/ *James Grogan*

**PAUL HASTINGS LLP**
James Grogan (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Justin Rawlins (*pro hac vice* admission pending)
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:  (310) 620-5700
Facsimile:  (310) 620-5899
Email:  justinrawlins@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Matthew Smart (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
        matthewsmart@paulhastings.com
        michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

 _/s/ James Grogan_____
 James Grogan


**Certificate of Service**

I certify that on May 9, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

 _/s/ James Grogan_____
 James Grogan

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) | Case No. 22-90039 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. ___** |

**ORDER AUTHORIZING EMPLOYMENT AND**
**RETENTION OF KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS,**
**NOTICING, AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of an Order (this "Order"), authorizing the

retention of and appointing Kurtzman Carson Consultants LLC ("KCC") as claims, noticing, and

solicitation agent (the "Claims Agent") in the Debtors' chapter 11 cases; all as more fully set forth

in the Application; and upon the First Day Declaration and the Gershbein Declaration; and this

Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter

a final order consistent with Article III of the United States Constitution; and this Court having

found that venue of this proceeding and the Application in this district is proper pursuant to

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632).  The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 300, Tulsa, Oklahoma 74105.

[2]    Capitalized not otherwise defined herein will have the meanings ascribed to them in the Application.

28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.　　The Debtors are authorized to retain KCC as the Claims Agent to perform the Services set forth in the Application and under the terms of the Retention Agreement relating to such services, and KCC is authorized to perform such services.

2.　　KCC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these cases and is authorized and directed to maintain the Claims Register for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon request of the Clerk.

3.　　KCC is authorized and directed to provide an electronic interface for the filing of proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.  KCC shall provide access to the Claims Register without charge, including access to complete copies of proofs of claim with attachments, if any.

4.　　KCC is authorized to take such other actions to comply with all duties set forth in the Application and this Order.

5.     KCC shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

6.     Without further order of this Court, the Debtors are authorized to compensate KCC on a monthly basis in accordance with the terms and conditions of the Retention Agreement for the Services, upon KCC's submission of monthly invoices summarizing in reasonable detail the services rendered and expenses incurred in connection therewith, without the need for KCC to file fee applications or otherwise seek court approval for the compensation of its services and reimbursement of its expenses.

7.     KCC shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest that specifically requests service of the monthly invoices.

8.     The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Retention Agreement or monthly invoices, and the parties shall seek resolution of the matter from the Court if resolution is not achieved.

9.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, KCC's fees and expenses incurred in connection with the Services shall be administrative expenses of the Debtors' chapter 11 estates.

10.    The application of KCC's retainer to all prepetition invoices is approved. The retainer shall be replenished to the original retainer amount to the extent necessary, and thereafter KCC may hold the retainer as security of payment of KCC's final invoice for services rendered and expenses incurred in performing the Services.

11.    Except to the extent set forth below, the Debtors are authorized to indemnify KCC

under the terms of the Retention Agreement.

12.     KCC shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Retention Agreement for services other than the Services provided under the Retention Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

13.     Notwithstanding anything to the contrary in the Retention agreement, the Debtors shall have no obligation to indemnify KCC, or provide contribution or reimbursement to KCC, for any claim or expense that is either: (a) judicially determined (the determination having become final) to have arisen from KCC's gross negligence, willful misconduct, bad faith, self-dealing, breach of fiduciary duty (if any), or fraud; (b) for a contractual dispute in which the Debtors allege the breach of KCC's contractual obligations if this Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; or (c) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which the Claims Agent should not receive indemnity, contribution, or reimbursement under the terms of the Retention Agreement as modified by this Order.

14.     If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in the Debtors' bankruptcy cases (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing the Debtors' bankruptcy cases, KCC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Retention Agreement (as modified by this Order), including without limitation the advancement of defense costs, KCC must file an application therefor in this Court, and the Debtors may not pay any such amounts to KCC before the entry of an order by this Court approving the payment. This paragraph is intended only to

specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by KCC for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify KCC. All parties in interest shall retain the right to object to any demand by KCC for indemnification, contribution, or reimbursement. In the event that KCC seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Retention Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in KCC's own applications, both interim and final, but determined by this Court after notice and a hearing.

15.     In the event KCC is unable to provide the Services, KCC will immediately notify the Clerk and the Debtors' counsel and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' counsel.

