# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) | Case No. 22-90039 (MI) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR EXISTING CASH MANAGEMENT SYSTEM; (B) MAINTAIN THEIR EXISTING BANK ACCOUNTS AND BUSINESS FORMS; (C) PAY RELATED PREPETITION OBLIGATIONS; AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS; AND (II) GRANTING RELATED RELIEF

> **Emergency relief has been requested.  Relief is requested not later than 1:30 p.m. on May 9, 2022.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 9, 2022 at 1:30 p.m. in Courtroom 404, 4th floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632).  The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 300, Tulsa, Oklahoma 74105.

> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case and complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the " <u>Debtors</u>") state as follows in support of this motion (this "<u>Motion</u>"):

## RELIEF REQUESTED

1.     The Debtors seek entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Order</u>"), (a) authorizing the Debtors to (i) continue operating their cash management system, (ii) maintain their existing bank accounts and business forms, (iii) pay related prepetition obligations, and (iv) continue to perform intercompany transactions, and (b) granting related relief.

## JURISDICTION AND VENUE

2.     The United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 345, 363, 364, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").

## **BACKGROUND**

### I.    **Overview of Chapter 11 Cases**

5.      On May 8, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committee has been appointed or designated.

6.      The Debtors provide inspection, water treatment, and other environmental services that help their customers protect people, property, infrastructure, and the environment with a focus on safety and sustainability.  The Debtors' primary business, inspection services, provides essential environmental services, including inspection and integrity services on a variety of infrastructure assets such as midstream pipelines, oil and gas well gathering systems, natural gas plants, storage facilities, pumping stations, compression stations, and natural gas distribution systems. The Debtors' primary business includes visual inspection, non-destructive testing and examination, and in-line inspection support services for pipeline and energy infrastructure owners and operators and natural gas public utilities that serve our communities.  Under the environmental services segment, the Debtors own and operate water treatment facilities in North Dakota where they specialize in

the treatment, recovery, separation, and disposal of waste byproducts generated by their customers during the lifecycle of an oil or natural gas well.  The Debtors provide quality services in a safe, professional, ethical, and cost-effective manner adding value to their clients throughout the life of their assets.

7.     Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, and the emergency need for the relief requested in this Motion, are set forth in detail in the *Declaration of Peter C. Boylan III, Chairman & Chief Executive Officer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith and incorporated herein by reference.

## II.     The Debtors' Cash Management System

### A.     Overview

8.     The Debtors maintain an integrated, centralized cash management system (the "Cash Management System") that is essential to the operation of their businesses.  The Cash Management System is comparable to the centralized cash management systems used by similarly situated companies to manage the cash of operating units in an efficient and cost-effective manner. The Debtors use the Cash Management System to collect, transfer, and disburse funds generated from their operations and to facilitate the Debtors' cash monitoring, forecasting, and reporting capabilities.  The Debtors' treasury department monitors the Cash Management System daily and employs appropriate and customary controls with respect to entering, processing, and releasing funds, including in connection with Intercompany Transactions (as defined below).  The Debtors'

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the First Day Declaration.

accounting department regularly reconciles the Debtors' books and records to ensure that all transfers are accounted for properly.

### B.   Descriptions of the Debtors' Bank Accounts

9.      As of the Petition Date, the Cash Management System is comprised of twenty-two (22) Debtor-owned and controlled bank accounts (each a "Bank Account," and collectively the "Bank Accounts").[3]  All of the Bank Accounts are located in the United States, with twenty (20) of the Bank Accounts held at Bank of Oklahoma ("BOK") and the remaining two (2) Bank Accounts held at Bank7 ("Bank7" and, together with BOK, the "Banks").  As of the Petition Date, the Debtors have approximately $3.5 million of cash on hand in the Bank Accounts.

10.      A list of the Bank Accounts is attached hereto as **Exhibit B** (the "Bank Accounts List") and a diagram depicting the Cash Management System, including the flow of funds between Bank Accounts, is attached hereto as **Exhibit C**.  As reflected in the diagram, the Debtors manage their receipts and disbursements primarily through their two master collection accounts held by Cypress Environmental Partners, LLC ("CEP") and Tulsa Inspection Resources, LLC ("TIR"), respectively.  The Bank Accounts are described in more detail in the following table:

[*Table Follows on Next Page*]

---

[3]      After the Petition Date, and subject to the entry of the Order, the Debtors plan to open an additional, new Bank Account with Bank of Oklahoma for purposes of holding deposits for their utility service providers pursuant to section 366 of the Bankruptcy Code and as more fully described in the *Debtors' Emergency Motion for Entry of an Order (I) Determining Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utilities from Discontinuing Service, (III) Establishing Procedures for Determining Adequate Assurance of Payment, and (IV) Granting Related Relief*, filed contemporaneously herewith.

