UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) Case No. 22-90039 (MI) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) (Emergency Hearing Requested) |

**DECLARATION OF SANJIV SHAH IN
SUPPORT OF THE DEBTORS' EMERGENCY
MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR SECURED
SUPERPRIORITY POSTPETITION FINANCING AND (B) UTILIZE
CASH COLLATERAL OF THE PREPETITION FIRST LIEN SECURED
PARTIES, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION
FIRST LIEN SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

I, Sanjiv Shah, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that:

1.  I am a Managing Director and Global Co-Head of Energy and Power Investment Banking for Piper Sandler & Co. ("Piper"), an investment banking firm which has its principal office at 800 Nicollette Mall, Minneapolis, Minnesota 55402. Piper is the proposed investment banker for the debtors and debtors in possession (collectively, the "Debtors" or the "Company") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). I submit this declaration

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Partners GP, LLC (1149); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632). The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 300, Tulsa, Oklahoma 74105.

(the "Declaration") in support of the relief requested in the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Utilize Cash Collateral of the Prepetition First Lien Secured Parties, (II) Granting Adequate Protection to the Prepetition First Lien Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "DIP Motion"),[2] which seeks approval of a senior secured debtor-in-possession credit facility (the "DIP Facility") in an aggregate principal amount of $5 million in new financing and the consensual use of cash collateral ("Cash Collateral").

2. Piper has authorized me to make this Declaration. All statements in this Declaration are based upon (a) my personal knowledge, belief, or opinion; (b) information learned from my review of the Company's records maintained in the ordinary course of its business; (c) information supplied to me or verified by the Company's employees or advisors and/or employees of Piper working directly with me or under my supervision, direction, or control; and/or (d) my knowledge, skill, education, experience, and/or training concerning financial restructurings and capital-raising activities. I am not being compensated specifically for this testimony other than through payments received by Piper as a professional proposed to be retained as the Debtors' investment banker in the Chapter 11 Cases.

3. I am over the age of twenty-one years, and if called upon to testify, I would testify competently to the facts and opinions set forth in this Declaration.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion.

## **PROFESSIONAL BACKGROUND AND QUALIFICATIONS**

4. I have over 14 years of investment banking experience advising companies in connection with transactions involving oilfield services companies, including mergers and acquisitions, capital markets projects, other financings, and restructuring projects. My financial advisory engagements span more than 100 closed transactions or assignments. Prior to joining Piper, I was a corporate banker in the Financial Institutions Group at Citigroup N.A. Zurich for two years, and a product controller for Fixed Income Credit Markets at Citigroup Global Markets Limited for two years. I hold a Bachelor of Science degree with honors in Economics from the University of Manchester.

5. Piper provides financial advisory services in the areas of mergers and acquisitions, capital raising, and restructuring, across a broad range of industries. Piper's senior professionals have extensive experience in advising on transactions involving oilfield services companies like the Debtors as well as experience in the reorganization and restructuring of distressed companies, including in the energy industry, both out of court and in chapter 11 cases.

6. Piper's professionals have advised debtors, lenders, committees, equity holders, and acquirers in large financial reorganizations, including in complex restructuring cases in this and other districts throughout the United States including, among others, the following: *In re CiCi's Holdings, Inc.*, Case No. 21-30146 (SGJ) (Bankr. N.D. Tex. Jan. 25, 2021); *In re GTT Communications, Inc.*, Case No. 21-11880 (MEW) (Bankr. S.D.N.Y. Oct. 31, 2021); *In re BJ Services, LLC*, Case No. 20-33627 (MI) (Bankr. S.D. Tex. July 20, 2020); *In re Garrett Motion, Inc.*, Case No. 20-12212 (MEW) (Bankr. S.D.N.Y. Sept. 20, 2020); *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Feb. 11, 2019); *In re Nine West Holdings, Inc.*, Case

No. 18-10947 (SCC) (Bankr. S.D.N.Y. Apr. 6, 2018); and *In re Ultra Petroleum Corp.*, Case No. 16-32202 (MI) (Bankr. S.D. Tex. Apr. 29, 2016.[3]

## PIPER'S ENGAGEMENT AND THE DIP FACILITY

7.  The Debtors engaged Piper to conduct a marketing process in support of a potential sale of the Debtors' business and raise capital for a potential restructuring, if necessary. I, along with members of my team, have been working closely with the Debtors since March 2022. During that period, Piper has rendered investment banking advisory services to the Debtors in connection with the marketing and potential sale of their inspection, water treatment, and other environmental services business segments. Piper has also worked with the Company's management and board of directors to, among other things, conduct a process to secure debtor-in-possession financing for the Company on the most competitive terms and conditions available to the Company. Through its engagement, Piper has become well-acquainted with the Company's capital structure, liquidity needs, and business operations.

8.  In connection with Piper's engagement by the Company, members of my team and I have assisted the Company in identifying candidates for potential debtor-in-possession financing. Relatedly, I have participated in meetings with the Company's management, board of directors, and other professional advisors to, among other things, assess and discuss the Company's need for, and access to, debtor-in-possession financing.

9.  By the DIP Motion, the Company requests, among other things, authority to (a) obtain the DIP Facility to be provided by each of the prepetition lenders under that certain *Amended and Restated Credit Agreement* dated as of May 29, 2018 (as amended, restated, modified, supplemented, or replaced from time to time, the "Prepetition First Lien Credit

---

[3]   Includes assignments worked on by Piper professionals while at prior firms.

