**<u>Exhibit B</u>**

**Redline**

PH DRAFT 5/9̶10/2022
PRIVILEGED & CONFIDENTIAL
SUBJECT TO FRE 408

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) | Case No. 22-90039 (MI) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) | **Re: Docket No. 1̶1̶13** |

**INTERIM ORDER (I) AUTHORIZING**
**THE DEBTORS TO (A) OBTAIN SENIOR**
**SECURED SUPERPRIORITY POSTPETITION FINANCING**
**AND (B) UTILIZE CASH COLLATERAL OF THE PREPETITION FIRST**
**LIEN SECURED PARTIES, (II) GRANTING ADEQUATE PROTECTION**
**TO THE PREPETITION FIRST LIEN SECURED PARTIES,**
**(III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING**
**A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the Motion[2] filed by the above-referenced debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), pursuant to sections 105, 361, 362, 363(c), 364, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 4001 of the Local Rules of the United States

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632).  The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 300, Tulsa, Oklahoma 74105.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the DIP Credit Agreement, as applicable. In the event of any discrepancy between the terms of this Interim Order and the DIP Credit Agreement (or any other DIP Facility Document), the terms of this Interim Order shall control.

Bankruptcy Court for the Southern District of Texas, Houston Division (the "Local Bankruptcy Rules"), seeking, among other things:

(i)    authorization for Cypress Environmental Partners, L.P. ("CELP"), as borrower (the "Borrower"), a debtor in possession under the Bankruptcy Code, and each subsidiary of CELP that executes the DIP Credit Agreement (as defined below) as a Guarantor, each as a debtor in possession in the Chapter 11 Cases, to obtain and be obligated in respect of postpetition financing provided under a credit facility (the "DIP Facility") (including requirements for the Debtors' use of Cash Collateral (as defined below)), and for the Guarantors (as defined in the DIP Credit Agreement), to guarantee and be jointly and severally obligated to pay the Borrower's obligations in connection with the DIP Facility consisting of a non-amortizing, new money, multi-draw credit facility in an aggregate principal amount of $5 million (the "DIP Loans"), of which: (i) $3 million in principal amount of new money revolving loans shall be available upon entry of this Interim Order (the "Interim DIP Loans") and (ii) an additional $2 million in principal amount of new money revolving loans (the "Final DIP Loans") shall be available upon entry of the Final Order (as defined below), provided by APE V Cypress, LLC, as lender, and the other lenders party thereto from time to time (collectively, the "DIP Lenders"), for which APE V Cypress, LLC shall act as administrative agent (in such capacity, the "DIP Agent"), pursuant to the terms of this Interim Order and that certain *Senior Secured Superpriority Debtor-in-Possession Credit Agreement* by and among the Borrower, the Guarantors, the DIP Lenders, and the DIP Agent, substantially in the form attached hereto as **Exhibit 1** (as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and this Interim Order, the "DIP Credit Agreement"),[3] and any related security

---

[3]    To the extent of any conflict between the terms of the DIP Credit Agreement and this Interim Order, the terms of this Interim Order shall control.

agreements, fee letters, and other documents required to be executed or delivered by or in connection with the DIP Credit Agreement (as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and this Interim Order, collectively, the "DIP Facility Documents");

(ii)    authorization for the Debtors to execute and deliver the DIP Facility Documents and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(iii)    authorization for the Debtors, (a) upon entry of the Interim Order to borrow the Interim DIP Loans, and (b) subject to entry of the Final Order, to borrow the Final DIP Loans;

(iv)    the granting as adequate protection of the liens and security interests in favor of APE V Cypress, LLC, a Delaware limited liability company, in its capacity as agent (the "Prepetition First Lien Agent"), on behalf of and for the benefit of itself and the Prepetition First Lien Lenders (as defined below and together with the Prepetition First Lien Agent, the "Prepetition First Lien Secured Parties") under the Prepetition First Lien Security Documents (as defined below), which Prepetition First Lien Collateral (as defined below) is being consensually primed by the liens securing the repayment of the DIP Facility, in accordance with this Interim Order;

(v)    authorization for the Debtors' use of cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, including, without limitation, any accounts receivable and general intangible and any other cash or right that would be included in such definition of "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code) constituting Prepetition First Lien Collateral (including, without limitation, all cash and cash equivalents and other amounts from time to time on deposit or maintained by the Prepetition First Lien

3

Borrowers (as defined below) in any deposit or securities account or accounts as of the Petition Date), and any cash or cash equivalents received by the Debtors after the Petition Date as proceeds of the Prepetition First Lien Collateral or the DIP Collateral (as defined below) (together, the "Cash Collateral") on the terms and conditions set forth in this Interim Order and in the DIP Credit Agreement and in accordance with the Approved DIP Budget[4] (as defined in the DIP Credit Agreement) (including the Permitted Variance (as defined herein)), and the granting of adequate protection to the Prepetition First Lien Secured Parties with respect to such use of their interest in Cash Collateral;

(vi)   approval of certain stipulations by the Debtors as set forth in this Interim Order and the DIP Credit Agreement with respect to the Prepetition First Lien Claim Documents and the Prepetition First Lien Facility (each as defined below) and the liens and security interests arising therefrom;

(vii)   authorization for the Debtors to grant security interests, liens, and superpriority claims (including superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Agent for the benefit of each of the DIP Lenders (together with the DIP Agent, and any other holder of DIP Obligations (as defined below), collectively, the "DIP Secured Parties") in each case payable from, and having recourse to, all prepetition property, including, but not limited to, all Prepetition First Lien Collateral, and postpetition property of the Debtors' estates and all proceeds thereof (but excluding, for the avoidance of doubt, Avoidance Actions (as defined below), but not (subject to entry of a Final Order) the Avoidance Proceeds (as defined below)); *except*, that the DIP Liens

---

[4]   A copy of the Approved DIP Budget is annexed hereto as **Exhibit 2.**

(as defined below) shall be subject and subordinate in all respects only to the Carve-Out (as defined below) and the Non-Primed Excepted Liens (as defined in the DIP Credit Agreement);

(viii) authorization for the DIP Agent, at the direction of the DIP Lenders, to (1) terminate the DIP Credit Agreement in accordance with its terms; (2) declare the DIP Facility to be immediately due and payable in full, to the extent permitted by the terms thereof; (3) be granted relief from the automatic stay to foreclose on the DIP Liens; and (4) for the benefit of the DIP Secured Parties, subject to the Carve-Out, to freeze, take possession of, set off against, and otherwise exercise any remedy available to a secured party at law or in equity with respect to all DIP Collateral (as defined below and including Cash Collateral) until the DIP Obligations and the obligations and the rights granted in this Interim Order, have been indefeasibly paid in full in cash, each upon the occurrence of an Event of Default (as such term is defined in the DIP Credit Agreement);

(ix)   subject only to, and effective upon, entry of a Final Order, modification of the Debtors' right to assert claims to surcharge against the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code to the extent set forth in paragraph 7 hereof;

(x)   modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the DIP Secured Parties to implement and effectuate the terms and provisions of the DIP Facility Documents and this Interim Order, as applicable;

(xi)   the scheduling of a final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order," and collectively with this Interim Order, the "DIP Orders") substantially in the form of this Interim Order, granting the relief requested in the Motion on a final basis, authorizing the balance of the borrowings under the DIP Facility Documents on a

5

final basis as set forth in the Motion and the DIP Facility Documents, and approving the Debtors' notice procedures with respect thereto; and

(xii)   waiver of any applicable stay (including under Rule 6004 of the Bankruptcy Rules) and the provision of immediate effectiveness of this Interim Order.

