**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) | Case No. 22-90039 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER**
**AUTHORIZING THE RETENTION AND EMPLOYMENT**
**OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR TO THE**
**DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE AS OF MAY 8, 2022**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this application was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this application was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this application (this "Application"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632). The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 300, Tulsa, Oklahoma 74105.

**RELIEF REQUESTED**

1.      By this Application, the Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the retention and employment of FTI Consulting, Inc. ("FTI") as their financial advisor, effective as of the date of commencement of these chapter 11 cases (the "Petition Date") and in accordance with the terms and conditions set forth in that certain engagement letter effective as of May 6, 2022 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit B** and incorporated herein by reference.[2]

2.      In support of this Application, the Debtors rely upon and incorporate by reference, the declaration of Larry Manning, Senior Managing Director of FTI, attached hereto as **Exhibit C** (the "Manning Declaration").

**JURISDICTION AND VENUE**

3.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

5.      The bases for the relief requested herein are sections 105(a), 327(a), 329, 330, 331, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014 and 2016

---

[2]      The summary of the Engagement Letter contained in this Application is provided for informational purposes only. In the event of any inconsistency between the summary contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter, as approved by the Court pursuant to the Order, shall control.  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Engagement Letter.

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1, 2016-1, and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").

## BACKGROUND

6.     On the Petition Date, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").  The Debtors' Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1 in accordance with the Court's *Order (I) Directing Joint Administration of Cases and (II) Granting Related Relief* [Docket No. 27].  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committee has been appointed or designated.

7.     The Debtors provide inspection, water treatment, and other environmental services that help their customers protect people, property, infrastructure, and the environment with a focus on safety and sustainability.  The Debtors' primary business, inspection services, provides essential environmental services, including inspection and integrity services on a variety of infrastructure assets such as midstream pipelines, oil and gas well gathering systems, natural gas plants, storage facilities, pumping stations, compression stations, and natural gas distribution systems. The Debtors' primary business includes visual inspection, non-destructive testing and examination, and in-line inspection support services for pipeline and energy infrastructure owners and operators and natural gas public utilities that serve our communities.  Under the environmental services segment, the Debtors own and operate water treatment facilities in North Dakota where they specialize in

the treatment, recovery, separation, and disposal of waste byproducts generated by their customers during the lifecycle of an oil or natural gas well.  The Debtors provide quality services in a safe, professional, ethical, and cost-effective manner adding value to their clients throughout the life of their assets.

8.      Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, are set forth in detail in the *Declaration of Peter C. Boylan III, Chairman & Chief Executive Officer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 12].

## FTI'S QUALIFICATIONS

9.      FTI is an internationally recognized restructuring and turnaround firm with more than 6,950 employees located in thirty countries on six continents.  FTI has a wealth of experience in providing financial advisory services in restructurings and enjoys an excellent reputation for the services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

10.      The Debtors originally engaged FTI in September 2021 to assist the Debtors with a number of activities, including engaging with the Debtors' former prepetition lenders, preparing weekly cash flow forecasts, and preparing a three-year business plan.  Through the end of 2021 and into 2022, FTI continued to assist the Debtors.  During this time, FTI's engagement evolved to also include the exploration and analysis of various strategic alternatives.

11.      Throughout the course of FTI's prepetition engagement, FTI's professionals have worked closely with the Debtors' management and other advisors to assist with various matters, including, assisting in the development of strategies to address the Company's existing obligations,

assisting in the development of a plan of reorganization and disclosure statement, rendering general financial advice, assisting with evaluating the Debtors' cash flows under a variety of scenarios, assisting with developing accounting and operating procedures to segregate prepetition and postpetition business transactions, and supporting the preparation and implantation of first-day motions. As a result, FTI has developed deep institutional knowledge regarding the Debtors' operations, financial affairs, and systems. Such experience and knowledge will be invaluable to the Debtors in connection with the administration of these Chapter 11 Cases.

12.      The Debtors believe that FTI's services are necessary to enable the Debtors to administer their estates for the benefit of all stakeholders and to assist the Debtors in their efforts to pursue and effectuate a value-maximizing restructuring. Given FTI's knowledge of the Debtors and extensive restructuring experience, FTI is well qualified and able to represent the Debtors in a cost-effective, efficient, and timely manner. Moreover, FTI will endeavor to coordinate with the other professionals retained in these Chapter 11 Cases to eliminate unnecessary duplication or overlap of work.

## SERVICES TO BE PROVIDED

13.      Consistent with the terms of the Engagement Letter, FTI will, among other things, provide the following services to the Debtors:

   a.      Assisting in the development of a plan of reorganization and disclosure statement;

   b.      Assisting with bankruptcy reporting requirements (e.g., Monthly Operating Reports);

   c.      Assisting with evaluating the Debtors' cash flows under a variety of scenarios;

   d.      Rendering general financial advice, financial analytics and modeling as directed by the Debtors' management;

5

e.      Assisting in determining potential creditor recoveries under alternative scenarios;

f.      Assisting in analyzing and developing strategies to address the Debtors' existing obligations;

g.      Attending meetings, presentations and negotiations as may be requested by the Debtors;

h.      Assisting the Debtors in managing and responding to data requests from various constituents;

i.      Providing testimony, as needed and mutually agreed; and

j.      Providing other services as requested by the Debtors.

14.     The foregoing services are necessary to enable the Debtors to pursue and consummate the value-maximizing restructuring transaction contemplated in these Chapter 11 Cases.

## PROFESSIONAL COMPENSATION

15.     FTI is not owed any amounts with respect to its prepetition fees and expenses.  The Debtors understand that FTI intends to apply to the Court for allowance of compensation and reimbursement of expenses for financial advisory support services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, orders of the Court and guidelines established by the United States Trustee.  The customary hourly rates, subject to periodic adjustments, charged by FTI professionals anticipated to be assigned to this case are as follows:

| United States | Per Hour (USD) |
| --- | --- |
| Senior Managing Directors | $975 - $1,325 |
| Directors/Senior Directors/Managing Directors | $735 - $960 |
| Consultants/Senior Consultants | $395 - $695 |
| Administrative/Paraprofessionals | $160 - $300 |

16.     The compensation terms in the Engagement Letter are consistent with FTI's normal and customary compensation for comparable cases, both in- and out-of-court, involving the services to be provided.  The above hourly rates reflect FTI's adjusted rates, which became effective in January 2022 based on customary annual adjustments.  In addition, these terms are reasonable and within the range of fees typically charged by firms of similar caliber for comparable services.

17.     In addition to the fees outlined above, FTI will bill for reasonable direct expenses incurred on the Debtors' behalf during its engagement.  Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.

### FTI'S PREPETITION COMPENSATION

18.     Prior to the Petition Date, FTI received advance payments totaling $425,000 (the "Advance Payment Retainer").  FTI's fees and reimbursable expenses for the prepetition period totaled approximately $1,076,641.  The portion of the Advance Payment Retainer not applied to prepetition fees and disbursements is currently estimated to be approximately $253,000. To the extent there are any additional fees and expenses that were incurred prepetition but not yet applied against FTI's Advance Payment Retainer, FTI will apply such fees and expenses against FTI's Advance Payment Retainer and hold the remaining portion of the Advance Payment Retainer as security until FTI's final fees and expenses are awarded by the Court..

19.     Pursuant to Bankruptcy Rule 2016(b), FTI has neither shared nor agreed to share (a) any compensation it has received or may receive from the Debtors with another party or person,

other than with FTI's professionals or (b) any compensation another person or party has received or may receive from the Debtors.