16.     KCC shall not cease providing claims and noticing services during the Debtors' chapter 11 cases for any reason, including nonpayment, without an order of the Court.

17.     After entry of an order terminating KCC's services, upon the closing of the chapter 11 cases or for any other reason, KCC shall be responsible for archiving all proofs of claim with the Federal Archives Record Administration, if applicable, and transmitting to the Clerk's office all claims in an electronic format, if applicable, and shall be compensated by the Debtors in connection therewith.

18.     The requirements set forth in Bankruptcy Local Rule 9013-1(b) are satisfied by the contents of the Application.

19.     The Court finds and determines that the requirements of Bankruptcy Rule 6003(b)

are satisfied and that the relief is necessary to avoid immediate and irreparable harm.

20.      Notice of the Application satisfies the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

21.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

23.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2022
      Houston, Texas

                                   _____
                                   THE HONORABLE MARVIN ISGUR
                                   UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT B**

**Retention Agreement**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 26th day of April 2022, between Cypress Environmental Partners, L.P. (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC"). In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.      SERVICES

A.      KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.      KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.      Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.      The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.      The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

II.       PRICES, CHARGES AND PAYMENT

A.       KCC agrees to charge and the Company agrees to pay KCC for its services at the rates and prices set by KCC that are in effect as of the date of this Agreement and in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment and are inclusive of all charges.  KCC reserves the right to reasonably increase its prices, charges and rates; provided, however, that KCC will give thirty (30) days written notice to the Company of such increase; provided further, however, that if the Company has a pending chapter 11 case, KCC will also file a notice of the rate increases on the docket of the chapter 11 case at least ten (10) business days prior to any rate increases taking effect.

B.       In addition to fees and charges for services, the Company agrees to pay KCC's reasonable and documented transportation, lodging, and meal out-of-pocket expenses incurred in connection with services provided under this Agreement.

C.       In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and charges related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.       Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate as agreed upon between KCC and Company prior to such service being performed.

E.       KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. KCC's invoices will contain reasonably detailed descriptions of charges for both hourly (fees) and non-hourly (expenses) case specific charges. Where total invoice amounts are expected to exceed $10,000 in any single month and KCC reasonably believes it will not be paid, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days.  In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) must be paid at least three (3) days in advance of those fees and expenses being incurred.  Certain fees and charges may need to be adjusted due to availability related to the COVID-19 (novel coronavirus) global health issue.

F.       In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed



# KCC AGREEMENT FOR SERVICES

pursuant to 28 U.S.C. § 156(c) to the extent possible and otherwise in accordance with applicable Bankruptcy law and that all amounts due under this Agreement shall, to the extent possible, be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause pleadings to be filed with the Bankruptcy Court seeking entry of an order or orders approving this Agreement (the "Retention Order").  The form and substance of the pleadings and the Retention Order shall be reasonably acceptable to KCC.  If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with the terms of this Agreement.  The parties recognize and agree that if there is a conflict between the terms of this Agreement and the terms of the Retention Order, the terms of the Retention Order shall govern during the chapter 11 or other proceeding.

G.      To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $25,0000.00 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  In the event of a Chapter 11 Filing, KCC will first apply the Retainer to all pre-petition invoices, and thereafter, will have the Retainer replenished to the original amount.  KCC shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## III.    RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC.  The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation.  The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC.  Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

## IV.    NON-SOLICITATION

The Company and KCC each agree that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC or the Company, as applicable, during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC or the Company, as applicable, provides prior written consent to such solicitation or retention.



# KCC AGREEMENT FOR SERVICES

V.      CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

VI.     SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.      In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services, and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Retention Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility in the Company's bankruptcy case.

C.      Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days, KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice.  Notwithstanding any term herein to the contrary, following entry of the Retention Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.



# KCC AGREEMENT FOR SERVICES

## VII.     SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

## VIII.    BANK ACCOUNTS

At the Company's request and subject to Court approval following any chapter 11 filing, KCC may be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

## IX.     LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.      The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.      KCC shall indemnify and hold the Company, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Company Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all Losses resulting from, arising out of or related to or resulting from unauthorized access, misuse or alteration of the Company's information stored electronically on KCC's computer systems or databases by persons not acting on its behalf under this Agreement.  Such indemnification shall be limited to Losses resulting from KCC's negligence, gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Company Indemnified Party. KCC shall notify the Company in writing promptly upon any unauthorized access, misuse or alteration of or the assertion, threat or commencement of any claim, action, investigation or proceeding related to the Company's information stored electronically on KCC's computer systems or databases that KCC becomes aware of.  KCC's indemnification obligations hereunder shall survive the termination of this Agreement.