| Accounts | Debtor | Description of Accounts |
|---|---|---|
| **Master Collection Accounts** | | |
| (2417)(BOK) | CEP | The Debtors maintain two master collection accounts, one at CEP and the other at TIR. Each of these accounts receives customer payments from their respective business segment operations.   The CEP master collection account also received funds from the Debtors' prepetition financing facility and will |
| (4928)(BOK) | TIR | receive funds from the Debtors' debtor-in-possession financing facility.  These accounts fund certain of the Debtors' operating accounts and the disbursement and payroll accounts described below.  The CEP master collection account also issues some direct payments to vendors for general operating expenses. |
| **Operating Accounts** | | |
| (7873)(BOK) | Cypress Environmental Services, LLC | Nine of the entities in the Debtors' environmental services business segment maintain operating accounts, which are funded by the CEP master collection account for payments of general operating expenses. These are zero balance accounts and any balance remaining in the account at the end of each day is automatically swept back into the CEP master collection account. |
| (6006)(BOK) | Cypress Energy Partners - 1804 SWD, LLC | |
| (5995)(BOK) | Cypress Energy Partners - Grassy Butte SWD, LLC | |
| (5984)(BOK) | Cypress Energy Partners - Green River SWD, LLC | |
| (5973)(BOK) | Cypress Energy Partners - Manning SWD, LLC | |
| (0296)(BOK) | Cypress Energy Partners - Mork SWD, LLC | |
| (1405)(BOK) | Cypress Energy Partners - Mountrail SWD, LLC | |
| (5896)(BOK) | Cypress Energy Partners - Tioga SWD, LLC | |
| (1416)(BOK) | Cypress Energy Partners - Williams SWD, LLC | |

| Accounts | Debtor | Description of Accounts |
|---|---|---|
| (4939)(BOK) | Tulsa Inspection Resources, LLC | This account receives funds from certain customer payments related to the Debtors' inspection business segment and from miscellaneous sources, such as COBRA reimbursements, a sublease of a portion of the Debtors' corporate headquarters, and *de minimis* tax refunds.  Funds in this account are used to pay general operating expenses of the inspection segment. |
| (1858)(BOK) | Tulsa Inspection Resources – PUC, LLC ("TIR-PUC") | This account receives customer payments and issues payments for general operating expenses related to the Debtors' public utilities inspection services.    This account also occasionally funds the payroll account (6215) listed below to cover payroll expenses for the Debtors' inspector workforce. |
| *Disbursement Accounts* | | |
| (9248)(BOK) | Cypress Environmental Partners, L.P. | Disbursement account for various state taxes and professional fees.  Receives funding from the CEP master collection account. |
| (4917)(BOK) | Tulsa Inspection Resources, LLC | Vendor payment account for the Debtors' inspection services segment.  Receives funding from the TIR master collection account. |
| *Payroll Accounts* | | |
| (7068)(BOK) | Cypress Environmental Management, LLC | Payroll account for the Debtors' non-inspector employees.  Receives funding from the CEP master collection account. |
| (6215)(BOK) | Cypress Environmental Management – TIR, LLC | Payroll account for the Debtors' inspector employees.  Receives funding primarily from the TIR master collection account, but occasionally from the TIR-PUC operating account and the CEP master collection account. |
| *Dormant Accounts / Closed Entity Accounts* | | |
| (2790)(BOK) | Cypress Environmental Partners, L.P. | Currently unused.  Opened in connection with cash strategies implemented during the onset of the COVID-19 pandemic.  Those funds were later moved out of this account and it maintains a balance of just over $10,000 to avoid incurring account fees. |

| Accounts | Debtor | Description of Accounts |
|---|---|---|
| (9760)(BOK) | Cypress Environmental Partners, L.P. | Currently unused.  Opened in connection with cash strategies implemented during the onset of the COVID-19 pandemic.  Now maintains only a *de minimis* balance. |
| (1704)(BOK) | Cypress Brown Integrity, LLC | Closed entity.  Operations at this entity were discontinued in September 2021 and this account holds the proceeds from the sales of the entity's assets. |
| (5700)(Bank7) | Cypress Brown Integrity, LLC | Closed entity.  Operations at this entity were discontinued in September 2021 and these accounts hold the remaining balance of its operating cash. |
| (5722)(Bank7) | Cypress Brown Integrity, LLC | |

## III.   Compliance of the Bank Accounts with Section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines

### A.   Compliance with Section 345(b) of the Bankruptcy Code

11.     Section 345(a) of the Bankruptcy Code authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires debtors to obtain, from the entity with which the money is deposited, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, or "the deposit of securities of the kind specified in section 9303 of title 31," unless the court "for cause" orders otherwise.  11 U.S.C. § 345(a)–(b).