4

Agreement") among Cypress Environmental Partners, L.P. and certain of its subsidiaries as identified in the Prepetition First Lien Credit Agreement, as borrowers and guarantors, APE V Cypress, LLC, as administrative agent (in such capacity, the "Prepetition First Lien Agent"), and the lenders from time to time party thereto (collectively, the "Prepetition First Lien Lenders," and collectively with the Prepetition First Lien Agent and the other secured parties thereunder, the "Prepetition First Lien Secured Parties," and such credit facility, the "Prepetition First Lien Facility"), and (b) use, on a consensual basis, the Cash Collateral of the Prepetition First Lien Lenders.

10.     In general, the proposed DIP Facility consists of a new money, multi-draw credit facility in an aggregate principal amount of up to $5 million, under which $3 million in principal amount shall be available upon entry of the Interim Order (as defined in the DIP Motion) and the remaining $2 million in principal shall be available upon entry of the Final Order (as defined in the DIP Motion).

**THE PROPOSED DIP FACILITY IS THE BEST
AVAILABLE FINANCING UNDER THE CIRCUMSTANCES**

11.     In April 2022, the Company, with the assistance of Piper and its other advisors, commenced a process to obtain debtor-in-possession financing as part of the proposed Restructuring.[4]  In connection with this process, Piper contacted 12 potential third-party debtor-in-possession financing providers (the "Third Parties").   However, providing debtor-in-possession financing to the Debtors involved numerous challenges, including the fact

---

[4] Additional background information related to the Company's prepetition marketing process and other events leading to the commencement of the Chapter 11 Cases, are described in detail in (a) the *Declaration of Peter C. Boylan III, Chairman & Chief Executive Officer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* and (b) the *Declaration of Sanjiv Shah in Support of the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates*, each filed contemporaneously herewith.

that (a) all or substantially all of the Debtors' assets are encumbered and subject to liens of the Prepetition First Lien Secured Parties, (b) obtaining debtor-in-possession financing that would prime liens of the Prepetition First Lien Secured Parties would likely invoke costly and time consuming legal challenges from the Prepetition First Lien Secured Parties, including with respect to the ability to prime the Prepetition First Lien Secured Parties' liens and the Debtors' ability to adequately protect the Prepetition First Lien Secured Parties' interest in the prepetition collateral securing the loans under the Prepetition First Lien Facility, and (c) the Prepetition First Lien Secured Parties' stated refusal to agree to have their liens primed.

12. Despite these challenges, Piper explored various financing alternatives with the Third Parties, including the possibility of priming the Prepetition First Lien Secured Parties' interests in the collateral securing the Prepetition First Lien Facility, the potential for obtaining financing with liens that are *pari passu* or junior to the Prepetition First Lien Secured Parties' liens, and unsecured financing.

13. None of the Third Parties were willing to provide postpetition credit on an unsecured basis, or secured only by liens junior to or *pari passu* with the liens of the Prepetition First Lien Secured Parties. As a result, the Company, with the assistance of its advisors, concluded that the DIP Facility was the only viable source of debtor-in-possession available to the Company to fund the Chapter 11 Cases under the circumstances.

14. One advantage of the DIP Facility is that it is consensual. I understand that to grant a priming lien, section 364(d)(1) of the Bankruptcy Code requires either the consent of the secured creditor that holds a lien on the property of the estate on which the priming lien is to be granted, or adequate protection for such secured creditor's interest. The Company and its advisors concluded that the Prepetition First Lien Secured Parties would not consent to priming liens or to

the Company's use of Cash Collateral if priming liens were granted to a Third Party. None of the Third Parties offered to provide a priming facility without the consent of the Prepetition First Lien Secured Parties, and none of the Third Parties committed to providing exit financing. An effort to prime the Prepetition First Lien Secured Parties' liens without their consent would likely involve costly, extended, and contested proceedings. Moreover, I believe based on my experience that outside financing alternatives could also expose the Company to the execution risk associated with a new lender transaction, including material timing and due diligence constraints, necessarily involving the payment of additional and substantial professional fees and costs.

15. The proposed DIP Facility was heavily negotiated by experienced bankers, financial advisors, restructuring counsel, and the respective parties to obtain the best possible outcome under these circumstances. The proposed DIP Facility and the consensual use of Cash Collateral are the product of good-faith, arm's-length negotiations with the Prepetition First Lien Secured Parties, and are an essential component of the restructuring contemplated by the Chapter 11 Cases. Based on my industry experience, my familiarity with the Company's financial condition, and my review of potential alternative financing sources, I believe that the terms and conditions of the DIP Facility are reasonable and appropriate under the circumstances and are within the range of other court-approved DIP facilities for debtors of similar size and industry in recent years. Based upon my understanding of the Company's liquidity needs, the current state of debt capital markets for oil and gas service companies, and Piper's inquiries to potential debtor-in-possession financing sources, I do not believe alternative sources of financing are currently available to the Company on better or comparable terms than the proposed DIP Facility.

16. Based on the foregoing, it is my belief that the proposed DIP Facility represents the best financing option available to address the Company's liquidity needs under these

circumstances. It is also my belief that the terms and conditions of the DIP Facility are reasonable, appropriate, and reflective of the current market for debtor-in-possession financings under these circumstances.

17. Moreover, I believe the Company will suffer immediate and irreparable harm if the Interim Order approving the DIP Facility is not entered on an emergency basis, because the Company requires immediate access to liquidity during the period prior to entry of the Final Order in order to continue operating while paying its administrative expenses and working towards a value-maximizing restructuring. Accordingly, I believe that the proposed DIP Facility should be approved on the terms and conditions described in the DIP Credit Agreement (as defined in the DIP Motion) and the Interim Order given the circumstances present here.

18. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 9, 2022

/s/   Sanjiv Shah
Sanjiv Shah
Global Co-Head of Energy and Power Investment Banking
Piper Sandler & Co.