The Court having considered the relief requested in the Motion, the exhibits attached thereto, the *Declaration of Sanjiv Shah in Support of the Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Postpetition Financing, and (B) Utilize Cash Collateral of the Prepetition First Lien Secured Parties, (II) Granting Adequate Protection to the Prepetition First Lien Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, the *Declaration of Peter C. Boylan III in Support of Chapter 11 Petitions and First Day Motions*, the DIP Credit Agreement, and the evidence submitted and arguments made at the interim hearing ~~held~~commenced on May 9, 2022 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and the Debtors, the DIP Agent and the Prepetition First Lien Agent having agreed to modify the relief requested in the Motion, as reflected in this Interim Order, based on concerns expressed by the Court at the Interim Hearing; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors'

6

property; and it appearing that the Debtors' entry into the DIP Credit Agreement and other DIP Facility Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[45]

A.    ***Background.***  On May 8, 2022 (the "Petition Date"), the Borrower and each of the other Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court of the Southern District of Texas, Houston Division (the "Court"), commencing the above referenced chapter 11 cases (collectively, the "Chapter 11 Cases").  The Debtors have continued to operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.  The Chapter 11 Cases are being jointly administered for procedural purposes only.  As of the date of the Interim Hearing, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") had not appointed an official committee of unsecured creditors in the Chapter 11 Cases.  If the U.S. Trustee appoints an official committee of unsecured creditors in the Chapter 11 Cases in the future, such official committee of unsecured creditors shall be defined as the "Committee" hereunder.

B.    ***Prepetition First Lien Secured Parties Consent.***  Subject to the terms of this Interim Order, the Prepetition First Lien Secured Parties have agreed (i) to permit the Debtors to use the Cash Collateral and (ii) not to object to the DIP Facility, including the DIP Liens contemplated in connection therewith, pursuant to the DIP Credit Agreement.

---

[45]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     ***Jurisdiction*.**  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334.  Venue of the Chapter 11 Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001, and 9014.

D.     ***Notice*.**  Notice of the Motion and the Interim Hearing constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and (c), and 9014, the Bankruptcy Local Rules and the Complex Case Procedures, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

E.     ***Debtors' Stipulations*.**  Without prejudice to the rights of the Committee or any other party in interest (but which rights are subject to the limitations thereon contained in paragraphs 16 and 17 hereof), the Debtors admit, stipulate, and agree that:

(i)     Pursuant to that certain *Amended and Restated Credit Agreement*, dated as of May 29, 2018, as last amended by Second Amendment dated as of August 13, 2021 (as amended, the "Prepetition First Lien Credit Agreement"), among Cypress Environmental Partners, L.P, Tulsa Inspection Resources—Canada ULC (together with the Borrower's Agent and each Additional Borrower (each as defined in the Prepetition First Lien Credit Agreement), collectively, the "Prepetition First Lien Borrowers"), the Prepetition First Lien Agent, and the several banks and other financial institutions or entities from time to time party to the Prepetition First Lien Credit Agreement as lenders (the "Prepetition First Lien Lenders"), the Prepetition First Lien Agent and the Prepetition First Lien Lenders agreed to extend a credit facility to the

Prepetition First Lien Borrowers in an aggregate principal amount of up to $75,000,000 (the "Prepetition First Lien Facility").

(ii)    Pursuant to (a) that certain *Security Agreement*, dated as of May 29, 2018 (the "Prepetition First Lien Security Agreement"), by and among the Prepetition First Lien Borrowers and the Prepetition First Lien Agent, and (b) and that certain *General Security Agreement* dated as of December 24, 2013 (the "Prepetition First Lien Canadian Security Agreement", and, together with the Prepetition First Lien Security Agreement, the "Prepetition First Lien Security Agreements") executed by Tulsa Inspection Resources – Canada ULC, Tulsa Inspection Resources – Acquisition ULC, and Foley Inspection Services ULC in favor of the Prepetition First Lien Agent for the benefit of the Prepetition First Lien Secured Parties, (c) each Mortgage and Security Agreement (as defined in the Prepetition First Lien Credit Agreement) executed in connection with the Prepetition First Lien Credit Agreement, (d) all other security agreements, control agreements, or other instruments, agreements, or documents delivered by any Borrower to create or grant to the Prepetition First Lien Secured Parties any lien on any property as security for the Obligations (as defined in the Prepetition First Lien Credit Agreement) or to perfect, assure, or preserve any lien or any rights or remedies created thereby, including any other Security Documents (as defined in the Prepetition First Lien Credit Agreement) (clauses (a), (b), (c) and (d), together, the "Prepetition First Lien Security Documents," and together with the Prepetition First Lien Credit Agreement, the "Prepetition First Lien Claim Documents"), the Prepetition First Lien Borrowers granted to the Prepetition First Lien Secured Parties, to secure the Obligations, a lien on and first priority security interest in all right, title, and interest in all right, title, and interest in the all property and interests in property of the Prepetition First Lien Borrowers, then owned or thereafter acquired, pursuant to the Prepetition First Lien Security

9

Documents, including all proceeds and products of any and all of the foregoing, in each case whether then existing or thereafter acquired, in each case to the extent provided for in the Prepetition First Lien Security Documents (collectively, the "<u>Prepetition First Lien Collateral</u>").

(iii)     As of the Petition Date, the aggregate amount of the Obligations (as defined in the Prepetition First Lien Security Documents) due and payable by the Prepetition First Lien Borrowers to the Prepetition First Lien Secured Parties under the Prepetition First Lien Credit Agreement, equaled approximately $58,853,976, inclusive of outstanding principal and accrued and unpaid interest as of the Petition Date (collectively, the "<u>Prepetition First Lien Secured Claim</u>").

(iv)     The Prepetition First Lien Secured Claim constitutes the legal, valid, and binding obligations of the Prepetition First Lien Borrowers, enforceable against them in accordance with the terms of the Prepetition First Lien Claim Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

(v)     No portion of the Prepetition First Lien Facility, the Prepetition First Lien Secured Claim, or any payment on account thereof is subject to avoidance, recharacterization, recovery, reduction, subordination, disallowance, impairment, or any other challenges pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and the Debtors do not have, hereby forever release, and are forever barred from bringing any "claims" (as such term is defined in the Bankruptcy Code), counterclaims, cross claims, causes of action, defenses, recoupment, or setoff rights, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition First Lien Secured Parties, solely in their capacities as the Prepetition First Lien Secured Parties, respectively, and not in any other capacity or in respect to any other relationship the Prepetition First Lien Secured Parties may have, or have had, with or in respect to the Debtors, whether

arising at law or in equity, including, without limitation, any recharacterization, subordination, avoidance, or other claim arising under the Bankruptcy Code or otherwise.

      (vi)    The liens and security interests granted to, or for the benefit of, the Prepetition First Lien Secured Parties, including with respect to the Cash Collateral, pursuant to the Prepetition First Lien Security Documents and in connection with the Prepetition First Lien Secured Claim constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and perfected first priority liens (subject to Non-Primed Excepted Liens, as defined in the DIP Credit Agreement) on and security interests in the Prepetition First Lien Collateral and are not subject to defense, counterclaim, avoidance, recharacterization, recovery, disallowance, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law or regulation by any person or entity, except insofar as such liens and security interests are subject and subordinate to the DIP Liens, any Non-Primed Excepted Liens, and the Carve-Out hereunder.

      F.    ***Findings Regarding the DIP Facility and Use of Cash Collateral.***

      (i)    ~~(xiii)~~ Good cause has been shown for the entry of this Interim Order, including immediate and irreparable harm to the Debtors' estates, if relief is not immediately granted.

      (ii)    ~~(xiv)~~ The Debtors need to obtain immediate access to the postpetition financing under the DIP Facility and to use Cash Collateral to, among other things, permit the orderly continuation of the operation of their businesses, maintain business relationships with vendors and suppliers, make capital expenditures, satisfy other working capital and operational needs, and fund the administration and prosecution of the Chapter 11 Cases. The immediate access of the Debtors to sufficient working capital and liquidity through the use of Cash

Collateral, incurrence of postpetition financing under the DIP Facility, and other financial accommodations is vital to the preservation and maintenance of the going concern value of the Debtors' estates and to a successful reorganization of the Debtors.