## NO DUPLICATION OF SERVICES

20.     The Debtors believe that the services provided by FTI will not duplicate the services that other professionals will be providing to the Debtors in these Chapter 11 Cases.  Specifically, FTI will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and the other professionals retained in these Chapter 11 Cases to avoid the unnecessary duplication of services.

## INDEMNIFICATION PROVISIONS

21.     As part of this Application, the Debtors also request that the Court approve the indemnification provisions set out in the Engagement Letter (the "Indemnification Provisions"). The terms and conditions of the Engagement Letter, including the Indemnification Provisions set forth therein, were negotiated by the Debtors and FTI at arm's-length and in good faith.  The Indemnification Provisions contained in the Engagement Letter, viewed in conjunction with the other terms of FTI's proposed retention, and as modified by the Order requested herein, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require FTI's services for a successful result in these cases.  During the pendency of these Chapter 11 Cases, the Engagement Letter's indemnification provisions are subject to the following:

> a.     subject to the provisions of subparagraphs (b) and (c), *infra*, the Debtors are authorized to indemnify, and shall indemnify, FTI in accordance with the Engagement Letter for any claim arising from related to or in connection with the services provided for, whether pre-petition or post-petition, in the Engagement Letter;

> b.     the Debtors shall have no obligation to indemnify FTI for any claim or expense that is either (i) judicially determined (the determination having become final) to have resulted primarily from FTI's gross negligence,

8

willful misconduct, breach of fiduciary duty (if any), bad faith, or fraud unless the Court determines that indemnification would be permissible under applicable law or (ii) settled prior to a judicial determination as to FTI's gross negligence, willful misconduct, breach of fiduciary duty (if any), bad faith, or fraud, but determined by the Court, after notice and a hearing pursuant to subparagraph (c), *infra*, to be a claim or expense for which FTI should not receive indemnification, contribution, or reimbursement under the terms of the Engagement Letter; and

c.     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, FTI believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Letter, including without limitation the advancement of defense costs, FTI must file an application therefore in this Court, and the Debtors may not pay any such amounts to FTI before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for indemnification, contribution or reimbursement by FTI and not a provision limiting the duration of the Debtors' obligation to indemnify FTI.

## DISPUTE RESOLUTION PROVISIONS

22.     The Debtors and FTI have agreed, subject to the Court's approval of this Application, that: (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by FTI to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of FTI, shall be brought in this Court or the United States District Court for the Southern District of Texas (the "District Court"), if the reference is withdrawn; (b) FTI and the Debtors and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions or lawsuits; (c) FTI and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if this Court or the District Court, as applicable, does not have

or retain jurisdiction over the foregoing claims and controversies, FTI and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in **Schedule 1** to this Application; and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction. By this Application, the Debtors seek approval of this agreement by the Court. Further, FTI has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention, or otherwise to the jurisdiction and venue of this Court or the District Court to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

## BASIS FOR RELIEF

23.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Bankruptcy Rule 2014(a) requires that a retention application include:

> [S]pecific facts showing the necessity for the employment, the name of the [professional] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

The Debtors submit that for all the reasons stated herein and in the Manning Declaration, the retention and employment of FTI as the Debtors' financial advisor pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) is warranted.

**I.      FTI's Retention is Necessary and is in the Best Interests of the Debtors' Estates.**

24.      The Debtors submit, in light of FTI's restructuring experience and its institutional knowledge of the Debtors' operations, FTI's immediate retention as Debtors' financial advisor is both necessary and in the best interests of the Debtors' estates.  Indeed, if the Debtors are required to retain a different financial advisor to replace FTI, the Debtors will need to expend significant resources in locating, educating, and integrating a new financial advisor, which will distract time and resources from their reorganization efforts.   In this respect, retaining FTI will avoid unnecessary administrative expenses and delays, result in cost efficiencies, and will assist in facilitating the Debtors' reorganization efforts.

**II.     FTI Neither Holds nor Represents any Interest Adverse to the Debtors' Estates and is a "Disinterested Person" within the Meaning of Bankruptcy Code Section 101(14).**

25.      To the best of the Debtors' knowledge, information, and belief, FTI does not have any interest materially adverse to the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.   Further, the Debtors understand that FTI believes it is disinterested because, to the best of FTI's knowledge, information, and belief, FTI has no connection with the Debtors, their creditors, or any other party-in-interest, except as disclosed in the Manning Declaration.

26.      FTI will use reasonable efforts to see that no conflicts or other disqualifying circumstances exist or arise during the pendency of these Chapter 11 Cases.  If any new material facts or relationships are discovered or arise, FTI will use reasonable efforts to identify them and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## NOTICE

27.     Notice of this Application will be provided to:  (a) the Office of the United States Trustee for the Region 7; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Prepetition First Lien Lender and Prepetition First Lien Agent (each as defined in the DIP Motion);[3] (d) the DIP Lender and DIP Agent (each as defined in the DIP Motion); (e) the Office of the United States Attorney for the Southern District of Texas; (f) the state attorneys general for states in which the Debtors conduct business; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. In view of the nature of the relief requested, the Debtors respectfully submit that no other or further notice need be provided.

[*Remainder of Page Intentionally Left Blank*]

---

[3]     "DIP Motion" means the *Debtors' Emergency Motion for the Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Utilize Cash Collateral of the Prepetition First Lien Secured Parties, (II) Granting Adequate Protection to the Prepetition First Lien Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 13].

The Debtors respectfully request entry of the Order, granting the relief requested in this Application and such other and further relief as the Court deems appropriate under the circumstances.

Dated:  June 7, 2022
Houston, Texas

/s/  *Peter C. Boylan III*

Peter C. Boylan III
Chairman & Chief Executive Officer
Cypress Environmental Partners, L.P.

### **Certificate of Service**

      I certify that on June 7, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                  * /s/ James T. Grogan III*
                                                  James T. Grogan III

## Schedule 1

### Dispute Resolution Procedures

The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in the Application. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

**Mediation**

A dispute shall be submitted to mediation by written notice to the other party or parties.  In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations. The mediator will be selected by agreement of the parties.  If the parties cannot agree on a mediator, a mediator will be designated by the American Arbitration Association ("AAA") or JAMS/Endispute at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation will be conducted as specified by the mediator and agreed upon by the parties.  The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.

The mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

**Arbitration**

If a dispute has not been resolved within ninety (90) days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration and judgment on the award rendered by the arbitration may be entered in any Court having jurisdiction thereof. The arbitration will be conducted in accordance with the procedures in this document and the Arbitration Rules for Professional Accounting and Related Services Disputes of the AAA ("AAA Rules").

## Exhibit A

**Proposed Order**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | Case No. 22-90039 (MI) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket No. ___** |

## ORDER AUTHORIZING THE RETENTION AND
## EMPLOYMENT OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR
## TO THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE AS OF MAY 8, 2022

Upon the application (the "Application")[2] of the above-referenced debtors and debtors in

possession (collectively, the "Debtors") for the entry of an order (the "Order") authorizing the

Debtors to retain and employ FTI Consulting, Inc. ("FTI") as their financial advisor effective as

of May 8, 2022 (the "Petition Date"), all as more fully set forth in the Application; and upon the

Manning Declaration; and the Court having jurisdiction over the matters raised in the Application

pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant

to 28 U.S.C. § 157(b)(2); and that the Court may enter a final order consistent with Article III of

the United States Constitution; and the Court having found that venue of this proceeding and the

Application in this district is proper pursuant to 28 U.S.C. § 1408; and this Court having found

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632). The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 300, Tulsa, Oklahoma 74105.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Application.

that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1.     The Debtors are authorized to retain and employ FTI as their financial advisor as of the Petition Date in accordance with the terms and conditions set forth in the Engagement Letter attached to the Application as Exhibit B.