# KCC AGREEMENT FOR SERVICES

C.      In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

D.      The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information.  KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

E.      The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

X.      FORCE MAJEURE

KCC will not be liable for any delay or failure in performance when such delay or failure arises from circumstances beyond its reasonable control, including without limitation acts of God, acts of government in its sovereign or contractual capacity, acts of public enemy or terrorists, acts of civil or military authority, war, riots, civil strife, terrorism, blockades, sabotage, rationing, embargoes, epidemics, pandemics, outbreaks of infectious diseases or any other public health crises, earthquakes, fire, flood, other natural disaster, quarantine or any other employee restrictions, power shortages or failures, utility or communication failure or delays, labor disputes, strikes, or shortages, supply shortages, equipment failures, or software malfunctions.

XI.     INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:



# KCC AGREEMENT FOR SERVICES

Kurtzman Carson Consultants LLC
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, CA 90245
Attn: Drake D. Foster
Tel: (310) 823-9000
Fax: (310) 823-9133
E-Mail: dfoster@kccllc.com

Cypress Environmental Partners, L.P.
5727 South Lewis Avenue, Suite 500
Tulsa, OK 74105
Attn: Peter C. Boylan III; Richard M. Carson
Tel: (918) 748-3903
Fax: (918) 748-3905
E-Mail: pete@cypressenvironmental.biz;
        richard.carson@cypressenvironmental.biz

With a copy that shall not constitute notice to:

Paul Hastings LLP
71 S. Wacker Drive, Suite 4500
Chicago, IL 60606
Attn: Matt Micheli
Tel: (312) 499-6018
Fax: (312) 499-6118
Email: mattmicheli@paulhastings.com

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XIII.   APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Oklahoma.

XIV.   ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement. The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.



# KCC AGREEMENT FOR SERVICES

XV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XVI.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

XVII.    ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]



## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY:  Evan Gershbein                    DATE: 4/29/22
TITLE:  EVP, Corporate Restructuring Services

Company

BY:  Peter C. Boylan III              DATE:
TITLE:  Chairman and Chief Executive Officer

## EXHIBIT C

**Gershbein Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) | Case No. 22-90039 (MI) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**DECLARATION OF EVAN GERSHBEIN**
**IN SUPPORT OF DEBTORS' EMERGENCY APPLICATION**
**FOR ENTRY OF AN ORDER AUTHORIZING EMPLOYMENT AND**
**RETENTION OF KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS,**
**NOTICING, AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE**

I, Evan Gershbein, under penalty of perjury, declare as follows:

1.      I am an Executive Vice President of Corporate Restructuring at Kurtzman Carson

Consultants LLC ("KCC"), a chapter 11 claims administrative services firm, whose offices are

located at 222 N. Pacific Coast Hwy, 3rd Floor, El Segundo, California 90245. Except as otherwise

noted, I have personal knowledge of the matters set forth herein and, if called and sworn as a

witness, I could and would testify competently thereto.

2.      I submit this Declaration in support of the above-captioned Debtors (the "Debtors")

*Emergency Application for Entry of an Order Authorizing Employment and Retention of Kurtzman*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632). The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 300, Tulsa, Oklahoma 74105.

*Carson Consultants LLC as Claims, Noticing, and Solicitation Agent Effective as of the Petition Date* (the "Application").[2]