12.     The Cash management System is in substantial compliance with section 345(b) of the Bankruptcy Code.  Except for the dormant account held by Cypress Environmental Partners, L.P. with account number ending 2790 (the "CELP Dormant Money Market Account"), all of the Bank Accounts are insured by the FDIC.  As described above, the CELP Dormant Money

Market Account was utilized as part of the Debtors' cash management strategy implemented in response to the uncertainties surrounding the onset of the COVID-19 pandemic. The CELP Dormant Money Market Account is now unused and holds only approximately $10,000 to avoid incurring fees. Moreover, the funds in the CELP Dormant Money Market Account are conservatively invested entirely in fixed income and money market funds. Under the circumstances, the Debtors submit that there is ample justification to waive the requirements of section 354(b) in this instance.

        **B.**      **Compliance with U.S. Trustee Guidelines**

13.      The *Region 7 Guidelines for Debtors in Possession* (the "U.S. Trustee Guidelines") generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the Office of the United States Trustee for the Southern District of Texas.

14.      Twenty-one (21) of the Debtors' Bank Accounts are held at BOK, which is an authorized depository. The remaining two (2) Bank Accounts are held at Bank7, which is not an authorized depository. Nevertheless, the Debtors request that the Court authorize the Debtors to continue to maintain their applicable Bank Accounts at Bank7 in the ordinary course of business as accounts of the Debtors as debtors in possession. Bank7 is a well-capitalized regional banking institution and the Bank Accounts maintained at Bank7 are both FDIC insured. Both Bank Accounts at Bank7 are held by Debtor Cypress Brown Integrity, LLC ("CBI"), which ceased operations in 2021, and the Bank7 Bank Accounts hold the remaining balances from CBI's operating accounts, which in each case are below the FDIC insured limit. For these reasons, the Debtors submit that there is ample reason to waive the requirements of the U.S. Trustee Guidelines with respect to the Bank7 Bank Accounts.

**IV.**     **Bank Fees**

15.     The Debtors incur periodic service charges and other fees in connection with the maintenance of the Cash Management System, which fees and services are generally paid each month (the "Bank Fees").  The Bank Fees associated with the Bank Accounts held at BOK average approximately $3,000 per month.   These fees are routinely paid by non-debtor Cypress Environmental Holdings, LLC ("Holdings") along with additional similar fees for BOK accounts held by the Debtors' non-debtor affiliates as part of the Debtors' larger corporate structure.  CELP then reimburses Holdings for the Debtors' share of the BOK Bank Fees.  The Bank Fees associated with the Bank Accounts held at Bank7 average approximately $50 per month and are debited from the respective Bank Account for which the Bank Fee was incurred.  The Debtors seek permission to pay all Bank Fees in the ordinary course in accordance with past practices.

**B.**     **Business Forms**

16.     The Debtors utilize certain preprinted correspondence and business forms, such as letterhead, purchase orders, and invoices (collectively, the "Business Forms"), in the ordinary course of their businesses.  The Debtors also print checks using a set template.  To avoid significant disruption to their business operations, minimize unnecessary additional expenses to their estates, and avoid confusion on the part of employees, customers, vendors, and suppliers during the pendency of the Chapter 11 Cases, the Debtors request that the Court authorize their continued use of their Business Forms, without reference to the Debtors' status as debtors in possession as required by the U.S. Trustee Guidelines, rather than requiring the Debtors to incur the unnecessary expense and delay of ordering entirely new forms or altering current printing arrangement or invoicing process.

## V.     Intercompany Transactions

17.     The Debtors have historically engaged, in the ordinary course of their businesses, in routine business transactions with each other (collectively, the "Intercompany Transactions"), resulting in intercompany receivables and payables (collectively, the "Intercompany Balances").[4] The Debtors settle Intercompany Transactions in cash or as journal-entry receivables and payables, from time to time, to reimburse certain Debtors for various expenditures associated with their operations or to fund the Bank Accounts in anticipation of such expenditures, as needed.

18.     For instance, in connection with the daily operation of the Cash Management System, funds from the CEP and TIR master collection accounts are disbursed through the system to fund payroll for the Debtors' inspector and non-inspector employees, operational expenses and vendor payments at the Debtors' operating business segments, and general corporate expenses. These disbursements and transfers create Intercompany Balances between CEP, TIR, and the other Debtors.  This process maximizes efficiency and simplifies third-party interactions with the Debtors.  The Debtors closely track all fund transfers in their accounting system and, therefore, can trace and account for all Intercompany Transactions.