(iii) (xv) The Debtors are unable to obtain sufficient financing on more favorable terms from sources other than the DIP Lenders under the DIP Facility Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Agent and the DIP Secured Parties, subject and subordinate to the Carve-Out and any Non-Primed Excepted Liens as provided for herein, the DIP Liens and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Interim Order and in the DIP Facility Documents. The only available and sufficient source of secured credit available to the Debtors, other than the use of Cash Collateral, is the DIP Facility. The Debtors require both financing under the DIP Facility and the continued use of Cash Collateral under the terms of this Interim Order to satisfy their postpetition liquidity needs.

(iv) (xvi) The DIP Agent and the DIP Lenders are willing to provide the DIP Facility, and the Prepetition First Lien Secured Parties are willing to consent to the Debtors' use of their Cash Collateral, in each case subject to the terms and conditions set forth in the DIP Facility Documents and the provisions of this Interim Order, as applicable, including satisfaction of the DIP Milestones (as defined in the DIP Credit Agreement); *provided* that the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations (as defined below), and other protections granted by this Interim Order and the DIP Facility Documents will not be affected by any subsequent reversal or modification of this Interim Order, as provided in section 364(e) of

the Bankruptcy Code, which is applicable to the DIP Facility and the use of Cash Collateral approved by this Interim Order.  The DIP Agent and the DIP Lenders have acted in good faith in agreeing to provide the DIP Facility approved by this Interim Order, as further evidenced by the DIP Facility Documents, and the Prepetition First Lien Secured Parties have acted in good faith in consenting to the Debtors' use of their Cash Collateral pursuant to the terms of this Interim Order, and their reliance on the assurances referred to above is in good faith.

(v)    (xvii) The DIP Facility Documents and the DIP Facility provided for thereunder, and the Debtors' use of Cash Collateral, each as authorized hereunder, have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, and the Prepetition First Lien Secured Parties, respectively, and the terms of the DIP Facility and the use of Cash Collateral, respectively, are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  All of the obligations and the rights granted in this Interim Order, including without limitation, all loans and other financial accommodations made to, or guaranties issued by, the Debtors pursuant to the DIP Facility Documents (all of the foregoing collectively, the "DIP Obligations"), and the Adequate Protection Obligations, are being extended or received, as applicable, by the DIP Secured Parties and the Prepetition First Lien Secured Parties (and the successors and assigns of each of the foregoing) in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(vi)   ~~(xviii)~~ The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(1) and 4001(c)(1).  The authorization granted herein on an interim basis to use Cash Collateral, to enter into the DIP Facility Documents, and to borrow an aggregate initial amount of $3 million of Interim DIP Loans is necessary to preserve the going concern value of the Debtors and their estates.  Absent granting the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Facility and the use of Cash Collateral in accordance with this Interim Order and the DIP Facility Documents, as applicable, are therefore in the best interests of the Debtors and their estates and creditors.

NOW, THEREFORE, based on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.     ***Approval of Motion.***  The Motion is granted on an interim basis in accordance with the terms of this Interim Order.  Any objections to the relief granted in this Interim Order that have not been withdrawn, waived, or settled are hereby denied and overruled.

2.     ***Authorization of the DIP Facility and the DIP Facility Documents.***

(i)     Each of the Debtors is hereby authorized to execute, issue, deliver, enter into, and adopt, as the case may be, the DIP Facility Documents, including the DIP Credit Agreement, and the other DIP Facility Documents are hereby approved.

(ii)    The Borrower is hereby authorized to borrow up to the principal amount of the Interim DIP Loan on an interim basis, and the Guarantors are hereby authorized to guarantee such borrowings, prior to the entry by the Court of the Final Order, on the terms and subject to

the conditions set forth in this Interim Order and the DIP Facility Documents (including compliance with the DIP Milestones), which borrowings may be used for all purposes permitted under the DIP Facility Documents, pursuant to the Approved DIP Budget, including, without limitation: (1) to provide agreed working capital for the Debtors; (2) to pay Adequate Protection Obligations to the Prepetition First Lien Secured Parties, (3) to pay Lender Professional Fees to the Prepetition First Lien Secured Parties and the DIP Secured Parties, as applicable, (4) to pay, subject to the Approved DIP Budget (including the Permitted Variance (as defined below)), administrative expenses, (5) to pay allowed fees and expenses of Professionals (defined below),[56] (6) to pay any other fees and expenses required under the DIP Facility Documents and the Chapter 11 Cases, and (7) to pay such other expenses to which the DIP Lenders may consent in their sole discretion (subject to the limitations thereon contained in paragraph 17 hereof), which borrowings shall be comprised of an aggregate principal amount not to exceed $3 million, plus interest, fees, and other expenses and amounts provided for in the DIP Facility Documents.

(iii)    In furtherance of the foregoing and without further approval of this Court, each Debtor hereby is authorized and directed to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, pledges, and financing statements), and, without further application to the Court, to promptly pay all fees set forth in the DIP Facility Documents, that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility Documents, including, without limitation:

---

[56]    For the avoidance of doubt, the payment of allowed fees and expenses of Professionals shall not be subject to the Approved DIP Budget.

(a)      the execution, delivery, and performance of the DIP Facility Documents and any exhibits and schedules attached thereto, including, without limitation, the DIP Credit Agreement and all related documents contemplated thereby;

(b)      the execution, delivery, and performance of one or more amendments to, modifications of, or waivers relating to the DIP Facility Documents for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the DIP Facility among the DIP Lenders, in each case in such form as the Debtors and the DIP Secured Parties (or any portion thereof as provided in the DIP Facility Documents) may agree (it being understood that no further approval of the Court shall be required for non-material amendments to or waivers relating to the DIP Credit Agreement and, subject to and effective only upon entry of this Interim Order, any fees paid in connection therewith) or modifications of the Approved DIP Budget; and

(c)      the performance of all other acts required under or in connection with the DIP Facility Documents.

(iv)      (xix) Upon execution and delivery of the DIP Facility Documents, the DIP Facility Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Facility Documents and this Interim Order.  No obligation, payment, transfer, or grant of security interest under the DIP Facility Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment, or counterclaim.

3.      ***Superpriority Claims.***  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims against each of the Debtors (without the need to file any proof of claim or request for payment of administrative expense) with priority over any and all other administrative expenses, adequate protection claims, diminution claims (including all Adequate Protection Obligations) and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 503(b), 506(c) (with any claims arising only under section 506(c) subject to the entry of the Final Order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code (the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and postpetition property of the Debtors and their estates and all proceeds thereof (excluding all Avoidance Actions, but including, subject to entry of a Final Order, any Avoidance Action Proceeds); *provided*, *however*, that the Superpriority Claims shall be subject and subordinate only to the Carve-Out.

4.      ***Carve-Out.***

(i)      For purposes of this Interim Order, the "Carve-Out" shall mean the sum of:   (a) all fees required to be paid to the Clerk of the Court and all fees required to be paid to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the

17

statutory rate (without regard to the notice set forth in (d) below); (b) all reasonable fees and expenses up to $60,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (d) below); (c) solely to the extent allowed at any time, whether by interim order, final order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and a committee pursuant to sections 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professionals") at any time before the delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below); and (d) the Allowed Professional Fees of (x) the Debtor Professionals in an aggregate amount not to exceed that set forth in the Approved DIP Budget for the relevant period, (y) the Committee Professionals in an aggregate amount not to exceed $60,000 incurred beginning on the first day following delivery by the DIP Agent of a Carve-Out Trigger Notice plus (z) the amount of any Allowed Professional Fees arising from any restructuring, sale, completion, success, or other similar fees (a "Transaction Fee") of any investment banker or financial advisor of the Debtors, in each case to the extent allowed at any time, whether by interim order, procedural order, final order, or otherwise (the amounts set forth in this clause (d) being the "Post-Carve Out Trigger Notice Cap"); *provided that*, notwithstanding the foregoing, the "Carve-Out" shall not include (1) in the event that the Debtors' Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, any Transaction Fee that becomes earned and payable pursuant to the terms of such Debtor Professional's engagement agreement as a result of (A) the entry into a restructuring or sale transaction that would trigger a Transaction Fee during the pendency of such chapter 7 cases, and (B) the consummation of such a transaction during the pendency of such chapter 7

18

cases; or (2) any fees, costs, and expenses incurred by the Debtor Professionals in connection with investigating liens of the Prepetition First Lien Agent and the Prepetition First Lien Lenders and asserting any challenges to any stipulations of the Debtors in the DIP Orders within the Challenge Period (as defined below) and shall only include any fees, costs, and expenses incurred by the committee (if any) to investigate liens of the Prepetition First Lien Agent and the Prepetition First Lien Lenders and to assert any challenges to any stipulations of the Debtors in the DIP Orders within the Challenge Period up to an amount not to exceed $35,000.  For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the DIP Orders, the DIP Facility Documents, or the Prepetition First Lien Claim Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Obligations, all Superpriority Claims, all claims arising under the Prepetition First Lien Claim Documents, and all liens securing such claims thereunder, the adequate protection liens, all adequate protection superpriority claims, any and all other forms of adequate protection securing or on account of the claims arising under the Prepetition First Lien Claim Documents, and any claims against or other obligations of the Debtors, including any post-petition intercompany claims among the Debtors.