2.     FTI shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases in compliance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, applicable provisions of the Bankruptcy Local Rules, and any other applicable orders of the Court.

3.     FTI is entitled to reimbursement of actual and necessary expenses, including legal fees related to the Application.

4.     The indemnification provisions set forth in the Engagement Letter are subject, during the pendency of the Debtors' Chapter 11 Cases, to the following:

      a.     subject to the provisions of subparagraphs (b) and (c), *infra*, the Debtors are authorized to indemnify, and shall indemnify, FTI in accordance with the Engagement Letter for any claim arising from related to or in connection with the services provided for, whether pre-petition or post-petition, in the Engagement Letter;

2

b.  the Debtors shall have no obligation to indemnify FTI for any claim or expense that is either (i) judicially determined (the determination having become final) to have resulted primarily from FTI's gross negligence, willful misconduct, breach of fiduciary duty (if any), bad faith, or fraud unless the Court determines that indemnification would be permissible under applicable law or (ii) settled prior to a judicial determination as to FTI's gross negligence, willful misconduct, breach of fiduciary duty (if any), bad faith, or fraud, but determined by the Court, after notice and a hearing pursuant to subparagraph (c), infra, to be a claim or expense for which FTI should not receive indemnification, contribution, or reimbursement under the terms of the Engagement Letter; and

c.  if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, FTI believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Letter, including without limitation the advancement of defense costs, FTI must file an application therefore in this Court, and the Debtors may not pay any such amounts to FTI before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for indemnification, contribution or reimbursement by FTI and not a provision limiting the duration of the Debtors' obligation to indemnify FTI.

5.  FTI is authorized without further order of the Court to apply amounts from FTI's prepetition advance payment retainer as are necessary and appropriate to compensate and reimburse FTI for any outstanding fees or expenses incurred on or prior to the Petition Date, consistent with FTI's ordinary course billing practices. FTI shall hold any remaining amounts of its advance payment retainer and apply such amounts against fees and expenses awarded on a final basis by the Court.

6.  The Debtors and FTI are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

7.  Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Bankruptcy Local Rules are satisfied by the contents of the Application.

8.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.     The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2022
            Houston, Texas

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Engagement Letter**



PRIVATE & CONFIDENTIAL

May 6, 2022

Justin Rawlins
Partner
Paul Hastings, LLP
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067

Re: <u>Cypress Environmental</u>

Dear Mr. Rawlins:

**1.**     **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, Paul Hastings LLC (the "Firm") to provide certain financial advisory and consulting services (the "Services") as set forth below in relation to your representation of Cypress Environmental Partners, LP ("Cypress" or the "Company"). This letter of engagement and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

**2.**     **Scope of Services**

The Services, to be performed at your direction, are expected to include the following:

**Bankruptcy Services, as necessary and as requested by the Company**
- Assist in the development of a plan of reorganization and disclosure statement;
- Assist with bankruptcy reporting requirements (e.g., Monthly Operating Reports);
- Assist with evaluating the Company's cash flows under a variety of scenarios;
- Render general financial advice, financial analytics and modeling as directed by the Company Management;
- Assist in determining potential creditor recoveries under alternative scenarios;
- Assist in analyzing and developing strategies to address the Company's existing obligations;
- Attend meetings, presentations and negotiations as may be requested by the Company;
- Assist the Company in managing and responding to data requests from various constituents;
- Provide testimony, as needed and mutually agreed; and
- Provide other services as requested and mutually agreed.

The Services may be performed by FTI or by any wholly owned subsidiary of FTI, as FTI shall determine. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and their employees.

Paul Hastings, LLP
May 6, 2022

The Services, as outlined above, are subject to change as mutually agreed between us.

FTI is engaged by you to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you or the Company, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's unitholders or others.

As part of the Services, FTI may be requested to assist you or the Company (and its other legal or other advisors) in negotiating with the Company's creditors and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The services we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our engagement.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

**3.      Privileged and Confidential Work Product**

To the extent possible, written reports, memoranda or status summaries that we prepare under this Engagement Contract will be maintained in accordance with our retention procedures and shall be prominently labeled "Privileged and Confidential". Except as may be required by law, regulation or valid judicial or administrative process, we will not disclose to anyone, without your permission, the content of any oral or written confidential communication received during the course of the Engagement or any information gained from the inspection or review of any records or documents provided by you that are identified as confidential; provided that FTI may provide reports, memoranda, status summaries and all other deliverables prepared by or with the assistance or review of FTI under this Engagement Contract to the lender that is subject to the confidentiality provisions under the Credit Agreement (including, without limitation, Section 11.16 thereof).

Paul Hastings, LLP
May 6, 2022

**4.      Fees**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

**<u>United States</u>**

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $975 – 1,325 |
| Directors / Senior Directors / Managing Directors | 735 –   960 |
| Consultants/Senior Consultants | 395 –   695 |
| Administrative / Paraprofessionals | 160 –   300 |

Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, FTI will bill the Company for reasonable, direct expenses which are actually incurred. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as internet access, telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to this engagement. Such direct expenses shall be itemized on invoices, and consistent with Company's expense policy utilized for all employees and vendors. Travel may not be required in order to deliver the scope of services; however, Management may request onsite visits to attend management meetings, present to the Board of Directors, and attend lender meetings. If travel is requested, FTI will provide a budget and will not charge for their time while travelling.

Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by the Company at FTI's standard rates for testimony and depositions and reimbursed by the Company for reasonable expenses (including counsel fees) with respect thereto.

**<u>Cash on Account</u>**

Initially, the Company will forward to us the amount of $425,000 and the last month shall be netted against the amounts due, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account"). To the extent that this amount exceeds our fees, charges and disbursements upon the termination of the Engagement, we will refund within seven business days any unused portion. We will send the Company monthly invoices for services rendered and charges and disbursements incurred on the basis discussed above. The Company agrees that invoices are due upon receipt.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees that invoices are due upon receipt and will arrange for payment within three

Paul Hastings, LLP
May 6, 2022

business days (wire or ACH). Any questions on invoices will be immediately answered or the payment period will be extended. The invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, charges and disbursements will be due and payable within three business days upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(l). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § l129(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Initial Cash on Account (as may be supplemented from time to time) and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

For the avoidance of doubt, the Firm shall not be liable for any fees or expenses incurred by FTI in connection with this Engagement Contract.

-4-

DocuSign Envelope ID: 91874A83-47C8-4351-9A44-844AB2E743EA

Paul Hastings, LLP
May 6, 2022

**5.     Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

**6.     Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by the Company, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

**7.     Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Larry Manning at (832) 667-5170.

FTI CONSULTING, INC.

By:     _Larry Manning_

Larry Manning
Senior Managing Director

Attachment – As stated

Paul Hastings, LLP
May 6, 2022

<u>Confirmation of Terms of Engagement</u>

We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard
Terms and Conditions.


Paul Hastings, LLP


By: _____
        Justin Rawlins
        Partner


Date: __May 6, 2022_____


Cypress Environmental Partners, L.P.