## QUALIFICATIONS

27.     KCC is one of the country's leading chapter 11 administrators, with expertise in noticing, balloting, and claims processing. KCC has substantial experience and has provided services substantially similar to the Claims, Noticing, and Balloting Services (as hereinafter defined) to other chapter 11 debtors in Texas and other jurisdictions. *See, e.g.*, *Arena Energy*, Case No. 20-34215 (MI) (Bankr. S.D. Tex. Aug. 20, 2020); *In re High Crush Inc.*, Case No. 20-33495 (DRJ) (Bankr. S. D. Tex. Jul. 12, 2020); *In re Stage Stores Inc*., No. 20-32564 (DRJ) (Bankr. S.D. Tex. May 11, 2020); *In re EP Energy Corp.*, Case No. 19-35654 (MI) (Bankr. S.D. Tex. Oct. 3, 2019); *In re Halcón Resources Corp.*, Case No. 19-34446 (DRJ) (Bankr. S.D. Tex. Aug. 7, 2019); *In re Legacy Reserves Inc*., Case No. 19-33395 (MI) (Bankr. S.D. Tex. June 18, 2019); *In re Neighbors Legacy Holdings, Inc*., Case No. 18-33836 (MI) (Bankr. S.D. Tex. July 12, 2018); *In re Cobalt Int'l Energy, Inc*., Case No. 17-36709 (MI) (Bankr. S.D. Tex. Dec. 14, 2017); *In re Linc USA GP*, Case No. 16-32689 (DRJ) (Bankr. S.D. Tex. May 29, 2016); *In re Sherwin Alumina Co., LLC*, Case No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 11, 2016).

## SERVICES TO BE RENDERED

3.     As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), KCC will perform the noticing and claims-related services and any related administrative, technical, and support services as specified in the Application and the Retention Agreement, at the request of the

---

[2]     Capitalized terms used herein but not otherwise defined shall have the meanings ascribed in the Application.

Debtors or the Clerk.  In performing such services, KCC will charge the Debtors the rates set forth in the Retention Agreement, which is attached as **Exhibit B** to the Application.

4.      KCC represents that it and its professional personnel:

     (a)      Are not creditors, equity security holders, or insiders of the Debtors;

     (b)      Are not, and were not, within two years before the date of the filing of the Debtors' bankruptcy cases, directors, officers, or employees of the Debtors; and

     (c)      Do not have any interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct of indirect relationship to, connection with, or interest in, the Debtors.

5.      KCC further represents that:

     (a)      it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

     (b)      it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims Agent;

     (c)      by accepting employment in the Debtors' bankruptcy cases, KCC waives any right to receive compensation from the United States government;

     (d)      in its capacity as Claims Agent, KCC will not be an agent of the United States and will not act on behalf of the United States;

     (e)      it will not employ any past or present employees of the Debtors in connection with its work as Claims Agent;

     (f)      it will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c);

     (g)      none of the services provided by KCC as Claims Agent in the Debtors' chapter 11 cases shall be at the expense of the Clerk's office;

     (h)      in its capacity as Claims Agent in the Debtors' chapter 11 cases, KCC will not intentionally misrepresent any fact to any person; and

     (i)      it will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

6.      In connection with the preparation of this declaration, I caused to be submitted for review by our conflicts system the names of interested parties and significant creditors (the "Potential Parties in Interest") in the Debtors' chapter 11 cases, attached hereto as **Schedule 1**. The list of Potential Parties in Interest was provided by the Debtors and included the Debtors and non-Debtor affiliates, the Debtors' current and former directors and officers, secured creditors, top unsecured creditors, and other parties.  The results of the conflicts check were compiled and reviewed by employees of KCC, under my supervision. At this time, KCC is not aware of any relationship that would present a disqualifying conflict of interest. KCC may have relationships with certain Potential Parties in Interest as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as noticing, claims, balloting, or administrative advisor for another chapter 11 debtor. Given KCC's neutral position as Claims Agent or administrative advisor in any other cases, KCC does not believe such relationships are actual or potential conflicts. To the best of my knowledge, any such relationship is completely unrelated to these Debtors' chapter 11 cases. To the best of my knowledge, KCC and each of its employees are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and neither KCC nor any of its employees hold or represent an interest adverse to the Debtors' estates related to any matter for which KCC will be employed.

7.      KCC has and will continue to represent clients in matters unrelated to the Debtors' chapter 11 cases. KCC has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the Debtors' chapter 11 cases in matters unrelated to the Debtors' chapter 11 cases. KCC may also provide professional services to entities or persons that may be creditors or parties in interest in

the Debtors' chapter 11 cases, which services do not directly relate to, or have any direct connection with, the Debtors' chapter 11 cases or the Debtors.

8.      KCC is an indirect subsidiary of Computershare Limited ("Computershare"). Computershare is a financial services and technologies provider for the global securities industry, including providing administrative transfer agent services such as maintaining records of shareholdings and share transfers. Within the Computershare corporate structure, KCC operates as a separate, segregated business unit. As such, any relationships that Computershare and its affiliates maintain do not create an interest of KCC that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.  KCC performs transfer agent and employee share plan processing services for Cypress Environmental Partners, L.P.  KCC also performs administrative services for the following litigation parties listed on the Debtors' Potential Parties in Interest list including Phillips 66, Energy Transfer Partners, LP, and Plains All American Pipeline, LP.