19.     The Debtors also make certain routine payments that partially benefit certain non-debtor affiliates in the ordinary course (the "Corporate Payments"), for which the Debtors receive regular reimbursements from the applicable non-debtor affiliate.  In particular, the Debtors make such payments on account of certain insurance premiums on policies held by Holdings that

---

[4]     This motion provides an illustrative overview of the Debtors' typical Intercompany Transactions.  The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions specifically described in this motion.  To the extent that there are any outstanding prepetition transactions related to Intercompany Transactions not described in this motion, the Debtors, out of an abundance of caution, seek authority to continue such transactions.  For the avoidance of doubt, the relief requested in this motion with respect to the postpetition Intercompany  Transactions and the Intercompany Balances resulting therefrom does not constitute an admission of the Debtors or any other party as to the validity, priority, or status of any prepetition Intercompany Balance or any Intercompany Transaction from which such Intercompany Balance may have arisen.

also include the Debtors as named beneficiaries, for which Holdings issues a pro-rata reimbursement to the Debtors.[5]  In addition, the Debtors, through TIR-PUC, provide funding for certain operational expenses of non-debtor affiliate CF Inspection Management, LLC ("CFI"), which is a certified woman-owned business in which the Debtors own a minority stake and through which the Debtors source certain public utility inspection services work.  CELP collects customer receipts for work performed through CFI and disburses payments to CFI.  In addition, a portion of the services rendered by the Debtors' employees benefit non-debtor affiliates Holdings (and certain of its non-debtor subsidiaries) and CFI.  The Debtors pay payroll expenses for the employees and Holdings (or its applicable non-debtor subsidiaries) and CFI reimburse the Debtors for the portion of such services provided on behalf of those entities.[6]

20.    In summary, the Intercompany Transactions are an essential component of the Debtors' operations.  Any interruption to Intercompany Transactions would disrupt operations and result in harm to the Debtors' estates and their stakeholders.  The Debtors seek authority to continue the Intercompany Transactions in the ordinary course of business on a postpetition basis, in a manner substantially consistent with prepetition practice.

---

[5]    The Debtors have requested authority to pay insurance premiums in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing Debtors to (A) Continue Insurance Program and Performance Bond Program and (B) Pay All Obligations with Respect Thereto and (II) Granting Related Relief,* filed contemporaneously herewith (the "Insurance Motion").  As further discussed in the Insurance Motion, such payments are essential to the Debtors' business.

[6]    The Debtors have requested authority to pay the Debtors' payroll and related expenses in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief,* filed contemporaneously herewith (the "Wages Motion").  As further discussed in the Wages Motion, such payments are essential to the Debtors' business.

**BASIS FOR RELIEF**

**I.      The Court Should Authorize the Debtors to Continue to Use the Cash Management System.**

21.      The Debtors request authority to continue using the Cash Management System in the same manner as they did before the Petition Date.   Such relief is appropriate under sections 363(c) and 105(a) of the Bankruptcy Code.

22.      Pursuant to the U.S. Trustee Guidelines, debtors in possession are required to, among other things, (a) close all existing bank accounts and open new debtor in possession accounts; (b) establish one debtor in possession bank account for all estate monies required for the payment of taxes; (c) maintain a separate debtor in possession account for cash collateral; and (d) use new business forms indicating the debtor in possession status of the chapter 11 debtors. These requirements are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims.

23.      Considering, however, the complex Cash Management System that the Debtors have in place for the transfer and distribution of funds, which ties into the Debtors' existing corporate accounting and cash forecasting reporting, enforcement of this provision of the U.S. Trustee Guidelines during the Chapter 11 Cases would disrupt the Debtors' ability to efficiently administer the Chapter 11 Cases.  Accordingly, the Debtors respectfully request that the Court allow them to operate each of the Bank Accounts listed on the Bank Accounts List as they were maintained in the ordinary course before the Petition Date.

24.      The Court can authorize continuation of the Cash Management System pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage

in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court.  *See In re HLC Props., Inc.*, 55 B.R. 685, 686 (Bankr.  N.D. Tex. 1985) (finding "no need to further burden the docket or the staff of the Court with a superfluous order" when a transaction is in the ordinary course of business).  That authorization extends to requests to continue the operation of a prepetition cash management system.  The Fifth Circuit has found that the continued use of its prepetition cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets."  *Southmark Corp. v.  Grosz (In re Southmark Corp.),* 49 F.3d 1111, 1114 (5th Cir. 1995).  Additionally, under section 105(a) of the Bankruptcy Code, a court "may issue any order, process, or judgment that is necessary or appropriate to carry out due provisions of this title." 11 U.S.C. § 105(a).

25.    The Cash Management System constitutes an ordinary course and essential business practice that allows the Debtors to receive revenues, pay expenses, control corporate funds, reduce administrative expenses, and ensure the availability of timely and accurate account balance information.  Requiring the Debtors to adopt a new cash management system would be expensive and disruptive to the Debtors' operations and daily responsibilities, which in turn would be detrimental to the Debtors' estates and creditors.  Importantly, such a disruption is unnecessary because the Debtors have and will continue to track and report the location and transfer of funds, which will ultimately facilitate the Debtors' transition into chapter 11.