(ii)    For purposes of the foregoing, "Carve-Out Trigger Notice" means a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of an Event of Default under the DIP Order then in effect or the DIP Credit Agreement, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.  Notwithstanding the foregoing, so long as a Carve-Out Trigger Notice has not been delivered, the Debtors shall be permitted to pay and/or reimburse, as applicable, Allowed Professional Fees that are allowed by the Bankruptcy Court and payable under sections 328, 330,

and 331 of the Bankruptcy Code and compensation procedures approved by the Bankruptcy Court, and the payment and/or reimbursement of same shall not reduce the Carve-Out.

(iii)    None of the Carve-Out, the Post-Carve-Out Trigger Notice Cap, nor the Approved DIP Budget shall be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors and their estates.

5.    ***DIP Liens.***  As security for the DIP Obligations effective and perfected as of the Petition Date and without the necessity of the execution by the Debtors (or recordation or other filing) of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by any DIP Secured Party of, or over, any DIP Collateral, the following security interests and liens, hereby are granted by the Debtors to each of the DIP Secured Parties (all property of the Debtors identified in clauses (i), (ii), and (iii) below being collectively referred to as the "DIP Collateral"), subject and subordinate to the Carve-Out (all such liens on and security interests in the DIP Collateral granted to the DIP Secured Parties pursuant to this Interim Order, and the DIP Facility Documents, the "DIP Liens"):

(i)    ~~Prepetition~~ First Lien on Any Unencumbered Property.  Subject to the Carve-Out, pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all ~~pre-petition~~prepetition and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date or the date acquired (if acquired after the Petition Date) is not subject to valid, perfected, and non-avoidable liens, if any (collectively, "Unencumbered Property"), (a) including, without limitation, any unencumbered cash of the Debtors (wherever maintained) and any investment of such cash, inventory, accounts

receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, equity interests, and any claims and causes of action of the Debtors; (b) without limiting the generality of the foregoing, the corporate headquarters of CELP located at 5727 South Lewis Avenue, Suite 300, Tulsa, Oklahoma 74105, and any other real property owned or leased by the Debtors; and (c) subject to entry of the Final Order, any proceeds, or property recovered in connection with, any of the Debtors' causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550 or 553 or any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law (such claims or causes of action, the "Avoidance Actions") (but excluding, for the avoidance of doubt, the Avoidance Actions, and including, for the avoidance of doubt, subject to entry of a Final Order, any proceeds of the Avoidance Actions and any property recovered in connection therewith (the "Avoidance Action Proceeds")).

   (ii) <u>Liens Senior to Prepetition First Lien Secured Parties' Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority (subject and subordinate to the Carve-Out and any Non-Primed Excepted Liens, as defined in the DIP Credit Agreement) senior priming security interest in and lien upon all pre- and postpetition property of the Debtors (including, without limitation, Cash Collateral), whether now existing or hereafter acquired, of the same nature, scope, and type as the Prepetition First Lien Collateral.  Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition First Lien Secured Parties arising from current

and future liens of the Prepetition First Lien Secured Parties (including, without limitation, the Adequate Protection Liens granted hereunder).

(iii)     <u>Liens Junior to Certain Other Liens</u>.   Subject and subordinate to the Carve-Out, pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all pre- and postpetition property of the Debtors (other than the property described in clauses (i) or (ii) of this paragraph 5, as to which the liens and security interests in favor of the DIP Agent for the benefit of the DIP Secured Parties, will be as described in such clauses), whether now existing or hereafter acquired, that is (a) subject to valid, perfected, and unavoidable liens in existence immediately prior to the Petition Date or (b) subject to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Secured Parties, are and shall be junior to such valid, perfected, and unavoidable liens.

(iv)     <u>Liens Senior to Certain Other Liens</u>.   Subject only to the Carve-Out and any Non-Primed Excepted Liens, the DIP Liens shall not be subordinate to any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

6.     ***Protection of the DIP Secured Parties' Rights.***

(i)     So long as any DIP Obligations are outstanding or the DIP Lenders have any outstanding commitments under the DIP Credit Agreement, the Prepetition First Lien Secured Parties shall (a) have no right to and shall take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition First Lien Claim Documents or this Interim Order, or otherwise exercise or seek to exercise any enforcement rights or

remedies against any DIP Collateral without the prior written consent of the DIP Lenders, except as authorized by a further order of this Court entered after the date hereof and (b) be deemed to have consented to any release of DIP Collateral authorized under the DIP Facility Documents.

(ii) ~~The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary~~ Upon the occurrence and during the continuation of an Event of Default, the DIP Agent is hereby authorized to file a motion on shortened notice of no less than five (5) business days seeking relief from the automatic stay in order to permit the DIP Agent to exercise ~~(a) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under, and in accordance with, the DIP Facility Documents other than those rights and remedies against the DIP Collateral, as provided in the following clause (b); and (b) upon the occurrence and during the continuance of such an Event of Default and after the giving of five (5) Business Days' prior written notice (the "Default Notice Period") to the U.S. Trustee, the Debtors, and any Committee through their respective counsel, all rights and remedies against the DIP Collateral provided for in the DIP Facility Documents and this Interim Order.  In any hearing regarding any exercise of rights or remedies (which hearing must take place within the Default Notice Period), the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors, any Committee, and all other parties in interest shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders~~ any or all rights and remedies set forth in this Interim Order, ~~the Final Order, or the DIP Facility Documents, as applicable.  Notwithstanding anything to the contrary, the Court may make any finding it deems appropriate, including if an Event of Default occurred.~~ and the

23

DIP Documents, pursuant to and subject to the terms and provisions of this Interim DIP Order and the DIP Documents.

(iii)     Subject to the entry of a Final Order, in no event shall any of the DIP Secured Parties or the Prepetition First Lien Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to their respective liens and security interests upon and in the DIP Collateral or the Prepetition First Lien Collateral, as applicable.  Any DIP Secured Party's delay or failure to exercise rights and remedies under the DIP Facility Documents or this Interim Order shall not constitute a waiver of any DIP Secured Party's rights hereunder, thereunder, or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Credit Agreement.  Further, subject only to and effective upon entry of the Final Order, in no event shall the "equities of the case" exception of section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition First Lien Secured Parties.

(iv)     (iii)     No rights, protections, or remedies of the DIP Secured Parties granted by the provisions of this Interim Order or the DIP Facility Documents shall be limited, modified, or impaired in any way by (a) any actual or purported withdrawal of the consent of any party to the Debtors' use of Cash Collateral, (b) any actual or purported termination of the Debtors' authority to use Cash Collateral, or (c) the terms of any other order or stipulation related to the Debtors' use of Cash Collateral or any other matter, or the provision of adequate protection to any party.

7.     ***Limitation on Charging Expenses against Collateral.***  Subject only to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no claim may be asserted against any of the DIP Secured Parties, or the Prepetition First Lien Secured Parties,

each in its capacity as such, to (i) charge any expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, against the DIP Collateral or the Prepetition First Lien Collateral or (ii) recover such expenses from the DIP Collateral or the Prepetition First Lien Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, in each case without the prior written consent of the DIP Secured Parties and the Prepetition First Lien Secured Parties, and no such consent shall be implied from any other action, inaction, or acquiescence by any of the DIP Secured Parties or the Prepetition First Lien Secured Parties.