By: _____
        Peter C. Boylan III
        Chairman & CEO


Date: __May 6, 2022_____

**FTI CONSULTING, INC.**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement dated May 6, 2022. The engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.      Reports and Advice**

1.1     **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for the use and benefit of you and the Company and only in connection with the purpose in respect of which the Services are provided. Unless required by law, the Company shall not provide any advice given or report issued by us to any third party without our prior written consent, which shall not be unreasonably withheld, and which shall be conditioned upon the execution of a third party release letter in the form provided by FTI and attached hereto as Schedule A. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available. Notwithstanding the above, all reports or deliverables shall be provided to Peter C. Boylan III the Chairman and CEO for review prior to any submission to the board of directors of the Company.

**2.      Information and Assistance**

2.1     **Provision of information and assistance** – Our performance of the Services is dependent upon you and the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2     **Punctual and accurate information** – You and Company personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You and the Company shall also notify us if you and the Company subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon. The Company shall not be required to provide any privileged communications with counsel regarding litigation matters that could jeopardize such privilege.

2.3     **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4     **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

## 3.    Additional Services

3.1     **Responsibility for other parties** – You and the Company shall be solely responsible for the work and fees of any other party engaged by you and the Company to provide services in connection with the engagement regardless of whether such party was introduced by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you or the Company, other than our agents or independent contractors engaged to provide Services, without you or the Company's written authorization.

## 4.    Confidentiality

4.1     **Restrictions on confidential information** – All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided in this Engagement Contract, no party will disclose other contracting party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

     4.1.1    is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

     4.1.2    is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information;

     4.1.3    is or has been independently developed by the recipient; or

     4.1.4    reports, memoranda, summaries and other deliverables prepared by or with the assistance or review of FTI under this Engagement Contract.

4.2     **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other parties.

4.3     **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public and with prior written approval of the Company, which shall not be unreasonably withheld, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience.

4.4     **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5     **Maintenance of workpapers and data** – Upon termination of the Engagement, FTI agrees to destroy all data provided by the Company, including without limitation models, reports, and other documentation containing Company data, metadata, or other information. Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies. Further, FTI may retain copies as required by law, regulation, legal process or internal document retention policy, or stored on any automatic computer back-up system. Any data retained by FTI as part of their data retention policy must be kept confidential and not used with any competitor.

4.6     **Data Protection** - If this Engagement involves the processing of personal data (also referred to herein as personal information) as governed by the California Consumer Privacy Act, the terms of the California Data Protection Schedule attached hereto as Schedule B shall apply to this Engagement and it shall form an integral part of this Agreement. In the event of a conflict between the terms of this Agreement and the terms of Schedule B, the terms of Schedule B shall prevail in relation to the processing of such personal data.  If such personal data is processed in connection with this engagement, Client shall notify FTI in writing before any personal data is disclosed to FTI. Additionally, FTI agrees to promptly notify the Company of any data breach that exposes Company data.

4.7     **Data Security** - FTI shall protect against any data theft, security breaches, virus or other malicious code installations, or other cyber threats ("Security Breach") and comply with all applicable laws and regulations related to cyber security or Security Breaches. FTI shall immediately notify Company of any known or suspected Security Breach affecting Company systems (including, but not limited to its hardware, software, and network), data, or information (collectively "Company Systems") within two (2) business days of the occurrence, and shall provide a report detailing the results of the investigation and actions taken by FTI.

**5.     Termination**

5.1     **Termination of Engagement with notice** – All parties (the Company and FTI) may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. Regardless of the terminating party, the Company will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2     **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6, 7, and 8 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6.     Indemnification and Liability Limitation**

6.1     **Indemnification** - The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses) brought by a third party (collectively, "Claims") arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such Claim shall have resulted from the gross negligence or willful misconduct of any Indemnified Person or Persons. .

FTI agrees to indemnify and hold harmless Company and its owners, partners, members, managers, officers, directors, agents, employees, consultants, attorneys and agents and any successors or assigns thereof (each, a "Company Indemnified Party") to the fullest extent lawful from any and all third party Claims arising out of or relating to (a) the gross negligence or willful misconduct of the Company Indemnified Party in respect of whom such liability is asserted, (b) for damages resulting from FTI's breach of its obligations of confidentiality under this Engagement Contract, or (c) damages resulting fom a Security Breach.

6.2    **Limitation of liability -** Excluding a party's indemnification obligations for third party claims or damages resulting from a party's breach of its obligations of confidentiality and non-disclosure, neither party shall be liable for (a) damages in excess of the total amount of the fees paid and payable to FTI under this Engagement Contract or (b) consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

6.3    **Insurance -** FTI maintains professional liability insurance, which includes cyber liability insurance, which shall have a limit of at least $5 million per claim and $10 million in the aggregate.

**7.    Governing Law, Jurisdiction, WAIVER OF JURY TRIAL and Compliance with Law**

7.1    **Governing Law -** The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2    **Jurisdiction -** The United States District Court for the Southern District of Texas and the appropriate Courts of the State of Texas sitting in the Southern District of Texas shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3    **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

7.4    **Compliance with Laws -** The Company agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement. The Company further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Company or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Company or FTI. The Company shall promptly notify FTI in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by the Company or its directors, officers, employees or agents.

8.    **Warranty** – This is a services engagement. FTI warrants that it shall perform the Services in accordance with industry standards for the provision of advisory services.

FTI CONSULTING, INC.

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

Paul Hastings, LLP

By: _Justin Rawlins_____
      Justin Rawlins
      Partner

Date:__May 6, 2022_____

Cypress Environmental Partners, L.P.

By: __Peter C. Boylan III_____
      Peter C. Boylan III
      Chairman & CEO

Date:__May 6, 2022_____

**TO BE ON FTI LETTERHEAD**

**SCHEDULE A**

**STANDARD RELEASE LETTER**

**[Nonclient Recipient Letterhead]**

**[Date]**

FTI Consulting, Inc.

Dear Mr./Ms._____:

_____ ("Client") has informed **[name of recipient]** that FTI Consulting, Inc. ("FTI") has performed certain procedures to assist Client in connection with the_____. We understand that the work performed by FTI was performed in accordance with instructions provided by Client and was performed exclusively for Client's sole benefit and use.

Client has requested that FTI provide **[name of recipient]** access to the report of its findings dated **[date]**. **[name of recipient]** acknowledges that this report was prepared at the direction of Client and may not include all procedures deemed necessary for the purposes of **[name of recipient]** and that certain findings and information may have been communicated to Client that are not reflected in the report. **[name of recipient]** further acknowledges that (a) the report is being provided for informational purposes only; (b) the report shall not constitute, either expressly or impliedly, any representation or affirmation by FTI as to the accuracy, completeness and/or fairness of presentation of the Report or any statements or information contained therein; and (c) **[name of recipient]** will make any decisions based on its own investigation, due diligence and analysis, independent of, and without reliance on or reference to, the contents of the report or any other opinions or conclusions of FTI.

In consideration of FTI allowing **[name of recipient]** access to the report and, if requested by **[name of recipient]**, discussing the report, **[name of recipient]** agrees that it does not acquire any rights as a result of such access that it would not otherwise have had and acknowledges that FTI does not assume any duties or obligations to **[name of recipient]** in connection with such access.