9.      In performing the Services as described in the Application, KCC will charge the rates in accordance with the Retention Agreement. These rates are at least as favorable as the prices KCC charges in other cases in which the firm has been retained to perform similar services.

10.     The indemnification provisions set forth in the Retention Agreement reflect standard and customary terms of engagement contained in KCC's engagement letters both in and outside of bankruptcy. Based on my experience, these indemnification provisions are similar to provisions in the engagement letters of other similarly situated companies in engagements both in and outside of bankruptcy.

11.     Prior to the Petition Date, the Debtors paid KCC a retainer in the amount of $25,000 (the "Retainer"). Through the Application, KCC seeks to first apply the Retainer to all prepetition

invoices, which Retainer shall be replenished to the original Retainer amount to the extent necessary, and thereafter, to hold such Retainer under the Retention Agreement during the Debtors' chapter 11 cases as security for the payment of fees and expenses incurred under the Retention Agreement.

12.     If appointed as Claims Agent, KCC will not, without prior order from the Court authorizing KCC to do so, cease providing Services during the Debtors' chapter 11 cases for any reason, including nonpayment, without an order of the Court.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: May 8, 2022

_____
Evan Gershbein
Executive Vice President, Corporate Restructuring
Kurtzman Carson Consultants LLC
222 N. Pacific Coast Hwy, 3rd Floor
El Segundo, California 90245

## Schedule 1

## Potential Parties in Interest List

**Banks**
Bank of Oklahoma
Bank7
BMO Bank of Montreal

**Current and Former Directors & Officers**
Peter C. Boylan III
Jeff English
Richard M. Carson
Jeffrey A. Herbers
Chavez, Adrian
Holler, Melvin
Means, David

**Debtors**
Cypress Environmental Partners, LLC
Cypress Environmental Partners, L.P.
Cypress Environmental Finance Corporation
Cypress Environmental Services, LLC
Cypress Energy Partners - 1804 SWD, LLC
Cypress Energy Partners - Bakken, LLC
Cypress Energy Partners - Grassy Butte
SWD, LLC
Cypress Energy Partners - Green River
SWD, LLC
Cypress Energy Partners - Manning SWD,
LLC
Cypress Energy Partners - Mork SWD, LLC
Cypress Energy Partners - Mountrail SWD,
LLC
Cypress Energy Partners - Tioga SWD, LLC
Cypress Energy Partners - Williams SWD,
LLC
Cypress Municipal Water Services, LLC
Cypress Environmental Management, LLC
Cypress Environmental Management - TIR,
LLC
TIR-CEM, LLC
Cypress Safety Services, LLC
Tulsa Inspection Resources, LLC
Tulsa Inspection Resources - Canada, ULC
Cypress Environmental - PUC, LLC
Tulsa Inspection Resources - PUC, LLC

Cypress Brown Integrity, LLC

**Indenture Trustees / Agents**
Deutsche Bank

**Insurance Brokers**
Hub International Mid-America
First Insurance Funding
Willis Towers Watson Ins. Serv. West
Willis of Texas, Inc

**Insurance Providers**
ZURICH
Ohio Workers Compensation
ND Workers Compensation
WY Workers Compensation
WA Workers Compensation
Miller Insurance Services
Lloyds of London
Allied World Surplus Lines Ins. Co
Coalition Insurance Solutions, Inc.
Continental Casualty Company
Argonaut Insurance Company
Beazley Insurance Company, Inc.
Allied World Assurance Company
Sompo
AIG - National Union Fire Insurance
company of Pittsburg, Pa

**Litigation Counterparties**
Cynthia Andrews
John Carmouche
Crude Logistics, LLC
DCP Operating Company, LP
DCP Sand Hills Pipeline, LLC
Emmanuel Limon Ruiz
Christian Emmanuel Limon Soto
Paulina Garza
Beanna Garza
Angel Garza
Jeremy Garza
Smith Tank & Steel, Inc.
Sanchez Oil and Gas Corporation