26.    Parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System.  The Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date.  Specifically, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior

approval of the Debtors' respective accounting departments.  Additionally, the Debtors will continue to work closely with its Banks to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without the Court's approval.  In light of such protective measures, maintaining the Cash Management System is in the best interests of the Debtors' estates and creditors.

## II.    Authorizing the Debtors to Continue Using Debit, Wire, Credit Card, and ACH Payments Is Warranted.

27.    The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.  If the Debtors' ability to conduct transactions by debit, wire transfer, credit card, ACH, or other similar methods is impaired, the Debtors' day-to-day activities may be unnecessarily disrupted, and their estates will incur additional costs.

## III.   The Court Should Authorize the Banks to Continue to Administer the Bank Accounts and the Debtors to Pay the Bank Fees.

28.    For the Cash Management System to operate, the Banks must be authorized to continue to administer such accounts without interruption in the ordinary course of business. Therefore, the Banks should also be authorized to receive, process, honor, and pay any and all checks, wire transfers, credit cards, ACH payments, and other instructions and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto.  Notwithstanding the foregoing, any check, draft, or other notification that the Debtors advise the Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

29.    In connection with continuing the Cash Management System, the Debtors also request authority to pay any prepetition Bank Fees that remain unpaid as of the Petition Date.

Section 105(a) of the Bankruptcy Code states that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity." 11 U.S.C. § 105(a). The "doctrine of necessity" provides a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity" and holding that sections 105 and 1107 of Bankruptcy Code provide authority for a debtor-in-possession to pay certain prepetition claims that are necessary to the operation of the debtors' business).

30.     Payment of the prepetition Bank Fees is in the best interests of the Debtors, their estates, and all parties in interest as it will prevent any disruption to the Cash Management System. Moreover, because the Banks may have setoff rights with respect to the prepetition Bank Fees, payment of any prepetition Bank Fees will not affect unsecured creditors and would merely be a matter of timing. Accordingly, the Debtors submit that the payment of such fees pursuant to section 105(a) of the Bankruptcy Code and the doctrine of necessity is warranted.

31.     For the foregoing reasons, continuation of the Cash Management System is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these Chapter 11 Cases and should be authorized pursuant to sections 363(c)(1) and 105(a) of the Bankruptcy Code.

**IV.     The Court Should Authorize the Debtors to Continue Using Their Current Business Forms.**

32.     To avoid disruption of the Cash Management System and unnecessary expense to their estates, the Debtors request that the Court authorize them to continue to use the Business Forms substantially in the form existing immediately before the Petition Date, without reference

to their status as debtors in possession. Parties in interest will not be prejudiced by this relief. Parties doing business with the Debtors will be aware of their status as debtors in possession and, thus, changing business forms is unnecessary and would be unduly burdensome.

**V.  Cause Exists to Waive Any Non-Compliance with Section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines to the Extent Applicable to the Cash Management System.**

33.     The Debtors are in substantial compliance with section 345 of the Bankruptcy Code. Each Bank Account is insured by the FDIC, except for the CELP Dormant Money Market Account, which maintains a balance of only approximately $10,000 and is conservatively invested entirely in fixed income and money market funds. Accordingly, the Debtors submit that the CELP Dormant Money Market Account is consistent with the interplay between section 345(a), which seeks the maximum reasonable net return, and section 345(b), which seeks to ensure a debtor's funds are reasonable protected. Due to the modest amount held this account and the highly conservative nature in which it is invested, the Debtors submit that ample cause exists to waive the requirements of section 345(b) of the Bankruptcy Code and to authorize the Debtors to maintain the CELP Dormant Money Market Account in the ordinary course.

34.     Twenty-one (21) of the Debtors' twenty-three (23) Bank Accounts are held at BOK, which is designated as an authorized depository under the U.S. Trustee Guidelines. The two remaining Bank Accounts are held by CBI at Bank7, which is not an authorized depository but is a well-capitalized regional banking institution. Moreover, both of CBI's Bank Accounts at Bank7 are FDIC insured and the accounts balances are below the FDIC insurance threshold. Accordingly, the Debtors submit that cause exists to waive any non-compliance with the U.S. Trustee Guidelines and to authorize the Debtors to maintain the Bank Accounts at Bank7 in the ordinary course.[7]

---

[7]    To the extent the Court ultimately declines to waive the requirements of section 345(b) of the Bankruptcy Code or the U.S. Trustee Guidelines as requested herein, the Debtors request that they be provided a period of thirty (30)

**VI.    The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course and Grant Administrative Priority Status to Postpetition Intercompany Balances Among the Debtors.**

35.    As described above, certain of the Debtors engage in Intercompany Transactions with other Debtors in the ordinary course.  The Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require this Court's approval.  Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis.  If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the detriment of the Debtors and their estates.