8. ***Use of Cash Collateral.*** The Debtors are hereby authorized, subject to the terms and conditions of the DIP Facility Documents and this Interim Order, to use Cash Collateral, including, without limitation, Cash Collateral on which the DIP Secured Parties and the Prepetition First Lien Secured Parties hold a lien to fund (a)(i) working capital, (ii) general corporate purposes, (iii) restructuring expenses, and (iv) any fees required under the DIP Credit Agreement or any other DIP Facility Document, in each case with respect to clauses (i) through (iv), pursuant to the Approved DIP Budget, subject to Permitted Variances, and (b) fees and expenses incurred by Professionals; *provided*, *however*, that no Cash Collateral shall be used in a manner that would violate paragraph 17 hereof. The Debtors' right to use any such Cash Collateral (other than with respect to the payment of fees and expenses of Professionals) shall be in accordance with the Approved DIP Budget, subject to Permitted Variances, and such right shall terminate automatically upon the earliest of (x) the Maturity Date and (y) five (5) Business Days' written notice provided by the DIP Agent to the U.S. Trustee, the Debtors, and the Committee through their respective counsel, or provided by the Debtors to the DIP Secured

Parties and the Prepetition First Lien Secured Parties, through each of their respective counsel, of the occurrence and continuance of any Event of Default under the DIP Facility Documents.

9.     ***Compliance with Approved DIP Budget.***  The Debtors' aggregate expenditures under the Approved DIP Budget will be tested on each weekly Test Date (as defined in the DIP Credit Agreement), on which date the Debtors shall deliver to the DIP Agent a weekly variance report (the "Variance Report").   The Variance Report shall measure performance, on a cumulative basis for (i) all disbursements made in the prior week against the amount budgeted therefor in the Approved DIP Budget and (ii) all disbursements made in the prior four weeks (or, if applicable, such shorter number of weeks elapsed since the delivery of the initial Approved DIP Budget) against the amount budgeted therefor in the Approved DIP Budget, and shall include calculations that demonstrate that the Debtors are in compliance with the Permitted Variance (as defined below).  The Debtors shall not be required to test receipts in the Variance Report.  On each Test Date, the Debtors shall demonstrate in each such Variance Report that, in the period covered by such Variance Report, the aggregate actual disbursements for the applicable time period, excluding any Professional Fees, shall not exceed the sum of the aggregate amount budgeted therefor in the Approved DIP Budget for the applicable time period set forth above by more than fifteen percent (15%) of the budgeted amount (the "Permitted Variance") on a cumulative basis for all disbursements made during the applicable time period. Certification of compliance shall be provided on such Test Date, concurrently with delivery of each Variance Report, and shall have been certified by the Debtors' chief financial officer as being true and correct in all material respects (except with respect to any forward-looking statements or information), and be in a form and substance reasonably satisfactory to the DIP Agent.

10.     Additionally, commencing on May 25, 2022 and continuing every second Wednesday thereafter, the Debtor Professionals shall provide to the Debtors and counsel to the DIP Agent a summary of fees and expenses accrued by such Debtor Professionals for the prior two calendar weeks (excluding fees and expenses accrued on or prior to the Petition Date) and for which such Debtor Professionals intend to submit applications for compensation and reimbursement.  By way of example, on May 25, 2022, the Debtor Professionals shall provide a summary of fees and expenses accrued from the Petition Date through May 22, 2022.  In the event the amount of accrued fees and expenses for such Debtor Professionals for any such period exceed the amount set forth in the Approved Budget for the applicable period (the "Bi-Weekly Estimate") plus a 10% variance, the DIP Agent shall meet and confer with the Debtors and such Debtor Professionals to discuss a good-faith modification to the Approved Budget and the Bi-Weekly Estimate regarding the fees and expenses of such Debtor Professionals.  For the avoidance of doubt, nothing in this paragraph shall serve as a cap or a limitation on the allowance, payment, or amount of the fees and expenses of any Debtor Professional or the Carve-Out.  To the extent the amount of the actual fees and expenses of the Debtor Professionals for any two-week period is less than the applicable Bi-Weekly Estimate, such excess amount may be rolled forward to increase the amount of the Bi-Weekly Estimate for any subsequent period.

11.     ***Optional and Mandatory Prepayments.***  The Borrower may voluntarily prepay the principal of the Loans, in whole or in part, in accordance with Section 2.09(b) of the DIP Credit Agreement.  Pursuant to the terms and conditions set forth in Section 2.09(a) of the DIP Credit Agreement, the Borrower shall make mandatory prepayments of the principal amount of the Loans.

12.      ***Adequate Protection.***   The Prepetition First Lien Secured Parties are entitled, pursuant to sections 361, 363(e), and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition First Lien Collateral, including Cash Collateral, for and to the extent of any diminution in the value of the Prepetition First Lien Secured Parties' interests in the Prepetition First Lien Collateral during the Chapter 11 Cases, including, without limitation, any such diminution during the Chapter 11 Cases resulting from the sale, lease, or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition First Lien Collateral, the priming of the Prepetition First Lien Secured Parties' valid, unavoidable, and perfected security interests and liens in the Prepetition First Lien Collateral by the DIP Secured Parties pursuant to the DIP Facility Documents, this Interim Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (any such diminution in value, "Diminution in Value").   As adequate protection, the Prepetition First Lien Secured Parties are hereby granted the following adequate protection solely to the extent of any Diminution in Value (collectively, the "Adequate Protection Obligations"):

(i)      Adequate Protection Liens.   Effective and perfected as of the Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, or other agreements, a valid, binding, continuing, enforceable, fully perfected replacement security interest in and lien upon all of the DIP Collateral to the extent of any Diminution in Value, Prepetition First Lien Collateral, which replacement security interests and liens in favor of the Prepetition First Lien Agent, are and shall be subject and subordinate only to the DIP Liens, the Carve-Out, and Non-Primed Excepted Liens (the "Adequate Protection Liens").

(ii)        Adequate Protection Superpriority Claims.  Allowed superpriority claims against each of the Debtors (the "Adequate Protection Superpriority Claims") with priority over any and all other administrative expenses, and other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 503(b), subject to entry of the Final Order 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (excluding all Avoidance Actions, but including, subject to entry of a Final Order, any Avoidance Action Proceeds); *provided*, *however*, that the Adequate Protection Superpriority Claims shall be subject and subordinate only to (a) the Superpriority Claims and (b) the Carve-Out.

(iii)     Prepetition First Lien Secured Party Fees and Expenses.  The Debtors shall pay, in accordance with paragraph 24 of this Interim Order: (a)(1) reasonable and documented accrued and unpaid fees and disbursements owing to the Prepetition First Lien Lenders under the Prepetition First Lien Claim Documents and incurred prior to the Petition Date, and (2) reasonable and documented accrued and unpaid fees and disbursements owing to the Prepetition First Lien Lenders under the Prepetition First Lien Claim Documents and incurred following the Petition Date but prior to the Closing Date (as defined in the DIP Credit Agreement) (the "Pre-Closing Prepetition First Lien Lender Fees"); and (b) reasonable and documented accrued

~~and unpaid fees and disbursements owing to the Prepetition First Lien Agent under the Prepetition First Lien Claim Documents and incurred prior to the Closing Date, including reasonable and documented fees and out-of-pocket disbursements of (1) Fredric Dorwart PLLC and (2) such other consultants as may be retained or may have been retained from time to time by the Prepetition First Lien Agent, in its sole discretion ((a) and (b) collectively, the "Prepetition First Lien Professional Fees").~~

~~(iv)    Payment of Interest.    Payments of interest payable under the Prepetition First Lien Credit Agreement, including (a) any prepetition interest and postpetition interest at the applicable non-default rate for interest accruing prior to the Scheduled Maturity Date (as defined in the DIP Credit Agreement) and (b) any interest at the applicable non-default rate for interest accruing after such Scheduled Maturity Date, shall be paid in kind monthly in arrears on the last day of each calendar month. The first such interest payment shall be made on May 31, 2022 and shall include all accrued interest to and including that date, including any unpaid prepetition interest.~~

(iii)    ~~(v)~~ Reporting.  The Prepetition First Lien Lenders shall be entitled to receive the financial and all other reporting, including the periodic provision of budgets and forecasts, provided to the DIP Secured Parties, as described in the DIP Facility Documents.