**[name of recipient]** agrees to release FTI and its personnel from any claim by **[name of recipient]** that arises as a result of FTI permitting **[name of recipient]** access to the report. Further, **[name of recipient]** agrees not to disclose or distribute the report, or information received, orally or in writing from FTI to any other parties without FTI's prior written consent.

Acknowledged by **[name of recipient]** representative:

By:   _____
        (Name of Company official

Title:   _____

Date:   _____

## SCHEDULE B

**FTI CONSULTING CALIFORNIA DATA PROTECTION SCHEDULE**

This California Data Protection Schedule ("Schedule") forms part of the contract for services to which it is an attachment (the "Contract") between the client party identified in the Contract (the "Client") and the relevant FTI Consulting group entity identified in the Contract ("FTI"). FTI will be functioning as a service provider.
1.        Processing of Personal Information.
In connection with FTI's provision of services to Client under the Contract, if FTI receives any personal information (as such term is defined under the California Consumer Privacy Act) from or on behalf of Customer, then FTI:

(a)        will only process such personal information for the purpose of providing the services;

(b)        will not retain, use, or disclose such personal information for any purpose other than to perform the services or outside of the direct business relationship between FTI and Client;

(c)        will not sell, rent, release, disclose, disseminate, make available, transfer or otherwise communicate such personal information to any third party for monetary or other valuable consideration; and

(d)        certifies that it understands the restrictions on its processing of such personal information as set forth in this sentence, and will comply with them.

FTI may disclose personal information to FTI's service providers in connection with such service providers providing services to FTI, and FTI may permit such service providers to process personal information as necessary for FTI to provide the services to Client.

## Exhibit C

**Manning Declaration**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) | Case No. 22-90039 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DECLARATION OF LARRY MANNING
## IN SUPPORT OF THE DEBTORS' APPLICATION
## FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION
## AND EMPLOYMENT OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR TO
## THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE AS OF MAY 8, 2022

I, Larry Manning, pursuant to 28 U.S.C. section 1746, under penalty of perjury declare as follows:

1.      I am a Senior Managing Director with FTI Consulting, Inc. (together with its wholly-owned subsidiaries, "FTI"), an international consulting firm.  My address and contact information are as follows: 1301 McKinney Street, Suite 3500, Houston, TX 77010; (832) 667-5170; larry.manning@fticonsulting.com.  I submit this declaration on behalf of FTI (the "Declaration") in support of the application (the "Application")[2] of the above-captioned

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632).  The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 300, Tulsa, Oklahoma 74105.

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Application.

debtors and debtors-in-possession (collectively, the "Debtors"), for an order authorizing the employment and retention of FTI as financial advisor under the terms and conditions set forth in the Application. I am generally familiar with the Bankruptcy Code and the Bankruptcy Rules, and FTI will comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and orders issued by this Court. Except as otherwise noted,[3] I have personal knowledge of the matters set forth herein and, if called as a witness, I would testify thereto.

2.     I have more than 24 years of corporate restructuring, financial advisory, interim management, and consulting experience. I have restructuring and financial advisory expertise in, among others, the oil and gas, oilfield services, engineering and construction, mining, financial services, and manufacturing industries. I have advised numerous clients with regard to debtor-in-possession and out-of-court financings, covenant negotiations, contingency planning, asset sales, and strategic alternative assessments. I have been involved in numerous chapter 11 cases including, Ultra Petroleum Corp., McDermott International, Inc., Breitburn Energy Partners LP, Hostess Brands, Inc., TXCO Resources, Inc., Reichmann Petroleum Corp., and Washington Mutual, Inc.

3.     Prior to joining FTI, I was an Associate at Greenwich Associates. I have an M.B.A. with a concentration in energy finance from the McCombs School of Business at the University of Texas and a B.S. in finance from the University of Connecticut.

A.     **Services to be Provided**

4.     The Debtors originally engaged FTI in September 2021 to assist the Debtors with a number of activities, including preparing weekly cash flow forecasts, preparing a three-year

---

[3]     Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at FTI and are based on information provided by them.

business plan, and assisting the Debtors in extensive additional reporting requirements.  FTI's professionals have worked closely with the Debtors' management and other advisors to assist with various matters, including, among other things, determining potential creditor recoveries, managing and responding to data requests, assisting in the development of strategies to address the Company's existing obligations, assisting in the development of a plan of reorganization and disclosure statement, rendering general financial advice, and assisting with evaluating the Debtors' cash flows under a variety of scenarios.  As a result, FTI has developed institutional knowledge regarding the Debtors' operations, financial affairs, and systems.

5.      Consistent with the terms of the Engagement Letter, FTI will, among other things, provide the following services to the Debtors:

a.      Assisting in the development of a plan of reorganization and disclosure statement;

b.      Assisting with bankruptcy reporting requirements (e.g., Monthly Operating Reports);

c.      Assisting with evaluating the Debtors' cash flows under a variety of scenarios;

d.      Rendering general financial advice, financial analytics and modeling as directed by the Debtors' management;

e.      Assisting in determining potential creditor recoveries under alternative scenarios;

f.      Assisting in analyzing and developing strategies to address the Debtors' existing obligations;

g.      Attending meetings, presentations and negotiations as may be requested by the Debtors;

h.      Assisting the Debtors in managing and responding to data requests from various constituents;

i.      Providing testimony, as needed and mutually agreed; and

j.      Providing other services as requested by the Debtors.

**B.     Compensation Matters**

6.     FTI is not owed any amounts with respect to its prepetition fees and expenses.  FTI intends to apply to the Court for allowance of compensation and reimbursement of expenses for financial advisory support services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, orders of the Court.

7.     FTI will be paid by the Debtors for services in accordance with the Engagement Letter.  The payment structure is based upon the time incurred by FTI in providing services to the Debtors multiplied by our standard hourly rates.   The hourly billing rates are summarized as follows:

| United States | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $975 - $1,325 |
| Directors/Senior Directors/Managing Directors | $735 - $960 |
| Consultants/Senior Consultants | $395 - $695 |
| Administrative/Paraprofessionals | $160 - $300 |

8.     The compensation terms in the Engagement Letter are consistent with FTI's normal and customary compensation for comparable cases, both in- and out-of-court, involving the services to be provided.   The above hourly rates reflect FTI's adjusted rates, which became effective in January 2022 based on customary annual adjustments.  In addition, these terms are reasonable and within the range of fees typically charged by firms of similar caliber for comparable services.

9.     In addition to the fees outlined above, FTI will bill for reasonable direct expenses incurred on the Debtors' behalf during the Engagement.  Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.

**C.    FTI's Prepetition Compensation**

10.    Prior to the Petition Date, FTI received advance payments totaling $425,000 (the "Advance Payment Retainer").  FTI's fees and reimbursable expenses for the prepetition period totaled approximately $1,076,641.  The portion of the Advance Payment Retainer not applied to prepetition fees and disbursements is currently estimated to be approximately $253,000.

11.    To the extent there are any additional fees and expenses that have been incurred prepetition but not yet applied against FTI's Advance Payment Retainer, the amount of FTI's Advance Payment Retainer will exceed the amount attributable to any such fees and expenses.

12.    Pursuant to Bankruptcy Rule 2016(b), FTI has neither shared nor agreed to share (a) any compensation it has received or may receive from the Debtors with another party or person, other than with FTI's professionals or (b) any compensation another person or party has received or may receive from the Debtors.