1

Marco Valdez
Patrick Seiboldt
Richard Grogan
Jason Altenhofen
John Stabler
Dicke Foster
Gary Slaid
Nicholas Nimmo
Delek US Energy
Robert Ferrell
SemGroup Corporation
James Fithian
Robert Plymate
David Kole
Thomas Hennigar
Joseph Dunlap LLP
Phillips 66
Oneok
DCP Midstream
Robert Abramowski
Christopher Aguilar
Charles Appling
Jason Altenhofen
Brian Baker
Leroy Bandurraga
Joe Barron
Billy Callaway
Joseph Cirilo
Blake Pankonien
Jose Rodriguez
James Stich
Daniel Kasper
Lewis Coy
Carroll Christopher
Ruben Almanza
Jacqueline Barrientos
Mauro Cadena
Eric G. Estrada
Lauro Guerra
Eugene Lewis
Leonard Lowe
Daniel Cancino
James King
Todd A Orcutt
Colin Rice
Jacky Hamrick

Kenneth Schiller
Chris Whittington
James Frazier
Albert Henry
Energy Transfer Partners, LP
Cleveland Integrity Services, Inc.
Kestrel Field Services, Inc.
Freddy Rojas
Delek US Energy, Inc.
Targa Resources Group Corp
Quality Integrated Services, Inc.
Plains All American Pipeline, LP
Enterprise Products Partners, LP
Dominion Energy, Inc.
Bruckner Burch PLLC
DTE Energy Company
DTE Pipeline Company
DTE Gas Company
DTE Midstream, LLC
Michael Becker
Joshua Blaine
Scott Bridgeman
Josh Brimmer
Brad Brown
Christopher Carroll
Robert Chilcote
Joseph Cirilo
Mike Crain
Lon Crow
Daniel Decker
Dicke Foster
Mark Flynn
Kevin Gibbons
Jimmy Gonzalez
Jacky Dale Hamrick
Brad M. Hansen
Thomas Hennigar
Michael Hedrick
Michael Henrick
Angel Hernandez
David Hill
Randall Hodges
Michael Hosey
Preston Houston
William Howell
Greg Huggins

Jeffrey Hutchinson
Daniel A. Kasper
Coy Lewis
David Littlepage
Lawrence Long
Steven Lovelady
Gordon Lunsted
Michael Maness
Christopher Martin
Paul Martin
Alberto Martinez
Darrell McDonald
Drayfus Miller
Chad Moore
William Moore
Kenneth Newman
Nicholas Nimmo
Darrell Olson
Blake Pankonien
Adam Pardue
John Parks
Coty Phan
Glenn Price
Rolando Ramirez
Darrell Reeves
Charles E. Roberts
Zachariah Robertson
Jose R. Rodriguez
Doyle Rogers
Kirk Serigne
Gary Slaid
John W. Smith
Jonathan D. Smith
John Stabler
Charles Stover
Christopher Sziber
Donald Taggart
Joshua Throckmorton
Bobby Tipton
Daniel Walsh
Eric White
Matthew Winkle
Joel Witman
Damon Wright
SFF-TIR, LLC
Stuart Family Foundation, Inc

Alan Stuart 2012 GST Family Trust
Celebration, LLC
Anurag Agarwal
Rod Reynolds

**Non-Debtor Affiliates**
Alati Arnegard, LLC
CEP Capital Partners, LLC
Cornell Investment Partners, L.P.
Henry Cornell
Charles C. Stephenson, Jr.
Stephenson Grandchildren Family, LLC
Cynthia A. Field Trust
Cynthia Field
Cypress Environmental Holdings, LLC
Cypress Energy Investments, LLC
Cypress Energy Partners - Sheridan SWD, LLC
Cypress In-Line Holdings, LLC
Cypress ETI, LLC
Cypress In-Line Inspection, LLC
Cypress Energy Holdings II, LLC
Cypress Energy IDR Holdings, LLC
Cypress Energy GP Holdings, LLC
Cypress Environmental Partners GP, LLC
Charles C. Stephenson, Jr. Trust
CF Inspection Management, LLC
Grandchildren Family LLC
Cypress Energy Partners, L.P.
Cypress Cherokee Services, LLC
Cypress Fluid Technologies, LLC
Cypress Pipeline Services, LLC
Cypress Process Services, LLC

**Professionals**
McDermott Will & Emery
Latham & Watkins, LLP
Frederic Dorwart Lawyers PLLC
McAfee & Taft
Chad Hinrichs PC
Ernst & Young
FTI Consulting, Inc.
Paul Hastings LLP
Simmons Energy
Riveron Consulting, LLC
Andrews Kurth Kenyon LLP