36.    To ensure each individual Debtor will not, at the expense of its creditors, fund the operations of another entity, the Debtors respectfully request, pursuant to section 503(b)(1) of the Bankruptcy Code, that all postpetition payments between or among a Debtor and another Debtor on account of an Intercompany Transaction be accorded administrative expense status, subject and subordinate to adequate protection claims granted pursuant to any applicable orders of the Court regarding the use of cash collateral and superpriority claims arising under the debtor-in-possession financing facility.  This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

37.    Because the Intercompany Transactions represent extensions of intercompany credit made in the ordinary course of business that directly benefit the Debtors and their ongoing

---

days following such ruling to close any such non-compliant Bank Account and transfer the funds to a compliant Bank Account.

operations, the Debtors request that pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all postpetition obligations between or among a Debtor and another Debtor on account of an Intercompany Transaction be accorded administrative expense status. Under section 503(b)(1)(A) of the Bankruptcy Code, "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). Section 364(b) of the Bankruptcy Code provides that "[t]he court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense." 11 U.S.C. § 364(b).

38.     The Debtors track all intercompany transfers in the Debtors' accounting system and have the ability to identify and account for all Intercompany Transactions, including all cash receipts and disbursements. Continuation of the Intercompany Transactions is in the best interests of each Debtor, its estate, and all parties in interest as it promotes the preservation of the going concern value of the Debtors. Granting administrative expense status will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to such Debtor's respective creditors. As such, the Debtors request that, pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code, all Intercompany Balances between Debtors arising after the Petition Date be accorded administrative expense priority.

## PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED

39.     The Debtors expect to have sufficient funds to pay the amounts described in this Motion in the ordinary course of business during the pendency of the Chapter 11 Cases by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral

and postpetition financing.  In addition, under the Debtors' Cash Management System, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of applicable payments pursuant to this Motion.  The Debtors believe there is minimal risk that checks or wire transfer requests the Court has not authorized will be made inadvertently. Therefore, the Debtors request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## EMERGENCY CONSIDERATION

40.     The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which allows this Court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations, and any delay in granting the relief requested could jeopardize the Debtors' ability to restructure.  The Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis in order to preserve the ongoing value of the Debtors' estates.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

41.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

42.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## NOTICE

43.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims

against the Debtors (on a consolidated basis); (c) the Prepetition First Lien Lender and Prepetition First Lien Agent (each as defined in the DIP Motion);[8] (d) the DIP Lender and DIP Agent (each as defined in the DIP Motion); (e) the Office of the United States Attorney for the Southern District of Texas; (f) the state attorneys general for states in which the Debtors conduct business; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (j) the Banks; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In view of the nature of the relief requested, the Debtors respectfully submit that no other or further notice need be provided.

[*Remainder of Page Intentionally Left Blank*]

---

[8]    "<u>DIP Motion</u>" means the *Debtors' Emergency Motion for the Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Utilize Cash Collateral of the Prepetition First Lien Secured Parties, (II) Granting Adequate Protection to the Prepetition First Lien Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, filed contemporaneously herewith.

The Debtors respectfully request entry of the Order, granting the relief requested in this Motion and such other and further relief as the Court deems appropriate under the circumstances.

Dated: May 9, 2022
Houston, Texas

/s/ *James Grogan*

**PAUL HASTINGS LLP**
James Grogan (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Justin Rawlins (*pro hac vice* admission pending)
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:  (310) 620-5700
Facsimile:  (310) 620-5899
Email:  justinrawlins@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Matthew Smart (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
         matthewsmart@paulhastings.com
         michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## **Certificate of Accuracy**

      I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

          */s/ James Grogan*
          James Grogan


## **Certificate of Service**

      I certify that on May 9, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

          */s/ James Grogan*
          James Grogan

# **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) | Case No. 22-90039 (MI) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | **Re: Docket No. ___** |

**ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE
THEIR EXISTING CASH MANAGEMENT SYSTEM; (B) MAINTAIN THEIR
EXISTING BANK ACCOUNTS AND BUSINESS FORMS; (C) PAY RELATED
PREPETITION OBLIGATIONS; AND (D) CONTINUE TO PERFORM
INTERCOMPANY TRANSACTIONS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to

(i) continue operating their cash management system, (ii) maintain their existing bank accounts

and business forms, (iii) pay related prepetition obligations, and (iv) continue to perform

intercompany transactions, and granting certain related relief, all as more fully set forth in the

Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this

Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632).  The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 300, Tulsa, Oklahoma 74105.

[2]   Where context requires, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Bankruptcy Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and upon consideration of the First Day Declaration and the record of the Hearing and all of the proceedings had before the Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties in interest, and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1.    The Debtors are authorized, but not directed, to (a) continue using the Cash Management System as described in the Motion and honor any prepetition obligations related to the use thereof, including the payment of Bank Fees; (b) designate, maintain, close, and continue to use any or all of their existing Bank Accounts as of the Petition Date, including, the Bank Accounts identified on **Exhibit B** to the Motion; (c) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, electronic fund transfers, wire transfers, ACH transfers, credit card transactions, and other debits or electronic means; (d) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts.