13.    ***Reservation of Rights of Prepetition First Lien Secured Parties.***  Under the circumstances, the Court finds that the adequate protection provided in this Interim Order is reasonable and sufficient to protect the interests of the Prepetition First Lien Secured Parties. However, the Prepetition First Lien Secured Parties may request further or different adequate protection, and the Debtors or any other party may contest any such request; *provided* that any such further or different adequate protection shall at all times be subordinate and junior to the

30

claims and liens of the DIP Secured Parties granted under this Interim Order, the DIP Facility Documents, and the Carve-Out.  Except as expressly provided herein, nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to the Prepetition First Lien Secured Parties or the DIP Secured Parties.

14.     ***Perfection of DIP Liens and Adequate Protection Liens.***

(i)     The DIP Secured Parties are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction, or take any other action, in each case, to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Secured Parties choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it under this Interim Order, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, as of the Petition Date.  The Prepetition First Lien Secured Parties, without any further consent of any party, are authorized to take, execute, deliver, and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Secured Parties to further validate, perfect, preserve, and enforce the DIP Liens, and for the Prepetition First Lien Secured Parties to further validate, perfect, preserve, and enforce the Adequate Protection Liens.  The Debtors shall execute and deliver to the DIP Secured Parties, and/or the Prepetition First Lien Secured Parties all such agreements, financing statements, instruments, and other documents as the DIP Secured Parties, and/or the Prepetition First Lien Secured Parties may reasonably request to more fully evidence, confirm, validate, perfect,

preserve, and enforce the DIP Liens and for the Prepetition First Lien Secured Parties to further validate, perfect, preserve, and enforce the Adequate Protection Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(ii)    A certified copy of this Interim Order may, in the discretion of the DIP Secured Parties, or the Prepetition First Lien Secured Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of the Interim Order for filing and recording.  For the avoidance of doubt, the automatic stay of section 362(a) of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to permit the DIP Secured Parties and the Prepetition First Lien Secured Parties to take all actions, as applicable, referenced in this subparagraph (ii) and in the immediately preceding subparagraph (i).

(iii)    Subject to and effective only upon entry of this Interim Order, any provision of any lease or other license, contract or other agreement that requires (a) the consent or approval of one or more landlords or other parties or (b) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting postpetition liens on (x) such leasehold interest or (y) the proceeds of any assignment and/or sale thereof by any Debtor in favor of any DIP Secured Party or the Prepetition First Lien Secured Parties in accordance with the terms of the DIP Facility Documents or this Interim Order.

15.    ***Preservation of Rights Granted Under the Interim Order.***

(i)    Except as expressly provided herein and subject to the Carve-Out and Non-Primed Excepted Liens, (a) no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Secured Parties or the Prepetition First Lien Secured Parties, respectively, shall be granted or allowed while any portion of the DIP Facility or the commitments thereunder or the DIP Obligations or the Adequate Protection Obligations remain outstanding, and (b) the DIP Liens and the Adequate Protection Liens shall not be (1) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (2) subordinate to or made *pari passu* with any other lien or security interest, whether under section 364 of the Bankruptcy Code or otherwise.

(ii)    Each Guarantor's guarantee of each Borrower's obligations in connection with the DIP Facility (the "DIP Guarantees"), and any liens granted thereunder by each Guarantor to secure the obligations and liabilities arising pursuant to the DIP Guarantees, shall not constitute a fraudulent conveyance or fraudulent transfer under section 548 of the Bankruptcy Code or a fraudulent conveyance or fraudulent transfer under the provisions of any applicable fraudulent conveyance or fraudulent transfer law or similar law of any state, nation, or other governmental unit, as in effect from time to time.

(iii)    Unless all DIP Obligations shall have been indefeasibly paid in full in cash in accordance with the DIP Credit Agreement and the Adequate Protection Obligations shall have been paid in full, no Debtor shall assert, file or seek, or consent to the filing or the assertion of or joinder in, and it shall constitute an Event of Default under the DIP Credit Agreement and terminate the right of the Debtors to use any and all Cash Collateral if any of the Debtors asserts,

files or seeks, or consents to the filing or the assertion of or joinder in, or if there is entered, without the prior written consent of each of the DIP Secured Parties and the Prepetition First Lien Secured Parties, (a) any reversal, modification, amendment, stay, or vacatur of this Interim Order; (b) an order dismissing any of the Chapter 11 Cases under sections 105, 305, or 1112 of the Bankruptcy Code or otherwise; (c) an order converting any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; (d) an order appointing a chapter 11 trustee in any of the Chapter 11 Cases; (e) an order appointing an examiner with enlarged powers beyond those set forth in sections 1104(d) and 1106(a)(3) and (4) of the Bankruptcy Code in any of the Chapter 11 Cases; or (f) an order granting a change of venue with respect to any Case.  If a Debtor-initiated motion or order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims, Adequate Protection Superpriority Claims, and other administrative claims granted under this Interim Order, the DIP Liens, and the Adequate Protection Liens granted to the DIP Secured Parties and, as applicable, the Prepetition First Lien Secured Parties, pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all of the DIP Obligations and the Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, Adequate Protection Superpriority Claims, the other administrative claims granted under this Interim Order, the DIP Liens, and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) the Court shall retain jurisdiction notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(iv)      If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur shall not affect (a) the validity, priority, or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent, the DIP Lenders or the Prepetition First Lien Secured Parties, as applicable, of the effective date of such reversal, stay, modification, or vacatur or (b) the validity, the priority, or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Agreement with respect to any DIP Obligations or Adequate Protection Obligations.   Notwithstanding any such reversal, stay, modification, or vacatur, any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Debtors to any of the DIP Secured Parties and/or the Prepetition First Lien Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Secured Parties and/or the Prepetition First Lien Secured Parties, as the case may be, of the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition First Lien Secured Parties shall be entitled to all of the rights, remedies, privileges, and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order, and pursuant to the DIP Facility Documents with respect to all such uses of Cash Collateral and proceeds of the DIP Facility, all DIP Obligations and all Adequate Protection Obligations.

(v)      Except as expressly provided in this Interim Order or in the DIP Facility Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Obligations, and all other rights and remedies of the DIP Secured Parties and the Prepetition First Lien Secured Parties granted by the provisions of this Interim Order and the DIP Facility Documents shall survive, and shall not be modified, impaired, or discharged by

(a) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Cases, or by any other act or omission, (b) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Facility Documents), or (c) except as may otherwise be provided in a plan of reorganization with respect to any allowed claims for diminution, the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases, and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations and Adequate Protection Obligations.  The terms and provisions of this Interim Order and the DIP Facility Documents shall continue in the Chapter 11 Cases, in any successor cases thereto (the "Successor Cases") if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the Superpriority Claims and all other administrative claims granted pursuant to this Interim Order, the Adequate Protection Obligations, and all other rights and remedies of the DIP Secured Parties and the Prepetition First Lien Secured Parties granted by the provisions of this Interim Order and the DIP Facility Documents shall continue in full force and effect until the DIP Obligations and the Adequate Protection Obligations are indefeasibly paid in full in cash.