**D.    Disinterestedness and Eligibility**

13.    In connection with the preparation of this Declaration, FTI conducted a review of its contacts with the Debtors, their affiliates, and certain entities holding claims against or interests in the Debtors that were made reasonably known to FTI.  A listing of the parties reviewed is reflected on **Schedule 1** to this Declaration (the "Potential Parties in Interest").  FTI's review, completed under my supervision, consisted of a query of the Potential Parties in Interest within an internal computer database[4] containing names of individuals and entities that are present or recent former clients of FTI.  A summary of such relationships that FTI identified during this process is set forth on **Schedule 2** to this Declaration.

---

[4]    For the avoidance of doubt, FTI's computer database covers FTI Consulting, Inc. and its wholly-owned subsidiaries globally.

14.     Based on the results of its review, FTI does not have a relationship with any of the Potential Parties in Interest in matters related to the Debtors or these proceedings.  FTI has provided and could reasonably be expected to continue to provide services unrelated to the Debtors' cases for the various entities shown on **Schedule 2**.  FTI's assistance to these parties has been related to providing various financial restructuring, litigation support, technology, strategic communications, and economic consulting services.  To the best of my knowledge and except as otherwise disclosed herein, no services have been provided to these parties in interest that involve their rights in the Debtors' cases, nor does FTI's involvement in these cases compromise its ability to continue such consulting services.

15.     As part of its diverse practice, FTI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in these Chapter 11 Cases.  Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings.  In addition, FTI has in the past, may currently, and will likely in the future be working with or against other professionals involved in these Chapter 11 Cases in matters unrelated to the Debtors and these cases.  Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests adverse to the Debtors in matters upon which FTI is to be employed and none are in connection with these Chapter 11 Cases.

16.     FTI is not a "creditor" of any of the Debtors within the meaning of Bankruptcy Code section 101(10).  Further, neither I nor any other member of the FTI engagement team serving the Debtors, to the best of my knowledge, (a) is a creditor, equity security holder, or insider

of any of the Debtors; (b) is or has been within two years before the Petition Date, a director, officer, or employee of any of the Debtors; or (c) has any interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.  As such, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, FTI (i) is a "disinterested person" as defined in Bankruptcy Code section 101(14) and (ii) neither holds nor represents an interest adverse to the Debtors or their estates.  Therefore, FTI believes it is eligible to represent the Debtors under section 327(a) of the Bankruptcy Code.

17.     It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner.  If any new material relevant facts or relationships are discovered or arise, FTI will file a supplemental declaration pursuant to Bankruptcy Rule 2014(a).

### E.     Duplication of Services

18.     The Debtors and FTI intend that FTI's services will be appropriately directed by the Debtors so as to avoid duplication of efforts among the other professionals retained in these chapter 11 cases and performed in accordance with applicable standards of the profession. FTI will work collaboratively with the Debtors' other professionals to avoid duplication of services among professionals. I believe that the services to be provided by FTI will complement and will not be duplicative of any services of the Debtors' other professionals.

**F.      Benefit to the Estate**

19.     FTI's employment by the Debtors as a financial advisor will be beneficial to the Debtors because of FTI's experience, knowledge and familiarity with the Debtors' business. Moreover, the services to be provided by FTI are necessary to enable the Debtors to pursue and consummate the value maximizing restructuring transaction contemplated in these chapter 11 cases.

[*Remainder of Page Intentionally Left Blank*]

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on:   <u>June 7, 2022</u>          <u>*/s/ Larry Manning*</u>
                                          Larry Manning
                                          Senior Managing Director
                                          FTI Consulting, Inc.

# Schedule 1

## Potential Parties-in-Interest

**Debtor**
Cypress Environmental Partners, LLC
Cypress Environmental Partners, L.P.
Cypress Environmental Finance Corporation
Cypress Environmental Services, LLC
Cypress Energy Partners - 1804 SWD, LLC
Cypress Energy Partners - Bakken, LLC
Cypress Energy Partners - Grassy Butte SWD, LLC
Cypress Energy Partners - Green River SWD, LLC
Cypress Energy Partners - Manning SWD, LLC
Cypress Energy Partners - Mork SWD, LLC
Cypress Energy Partners - Mountrail SWD, LLC
Cypress Energy Partners - Tioga SWD, LLC
Cypress Energy Partners - Williams SWD, LLC
Cypress Municipal Water Services, LLC
Cypress Environmental Management, LLC
Cypress Environmental Management - TIR, LLC
TIR-CEM, LLC
Cypress Safety Services, LLC
Tulsa Inspection Resources, LLC
Cypress Environmental - PUC, LLC
Tulsa Inspection Resources - PUC, LLC
Cypress Brown Integrity, LLC

**Non-Debtor Affiliate**
Alati Arnegard, LLC
CEP Capital Partners, LLC
Cornell Investment Partners, L.P.
Henry Cornell
Charles C. Stephenson, Jr.
Stephenson Grandchildren Family, LLC
Cynthia A. Field Trust
Cynthia Field
Cypress Environmental Holdings, LLC
Cypress Energy Investments, LLC

Cypress Energy Partners - Sheridan SWD, LLC
Cypress In-Line Holdings, LLC
Cypress ETI, LLC
Cypress In-Line Inspection, LLC
Cypress Energy Holdings II, LLC
Cypress Energy IDR Holdings, LLC
Cypress Energy GP Holdings, LLC
Cypress Environmental Partners GP, LLC
Charles C. Stephenson, Jr. Trust
Grandchildren Family LLC
Cypress Cherokee Services, LLC
Cypress Fluid Technologies, LLC
Cypress In-Line Holdings. LLC
Cypress Pipeline and Process Services, LLC
Cypress Pipeline Services, LLC
Cypress Process Services, LLC
Cypress Brown Integrity - PUC, LLC
Tulsa Inspection Resources - Canada ULC

**Other Names Used in Past 8 Years**
Cypress Energy Partners, L.P.

**Banking Relationships**
Bank of Oklahoma
Bank7
BMO Bank of Montreal

**Current and Former Directors & Officers**
Chavez, Adrian
Cynthia A. Field
Holler, Melvin
Jack H. Stark
Jason N. Wilcox
Jeff English
Jeffrey A. Herbers
John McNabb
Means, David
Peter C. Boylan III
Richard M. Carson
Stan Lybarger

**Director Affiliations**
Alex S. Field Trust
AMF Production, LLC
Andrew M. Field Trust
Boylan Capital Management, LLC
Boylan Capital Partners, LP
Boylan Partners, LLC
Charles and Peggy Stephenson Family
  Foundation
Charles C. Stephenson Trust
Charles Corry Stephenson III Trust
Continental Resources, Inc.
Cornell Capital LLC
Cypress Energy Capital, LLC
Failsafe Hazmat Compliance. L.L.C.
Jeff Herbers PLLC
John & Darlene McNabb Charitable
  Foundation
Julie A. Stephenson Trust
Kelly C. Stephenson Trust
Lawrence D. Field, Jr. Trust
Peggy C. Stephenson Trust
Peter C. Boylan III 2012 Family Trusts
Peter C. Boylan Revocable Trust
Regent Private Capital II
Stephenson Equity Company Number One
Stephenson Equity Company Number Three
Stephenson Equity Company Number Two
Stephenson Investments, Inc.
Ten Oaks Energy Advisors, LLC
The Wilcox Group Holdings, L.P.
The Wilcox Group, LLC
TIR Capital Partners, LLC
TWG Securities, LLC
Wilcox Investment Bankers