**Contract Counterparties**
Doug Paluck
Rhonda Paluck
Randy Jarmin
Tracey Jarmin
Jubal Jarmin

**Lenders**
APE V Cypress, LLC
Comerica Bank
BOKF, N.A. dba Bank of Oklahoma
Arvest Bank
First Oklahoma Bank
Vast Bank
Mabrey Bank

**Significant Customers**
Pacific Gas and Electric Company
Northern Indiana Public Service Company
Enbridge Inc.
Vectren Corporation
Kinder Morgan
Enterprise
QUESTAR
CENTERPOINT ENERGY
BUCKEYE
WILLIAMS

**Surety Issures**
Bank of North Dakota
First International Bank & Trust

**Third-Party Administrators**
Blue Cross Blue Shield of Oklahoma
Optum
BOK Financial

**Top Unsecured Creditors**
Comerica Bank
Dell Marketing L.P.
Shi International Corp
Mork Family Trust
Corporate Services Company
Emkay Inc
Yvonne Baze

Hard Hat Safety & Glove, LLC
Allterra
Shale Oilfield Services LLC
Paluck, Doug & Rhonda
L & H Electric Inc
Bakken Disposals LLC
Greg'S Welding, Inc.
Hall Estill
Computershare
Nysif Disability Benefits
ADP
Gustafson Septic Service, Inc.
AT&T Mobility
Indoff Incorporated
Reservation Telephone Cooperative
MLT Aikins LLP
Disa, Inc.
Northwest Communications Coop
Payflex Systems Usa, Inc.
Aflac
Airgas USA LLC
Jarmin Randy
Jarmin Tracey
Jarmin Jubal
Federal Express
Grainger
R&T Water Supply Assn.
Houston Area Safety Council
Lighthouse Trades Inc
Kanuka Thuringer, Llp
WSI
O'Rourke Dist. Co. Inc.
Sheena Menard
Steven Fenner
Multi-Chem
Michael P Saunders
Nicholas Taylor
Dustin J. Mitchell
Dnow L.P.
Charles E Roberts
Thomas Grable

**U.S. Trustee Personnel, Judges, and Court Contacts**
Albert Alonzo
Alethea Caluza, Paralegal Specialist

Alicia Barcomb, Trial Attorney
Ana Castro
Brian Henault, Bankruptcy Analyst
Chief Judge David R. Jones
Christopher R. Travis, Trial Attorney
Christy Simmons, Bankruptcy Analyst
Clarissa Waxton, Bankruptcy Analyst
Glenn Otto, Bankruptcy Analyst
Gwen Smith, Legal Assistant
Ha Nguyen, Trial Attorney
Hector Duran, Trial Attorney
Ivette Gerhard, Secretary
Jacqueline Boykin, Legal Data Technician
Jana Whitworth, Trial Attorney
Jayson B. Ruff, Trial Attorney
Jeannie Chavez
John Patouhas
Judge Christopher Lopez
Judge Eduardo V. Rodriguez
Judge Jeffrey P. Norman
Judge Marvin Isgur
Kevin M. Epstein, US Trustee
Kimberly Picota
Linda Motton, Paralegal Specialist
LinhThu Do
Luci Johnson-Davis, Paralegal Specialist
Mario Rios
Millie Aponte Sall, Assistant U.S. Trustee
Nathan Ochsner (Clerk of the Court)
Omar E. Jones, Auditor
Patricia Schmidt, Legal Assistant
Rosario Seldona
Stephen Statham, Trial Attorney
Tracey Conrad
Tyler Laws
Vriana Portillo
Yasmine Rivera, Auditor

**Utilities**
8x8 Inc
AT&T
Bluebonnet Electric Cooperative, Inc
Cox Communications
Northwest Communications Coop
Reservation Telephone Cooperative
Mountrail-Williams Electric Cooperative

Roughrider Electric Cooperative
McKenzie Electric Cooperative
ACC Business
Consolidated Telecom
Newwave Communications
United Quality Cooperative
Bergers Sanitation Service
Gustafson Septic Service
Circle Sanitation Services
Texas Disposal Systems, Inc
Lee County Water Supply Corporation
R&T Water Supply Assn.
Southwest Water Authority
MG Rural Sanitation
Verizon Wireless