2.    Nothing contained herein shall prevent the Debtors from closing any Bank Accounts as they may deem necessary and appropriate, to the extent consistent with any orders of this Court and with the terms of any prepetition financing agreement and postpetition financing

2

agreement.  Each Bank is authorized to honor the Debtors' requests to close such Bank Accounts, and the Debtors shall provide reasonable prior written notice of the closure of any account to the U.S. Trustee, any statutory committee, and the Debtors' prepetition and debtor-in-possession financing lender.

3.     The Debtors are authorized to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date without alteration or change and without the designation "Debtor in Possession" imprinted on them; *provided* that once the Debtors have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled "Debtor in Possession" as soon as it is reasonably practicable to do so.  To the extent the Debtors print any new checks or use any electronic Business Forms, they will include the designation "Debtor in Possession" and the corresponding bankruptcy number on all such checks within ten (10) days.

4.     To the extent any of the Debtors' Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have sixty (60) days, or to July 7, 2022, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; *provided* that nothing herein shall prevent the Debtors or the U. S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.

5.     The Debtors are authorized to open new bank accounts so long as (a) any such new account is designated as a "Debtor-in-Possession" account with one of the Debtors' existing Banks or with a bank that (i) is insured with the FDIC or the Federal Savings and Loan Insurance Corporation, (ii) is designated as an authorized depository by the U.S. Trustee, (iii) agrees to be

bound by the terms of this Order, and (b) the Debtors provide reasonable prior written notice to the U.S. Trustee, any statutory committee, and the Debtors' prepetition and debtor-in-possession financing lender of the opening of such account; *provided* that all accounts opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Order, be deemed a Bank Account subject to this Order as if it had been listed on **Exhibit B** to the Motion, *provided further*, *however*, that such opening shall be timely indicated on the Debtors' monthly operating reports.

6.      The Banks are authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, electronic fund transfers, wire transfers, and ACH transfers issued, whether before or after the Petition Date, and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.  For the avoidance of doubt, the Banks and other payroll check processors are authorized to receive, process, honor, and pay, to the extent funds are available in each applicable Bank Account, any and all payroll checks that were issued prior to and remain outstanding as of the Petition Date.

7.      Each Bank is authorized to charge, and the Debtors are authorized to pay, honor, or allow any Bank Fees or charges associated with the Bank Accounts, and charge back returned items to the Bank Accounts in the ordinary course, including any prepetition amounts.  Any fees, costs, charges, and expenses, including Bank Fees, or charge-backs or any other reimbursement or payment obligations payable to the Banks after the Petition Date are hereby accorded priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

8.      Each Bank is authorized to debit the Bank Accounts in the ordinary course of business without the need for any further order of this Court for (a) all checks drawn on the Bank

Accounts which are cashed at the Bank's counters or exchanged for cashier's checks by the payees thereof prior to or after the Petition Date; (b) all checks or other items deposited in one of the Bank Accounts with the Bank prior to or after the Petition Date which have been dishonored or returned unpaid for any reason, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to or after the Petition Date; (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System, including any Bank Fees incurred in the ordinary course of business; and (d) any postpetition amounts due and owing to the Bank as service charges for the maintenance of the Cash Management System, including any Bank Fees incurred in the ordinary course of business.

9.      Within fifteen (15) days of the entry of this Order, the Debtors shall serve a copy of this Order on each Bank and identify each of their Bank Accounts as being held by a debtor in possession.

10.      The Debtors are authorized, but not directed, to continue to enter into and engage in Intercompany Transactions, including the Corporate Payments, and to take any actions related thereto on the same terms as, and consistent with, the Debtors' operation of the business in the ordinary course during the prepetition period.  The Debtors are authorized to continue to record and reconcile intercompany receivables and payables through the Cash Management System consistent with prepetition practices.  All postpetition Intercompany Transactions authorized hereunder between a Debtor and another Debtor are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code, subject and junior to the claims, including adequate

protection and superpriority claims, granted in connection with any order approving debtor-in-possession financing.

11.     The Debtors shall continue to maintain current, detailed, and accurate records with respect to all transfers so that all transactions, including Intercompany Transactions and Corporate Payments, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts, and distinguished between prepetition and postpetition transactions.  The Debtors shall make such records available upon request by the U.S. Trustee, any statutory committee, and the Debtors' prepetition and debtor-in-possession financing lender.  To the extent that the transfers within the Cash Management system are disbursements, they will be noted and reflected on the monthly operating reports.