16.    ***Effect of Stipulations on Third Parties.***    The stipulations and admissions contained in this Interim Order, including, without limitation, in paragraph E hereof, shall be binding in all circumstances upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors), the Debtors' estates, and, subject to the entry of a Final Order, all parties in interest, including, without limitation, any committee (including the Committee) or any other person or entity acting

36

on behalf of the Debtors, unless and solely to the extent that (i) a properly authorized adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 17) has been commenced by the Committee or any other party in interest with requisite standing other than the Debtors (or if the Cases are converted to cases under chapter 7 or a chapter 11 trustee is appointed prior to the expiration of the Challenge Period, the chapter 7 trustee in such successor case or chapter 11 trustee, as applicable) (a) challenging the validity, enforceability, priority, or extent of the Prepetition First Lien Secured Claim, the Prepetition First Lien Claim Documents, or the Prepetition First Lien Secured Parties' liens on the Prepetition First Lien Collateral or (b) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims, subordination, recharacterization, or any other claims, counterclaims, or causes of action, objections, contests, or defenses (collectively, "Claims and Defenses") against any of the Prepetition First Lien Secured Parties or any of their affiliates, representatives, attorneys, or advisors in connection with matters related to the Prepetition First Lien Secured Claim, the Prepetition First Lien Claim Documents, the Prepetition First Lien Collateral, or the Prepetition First Lien Secured Parties' liens on the Prepetition First Lien Collateral, as applicable (such adversary proceeding or Claims and Defenses, a "Challenge"), by the earlier of (1) in the case of the Committee, no later than the date that is sixty (60) days after the date that notice of the formation of a Committee appointed under section 1102 of the Bankruptcy Code in the Chapter 11 Cases is filed on the docket of such Chapter 11 Cases, (2) in the case of other parties in interest with requisite standing other than the Debtors or the Committee, no later than the date that is sixty (60) days after the date of entry of this Interim Order, and (3) in any case, no later than the date of commencement of the hearing on confirmation of the Debtors' chapter 11 plan (such time period established by the earlier of

clauses (1) through (3) above, or such later date as has been agreed to, in writing, by the Prepetition First Lien Secured Parties in their sole discretion, the "Challenge Period"); and (ii) there is a final order in favor of the plaintiff sustaining any such Challenge in any such properly authorized and timely filed adversary proceeding; *provided* that, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. Notwithstanding the foregoing, if a chapter 11 trustee is appointed or the Chapter 11 Cases are converted to chapter 7 prior to the expiration of the Challenge Period, the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the Challenge Period or the sixtieth (60th) day after the appointment of the chapter 11 trustee or the conversion of the Chapter 11 Cases to chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court for cause.  If no such properly authorized adversary proceeding or contested matter is timely filed, then (x) to the extent not theretofore indefeasibly repaid, the Prepetition First Lien Secured Claim and all related obligations of the Debtors shall constitute allowed claims not subject to counterclaim, setoff, recoupment, subordination, recharacterization, defense, or avoidance, for all purposes, in the Chapter 11 Cases and any subsequent chapter 7 cases, (y) the Prepetition First Lien Secured Parties' liens on the Prepetition First Lien Collateral shall be deemed to have been, as of the Petition Date, and to be legal, valid, binding, and perfected liens not subject to defense, counterclaim, recharacterization, subordination, or avoidance, and (z) the Prepetition First Lien Secured Claim, the Prepetition First Lien Claim Documents, and the liens of the Prepetition First Lien Secured Parties on the Prepetition First Lien Collateral shall not be subject to any other or further challenge by the Debtors, any committee, or any party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including,

without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors with respect thereto).  If any such properly authorized adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph E hereof shall nonetheless remain binding and preclusive (as provided in this paragraph) on any committee, whether official, *ad hoc*, or other (including the Committee), and any other person or entity, except to the extent that any such findings and admissions were expressly and successfully challenged in such properly authorized and timely filed adversary proceeding.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any committee (including the Committee), standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Prepetition First Lien Facility, the Prepetition First Lien Secured Claim, the Prepetition First Lien Claim Documents, or the Prepetition First Lien Secured Parties' liens on the Prepetition First Lien Collateral.  Except as expressly provided in this Interim Order, the rights and remedies of the Prepetition First Lien Secured Parties granted by the provisions of this Interim Order shall (x) survive and shall not be modified or affected by the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases or by any other act or omission, and (y) continue in the Chapter 11 Cases or in any successor cases in full force and effect.

17.     ***Limitation on Use of Financing Proceeds and Collateral.***  Notwithstanding anything to the contrary herein or in any other order by this Court, none of the proceeds of the Loans and none of the DIP Obligations, the Cash Collateral, the DIP Collateral, or the Carve-Out may be used for the following purposes, including any fees or expenses incurred by any

professional in connection therewith: (i) an assertion or joinder in (but excluding any investigation into) any claim, counter-claim, action, proceeding, application, motion, defense, or other contested matter seeking any order, judgment, determination or similar relief (a) challenging the legality, validity, priority, perfection, or enforceability of any amount due under the DIP Facility Documents, the Prepetition First Lien Facility, or the Prepetition First Lien Claim Documents or the liens, security interests, or claims granted under this Interim Order, the DIP Facility Documents, or the Prepetition First Lien Claim Documents; (b) invalidating, setting aside, recharacterizing, avoiding, or subordinating in whole or in part any amount due under the DIP Facility Documents, the Prepetition First Lien Facility, or the Prepetition First Lien Claim Documents or the liens, security interests, or claims granted under this Interim Order, the DIP Facility Documents, or the Prepetition First Lien Claim Documents; (c) challenging or objecting to payment of any amount due under the DIP Facility Documents, the Prepetition First Lien Facility, or the Prepetition First Lien Claim Documents pursuant to the chapter 11 plan of reorganization in any of the Chapter 11 Cases; (d) preventing, hindering, or delaying the assertion or enforcement by any of the DIP Secured Parties or the Prepetition First Lien Secured Parties of any of their respective liens, claims, rights, or security interests or realization upon the Prepetition First Lien Collateral, the DIP Collateral, the DIP Liens, the Secured Obligations, or the DIP Obligations; or (e) seeking to modify any of the rights granted to any of the DIP Secured Parties or the Prepetition First Lien Secured Parties hereunder or under the DIP Facility Documents or the Prepetition First Lien Claim Documents, in each of the foregoing cases without such parties' prior written consent; (ii) the commencement or prosecution of any action or proceeding of any claims, causes or action, or defenses against any of the DIP Secured Parties or the Prepetition First Lien Secured Parties or any of their respective officers, directors,

employees, agents, attorneys, affiliates, assigns, or successors, including, without limitation, any attempt to recover or avoid any claim or interest from any of the DIP Secured Parties or the Prepetition First Lien Secured Parties under Chapter 5 of the Bankruptcy Code; *provided, however*, that the Debtors may comply with discovery requests (and use such proceeds of the Loans, Cash Collateral, and Carve-Out in connection with such compliance to the extent permitted by the DIP Facility Documents and this Interim Order) in connection with any such action or proceeding in accordance with applicable law; or (iii) selling or otherwise disposing of any DIP Collateral, using or seeking to use any insurance proceeds, or incurring any indebtedness not permitted under the DIP Facility Documents or without the DIP Agent's express prior written consent.  Notwithstanding the foregoing, funds advanced under the DIP Credit Facility or Cash Collateral may be used to pay the fees earned by and expenses incurred of counsel to any Committee in an amount not to exceed $35,000 to review the Prepetition First Lien Secured Claim, the Prepetition First Lien Claim Documents, and any lien or security interest granted thereby, and to investigate the foregoing matters described in the preceding sentence and assert any Challenges to one or more of the Debtors' stipulations or the releases set forth herein.

18.      ***Sales of Collateral***, ***Right to Credit Bid.***  Upon entry of this Interim Order, the DIP Lenders and the Prepetition First Lien Secured Parties, with respect to the Prepetition First Lien Secured Claim, respectively, shall have the right to credit bid up to the full amount of the DIP Obligations or the Prepetition First Lien Secured Claim (subject to any Challenge), as applicable, in connection with any sale of the DIP Collateral conducted (i) pursuant to a plan of reorganization subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code or (ii) pursuant to section 363 of the Bankruptcy Code.  No sale of any DIP Collateral shall constitute a waiver by any DIP Lender or the Prepetition First Lien Secured Parties of any

deficiency claim under any applicable law, regardless of whether the DIP Agent, any DIP Lender, or any Prepetition First Lien Secured Party consents to or opposes such sale and regardless of whether the DIP Obligations are credit bid in connection with such sale.  For the avoidance of doubt, as part of the Adequate Protection Obligations, the Prepetition First Lien Secured Parties shall be allowed to credit bid the full amount of the Prepetition First Lien Secured Claim (subject to any Challenge) with respect to any sale of the Prepetition First Lien Collateral not in the ordinary course of business pursuant to a plan of reorganization or section 363 of the Bankruptcy Code.