**Former Agents / Lenders**
Deutsche Bank

**Indenture Trustees / Agents**
Argonaut Private Equity

**Insurance Brokers**
Hub International Mid-America
First Insurance Funding

Willis Towers Watson Insurance Services
  West
Willis of Texas, Inc

**Insurance Providers**
AIG - National Union Fire Insurance
  company of Pittsburgh, Pa
Allied World Assurance Company
Allied World Surplus Lines Ins. Co
Argonaut Insurance Company
Beazley Insurance Company, Inc.
Coalition Insurance Solutions, Inc.
Continental Casualty Company
Lloyds of London
Miller Insurance Services
ND Workers Compensation
Ohio Workers Compensation
Sompo
WA Workers Compensation
WY Workers Compensation
Zurich

**Landlords**
Commissioners of The Land Office
YPI North Belt Portfolio Owner, LLC

**Lienholders**
Deutsche Bank AG

**Litigation Counterparties**
Adam Pardue
Alan Stuart 2012 GST Family Trust
Albert Henry
Alberto Martinez
Altenhofen, Jason P.
Andrew Dunlap
Angel Garza
Angel Hernandez
Anurag Agarwal
Arkansas Oklahoma Gas Corporation
Beanna Garza
Billy Callaway
Blackleg Consulting
Blake Brunkenhoefer
Blake Pankonien

2

Bobby Tipton
Brad Brown
Brad M. Hansen
Brady M. Hansen
Brendan Villanueva
Brian Baker
Brown Minority Owners
Bruckner Burch PLLC
Brunkenhoefer, P.C. Injury Law
Bryan Farley
Carl A. Fitz
Carroll Christopher
Catlin Insurance Company
Celebration, LLC
Chad Moore
Charles Appling
Charles E. Roberts
Charles Stover
Charles Yezbak
Charlie Brown
Chris Whittington
Christian Emmanuel Limon Soto
Christopher Aguilar
Christopher Carroll
Christopher Martin
Christopher Sziber
Cleveland Integrity Services, Inc.
Colin Rice
Coty Phan
Coy Lewis
Crude Logistics, LLC
Curtis Craig
Cynthia Andrews
Damon Wright
Daniel A. Kasper
Daniel Cancino
Daniel Decker
Daniel Kasper
Daniel Walsh
Darrell McDonald
Darrell Olson
Darrell Reeves
David Goudge
David Hill
David Kole
David Littlepage

Dawn Fretwell
DCP Midstream
DCP Operating Company, LP
DCP Sand Hills Pipeline, LLC
Delek US Energy, Inc.
Dicke Foster
Dominion Energy, Inc.
Donald Taggart
Douglas Fletcher
Doyle Rogers
Drayfus Miller
Emmanuel Limon Ruiz
Energy Transfer Partners, LP
Eric G. Estrada
Eric White
Eugene Lewis
Explorer Pipeline
Fithian, James H
Forrest E. Guedry, Associate
Foster, Dickie D.
Frazier, James M
Freddy Rojas
Gary Slaid
Gavin McInnis
Gibbons, Kevin C
Glenn Price
Gonzales, Jimmy L
Goodrich and Geist
Gordon Lunsted
Greenes Energy Group, LLC
Greg Huggins
Haines Investments of Texas, L.P.
Hess 1804 Pipeline
Hess Corporation
Hoblit, Darling, Ralls, Hernandez and
    Hudlow LLP
Huggins, Gregory S
Jacky Dale Hamrick
Jacky Hamrick
Jacqueline Barrientos
James Fithian
James Frazier
James King
James Stich
Jamie Allen
Jason Altenhofen

Jason Hartly
Jeffrey Hutchinson
Jeremy Garza
Jimmy Gonzalez
Joe Barron
Joel Whitman
Joel Witman
John Carmouche
John Carwile
John Parks
John Stabler
John W. Smith
Jonathan D. Smith
Jose R. Rodriguez
Jose Rodriguez
Joseph Cirilo
Joseph Dunlap LLP
Josephson & Dunlap
Josh Brimmer
Joshua Blaine
Joshua Geist
Joshua Throckmorton
Juan Reyna
Julianne Lomax
Justin Sweeney
Kagen Caspersen & Bogart PLLC
Katie Hollier
Kean Miller LLP
Kenneth Newman
Kenneth Schiller
Kestrel Field Services, Inc.
Kevin Gibbons
Kevin Liles
Kirk Serigne
Kole, David H
Kyle Clapper
Kyle Erickson
Larry Perser
Lauro Guerra
Lawrence Long
Leonard Lowe
Leroy Bandurraga
Lewis Coy
Liles White PLLC
Lon Crow
Marco Valdez

Mark Flynn
Maron, Marvel, Bradley, Anderson & Tardy
  LLC
Matthew Winkle
Mauro Cadena
Michael A Josephson
Michael A. Hosey
Michael Becker
Michael Burrage
Michael D Hendrick
Michael Hedrick
Michael Henrick
Michael Hosey
Michael Maness
Michael Sandoval
Mike Crain
N. Chase Teeples
Nicholas Nimmo
Nimmo, Nicholas J
Oneok, Inc.
Oscar Bernazard
Patrick Seiboldt
Paul Martin
Paula Wyatt
Paulina Garza
Phillips 66
Plains All American Pipeline, LP
Plymate, Robert L
Preston Houston
Pumpco
Quality Integrated Services, Inc.
Quanta Pipeline Services
Randall Hodges
Reeves, Darrell W
Reyna Injury Layers, P.C.
Richard Grogan
Richard Rex Burch
Richard Schreiber
Robert Abramowski
Robert Chilcote
Robert Ferrell
Robert Petti
Robert Plymate
Robert Valdez
Robertson, Zachariah L
Rod Reynolds

Rolando Ramirez
Ruben Almanza
Sanchez Oil and Gas Corp. / Sanchez
  Energy Corp.
Sanchez Oil and Gas Corporation
Scott Bridgeman
Scott W Bridgeman
SemGroup Corporation
SFF-TIR, LLC
Smith Tank & Steel, Inc.
Steven Lovelady
Stich, James R
Stratton Taylor
Stuart Family Foundation, Inc
Stuart Kagen
Stuart White
Summit Midstream Partners
Sziber, Christopher A
Targa Resources Group Corp
Taylor Ashley Jones
Taylor, Foster, Mallett, Downs, Ramsey &
  Russel
Thomas Hennigar
Tim Jones
Todd A Orcutt
Todd Hunter
UGI Utilities
Walsh, Daniel R
White, Eric S
Whitten Burrage
William Goodrich
William Howell
William Liles
William Moore
Wyatt Law Firm, PLLC
Yezback Law Offices PLLC
Zachariah Robertson

**Ordinary Course Professionals**
Chad Hinrichs PC
Ernst & Young
Frederic Dorwart Lawyers PLLC
Latham & Watkins, LLP
McAfee & Taft
McDermott Will & Emery

**Professionals**
FTI Consulting, Inc.
Kurtzman Carson Consultants LLC
Piper Sandler Companies
Paul Hastings LLP
Simmons Energy

**Professionals of Secured Lenders,**
  **Bondholders**
Andrews Kurth Kenyon LLP
Riveron Consulting, LLC

**Royalty Contract Counterparties**
Doug Paluck
Rhonda Paluck
Randy Jarmin
Tracey Jarmin
Jubal Jarmin

**Secured Holders / Lenders**
APE V Cypress, LLC
Argonaut Private Equity
Arvest Bank
BOKF, N.A. dba Bank of Oklahoma
First Oklahoma Bank
Mabrey Bank
Vast Bank