12.     The Debtors shall provide reasonable notice to the U.S. Trustee, any statutory committee, and the Debtors' prepetition and debtor-in-possession financing lender of material changes to the Cash Management System and procedures.

13.     Notwithstanding anything contained in the Motion or this Order, any payment to be made, and any relief or authorization granted herein, shall be subject to, and must be in compliance with, the terms and conditions in any interim or final order entered by the Court approving the Debtors' entry into any postpetition debtor in possession financing facility or authorizing the Debtors' use of cash collateral, including any budget in connection therewith (as may be updated and approved from time to time in accordance with the terms of any such interim or final order) (each such order, a "DIP Order").  To the extent there is any inconsistency between the terms of a DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

14.     Each Bank is authorized, when requested by the Debtors in their sole discretion, to process, honor, pay, and, if necessary, reissue any and all checks, including prepetition checks that the Debtors reissue postpetition, and electronic fund transfers drawn on the Debtors' Bank Accounts, whether such checks were presented or funds transfer requests were submitted prior to or subsequent to the Petition Date, provided that sufficient funds are available in the applicable Bank Account to make the payments.

15.     Notwithstanding any other provision of this Order, should a Bank honor a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors to honor such prepetition check or item, including the Debtors' failure to stop payment on any such check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, the Bank shall not be deemed to be nor shall be liable to the Debtors or their estates or otherwise be in violation of this Order.

16.     The Debtors are authorized, but not directed, to execute and deliver such documents and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

17.     Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular

claim is an administrative expense claim or other priority claim; (e) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (f) a request to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

18.     The Court finds and determines that the requirements of Bankruptcy Rule 6003(b) are satisfied and that the relief is necessary to avoid immediate and irreparable harm.

19.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

Dated: _____, 2022
      Houston, Texas

                                      _____
                                        THE HONORABLE MARVIN ISGUR
                                        UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**List of Bank Accounts**

| Bank Name | Account No. Ending | Entity Name | Account Type | Balance as of May 8, 2022 |
|---|---|---|---|---|
| Bank of Oklahoma | x6215 | Cypress Environmental Management - TIR, LLC | Payroll Account | $13,103 |
| Bank of Oklahoma | x7068 | Cypress Environmental Management, LLC | Payroll Account | $57,535 |
| Bank of Oklahoma | x6006 | Cypress Energy Partners - 1804 SWD, LLC | Operating Account | $ - |
| Bank of Oklahoma | x7873 | Cypress Environmental Services, LLC | Operating Account | $ - |
| Bank of Oklahoma | x5995 | Cypress Energy Partners - Grassy Butte SWD, LLC | Operating Account | $ - |
| Bank of Oklahoma | x5984 | Cypress Energy Partners - Green River SWD, LLC | Operating Account | $ - |
| Bank of Oklahoma | x5973 | Cypress Energy Partners - Manning SWD, LLC | Operating Account | $ - |
| Bank of Oklahoma | x0296 | Cypress Energy Partners - Mork SWD, LLC | Operating Account | $ - |
| Bank of Oklahoma | x1405 | Cypress Energy Partners - Mountrail SWD, LLC | Operating Account | $ - |
| Bank of Oklahoma | x5896 | Cypress Energy Partners - Tioga SWD, LLC | Operating Account | $ - |
| Bank of Oklahoma | x1416 | Cypress Energy Partners - Williams SWD, LLC | Operating Account | $ - |
| Bank of Oklahoma | x4939 | Tulsa Inspection Resources, LLC | Operating Account | $37,841 |
| Bank of Oklahoma | x1858 | Tulsa Inspection Resources - PUC, LLC | Operating Account | $124,592 |
| Bank of Oklahoma | x2417 | Cypress Environmental Partners, LLC | Master Collection Account | $40,493 |
| Bank of Oklahoma | x4928 | Tulsa Inspection Resources, LLC | Master Collection Account | $5,741 |
| Bank of Oklahoma | x9248 | Cypress Environmental Partners, L.P. | Disbursement Account | $8,183 |
| Bank of Oklahoma | x4917 | Tulsa Inspection Resources, LLC | Disbursement Account | $1,816 |
| Bank of Oklahoma | x9760 | Cypress Environmental Partners, L.P. | Dormant Account | $659 |
| Bank of Oklahoma | x2790 | Cypress Environmental Partners, L.P. | Dormant Account | $10,838 |
| Bank of Oklahoma | x1704 | Cypress Brown Integrity, LLC | Closed Entity | $3,234,616 |
| Bank7 | x5700 | Cypress Brown Integrity, LLC | Closed Entity | $20,257 |
| Bank7 | x5722 | Cypress Brown Integrity, LLC | Closed Entity | $11,716 |

**<u>Exhibit C</u>**

**Cash Management Schematic**

## Cypress Environmental Partners, L.P. - Cash Management System Schematic
*Denotes bank accounts under active control agreements*