19.     **Insurance.**   APE V Cypress, LLC, as the DIP Agent for the benefit of the Prepetition First Lien Secured Parties, shall be deemed to be the loss payee or additional insured, as applicable, under the Debtors' applicable insurance policies, shall act in such capacities, and, subject to the terms of the DIP Facility Documents, distribute any proceeds recovered or received in respect of any such insurance policies, *first*, to the payment in full of the DIP Obligations, *second*, to the payment of the Adequate Protection Obligations, and, *third*, to the payment of the Prepetition First Lien Secured Claim.

20.     **Proofs of Claim.**   The Prepetition First Lien Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases in respect of any claims arising under or related to Prepetition First Lien Secured Claim or the Prepetition First Lien Claim Documents.   The Debtors' stipulations and admissions contained in this Interim Order shall be deemed to constitute a timely proof of claim for the Prepetition First Lien Secured Parties upon approval of this Interim Order, and the Prepetition First Lien Secured Parties shall be treated under section 502(a) of the Bankruptcy Code as if the Prepetition First Lien Secured Parties have filed a proof of claim and shall have an allowed claim (subject to any Challenge)

with respect to the Prepetition First Lien Secured Claim for the purposes of credit bidding. Nothing in this paragraph shall waive, alter, or modify the Prepetition First Lien Secured Parties' right to file, amend, and/or supplement, in its sole discretion, a proof of claim(s) in each of the Chapter 11 Cases or Successor Cases for any claim allowed herein.

21.    ***Modifications of DIP Facility Documents.***  Without further order of the Court, the Debtors and the DIP Secured Parties are hereby authorized to implement, in accordance with the terms of the respective DIP Facility Documents, any modifications to the Approved DIP Budget, any extension of the maturity subject to the conditions set forth in the DIP Facility Documents, non-material modifications of the DIP Facility Documents (that do not shorten the maturity of the extensions of credit thereunder, increase the commitments thereunder, or otherwise do not materially change the terms of the DIP Facility Documents in a manner adverse to the interests of the Debtors) or waivers with respect to the DIP Facility Documents; *provided*, *however*, any material modification or amendment to the respective DIP Facility Documents not expressly authorized hereby or pursuant to the DIP Facility Documents shall be subject to court approval after notice and a hearing.

22.    ***Order Governs.***  Until such time as an amended interim order or Final Order shall have been entered, the DIP Facility Documents and this Interim Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP Secured Parties; *provided* that in the event of any inconsistency between the provisions of the DIP Facility Documents and this Interim Order, the provisions of this Interim Order shall govern.

23.    ***Binding Effect; Successors and Assigns.***  Subject to a Final Order and the Challenge Period, the DIP Facility Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases,

including, without limitation, each of the DIP Secured Parties and the Prepetition First Lien Secured Parties, any committee (including the Committee) appointed in the Chapter 11 Cases, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties and the Prepetition First Lien Secured Parties, any committee (including the Committee) appointed in the Chapter 11 Cases, and the Debtors and their respective successors and assigns; *provided*, *however*, that none of the DIP Secured Parties shall have any obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan or other financial accommodation under the DIP Credit Agreement or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Facility Documents, none of the DIP Secured Parties, individually or collectively, shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq*., as amended, or any similar federal or state statute).

24.     ***DIP Fees and Expenses***.   The Debtors shall pay, without the need for the DIP Agent or the DIP Lenders to file retention motions or fee applications, in accordance with paragraph 26 of this Interim Order: (a) all reasonable and documented out-of-pocket fees, charges, and expenses incurred by the DIP Lenders on or after the Closing Date in connection herewith in an aggregate amount not to exceed (1) $150,000 *less* (2) the amount of the Pre-Closing Prepetition First Lien Lender Fees (such amount, the "DIP Lender Fee Cap") and subject to the Approved DIP Budget; and (b) all reasonable and documented out-of-pocket fees,

charges, and expenses incurred by the DIP Agent on or after the Closing Date in connection

herewith, including (1) the reasonable and documented out-of-pocket fees, charges, and expenses

of counsel and other outside consultants for the DIP Agent including (a) Frederic Dorwart PLLC

and (b) such other professionals or consultants (including legal counsel) as may be retained or

may have been retained from time to time by the DIP Agent, in its sole discretion, and (2) all

costs and expenses incurred by the DIP Agent in connection with any filing, registration,

recording, or perfection of any security interest contemplated or permitted by the DIP Credit

Agreement or any other DIP Facility Document (collectively, the "DIP Professional Fees").

25.     ***Professional Fee Procedural Requirements.***   A copy of each invoice for DIP

Professional Fees shall be submitted to the Debtors (to the extent incurred by such professionals

on or after the Closing Date), the U.S. Trustee, and counsel for the Committee (if any), the

payment of which is authorized by paragraph 24 this Interim Order.  The invoices for such DIP

Professional Fees shall include the number of hours billed and a reasonably detailed description

of the services provided and the expenses incurred by the applicable professional; *provided*,

*however*, that any such invoice (i) may be redacted to protect privileged, confidential, or

proprietary information and (ii) shall not be required to contain individual time detail.  None of

the DIP Professional Fees shall be required to be maintained in accordance with the U.S. Trustee

Guidelines and no recipient of any payment on account thereof shall be required to file with

respect thereto any interim or final fee application with the Court.  Any objections raised by the

Debtors, the U.S. Trustee, or any official committee with respect to the DIP Professional Fees

must be raised within ten (10) Business Days after receipt of such invoices and shall be resolved

by the Court (absent prior consensual resolution by the parties).  Pending such resolution, and

subject to the DIP Lender Fee Cap and the Approved DIP Budget, as applicable, any undisputed

amounts of such invoices shall be promptly paid by the Debtors. ~~Pursuant to paragraph 12(iii) of this Interim Order, effective upon entry of this Interim Order, upon submission of each invoice for Prepetition First Lien Professional Fees, the Debtors shall pay such Prepetition First Lien Professional Fees (to the extent unpaid as of the Closing Date).~~

26.     The Debtors are authorized and empowered to jointly and severally indemnify and hold harmless the DIP Agent (solely in its capacity as an administrative agent), each DIP Lender (solely in its capacity as a DIP Lender), and each other Indemnitee (as defined in the DIP Credit Agreement) to the fullest extent provided in the DIP Credit Agreement.

27.     ***Effectiveness.***  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable effective as of the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

28.     ***Retention of Jurisdiction.***  The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

29.     ***Final Hearing.***  The Final Hearing on the Motion shall be held on ~~_____~~, May 31, 2022, at ~~__:__~~ 9:30 a.m., prevailing Central Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on ~~_____~~, May 27, 2022, and shall be served on: (i) the Debtors at 5727 South Lewis Avenue, Suite 300, Tulsa, Oklahoma 74105, Attn:  Richard Carson; (ii) proposed counsel to the Debtors, Paul Hastings LLP, (a) 1999 Avenue of the Stars, 27th Floor, Century City, California 90067, Attn: Justin Rawlins; (b) 600 Travis Street, 58th Floor, Houston, Texas 77002,

Attn:   James Grogan; (c) 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Micheli, Matthew Smart, and Michael Jones; (iii) counsel to the DIP Agent, Fredric Dorwart PLLC, 124 East Fourth Street, Tulsa, Oklahoma, 74103, Attn: Samuel S. Ory and Ari Rotenberg; (iv) counsel to any statutory committee appointed in these cases; and (v) the Office of The United States Trustee, 515 Rusk St., Ste. 3516, Houston, Texas 77002, Attn:   Stephen D. Statham, Esq.   In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

Dated:  May _____, 2022
          Houston, Texas


_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

47