**Significant Customers**
Buckeye Partners, L.P.
Centerpoint Energy
Enbridge Inc.
Enterprise Products Partners L.P.
Kinder Morgan
Northern Indiana Public Service Company
Pacific Gas and Electric Company
Questar
Vectren Corporation
Williams Gas Pipeline Company, LLC

**Surety Issuers**
Bank of North Dakota
First International Bank & Trust

**Surety Obligees**
State of North Dakota

**Taxing & Regulatory Authorities**
Alabama Dept of Revenue
Alaska Dept of Revenue
Arizona Dept of Revenue
Arizona State Income Tax
Billings County Treasurer
California Franchise Tax Board
Colorado Dept of Revenue
Controller of Maryland
Dunn County Treasurer
Florida Dept of Revenue
Georgia Dept of Revenue
Idaho State Tax Commission
Illinois Dept of Revenue
Indiana Dept of Revenue
Internal Revenue Service
Iowa Dept of Revenue
Kansas Dept of Revenue
Kentucky Dept of Revenue
Louisiana Dept of Revenue
Massachusetts Dept of Revenue
McKenzie County Treasurer
Minnesota Revenue
Mississippi Dept of Revenue
Missouri Dept of Revenue
Montana Dept of Revenue
Mountrail County Treasurer
Nebraska Dept of Revenue
New Jersey Division of Taxation
New Mexico Taxation and Revenue Dept.
New York Dept of Taxation
New York State Dept of Revenue
North Carolina Dept of Revenue
North Dakota Industrial Commission
North Dakota Office of State Tax
   Commissioner
North Dakota State Tax Commissioner
Oklahoma Tax Commission
Oregon Dept of Revenue
Pennsylvania Dept of Revenue
South Carolina Dept of Revenue
South Dakota Dept of Revenue
State of Connecticut
Tennessee Dept of Revenue
Texas Comptroller of Public Accounts
Texas Dept. of State Health Services

Tulsa County Treasurer
Utah State Tax Commission
Vermont Dept of Taxes
Virginia Department of Taxation
Virginia Dept. of Taxation
Washington State Dept of Revenue
West Virginia State Tax Dept
Williams County Treasurer
Wisconsin Dept of Revenue

**Third-Party Administrators**
Blue Cross Blue Shield
Optum Bank
BOK Financial

**Top 50 Unsecured Creditors**
ADP
Aflac
Airgas USA LLC
Allterra
AT&T Mobility
Bakken Disposals LLC
Comerica Bank
Computershare
Corporate Services Company
CSC Global
Dell Marketing L.P.
Disa, Inc.
Dnow L.P.
Dustin J. Mitchell
Emkay Inc
Federal Express
Grainger
Greg's Welding, Inc.
Gustafson Septic Service, Inc.
Hall Estill
Hard Hat Safety & Glove, LLC
Houston Area Safety Council
Indoff Incorporated
Jarmin Jubal
Jarmin Randy
Jarmin Tracey
Kanuka Thuringer, LLP
L & H Electric Inc
Lighthouse Trades Inc
Michael P Saunders

MLT Aikins LLP
Mork Family Trust
Multi-Chem
Nicholas Taylor
Northwest Communications Coop
Nysif Disability Benefits
O'Rourke Dist. Co. Inc.
Paluck, Doug & Rhonda
Payflex Systems USA, Inc.
R&T Water Supply Assn.
Reservation Telephone Cooperative
Shale Oilfield Services LLC
Sheena Menard
Shi International Corp
Steven Fenner
Thomas Grable
WSI
Yvonne Baze


**U.S. Trustee Personnel, Judges, and**
    **Court Contacts**
Albert Alonzo
Alethea Caluza, Paralegal Specialist
Alicia Barcomb, Trial Attorney
Ana Castro
Brian Henault, Bankruptcy Analyst
Chief Judge David R. Jones
Christopher R. Travis, Trial Attorney
Christy Simmons, Bankruptcy Analyst
Clarissa Waxton, Bankruptcy Analyst
Glenn Otto, Bankruptcy Analyst
Gwen Smith, Legal Assistant
Ha Nguyen, Trial Attorney
Hector Duran, Trial Attorney
Ivette Gerhard, Secretary
Jacqueline Boykin, Legal Data Technician
Jana Whitworth, Trial Attorney
Jayson B. Ruff, Trial Attorney
Jeannie Chavez
John Patouhas
Judge Christopher Lopez

Judge Eduardo V. Rodriguez
Judge Jeffrey P. Norman
Judge Marvin Isgur
Kevin M. Epstein, US Trustee
Kimberly Picota
Linda Motton, Paralegal Specialist
LinhThu Do
Luci Johnson-Davis, Paralegal Specialist
Mario Rios
Millie Aponte Sall, Assistant U.S. Trustee
Nathan Ochsner (Clerk of the Court)
Omar E. Jones, Auditor
Patricia Schmidt, Legal Assistant
Rosario Seldona
Stephen Statham, Trial Attorney
Tracey Conrad
Tyler Laws
Vriana Portillo
Yasmine Rivera, Auditor


**Utilities**
8x8 Inc
ACC Business
AT&T
Bergers Sanitation Service
Bluebonnet Electric Cooperative, Inc
Circle Sanitation Services
Consolidated Telecom
Cox Communications
Lee County Water Supply Corporation
Logix Fiber Networks
McKenzie Electric Cooperative
MGM Rural Sanitation
Mountrail-Williams Electric Cooperative
Newwave Communications
R&T Water Supply Assn.
Roughrider Electric Cooperative
Southwest Water Authority
Texas Disposal Systems, Inc
United Quality Cooperative
Verizon Wireless

## Schedule 2

**Disclosure Schedule**

| | |
|---|---|
| ADP | Pacific Gas and Electric Company |
| Aflac | Paul Hastings LLP |
| AIG - National Union Fire Insurance company of Pittsburgh, Pa | Phillips 66 |
| Airgas USA LLC | Plains All American Pipeline, LP |
| Allied World Assurance Company | Sanchez Oil and Gas Corp. / Sanchez Energy Corp. |
| AT&T | Sompo |
| AT&T Mobility | State of North Dakota |
| Bank of North Dakota | Targa Resources Group Corp |
| Bank of Oklahoma | UGI Utilities |
| Beazley Insurance Company, Inc. | William Howell |
| Blue Cross Blue Shield | Zurich |
| BOKF, N.A. dba Bank of Oklahoma | |
| Buckeye Partners, L.P. | |
| Centerpoint Energy | |
| Christopher Carroll | |
| Comerica Bank | |
| Continental Resources, Inc. | |
| Cornell Capital LLC | |
| Cox Communications | |
| CSC Global | |
| Delek US Energy, Inc. | |
| Deutsche Bank | |
| Deutsche Bank AG | |
| Dominion Energy, Inc. | |
| Enbridge Inc. | |
| Energy Transfer Partners, LP | |
| Enterprise Products Partners L.P. | |
| Ernst & Young | |
| Federal Express | |
| Grainger | |
| Hess Corporation | |
| Internal Revenue Service | |
| Kean Miller LLP | |
| Kinder Morgan | |
| Latham & Watkins, LLP | |
| Lloyds of London | |
| McAfee & Taft | |
| McDermott Will & Emery | |
| Miller Insurance Services | |
| MLT Aikins LLP | |
| Oneok | |