# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) Case No. 22-90039 (MI) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## SECOND MODIFIED JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF CYPRESS ENVIRONMENTAL PARTNERS, L.P. AND ITS DEBTOR AFFILIATES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632). The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 500, Tulsa, Oklahoma 74105.

**PAUL HASTINGS LLP**
James Grogan (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Justin Rawlins (*pro hac vice* admission pending)
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:  (310) 620-5700
Facsimile:  (310) 620-5899
Email:  justinrawlins@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Matthew Smart (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
        matthewsmart@paulhastings.com
        michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in Possession*

# TABLE OF CONTENTS

PAGE

ARTICLE I : DEFINED TERMS AND RULES OF INTERPRETATION ................................. 4

ARTICLE II : TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND
PRIORITY TAX CLAIMS............................................................................................ 16

    2.1.    Administrative Expense Claims................................................................ 16
    2.2.    Professional Fee Claims........................................................................... 16
    2.3.    DIP Claims............................................................................................... 17
    2.4.    Priority Tax Claims.................................................................................. 17
    2.5.    Post-Effective Date Fees and Expenses .................................................. 17

ARTICLE III : CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
AND INTERESTS......................................................................................................... 18

    3.1.    Summary of Classification and Treatment of Classified Claims and
Interests ................................................................................................... 18
    3.2.    Treatment of Claims against and Interests in the Debtors ..................... 19

ARTICLE IV : ACCEPTANCE OR REJECTION OF THE PLAN ........................................... 23

    4.1.    Impaired Classes of Claims Entitled to Vote on this Plan .................... 23
    4.2.    Acceptance by an Impaired Class of Claims .......................................... 23
    4.3.    Presumed Acceptance by Unimpaired Classes ...................................... 23
    4.4.    Presumed Rejection by Certain Impaired Classes ................................. 23
    4.5.    Presumed Acceptance or Rejection of the Plan ..................................... 24
    4.6.    Reservation of Rights............................................................................... 24

ARTICLE V : MEANS FOR IMPLEMENTATION OF THE PLAN ........................................ 24

    5.1.    Restructuring Transactions ..................................................................... 24
    5.2.    Operations between the Confirmation Date and Effective Date............ 24
    5.3.    Sources of Cash Consideration for Plan Distributions .......................... 25
    5.4.    New Interests .......................................................................................... 25
    5.5.    Section 1145 Exemption ......................................................................... 25
    5.6.    Corporate Governance, Directors, Officers, and Corporate Action....... 25
    5.7.    Continued Corporate Existence and Vesting of Assets in the Reorganized
Debtors .................................................................................................... 26
    5.8.    Cancelation of Liens; Surrender and Cancelation of Notes, Instruments,
Certificates, and Other Documents Evidencing Claims ....................... 26
    5.9.    Registration of New Interests.................................................................. 27
    5.10.    Additional Transactions Authorized under this Plan ............................. 27
    5.11.    Management Incentive Plan...................................................................... 27

5.12.   Comprehensive Settlement of Claims and Controversies .................................... 27
5.13.   General Unsecured Claims Pool ................................................................... 28
5.14.   Debtors' Waiver and Release of Interests in CELP .......................................... 29

ARTICLE VI : TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED
LEASES, AND INSURANCE POLICIES ........................................................................ 29

6.1.   Assumption or Rejection of Executory Contracts and Unexpired Leases ........... 29
6.2.   Cure Obligations ...................................................................................... 29
6.3.   Insurance Policies and Agreements .............................................................. 30
6.4.   Postpetition Contracts and Leases ................................................................ 31
6.5.   Modifications, Amendments, Supplements, Restatements or Other
Agreements .............................................................................................. 31
6.6.   Nonoccurrence of Effective Date .................................................................. 31

ARTICLE VII : PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 31

7.1.   Timing and Calculation of Amounts to be Distributed ...................................... 31
7.2.   Distributions on Account of Claims Allowed after the Effective Date ................ 31
7.3.   Special Rules for Distributions to Holders of Disputed Claims .......................... 32
7.4.   Means of Cash Payment .............................................................................. 32
7.5.   Minimum; De Minimis Distributions ............................................................. 32
7.6.   Withholding and Reporting Requirements ...................................................... 32
7.7.   Compliance Matters ................................................................................... 32
7.8.   Setoff and Recoupment .............................................................................. 32
7.9.   Reinstated Claims ...................................................................................... 33
7.10.   Undeliverable or Non-Negotiated Distributions .............................................. 33
7.11.   Claims Paid by Third Parties ....................................................................... 33
7.12.   Applicability of Insurance Policies ............................................................... 34

ARTICLE VIII : PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS ............................................................. 34

8.1.   Allowance of Claims .................................................................................. 34
8.2.   Claims and Administration Responsibilities ................................................... 34
8.3.   Adjustment to Claims without Objection ....................................................... 34
8.4.   Time to File Objections to Claims ................................................................ 34
8.5.   Disallowance of Claims .............................................................................. 34
8.6.   Late-Filed Claims ...................................................................................... 35
8.7.   Late Claims/Amendments to Claims ............................................................. 35
8.8.   No Distributions Pending Allowance ............................................................ 35
8.9.   Distributions after Allowance ...................................................................... 35

ARTICLE IX : CONFIRMATION AND CONSUMMATION OF THE PLAN ......................... 35

9.1.   Conditions to Effective Date ....................................................................... 35
9.2.   Waiver of Conditions ................................................................................. 36
9.3.   Vacatur of Confirmation Order .................................................................... 36

9.4.     Notice of Effective Date ........................................................................... 36

ARTICLE X : EFFECT OF PLAN CONFIRMATION ......................................................... 36

10.1.    Binding Effect........................................................................................... 36
10.2.    Discharge .................................................................................................. 36
**10.3.    Release of Liens** ....................................................................................... 38
10.4.    Releases by the Debtors ........................................................................... 38
10.5.    Releases by Holders of Claims and Interests ........................................... 39
10.6.    Exculpation ............................................................................................... 40
10.7.    Injunctions Related to Exculpation and Releases ................................... 40
10.8.    Survival of Indemnification and Exculpation Obligations ..................... 41
10.9.    Term of Bankruptcy Injunction or Stays ................................................. 42
10.10.   Liability to Governmental Units .............................................................. 42

ARTICLE XI : RETENTION OF JURISDICTION................................................................. 42

11.1.    Retention of Jurisdiction .......................................................................... 42

ARTICLE XII : MISCELLANEOUS PROVISIONS ............................................................. 44

12.1.    Effectuating Documents and Further Transactions................................... 44
12.2.    Exemption from Transfer Taxes .............................................................. 45
12.3.    Payment of Statutory Fees ....................................................................... 45
12.4.    Amendment or Modification of this Plan ................................................. 45
12.5.    Severability of Plan Provisions ............................................................... 45
12.6.    Closing of Chapter 11 Cases; Caption Change....................................... 46
12.7.    Successors and Assigns............................................................................ 46
12.8.    Non-Consummation ................................................................................. 46
12.9.    Notice ....................................................................................................... 46
12.10.   Governing Law ........................................................................................ 47
12.11.   Tax Reporting and Compliance ............................................................... 47
12.12.   Exhibits .................................................................................................... 47
12.13.   Filing of Additional Documents .............................................................. 48
12.14.   Plan Documents ....................................................................................... 48
12.15.   Reservation of Rights............................................................................... 48

## INTRODUCTION

Each of Cypress Environmental Partners, L.P. ("CELP"), Cypress Municipal Water Services, LLC, Cypress Environmental Partners, LLC, Cypress Brown Integrity, LLC, Cypress Energy Partners - 1804 SWD, LLC, Cypress Energy Partners - Bakken, LLC, Cypress Energy Partners - Grassy Butte SWD, LLC, Cypress Energy Partners - Green River SWD, LLC, Cypress Energy Partners - Manning SWD, LLC, Cypress Energy Partners - Mork SWD, LLC, Cypress Energy Partners - Mountrail SWD, LLC, Cypress Energy Partners - Tioga SWD, LLC, Cypress Energy Partners - Williams SWD, LLC, Cypress Environmental - PUC, LLC, Cypress Environmental Management - TIR, LLC, Cypress Environmental Management, LLC, Cypress Environmental Services, LLC, Tulsa Inspection Resources - PUC, LLC, and Tulsa Inspection Resources, LLC (each, a "Debtor" and, collectively, the "Debtors") jointly propose the following joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code for the resolution of the outstanding Claims and Interests. Capitalized terms used but not defined in this paragraph have the meanings assigned to them in Article I. The classification and treatment of Claims and Interests are set forth in Articles II and III. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the accompanying Disclosure Statement for a discussion of the Debtors' history, business, properties, operations, projections for those operations, risk factors, a summary and analysis of the Plan, and related matters.

## ARTICLE I:
## DEFINED TERMS AND RULES OF INTERPRETATION

A.    Defined Terms.  As used in this Plan, capitalized terms shall have the meanings set forth in this Article I. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1.    Administrative Expense Claim means a Claim for costs and expenses of administration of the Chapter 11 Cases arising after the Petition Date and prior to the Effective Date under sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including, without limitation: (a) any actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors after the Petition Date and Claims of Governmental Units for taxes (including tax audit Claims) related to tax years commencing after the Petition Date, but excluding Claims related to tax periods, or portions thereof, ending on or before the Petition Date; (b) any Professional Fee Claim, to the extent Allowed by Final Order under sections 328, 330, 331 or 503 of the Bankruptcy Code; (c) with the exception of section 507(b) Claims, any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases; (d) any cash payment required to be made under this Plan and payments to cure a default under an Executory Contract or Unexpired Lease that has been or will be assumed by the Debtors; or (e) any Quarterly Fees.

1.2.    Affiliate has the meaning assigned to such term in section 101(2) of the Bankruptcy Code.

1.3.     Allowed means, with respect to a Claim or Interest, such Claim or Interest or any portion thereof that the Debtors and the Supporting Party have assented to the validity of or that has been (a) allowed by an order of the Bankruptcy Court, (b) allowed pursuant to the terms of the Plan, (c) following the Effective Date, allowed by agreement between the holder of such Claim or Interest, on one hand, and the Reorganized Debtors or the Plan Administrator, as applicable, on the other hand, or (d) allowed by an order of a court in which such Claim or Interest could have been determined, resolved, or adjudicated if the Chapter 11 Cases had not been commenced; *provided, however*, that an Administrative Expense Claim, other than Professional Fee Claim, incurred by the Debtors in the ordinary course of their business during the Chapter 11 Cases, or assumed by the Debtors during the Chapter 11 Cases, may be Allowed if the Debtors and the Supporting Party assent to the validity of such Claim; *provided, further* that, notwithstanding the foregoing, the Reorganized Debtors shall retain all Causes of Action and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan (including, for the avoidance of doubt, Administrative Expense Claims not paid prior to the Effective Date). For the avoidance of doubt, the Debtors and the Supporting Party may, together, affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable nonbankruptcy law even in the absence of a Filed Proof of Claim.

1.4.     Avoidance Actions means any and all actual or potential claims or causes of action to avoid a transfer of property or an obligation incurred by the Debtors arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, or 553(b) of the Bankruptcy Code, or under similar or related state or federal statutes or common law, including fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such claim(s) or cause(s) of action was commenced prior to the Effective Date.

1.5.     Bankruptcy Code means title 11 of the United States Code, 11 U.S.C. §§ 101 through 1532, as in effect on the Petition Date, together with any amendments and modifications thereto that may subsequently be made applicable to the Chapter 11 Cases.

1.6.     Bankruptcy Court means the United States Bankruptcy Court for the District of Texas or any other court with jurisdiction over the Chapter 11 Cases.

1.7.     Bankruptcy Rules means, collectively:  (a) the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Cases or any proceedings therein; and (c) the local rules of the Bankruptcy Court, all as in effect on the Petition Date, together with any amendments and modifications thereto that may subsequently be made applicable to the Chapter 11 Cases.

1.8.     Business Day means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.9.     Cash means legal tender of the United States of America.

1.10.    Cause of Action means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, loss,

debt, damage, judgment, account, defense, remedy, offset, power, privilege, proceeding, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws).  Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any claims under any state law or foreign law, including, without limitation, any fraudulent transfer or similar claims.

1.11.    CELP means Cypress Environmental Partners, L.P.

1.12.    CEP means Cypress Environmental Partners, LLC.

1.13.    Chapter 11 Cases means the voluntary cases under Chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court on the Petition Date.

1.14.    Claim means a "claim," as defined in section 101(5) of the Bankruptcy Code.

1.15.    Claims Bar Date means the applicable bar date by which Proofs of Claim must be Filed, as established by:  (a) the Claims Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) this Plan.

1.16.    Claims Bar Date Order means an order of the Bankruptcy Court establishing the date by which Proofs of Claim must be Filed.

1.17.    Claims Objection Bar Date means 120 days after the Governmental Claims Bar Date, subject to the right of the Reorganized Debtors or the Plan Administrator to seek an extension of such date by motion served on the service list.

1.18.    Claims Register means that certain register maintained by the Bankruptcy Court containing a list of all of the proofs of claim that have been filed with the Bankruptcy Court.

1.19.    Class means each category of holders of Claims or Interests established under Article III pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.20.    Commitment means a funding commitment made by the Commitment Party to the Reorganized Debtors on the Effective Date pursuant to which the Commitment Party will provide post-Effective Date funding to the Reorganized Debtor necessary to fund the operations of the Reorganized Debtors through (i) an equity investment or (ii) debt financing, on terms the terms and conditions acceptable to the Debtors and the Supporting Party.

1.21.   Commitment Letter means the funding commitment letter provided in the Plan Supplement setting forth the terms of the Commitment in a form acceptable to the Debtors and the Supporting Party.

1.22.   Commitment Party means APE V Cypress, LLC.

1.23.   Committee means any statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

1.24.   Confirmation means the entry of the Confirmation Order by the Bankruptcy Court.

1.25.   Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket.

1.26.   Confirmation Hearing means the hearing held by the Bankruptcy Court on confirmation of this Plan, as such hearing may be continued from time to time.

1.27.   Confirmation Order means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.28.   Debtor Release means the releases set forth in Section 10.4 of the Plan.

1.29.   Debtors means collectively: Cypress Environmental Partners, L.P. ("CELP"), Cypress Municipal Water Services, LLC, Cypress Environmental Partners, LLC, Cypress Brown Integrity, LLC, Cypress Energy Partners - 1804 SWD, LLC, Cypress Energy Partners - Bakken, LLC, Cypress Energy Partners - Grassy Butte SWD, LLC, Cypress Energy Partners - Green River SWD, LLC, Cypress Energy Partners - Manning SWD, LLC, Cypress Energy Partners - Mork SWD, LLC, Cypress Energy Partners - Mountrail SWD, LLC, Cypress Energy Partners - Tioga SWD, LLC, Cypress Energy Partners - Williams SWD, LLC, Cypress Environmental - PUC, LLC, Cypress Environmental Management - TIR, LLC, Cypress Environmental Management, LLC, Cypress Environmental Services, LLC, Tulsa Inspection Resources - PUC, LLC, and Tulsa Inspection Resources, LLC.

1.30.   Definitive Documentation means the definitive documents and agreements governing this Plan and the transactions contemplated hereunder (including any related orders, agreements, instruments, schedules, or exhibits) that are contemplated by and referenced in this Plan (as amended, modified, or supplemented from time to time), including: (i) the DIP Credit Agreement and related documentation, including the motion seeking approval of the DIP Credit Agreement and authority to use cash collateral and grant adequate protection and the DIP Orders entered or to be entered by the Bankruptcy Court approving such motion and all security documents and other loan documents in connection therewith; (ii) the Plan and any and all Plan Supplements (including all exhibits and modifications thereto); (iii) the Disclosure Statement and the other solicitation materials in respect of the Plan; (iv) the Confirmation Order and pleadings in support of entry of the Confirmation Order; (v) all documentation, if any, related to the Commitment and any related documents; (vi) those motions and proposed court orders that the Debtors file on or after the Petition Date and seek to have heard on an expedited basis at the "first day hearing"; (vii) the New Organizational Documents; (viii) all management or consulting

agreements of the Reorganized Debtors; (ix) all agreements relating to warrants or other interests exercisable in to shares of the Reorganized Debtors, if applicable; (x) the Plan Administration Agreement, and (xi) such other documents, pleadings, agreements or supplements as may be reasonably necessary or advisable to implement this Plan and the Restructuring Support Agreement.

1.31.    DIP Claims means Claims arising under the DIP Credit Agreement.

1.32.    DIP Credit Agreement means that certain Senior Secured Superpriority Debtor in Possession Credit and Security Agreement, by and among the Debtors and the DIP Lender, dated as of May 8, 2022, including all amendments thereto and extensions thereof and all Loan Documents (as defined therein) and all other security, guaranty, and other documents and agreements related thereto.

1.33.    DIP Facility means the superpriority senior secured revolving credit facility made available by the DIP Lender to certain of the Debtors to provide financing and otherwise extend credit during the pendency of the Chapter 11 Cases pursuant to and subject to the terms and conditions of the DIP Credit Agreement and the DIP Orders.

1.34.    DIP Lender means the Lender under and as defined in the DIP Credit Agreement from time to time party thereto.

1.35.    DIP Orders means, collectively, the interim and final orders of the Bankruptcy Court authorizing use of cash collateral and the DIP Facility.

1.36.    Disbursing Agent means (i) the Reorganized Debtors or any Entity designated by the Debtors or Reorganized Debtors, as applicable, to make or facilitate distributions that are to be made on and after the Effective Date, and (ii) the Plan Administrator for distributions to holders of Allowed General Unsecured Claims.

1.37.    Disclosure Statement means the Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization for Cypress Environmental Partners, L.P. and its Debtor Affiliates, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, in a manner acceptable to the Debtors and Prepetition First Lien Lenders, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

1.38.    Disputed means, with respect to any Claim or Interest, any Claim or Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

1.39.    Effective Date means, and shall occur on, the Business Day on which each of the conditions precedent to the occurrence of the Effective Date set forth in Article IX has been satisfied or waived in accordance with the terms thereof. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

1.40.    Entity means an entity as defined in section 101(15) of the Bankruptcy Code.

1.41.    Estates means the estates of the Debtors created in the Chapter 11 Cases under section 541 of the Bankruptcy Code.

1.42.    Exculpated Parties means collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Supporting Party, (d) the Committee, if any, and its members in their capacities as members thereof; and (e) with respect to each of the foregoing entities in clauses (a) through (d), such entity's Related Parties.

1.43.    Executory Contracts means a contract to which one or more of the Debtors are a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.44.    Final Order means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or on the docket of any other court of competent jurisdiction), which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided, however*, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not solely cause such order not to be a Final Order.

1.45.    General Claims Bar Date means the date established by the Bankruptcy Court by which Entities except for Governmental Units must file Proofs of Claim pursuant to the Claims Bar Date Order.

1.46.    General Unsecured Claims means Claims that are not (a) Administrative Expense Claims, (b) Professional Fee Claims, (c) Priority Tax Claims, (d) DIP Claims, (e) Other Priority Claims, (f) Other Secured Claims, (g) Prepetition First Lien Credit Agreement Claims, (g) Trade Claims, and (h) Intercompany Claims.

1.47.    General Unsecured Claims Pool means Cash in an amount equal to $250,000, net of Plan Administrator Expenses, to be distributed to holders of Allowed General Unsecured Claims in accordance with the terms of this Plan, which amount shall be funded on the Effective Date by the Reorganized Debtors.

1.48.    Governmental Unit has the meaning provided in section 101(27) of the Bankruptcy Code.

1.49.    <u>Governmental Claims Bar Date</u> means the date established by the Bankruptcy Court by which Governmental Units must file Proofs of Claim pursuant to the Claims Bar Date Order.

1.50.    <u>Holder</u> means an Entity holding a Claim or Interest.

1.51.    <u>Impaired</u> means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.52.    <u>Insider</u> has the meaning provided in section 101(31) of the Bankruptcy Code.

1.53.    <u>Intercompany Claim</u> means any Claim that is held by a Debtor against any other Debtor arising at any time prior to the Effective Date.

1.54.    <u>Intercompany Interests</u> means any Interest that is held by a Debtor in any other Debtor.

1.55.    <u>Interest</u> means any equity security within the meaning of section 101(16) of the Bankruptcy Code, including any issued and outstanding common stock, preferred stock, limited liability company interest, partnership interest, or any other instrument evidencing an ownership interest in the Debtors prior to the Effective Date (including prior to the Petition Date), whether or not transferable, and any restricted stock units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, rights of conversion, warrants, unvested common interests, unvested preferred interests or any other agreements of any character related to the common or preferred interests of the Debtors, obligating the Debtors to issue, transfer, purchase, redeem, or sell any equity interests or other equity securities, and any rights under any equity incentive plans, voting agreements and registration rights agreements regarding equity securities of the Debtors.

1.56.    <u>Lien</u> means, with respect to any interest in property, any mortgage, "lien" as defined in section 101(37) of the Bankruptcy Code, pledge, charge, security interest, easement, or encumbrance of any kind whatsoever affecting such interest in property.

1.57.    <u>Management Incentive Plan</u> means a management incentive plan, if any, that may be implemented by the Reorganized Debtors and will (a) reserve a certain percentage of New Interests as determined by the Reorganized Debtors and the Prepetition First Lien Lenders, on a fully diluted, fully distributed basis, for grants made from time to time to management of the Reorganized Debtors and (b) otherwise contain terms and conditions (including with respect to participants, allocation, structure, and timing of issuance) generally consistent with those customarily implemented by the Commitment Party at the discretion of the New Board.

1.58.    <u>New Board</u> means the board of directors for Reorganized CEP.

1.59.    <u>New Interests</u> means the new interests in Reorganized CEP to be issued on the Effective Date pursuant to the terms of the Plan and the New Organizational Documents.

1.60.    <u>New Organizational Documents</u> means the new bylaws, certificates of incorporation, certificates of formation, limited liability company agreements, operating

agreements, certificates of limited partnership, agreements of limited partnership, shareholder agreements, or such other organizational documents of the Reorganized Debtors.

1.61.    <u>Other Priority Claim</u> means an Allowed Claim under section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or Priority Tax Claim.

1.62.    <u>Other Secured Claim</u> means any Claim, other than the Prepetition First Lien Credit Agreement Claims, secured by a Lien on collateral in which the Estates have an interest, to the extent of the value of such collateral (a) as agreed to by the holder of such Claim and the Debtors or (b) as determined pursuant to a Final Order of the Bankruptcy Court in accordance with section 506(a) of the Bankruptcy Code or, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.  For the avoidance of doubt, any Claims arising under the Prepetition First Lien Credit Agreement that are not held by the Prepetition First Lien Lenders shall be Other Secured Claims.

1.63.    <u>Person</u> or <u>person</u> means a person as defined in section 101(41) of the Bankruptcy Code.

1.64.    <u>Petition Date</u> means May 8, 2022, the date on which the Debtors commenced the Chapter 11 Cases.

1.65.    <u>Plan</u> means this Chapter 11 plan of reorganization, including all exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.66.    <u>Plan Administrator</u> means such Person as may be designated in the Plan Supplement by the Debtors and the Supporting Party.

1.67.    <u>Plan Administration Agreement</u> means the agreement among the Plan Administrator and the Debtors, in form reasonably acceptable to the Support Party, regarding the administration of the General Unsecured Claims Pool and other wind down matters, dated as of the Effective Date, and to be filed as part of the Plan Supplement.

1.68.    <u>Plan Administrator Expenses</u> means the expenses set forth in the Plan Administrator Agreement.

1.69.    <u>Plan Supplement</u> means the supplement to this Plan to be filed with the Bankruptcy Court no later than ten days prior to the Confirmation Hearing.

1.70.    <u>Prepetition Agent</u> means APE V Cypress, LLC, in its capacity as the administrative agent and collateral agent under the Prepetition First Lien Credit Agreement.

1.71.    <u>Prepetition First Lien Credit Agreement</u> means that certain senior secured first-lien Amended and Restated Credit Agreement, dated as of May 29, 2018, by and among certain Debtors, as borrowers or guarantors, the Prepetition Agent, the Prepetition First Lien Lenders, and the other parties thereto, including all agreements, notes, instruments, and any other

11

document delivered pursuant thereto or in connection therewith (in each case as amended, modified, or supplemented from time to time).

1.72.   <u>Prepetition First Lien Credit Agreement Claims</u> means all Claims (including unsecured deficiency claims) arising under the Prepetition First Lien Credit Agreement held by the Prepetition First Lien Lenders.

1.73.   <u>Prepetition First Lien Documents</u> means the Prepetition First Lien Credit Agreement and all other agreements, documents, and instruments with respect to the Prepetition First Lien Credit Agreement, including any security agreements, pledge and collateral agreements, guaranty agreements, and intercreditor agreements.

1.74.   <u>Prepetition First Lien Lenders</u> means the holders of Prepetition First Lien Credit Agreement Claims.

1.75.   <u>Priority Tax Claim</u> means any Claim of a Governmental Unit of the kind against the Debtors entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.76.   <u>Pro Rata New Interest Allocation</u> means, (i) with respect to any Holder of an Allowed DIP Claim, a percentage of New Interests equal to a fraction, the numerator of which is the amount of Allowed DIP Claims held by such Holder, and the denominator of which is the aggregate of (x) the total Allowed DIP Claims, plus (y) the total Allowed Prepetition First Lien Credit Agreement Claims, and (ii) with respect to any Holder of an Allowed First Lien Credit Agreement Claim, a percentage of New Interests equal to a fraction, the numerator of which is the amount of Allowed Prepetition First Lien Credit Agreement Claims held by such Holder, and the denominator of which is the aggregate of (x) the total Allowed DIP Claims, plus (y) the total Allowed Prepetition First Lien Credit Agreement Claims.

1.77.   <u>Professional</u> means any Person retained by the Debtors or a statutory committee, if any, pursuant to a Final Order of the Bankruptcy Court entered pursuant to sections 327, 328, or 1103 of the Bankruptcy Code.

1.78.   <u>Professional Fee Claim</u> means any Claim of a Professional for allowance of compensation and/or reimbursement of costs and expenses incurred in the Chapter 11 Cases on or before the Effective Date.

1.79.   <u>Professional Fees Escrow Account</u> means the account established pursuant to <u>Section 2.2(b)</u> of the Plan.

1.80.   <u>Proof of Claim</u> means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

1.81.   <u>Quarterly Fees</u> has the meaning given to such term in <u>Section 12.3</u> of the Plan.

1.82.   <u>Reinstate</u>, <u>Reinstated</u> or <u>Reinstatement</u> means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim or Interest entitles the holder of such Claim or Interest, or (b) notwithstanding any contractual provision or applicable law that entitles the

holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim or Interest as such maturity existed before such default; (iii) compensating the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from any failure to perform a nonmonetary obligation other than a default arising from failure to operate under a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the holder of such Claim or Interest (other than the Debtors or an insider of the Debtors) for any actual pecuniary loss incurred by such Holder as the result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim or Interest entitles the holder thereof.

 1.83. <u>Related Parties</u> means, with respect to an entity, such entity and its current and former affiliates, and such entities' and their current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

 1.84. <u>Release Opt-Out Parties</u> means all holders of Claims and Interests that opted out of this Plan's third-party releases by properly completing and returning an opt-out election form pursuant to the Confirmation Order.

 1.85. <u>Released Parties</u> means, collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition First Lien Lenders; (d) the Prepetition First Lien Agent; (e) the DIP Lender; (f) the DIP Agent; (g) the Supporting Party, and (h) with respect to each of the foregoing entities in clauses (a) through (g), such entity's Related Parties; provided that an entity shall not be a Released Party if it (x) elects to opt out of the Third-Party Release contained in the Plan or (y) timely objects to the Third-Party Release contained in the Plan and such objection is not resolved before Confirmation of the Plan.

 1.86. <u>Releasing Parties</u> means, collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition First Lien Lenders; (d) the Prepetition First Lien Agent; (e) the DIP Lender; (f) the DIP Agent; (g) the Supporting Party, (h) all Holders of Interests; (i) all Holders of Claims; and (j) with respect to each of the foregoing entities in clauses (a) through (i), such entity's Related Parties; provided that an entity shall not be a Releasing Party if it (x) elects to opt out of the Third-Party Release contained in the Plan or (y) timely objects to the Third-Party Release contained in the Plan and such objection is not resolved before Confirmation of the Plan.

 1.87. <u>Reorganized CELP</u> means CELP, or any successor or assign thereto, by merger, amalgamation, consolidation, or otherwise, on or after the Effective Date.

1.88.    Reorganized CELP Interest means the one (1) new interest in Reorganized CELP to be issued on the Effective Date to the Plan Administrator pursuant to the terms of the Plan and the New Organizational Documents.

1.89.    Reorganized CEP means CEP, or any successor or assign thereto, by merger, amalgamation, consolidation, or otherwise, on or after the Effective Date.

1.90.    Reorganized CEP Operating Agreement means the amended and restated limited liability company agreement of Reorganized CEP filed as an exhibit to the Plan Supplement.

1.91.    Reorganized Debtors means the Debtors and any successors thereto by merger, consolidation, conversion or otherwise, on or after the Effective Date, after giving effect to the transactions implementing this Plan.

1.92.    Restructuring Expenses means the reasonable and documented fees and expenses incurred by the Supporting Party, Pre-Petition Agent, Pre-Petition Lender, DIP Agent and DIP Lender pursuant to the terms of the respective fee and engagement letters entered into by such persons, as applicable, in connection with or arising as a result of the Restructuring, the Plan, or the Chapter 11 Cases.

1.93.    Restructuring Support Agreement means the Restructuring Support Agreement among the Debtors, the Prepetition First Lien Lenders and the DIP Lender dated as of May 6, 2022, as amended, modified, or supplemented from time to time in accordance with its terms.

1.94.    Section 510(b) Claim means a Claim that is subordinated, or subject to subordination, pursuant to section 510(b) of the Bankruptcy Code, including, without limitation, a Claim arising from the rescission or purchase of a sale or security of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such security or for reimbursement or contribution on account of such Claim pursuant to section 502 of the Bankruptcy Code.

1.95.    Securities Act means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the U.S. Securities and Exchange Commission promulgated thereunder.

1.96.    Solicitation Procedures Order means an order of the Bankruptcy Court (I) Scheduling Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing the Plan and Disclosure Statement Objection Deadline and Related Procedures, (III) Approving Prepetition Solicitation Procedures, (IV) Approving the Form and Manner of Notice, (V) Directing that a Meeting of Creditors not be Convened, and (VI) Granting Related Relief.

1.97.    Supporting Party means the Supporting Party as defined in the Restructuring Support Agreement.

1.98.    Third-Party Release means the releases set forth in Section 10.5 of the Plan.

1.99.   <u>Trade Claims</u> means any unsecured Claims that (i) are not (a) Claims arising from or based upon rejection of any executory contract or unexpired lease, (b) Administrative Expense Claims, (c) Professional Fee Claims, (d) Priority Tax Claims, (e) DIP Claims, (f) Other Priority Claims, (g) Other Secured Claims, (h) Prepetition First Lien Credit Agreement Claims, (i) General Unsecured Claims, and (j) Intercompany Claims, and (ii) the Holders of which agree to continue to do business with the Reorganized Debtors after the Effective Date.

1.100.   <u>U.S. Trustee</u> means the Office of the United States Trustee for the Southern District of Texas.

1.101.   <u>Unexpired Lease</u> means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.102.   <u>Unimpaired</u> means with respect to a Claim, a Claim that is not Impaired, including any Claim that is Reinstated.

B.   <u>Rules of Interpretation.</u>  For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document, schedule, or exhibit filed or to be filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections or Articles are references to Sections or Articles of this Plan or the Plan Supplement, as the same may be amended, waived or modified from time to time; (f) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Section, subsection or clause contained in this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code (other than section 102(5) of the Bankruptcy Code) will apply; and (i) any reference to an Entity's "subsidiaries" means its direct and indirect subsidiaries.

C.   <u>Computation of Time.</u>  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  In the event that any payment, distribution, act or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day shall be deemed to have been completed or to have occurred as of the required date.

D.     Exhibits and Plan Supplement.   All exhibits to this Plan, as well as the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein.  Holders of Claims and Interests may obtain a copy of the Plan Supplement and the filed exhibits upon written request to the Debtors.  Upon their filing, the Plan Supplement and the exhibits may be inspected (i) in the office of the Clerk of the Bankruptcy Court during normal business hours, (ii) at the Bankruptcy Court's website at http://www.deb.uscourts.gov, or (iii) free of charge on the Debtors' restructuring website at https://www.kccllc.net/cypress.

E.     Deemed Acts.   Whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred by virtue of this Plan and/or Confirmation Order without any further act by any party.

## ARTICLE II:
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

2.1.    Administrative Expense Claims.

Subject to the terms of the Confirmation Order, holders of Allowed Administrative Expense Claims other than Professional Fee Claims or Priority Tax Claims shall be paid in full in cash in accordance with the following: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable; (e) if such Allowed Administrative Claim is an Intercompany Claim (as defined below) but only to the extent that the Reorganized Debtors Reinstate any such Intercompany Claims under the terms of the Plan, in the ordinary course of their business after the Effective Date; or (f) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

2.2.    Professional Fee Claims.

(a)     Final Fee Applications.

All Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503 and/or section 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any Professional or any other entity for making a substantial contribution in the

Chapter 11 Cases) shall file and serve final requests for payment of Professional Fee Claims no later than the first Business Day that is 45 days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtors and the applicable Professional within 21 days after the filing of the final fee application with respect to the Professional Fee Claim. Any such objections that are not consensually resolved may be set for hearing on 21 days' notice by the Professional asserting such Professional Fee Claim. The Professional Fees Escrow Account shall in no way limit or act as a cap on Professional Fee Claims.

(b)     Professional Fees Escrow Account.

On or before the date that is two Business Days after the Confirmation Date, the Debtors shall establish the Professional Fees Escrow Account. On the Effective Date, the Reorganized Debtors shall fund the Professional Fees Escrow Account in an amount equal to all asserted Professional Fee Claims that are unfunded or unpaid, accounting for, and outstanding as of the Effective Date (including, for the avoidance of doubt, any reasonable estimates for unbilled amounts payable by the Reorganized Debtors); *provided, however*, that the amounts deposited in the Professional Fees Escrow Account do not represent a cap of any amounts to be paid to any Professional. Amounts held in the Professional Fees Escrow Account shall not constitute property of the Estates or of the Reorganized Debtors. No Liens, claims, or interests shall encumber the Professional Fees Escrow Account in any way. The Professional Fees Escrow Account may be an interest-bearing account. In the event there is a remaining balance in the Professional Fees Escrow Account following payment to all holders of Professional Fee Claims under the Plan, any such amounts shall be returned to the Reorganized Debtors.

2.3.    <u>DIP Claims</u>. On the Effective Date, each holder of an Allowed DIP Claim shall receive, in full and final satisfaction of its Allowed DIP Claim, New Interests equal to its Pro Rata New Interest Allocation, to be issued by Reorganized CEP, subject to dilution by the Management Incentive Plan.

2.4.    <u>Priority Tax Claims</u>. Except to the extent that a holder of an Allowed Priority Tax Claim and the Debtors agree to a less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtors either (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the initial distribution date and the date such claim becomes an Allowed Claim (or as soon thereafter as practical), (b) through equal annual installment payments in Cash, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, over a period ending not later than five years after the Petition Date, or (c) treatment in a manner not less favorable than the most favored non-priority unsecured Claim provided for by the Plan.

2.5.    <u>Post-Effective Date Fees and Expenses</u>. Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors may, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the implementation and consummation of the Plan incurred by the Reorganized Debtors following the Effective Date that are agreed to be paid by the Reorganized Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327

through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Reorganized Debtors may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

## ARTICLE III:
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

3.1.   <u>Summary of Classification and Treatment of Classified Claims and Interests</u>.

3.1.1   <u>General</u>.

(a)   Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests are classified for all purposes, including, without limitation, voting, Confirmation and distributions pursuant to this Plan, as set forth herein.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

(b)   <u>Grouping of Debtors for Convenience</u>.  This Plan groups certain Claims against, and Interests in, the Debtors together solely for the purpose of describing treatment under the Plan, voting on the Plan, Confirmation, and making distributions in accordance with the Plan.  Such groupings shall not, except as otherwise provided by this Plan or the Confirmation Order, affect any Debtor's status as a separate legal Entity, result in substantive consolidation of any Estates, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets.

(c)   Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

(d)   Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including all Claims, causes of action and controversies arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against any Released Party, or holders of Claims, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtors.  The entry of the Confirmation Order shall constitute the

Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.  The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

3.1.2   <u>Identification of Classes against the Debtors</u>.  The following chart assigns a number to each Class for purposes of identifying each separate Class:

| CLASS | CLAIM OR INTEREST | STATUS | VOTING RIGHTS |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Prepetition First Lien Credit Agreement Claims | Impaired | Entitled to Vote |
| 4 | Trade Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 5 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Reject) |
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Reject) |
| 8 | Interests in CELP | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

3.2.   <u>Treatment of Claims against and Interests in the Debtors</u>.

Each Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Reorganized Debtors and such Holder.  Unless otherwise indicated, the Holder of an Allowed

Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

### 3.2.1   Class 1:  Other Priority Claims

(a)   <u>Classification</u>:  Class 1 consists of all Other Priority Claims.

(b)   <u>Treatment</u>:  Except to the extent that a holder of an Other Priority Claim agrees to a less favorable classification or treatment, each holder of an Allowed Other Priority Claim will receive, in the sole discretion of the Reorganized Debtors:

    i.    payment in full in Cash as promptly as reasonably practicable on the later of (A) the Effective Date and (B) the date on which such Other Priority Claim becomes an Allowed Claim payable under applicable law or any agreement relating thereto; or

    ii.    treatment of such Other Priority Claim in any other manner that renders the claim Unimpaired, including Reinstatement.

All Allowed Other Priority Claims not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

(c)   <u>Voting</u>:  Allowed Claims in Class 1 are Unimpaired.  Each holder of an Allowed Claim in Class 1 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

### 3.2.2   Class 2:  Other Secured Claims.

(a)   <u>Classification</u>:  Class 2 consists of all Other Secured Claims.

(b)   <u>Treatment</u>:  Except to the extent that a holder of an Other Secured Claim agrees to a less favorable classification or treatment, each holder of an Other Secured Claim shall, in the sole discretion of the Reorganized Debtors, receive on the Effective Date (or as promptly thereafter as reasonably practicable) or in the ordinary course of the Reorganized Debtors' business:

    i.    payment in full in Cash, including the payment of any interest Allowed and payable under section 506(b) of the Bankruptcy Code;

    ii.    delivery of the collateral securing such Allowed Other Secured Claim; or

            iii.        treatment of such Allowed Other Secured Claim in any other manner that renders the Claim Unimpaired, including Reinstatement.

    (c)    <u>Voting</u>:  Allowed Claims in Class 2 are Unimpaired.  Each holder of an Allowed Claim in Class 2 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

    3.2.3   <u>Class 3:  Prepetition First Lien Credit Agreement Claims</u>.

    (a)    <u>Classification</u>:  Class 3 consists of all Prepetition First Lien Credit Agreement Claims.

    (b)    <u>Allowance</u>:  The Prepetition First Lien Credit Agreement Claims shall be deemed Allowed on the Effective Date in the principal amount of $59,194,225.05 including interest, fees and expenses accrued through the Effective Date.

    (c)    <u>Treatment</u>:  On the Effective Date, each holder of an Allowed First Lien Credit Agreement Claim shall receive, in full and final satisfaction of its Allowed First Lien Credit Agreement Claim, New Interests equal to its Pro Rata New Interest Allocation, subject to potential dilution by the Management Incentive Plan.

    (d)    <u>Voting</u>:  Claims in Class 3 are Impaired.  Therefore, each holder of an Allowed Claim in Class 3 shall be entitled to vote to accept or reject this Plan.

    3.2.4   <u>Class 4:  Trade Claims</u>.

    (a)    <u>Classification</u>:  Class 4 consists of all Trade Claims.

    (b)    <u>Treatment</u>:  Except to the extent that a holder of a Trade Claim agrees to a less favorable treatment, each holder of a Trade Claim shall, in the sole discretion of the Reorganized Debtors, receive on the Effective Date (or as promptly thereafter as reasonably practicable) or in the ordinary course of the Reorganized Debtors' business:

            i.        Reinstatement of such Allowed Trade Claim pursuant to section 1124 of the Bankruptcy Code; or

            ii.        payment in full in Cash on (A) the Effective Date, or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Trade Claim.

    (c)    <u>Voting</u>:  Allowed Claims in Class 4 are Unimpaired.  Each holder of an Allowed Claim in Class 4 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

3.2.5    Class 5:  General Unsecured Claims.

(a)    Classification:  Class 5 consists of all General Unsecured Claims.

(b)    Treatment:   On the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of its Allowed General Unsecured Claim, its pro rata share of the General Unsecured Claims Pool.

(c)    Voting:  Allowed Claims in Class 5 are Impaired.  Each holder of an Allowed Claim in Class 5 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

3.2.6    Class 6:  Intercompany Claims.

(a)    Classification:  Class 6 consists of all Intercompany Claims.

(b)    Treatment:   On the Effective Date, in the sole discretion of the Reorganized Debtors, all Intercompany Claims shall either be (i) Reinstated or (ii) released without any distribution on account of such Claims.

(c)    Voting:  Allowed Claims in Class 6 are either Unimpaired, in which case the holders of Allowed Class 6 Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and not receiving any distribution under the Plan, in which case the holders of Allowed Class 6 Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each holder of an Allowed Class 6 Claim will not be entitled to vote to accept the Plan.

3.2.7    Class 7:  Intercompany Interests.

(a)    Classification:  Class 7 consists of all Intercompany Interests.

(b)    Treatment:  On the Effective Date, all Intercompany Interests shall be, at the option of the Reorganized Debtors, either: (i) Reinstated; or (ii) cancelled and released without any distribution on account of such Interests.

(c)    Voting:  Allowed Claims in Class 7 are either Unimpaired, in which case the holders of Allowed Class 7 Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and not receiving any distribution under the Plan, in which case the holders of Allowed Class 7 Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each holder of an Allowed Class 7 Claim will not be entitled to vote to accept the Plan.

3.2.8    Class 8: Interests in CELP.

(a)    Classification:  Class 8 consists of all Interests in CELP.

(b) <u>Treatment</u>:  On the Effective Date, all Interests in CELP shall be cancelled and released without any distribution on account of such Interests.

(c) <u>Voting</u>:  Allowed Claims in Class 8 are Impaired.  Each holder of an Allowed Claim in Class 5 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

### 3.2.9   Class 9:  Section 510(b) Claims.

(a) <u>Classification</u>:  Class 9 consists of all Section 510(b) Claims.

(b) <u>Treatment</u>:  On the Effective Date, all Section 510(b) Claims shall be discharged and extinguished and the holders thereof shall not receive or retain any property under this Plan on account of such Section 510(b) Claims.

(c) <u>Voting</u>:  Claims in Class 9 are Impaired.  Each holder of an Allowed Claim in Class 9 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

## ARTICLE IV:
## ACCEPTANCE OR REJECTION OF THE PLAN

4.1.   <u>Impaired Classes of Claims Entitled to Vote on this Plan</u>.  Claims in Class 3 (Prepetition First Lien Credit Agreement Claims) are Impaired, and the holders of such Claims are entitled to vote to accept or reject this Plan.

4.2.   <u>Acceptance by an Impaired Class of Claims</u>.  Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class shall have accepted the Plan if, after excluding any Claims held by any Holder whose Claims have been designated pursuant to section 1126(e) of the Bankruptcy Code, (a) the holders of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept such Plan and (b) more than one-half in number of such Allowed Claims actually voting in such Class have voted to accept the Plan.

4.3.   <u>Presumed Acceptance by Unimpaired Classes</u>.  Class 1 (Other Priority Claims), Class 2 (Other Secured Claims) and Class 4 (Trade Claims) are Unimpaired by this Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, the Holders in such Classes are conclusively presumed to have accepted this Plan and therefore shall not be entitled to vote to accept or reject this Plan.

4.4.   <u>Presumed Rejection by Certain Impaired Classes</u>.  Class 5 (General Unsecured Claims), Class 8 (Interests in CELP), and Class 9 (Section 510(b) Claims) are Impaired by this Plan.  Holders in such Classes will not receive or retain any property under this Plan on account of their Claims and Interests.  Pursuant to section 1126(g) of the Bankruptcy Code, such Holders are conclusively presumed to have rejected this Plan and therefore shall not be entitled to vote to accept or reject this Plan.

4.5.   <u>Presumed Acceptance or Rejection of the Plan</u>.   To the extent Class 6 Intercompany Claims and Class 7 Intercompany Interests are extinguished, each holder of a Claim in Class 6 and Class 7 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to accept or reject the Plan.   To the extent Class 6 Intercompany Claims and Class 7 Intercompany Interests are Reinstated, each holder of a Claim in Class 6 and Class 7 is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

4.6.   <u>Reservation of Rights</u>.   The Debtors reserve the right to amend, modify, or supplement this Plan for any reason but in accordance with the Restructuring Support Agreement.

## ARTICLE V:
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1.   <u>Restructuring Transactions</u> .   On the Effective Date, the applicable Debtors or the Reorganized Debtors shall enter into any transaction, including those transactions set forth in or contemplated by the Restructuring Support Agreement, including, as applicable, the issuance, transfer, or cancellation of any securities, notes, instruments, certificates, and other documents required to be issued, transferred, or cancelled pursuant to the Plan, subject to the terms of the Restructuring Support Agreement. Reorganized CEP shall be the recipient of the credit or equity commitment provided in the Commitment, and Reorganized CEP shall be the issuer of New Interests to the applicable Holders of Claims and Interests as set forth herein and in the applicable Definitive Documentation.  Reorganized CELP shall be the issuer of the Reorganized CELP Interest to the Plan Administrator as set forth herein and in the applicable Definitive Documentation.  The actions to implement this Plan and the Restructuring Support Agreement may include, in accordance with the consent rights in the Restructuring Support Agreement: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; (4) the execution and delivery of contracts or agreements, including, without limitation, transition services agreements, employment agreements, or such other agreements as may be deemed reasonably necessary by the Commitment Party to effectuate the Plan and the Restructuring Support Agreement; and (5) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan.

5.2.   <u>Operations between the Confirmation Date and Effective Date</u>.   During the period from the Confirmation Date through and until the Effective Date, the Debtors may continue to operate their businesses as Debtors in possession in the ordinary course in a manner consistent with their obligations under the Restructuring Support Agreement and the transactions

24

contemplated by the Plan and the Restructuring Support Agreement, subject to all applicable orders of the Bankruptcy Court and the provisions of the Bankruptcy Code.

5.3.    <u>Sources of Cash Consideration for Plan Distributions</u>.  The Reorganized Debtors shall fund distributions and satisfy applicable Allowed Claims under the Plan with Cash on hand and the proceeds of the Commitment.

5.4.    <u>New Interests</u>.  On the Effective Date, holders of Prepetition First Lien Credit Agreement Claims or their designee(s) or holders of DIP Claims or their designee(s) shall receive, and the Reorganized Debtors shall issue, transfer, and deliver to such Holders or their designee(s), the newly issued New Interests, which shall constitute all of the issues and outstanding interests and rights to purchase or otherwise acquire interests in the Reorganized Debtors (subject to potential dilution by the Management Incentive Plan), free and clear of any lien, charge, pledge, security interest, claim, or other encumbrance.  For the avoidance of doubt, the acceptance of New Interests by any Holder pursuant to the treatment of such Holder's Claims under the Plan shall be deemed as such Holder's agreement to the New Organizational Documents, each as may be amended or modified from time to time following the Effective Date in accordance with its terms.

5.5.    <u>Section 1145 Exemption</u>.  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance and distribution of the New Interests and the Reorganized CELP Interest shall be exempt from, among other things, the registration and prospectus delivery requirements of section 5 of the Securities Act, and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution or sale of securities, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act.  In addition, any securities issued under the Plan shall be freely transferable under the Securities Act by the recipients thereof, subject to compliance with any rules and regulations of the U.S. Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Interests and applicable regulatory approval, if any.

5.6.    <u>Corporate Governance, Directors, Officers, and Corporate Action</u>.

5.6.1    <u>Certificate of Incorporation; Reorganized CEP Operating Agreement</u>.  On the Effective Date, the Reorganized CEP Operating Agreement and certificates of incorporation of Reorganized CEP shall go into effect.  Consistent with, but only to the extent required by, section 1123(a)(6) of the Bankruptcy Code, on the Effective Date, the certificates of incorporation of the Reorganized Debtors shall prohibit the issuance of non-voting equity securities.  After the Effective Date, each of the Reorganized Debtors may amend and restate its certificates or articles of incorporation, by-laws, or similar governing documents, as applicable, as permitted by applicable law.

5.6.2    <u>The New Board</u>.  Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the number and identity of the members of the New Board shall be selected and approved by the Supporting Party, with the constitution of the New Board to be identified in the Plan Supplement prior to the Confirmation

Hearing.  After the Effective Date, the New Organizational Documents, as each may be amended thereafter from time to time, shall govern the designation and election of directors.

5.6.3    Corporate Action.  On the Effective Date, (i) the selection of directors and officers for the Reorganized Debtors, (ii) the issuance and distribution of the New Interests and the Reorganized CELP Interest, and (iii) all other actions and transactions contemplated by this Plan shall be deemed authorized and approved in all respects (subject to the provisions of this Plan).  All matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with this Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirement of further action by the security holders or directors of the Debtors or the Reorganized Debtors in accordance with section 303 of the Delaware General Corporation Law and the provisions of the Bankruptcy Code.  On and after the Effective Date, the appropriate officers of the Reorganized Debtors and members of the boards of directors or managers of the Reorganized Debtors shall be authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by this Plan in the name of and on behalf of the Reorganized Debtors.

5.7.    Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors.  On and after the Effective Date, after giving effect to each of the actions contemplated under this Plan, the Reorganized Debtors shall continue to exist in accordance with the applicable law in the jurisdiction in which it is formed.  Pursuant to section 1141(b) of the Bankruptcy Code, except as otherwise provided under this Plan, all property of the Estates, including all claims, rights, and Causes of Action and any property acquired by the Debtors or the Reorganized Debtors under or in connection with this Plan, together with any property of the Debtors that is not property of their Estates and that is not specifically disposed of pursuant to this Plan, shall revest in the Reorganized Debtors on the Effective Date free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as specifically provided in this Plan or the Confirmation Order.  Thereafter, the Reorganized Debtors may operate their business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules.  As of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Liens and non-Reinstated Claims, except as specifically provided in this Plan (including Sections 3.2.3(b) and 3.2.4(b) herein) or the Confirmation Order.

5.8.    Cancelation of Liens; Surrender and Cancelation of Notes, Instruments, Certificates, and Other Documents Evidencing Claims.  Except as otherwise provided in this Plan, on the Effective Date, in consideration for the distributions to be made on the Effective Date pursuant to this Plan, all Liens, charges, and encumbrances related to any Claim or Interest, other than any Lien securing an Other Secured Claim or a First Lien Credit Agreement Claim that is, in each case, Reinstated pursuant to this Plan, shall be terminated, null and void and of no effect.  The holders of Other Secured Claims (other than Other Secured Claims that are Reinstated pursuant to this Plan) shall be authorized and directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such Holder and to take such actions as may be requested by the Debtors (or the Reorganized Debtors, as the case may be) to evidence the release of any Liens, including the execution, delivery, and filing or recording of such release documents as may be requested by the Debtors (or the Reorganized Debtors, as the case may be).  On the Effective Date, except to the extent otherwise provided in

the Plan, all notes, instruments, certificates, and other documents evidencing Claims shall be cancelled and the obligations of the Debtors discharged in accordance with section 1141(d)(1) of the Bankruptcy Code.

5.9.    <u>Registration of New Interests</u>.  On the Effective Date, the New Interests and the Reorganized CELP Interest shall not be listed for public trading on any securities exchange, the Reorganized Debtors will not be a reporting company under the Securities Exchange Act of 1934, and the Reorganized Debtors shall not be required to file reports with the U.S. Securities and Exchange Commission or any other governmental entity.

5.10.    <u>Additional Transactions Authorized under This Plan</u>.

5.10.1 On or after the Effective Date, the Reorganized Debtors shall be authorized to take any such actions as may be necessary or appropriate to Reinstate Claims or Interests or render Claims or Interests not Impaired, as provided for under this Plan.

5.10.2 On or after the Effective Date, the Reorganized Debtors shall be authorized to pay the Restructuring Expenses.

5.11.    <u>Management Incentive Plan</u>.  Following the Effective Date, the Reorganized Debtors may (a) reserve a certain percentage of New Interests as determined by the Reorganized Debtors and the Commitment Party, on a fully diluted, fully distributed basis, for grants made from time to time to employees of the Reorganized Debtors and (b) otherwise contain terms and conditions (including with respect to participants, allocation, structure, and timing of issuance) generally consistent with those prevailing in the market at the discretion of the New Board.

5.12.    <u>Comprehensive Settlement of Claims and Controversies</u>.  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are in the best interests (i) of the Debtors, the Reorganized Debtors, the Estates, and their respective property and (ii) Claim and Interest holders, and are fair, equitable, and reasonable.

5.12.1 <u>Preservation of Causes of Action</u>.

(a)    In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article X hereof, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article X.

(b)      The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article X of the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

(c)      The Reorganized Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.   In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor, except as otherwise expressly provided in the Plan, including Article X of the Plan. The Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

5.13.   <u>General Unsecured Claims Pool</u>.  On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors shall deposit the General Unsecured Claims Pool into an account maintained by the Plan Administrator, for the benefit of the holders of Allowed General Unsecured Claims.   On the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed General Unsecured Claim shall receive its pro rata share (based upon the total amount of such Holder's Allowed Claim relative to the total amount of all Allowed General Unsecured Claims) of the General Unsecured Claims Pool.

5.13.1 <u>Deficiency Claims Waiver</u>.  Solely for the purposes of the classification and treatment provisions under this Plan, each of the Prepetition First Lien Lenders agrees to waive and shall receive no distribution on account of its unsecured deficiency claims arising under the Prepetition First Lien Credit Agreement.

5.13.2 <u>Debtors' Waiver and Release of Certain Causes of Action</u>.   On the Effective Date, the Debtors and their Estates shall forever waive, relinquish, and release any and all Causes of Action arising under Chapter 5 of the Bankruptcy Code and similar state law, the Debtors and their Estates had, have, or may have had against any Holder of a Class 5 General Unsecured Claim that (i) does not elect to opt out of the Third-Party Release contained in the Plan, (ii) does not timely object to the Third-Party Release contained in the Plan, or (iii) does

timely object to the Third-Party Release contained in the Plan but such objection is resolved before Confirmation of the Plan.

          5.13.3  <u>Costs of Administering the General Unsecured Claims Pool</u>.  Any costs, fees, expenses, and the like anticipated to be incurred by the Plan Administrator in connection with administering the General Unsecured Claims Pool, reconciling and Filing objections to General Unsecured Claims, settling, compromising, withdrawing, or litigating to judgment such objections, and making or causing distributions to holders of General Unsecured Claims pursuant to this Plan shall be paid from the General Unsecured Claims Pool.

     5.14.  <u>Debtors' Waiver and Release of Interests in CELP</u>.  On the Effective Date, the Debtors and their Estates shall forever waive, relinquish, and release any and all Causes of Action related to distributions made to any Holder of a Class 8 Interest in CELP, including any avoidance actions under Chapter 5 of the Bankruptcy Code and similar state law, the Debtors and their Estates had, have, or may have had against any such Holder of a Class 8 Interest in CELP that (i) does not elect to opt out of the Third-Party Release contained in the Plan, (ii) does not timely object to the Third-Party Release contained in the Plan, or (iii) does timely object to the Third-Party Release contained in the Plan but such objection is resolved before Confirmation of the Plan.

**ARTICLE VI:**
**TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND**
**INSURANCE POLICIES**

     6.1.  <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.  On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, <u>unless</u> such Executory Contract or Unexpired Lease (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is subject to a motion to reject such Executory Contract or Unexpired Lease filed prior to the Effective Date, or (iv) appears on the "List of Executory Contracts and Unexpired Leases to be Assumed at the Confirmation Hearing" that will be filed with the Plan Supplement.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections and the assumptions of any Executory Contract or Unexpired Lease for which a motion to assume has been filed, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume or reject Executory Contracts of Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date.  To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, including any "change of control" provision, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

     6.2.  <u>Cure Obligations</u>.

6.2.1    Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan or otherwise shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitations described in below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Bankruptcy Court shall hear such dispute prior to the assumption becoming effective.  The Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

6.2.2    Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute a finding by the Bankruptcy Court that (i) each such assumption is in the best interest of the Debtors and their Estates, (ii) the requirements of section 365(b)(1) of the Bankruptcy Code are deemed satisfied, and (iii) the assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether money or nonmonetary, as of the Effective Date.

6.2.3    Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article VI shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article VI shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

6.3.    <u>Insurance Policies and Agreements</u>.  Insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date.  To the extent that such insurance policies or agreements are considered to be Executory Contracts or Unexpired Leases, this Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors and their Estates.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy.

30

6.4.     Postpetition Contracts and Leases.  All contracts, agreements and leases that were entered into by the Debtors or assumed by the Debtors after the Petition Date in compliance with the terms of the Restructuring Support Agreement shall be deemed assigned by the Debtors to the Reorganized Debtors on the Effective Date.

6.5.     Modifications, Amendments, Supplements, Restatements, or Other Agreements. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contracts or Unexpired Leases including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.  Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claims that may arise in connection therewith.

6.6.     Nonoccurrence of Effective Date.  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VII:
## PROVISIONS GOVERNING DISTRIBUTIONS

7.1.     Timing and Calculation of Amounts to Be Distributed.  Except as otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII. Except as otherwise provided in the Plan, holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. Notwithstanding anything to the contrary in this Plan or the Confirmation Order, no holder of an Allowed Claim shall, on account of such Allowed Claim or Allowed Interest, receive a distribution in excess of the Allowed amount of such Claim. All distributions under the Plan shall be made by the Disbursing Agent.

7.2.     Distributions on Account of Claims Allowed after the Effective Date.  Except as otherwise provided in this Plan, the Confirmation Order, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of a Disputed Claim that becomes an

Allowed Claim after the Effective Date shall be made as soon as reasonably practicable after the Disputed Claim becomes an Allowed Claim.

7.3.    <u>Special Rules for Distributions to Holders of Disputed Claims</u>.  Notwithstanding any provision to the contrary in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the relevant Disbursing Agent shall establish appropriate reserves for potential payment of such Claims.

7.4.    <u>Means of Cash Payment</u>.  Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of relevant Disbursing Agent by (a) checks drawn on or (b) wire transfers.  Cash payments to foreign creditors may be made, at the option of the relevant Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

7.5.    <u>Minimum; De Minimis Distributions</u>.  No Cash payment of less than $25.00, in the reasonable discretion of the relevant Disbursing Agent, shall be made to a holder of an Allowed Claim on account of such Allowed Claim.

7.6.    <u>Withholding and Reporting Requirements</u>.  In connection with this Plan and all distributions thereunder, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing such other mechanisms that the Reorganized Debtors, as appropriate, believes are reasonable and appropriate.  All persons holding Claims or Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes.  Each holder of an Allowed Claim that is to receive a distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution.  No distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtors, as appropriate, for the payment and satisfaction of such tax obligations.

7.7.    <u>Compliance Matters</u>.  The Disbursing Agent shall be entitled to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and similar encumbrances.

7.8.    <u>Setoff and Recoupment</u>.  The Disbursing Agent may, pursuant to sections 553 and/or 558 of the Bankruptcy Code or applicable non-bankruptcy laws, but shall not be required to, set off and/or recoup against any Claim the payments or other distributions to be made pursuant to this Plan in respect of such Claim, or claims of any nature whatsoever that the

Debtors or the Reorganized Debtors may have against the holder of such Claim; *provided, however*, that neither the failure to assert such rights of setoff and/or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any claim that the Debtors or the Reorganized Debtors may assert against any holder of an Allowed Claim.

7.9.   <u>Reinstated Claims</u>.  Notwithstanding anything contained herein to the contrary, nothing shall affect, diminish or impair the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Reinstated Claim, including, but not limited to, legal and equitable rights of setoff and/or recoupment against the holders of any Reinstated Claims.

7.10.   <u>Undeliverable or Non-Negotiated Distributions and Unclaimed Property</u>.  If any distribution is returned as undeliverable, no further distributions to the applicable Holder shall be made unless and until the relevant Disbursing Agent is notified in writing of such Holder's then-current address, at which time the undelivered distribution shall be made to such Holder without interest or dividends *provided, however*, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the distribution is made.  Notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary, all undeliverable distributions under the Plan that remain unclaimed for one year after attempted distribution shall indefeasibly revert to the Reorganized Debtors or, if such undeliverable distribution was to a holder of a Class 5 Claim, be distributed *pro rata* to the remaining holders of Class 5 Allowed Claims.  Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety calendar days from and after the date of issuance thereof.  Requests for reissuance of any check must be made directly and in writing to the relevant Disbursing Agent by the holder of the relevant Allowed Claim within the 90-calendar-day period.  If a request for reissuance is not timely made within the 90-calendar-day period in accordance with the preceding sentence, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be deemed undeliverable as of the date of the original issuance of the check and shall indefeasibly revert to the Reorganized Debtors in accordance with the terms hereof or, if such unnegotiated check was on account of a Class 5 Claim, be distributed *pro rata* to the remaining holders of Allowed Claims in Class 5, notwithstanding any federal or state escheat laws to the contrary.  If at the end of the process, less than $5,000 is left in the General Unsecured Claims Pool, the Plan Administrator can vote to donate the remaining funds to a charity.

7.11.   <u>Claims Paid by Third Parties</u>.  To the extent a Holder receives a distribution on account of a Claim and also receives payment from a party that is not the Disbursing Agent on account of such Claim, such Holder shall, within thirty calendar days of receipt thereof, repay or return the distribution to the Disbursing Agent, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of the Claim as of the date of any such distribution under the Plan.

7.12.    Applicability of Insurance Policies.    Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VIII:**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

8.1.    Allowance of Claims.    After the Effective Date, the Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date.    Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

8.2.    Claims Administration Responsibilities.    Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors, or the Plan Administrator solely with respect to Class 5 Claims, shall have the sole authority to:  (1) reconcile, file, withdraw, or litigate to judgment objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor or the Plan Administrator, as applicable, shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest.

8.3.    Adjustment to Claims without Objection.    Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Reorganized Debtors, as applicable, without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

8.4.    Time to File Objections to Claims.    Any objections to Claims shall be filed on or before the Claims Objection Bar Date.

8.5.    Disallowance of Claims.    Any Claims held by an Entity that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order

with respect thereto has been entered and all sums due, if any, to the Debtors or the Reorganized Debtors by that Entity have been turned over or paid to the applicable Entity.

8.6.    Late-Filed Claims.  Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims will not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late-filed Claims have been deemed timely filed by a Final Order.

8.7.    Late Claims/Amendments to Claims.  On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be filed without the prior authorization of the Bankruptcy Court following notice and a hearing. Any Claim filed in contravention of this Section 8.7 shall be deemed disallowed in full and expunged without any further action. A Claim may be amended only in accordance with the Bankruptcy Code and the Bankruptcy Rules.

8.8.    No Distributions Pending Allowance.  If an objection to a Claim or Interest or portion thereof is filed as set forth in Article VIII of this Plan, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

8.9.    Distributions after Allowance.  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim.

## ARTICLE IX:
## CONFIRMATION AND CONSUMMATION OF THE PLAN

9.1.    Conditions to Effective Date.  This Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived in accordance with Section 9.2 of this Plan:

9.1.1    The Bankruptcy Court shall have entered the Confirmation Order, in form and substance satisfactory to (a) the Debtors, (b) the Supporting Party, and (c) the DIP Lender, and the Confirmation Order shall be a Final Order.

9.1.2    Simultaneously with the occurrence of the Effective Date, the Commitment shall be in form and substance acceptable to (a) the Debtors, (b) the Commitment Party, and (c) the DIP Lender.

9.1.3    Issuance of the New Interests and Reorganized CELP Interest (with all conditions precedent thereto having been satisfied or waived).

35

9.1.4    All requisite governmental authorities and third parties shall have approved or consented, or such time period to object, stay, or limit shall have expired, to the transactions contemplated by this Plan, to the extent reasonably required.

9.1.5    Negotiation, execution, and delivery of the Definitive Documentation.

9.1.6    All amounts required to be funded or paid on or before the Effective Date pursuant to this Plan or the Confirmation Order shall have been funded or paid.

9.2.    <u>Waiver of Conditions</u>.  Each of the conditions set forth in <u>Section 9.1</u> of this Plan may be waived in whole or in part with the consent of both the Debtors and Supporting Party, in their respective sole discretion.

9.3.    <u>Vacatur of Confirmation Order</u>.  If the Confirmation Order is vacated, which shall occur automatically upon failure of the Effective Date:  (a) this Plan shall be null and void in all respects; (b) any settlement of Claims or Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) the time within which the Debtors may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of 120 days after the date the Confirmation Order is vacated.

9.4.    <u>Notice of Effective Date</u>.  The Debtors shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date on the Effective Date or as soon as practicable thereafter.

## ARTICLE X:
## EFFECT OF PLAN CONFIRMATION

10.1.    <u>Binding Effect</u>.    On the Effective Date, except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, all provisions of this Plan or the Plan Supplement, including all agreements, instruments, and other documents filed in connection with this Plan and executed by the Debtors or the Reorganized Debtors in connection with this Plan or the Plan Supplement, shall be binding upon the Debtors, the Reorganized Debtors, and all holders of Claims against and Interests in the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted this Plan, and all other parties that are affected in any manner by this Plan.  Except as expressly provided otherwise in the Plan, all agreements, instruments, and other documents filed in connection with this Plan shall be given full force and effect, and shall bind all parties referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement.

10.2.    <u>Discharge</u>.

10.2.1    <u>Discharge of Claims and Termination of Interests</u>.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date,

of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

10.2.2 <u>Discharge Injunction</u>.   As of the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, all Entities (other than holders of Reinstated Claims solely in their capacities as such) shall be precluded from asserting against the Debtors or the Reorganized Debtors and their respective assets and property or the Estates, any other or further Claims (other than those Reinstated under this Plan), or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, relating to the Debtors or Reorganized Debtors or any of their respective assets and property or the Estates, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as expressly provided in this Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all non-Reinstated Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors, the Reorganized Debtors, or their respective assets, property and Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability.  Except as otherwise specifically provided in this Plan or the Confirmation Order, all Persons or Entities who have held, hold or may hold Claims or Interests that arose prior to the Effective Date and all other parties-in-interest, along with their respective present or former employees, agents, officers, directors, principals, representatives and Affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim (including a Section 510(b) Claim) against or Interest in the Reorganized Debtors or property of the Reorganized Debtors, other than to enforce any right to a distribution pursuant to the Plan, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Reorganized Debtors or property of the Reorganized Debtors, other than to enforce any right to a distribution pursuant to this Plan, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Reorganized Debtors or against the property or interests in property of the Reorganized Debtors, other than to enforce any right to a distribution pursuant to this Plan or (iv) asserting any right of

setoff, subrogation or recoupment of any kind against any obligation due from the Reorganized Debtors or against the property or interests in property of the Reorganized Debtors, with respect to any such Claim or Interest. Such injunction shall extend to any successors or assignees of the Reorganized Debtors and their respective properties and interest in properties. For the avoidance of doubt, the provisions of this <u>Section 10.2.2</u> shall not apply with respect to Claims that are Reinstated under this Plan, including, without limitation, the Prepetition First Lien Credit Agreement Claims.

**10.3.   <u>Release of Liens</u>.  Release of Liens. Except as otherwise provided in this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with <u>Section 3.2.2</u> hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**10.4.   <u>Releases by the Debtors</u>.  As of the Effective Date, each Released Party will be deemed released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates or Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, the Debtors or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the**

Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consumation of the Disclosure Statement, the DIP Credit Agreement, the Plan, the Restructuring Support Agreement, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Credit Agreement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to a Released Party's willful misconduct or intentional fraud as determined by a final order of the Bankruptcy Court; *provided* that any right to enforce the Plan and Confirmation Order is not so released by this section.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released pursuant to the Debtor Release.

10.5.   <u>Releases by Holders of Claims and Interests</u>.  As of the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, Reorganized Debtors, and each Released Party from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtors and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the DIP Credit Agreement, the Plan, the Restructuring Support Agreement, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Credit Agreement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or

39

**upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to a Released Party's willful misconduct or intentional fraud as determined by a final order of the Bankruptcy Court;** *provided* **that any right to enforce the Plan and Confirmation Order is not so released by this section.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

10.6.  <u>Exculpation</u>.  From and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to, or be subject to any right of action by, any holder of a Claim or an Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating, or implementing this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the solicitation of acceptances of this Plan, Confirmation, and the pursuit thereof, the consummation of this Plan, the administration of this Plan, the property to be distributed under this Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases or implementation of this Plan.

Notwithstanding the foregoing, solely to the extent provided by section 1125(e) of the Bankruptcy Code, the Debtors and the Reorganized Debtors shall neither have, nor incur any liability to any Entity for any exculpated Claim; *provided, however*, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, willful misconduct or gross negligence.

Any of the Exculpated Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under this Plan.

10.7.  <u>Injunctions Related to Exculpation and Releases</u>.

(a)     Except as expressly provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons and Entities that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, Cause of Action, or liability of any nature whatsoever, of the types described in <u>Section 10.6</u> of this Plan and relating to the Debtors, the Reorganized Debtors or any of their respective assets and property and/or the

Estates, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred, and enjoined from taking any of the following actions against any Exculpated Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action, or liabilities: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting, or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Section 10.2</u> of this Plan; and/or (v) commencing or continuing in any manner any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.

(b)    Except as expressly provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons and Entities that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, Cause of Action, or liability of any nature whatsoever, of the types described in <u>Section 10.5</u> of this Plan and relating to the Debtors, the Reorganized Debtors or any of their respective assets and property and/or the Estates, the Chapter 11 Cases, this Plan, the Plan Supplement, and/or the Disclosure Statement are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities:  (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting, or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Section 10.2</u> of this Plan; and/or (v) commencing or continuing in any manner any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.

10.8.    <u>Survival of Indemnification and Exculpation Obligations</u>.  The obligations of the Debtors to indemnify and exculpate any past and present directors, officers, agents, employees and representatives who provided services to the Debtors prior to or after the Petition Date, pursuant to certificates or articles of incorporation, by-laws, contracts, and/or applicable statutes, in respect of all actions, suits, and proceedings against any of such officers, directors, agents, employees, and representatives, based upon any act or omission related to service with, for or on behalf of the Debtors, shall not be discharged or Impaired by Confirmation or consummation of

this Plan and shall be assumed by the Reorganized Debtors.  For the avoidance of doubt, this Section 10.8 affects only the obligations of the Debtors and Reorganized Debtors with respect to any indemnity or exculpation owed to or for the benefit of past and present directors, officers, agents, employees, and representatives of the Debtors, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Person, including any provider of director and officer insurance, owed to or for the benefit of such past and present directors, officers, agents, employees, and representatives of the Debtors.

10.9.  Term of Bankruptcy Injunction or Stays.  All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.10.  Liability to Governmental Units.  Nothing in the Confirmation Order or the Plan discharges, releases, resolves, precludes, exculpates, or enjoins:  (i) any liability to any Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any police or regulatory liability to a Governmental Unit to the extent of such entity's liability under non-bankruptcy law on account of its status as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors.  For the avoidance of doubt, the foregoing shall not limit the scope of discharge of all Claims and equity interests arising prior to the Effective Date under sections 524 and 1141 of the Bankruptcy Code, or limit the Debtors' or Reorganized Debtors' rights under section 525 of the Bankruptcy Code.  Nothing in the Confirmation Order or this Plan shall affect any setoff or recoupment rights of any Governmental Unit.

## ARTICLE XI:
## RETENTION OF JURISDICTION

11.1.  Retention of Jurisdiction.  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to: allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim or Priority Tax Claim, and the resolution of any objections to the secured or unsecured status, allowance, priority, or amount of Claims or Interests;

(a)    resolve any matters related to the assumption or rejection of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors or Reorganized Debtors may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)    ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes from, or relating to distributions under, the Plan;

(c)     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(d)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, the Restructuring Support Agreement, and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Plan Supplement or the Confirmation Order, and issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(e)     resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan, the Restructuring Support Agreement, or any contract, instrument, release or other agreement or document that is executed or created pursuant to this Plan, or any Entity's rights arising from or obligations incurred in connection with this Plan or such documents, including hearing and determining disputes, cases, or controversies arising in connection with the interpretation, implementation or enforcement of the Plan, Restructuring Support Agreement or the Confirmation Order;

(f)     enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(g)     adjudicate, decide, or resolve any and all disputes as to the ownership of any Claim or Interest;

(h)     approve any modification of this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or approve any modification of the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, the Plan Supplement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, the Plan Supplement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(i)     hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

(j)     subject to Section 8.1, hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 363, 503(b), 1103, and 1129(a)(9) of the Bankruptcy Code, which shall be payable by the Debtors only upon allowance thereof pursuant to an order of the Bankruptcy Court;

(k)     hear and determine Causes of Action by or on behalf of the Debtors or the Reorganized Debtors;

(l)     hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(m)     hear and determine any issues arising under, or violations of, section 525 of the Bankruptcy Code;

(n)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or if distributions pursuant to this Plan are enjoined or stayed;

(o)     determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Order, the Restructuring Support Agreement, or any contract, instrument, release, or other agreement, or document created in connection with this Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order;

(p)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

(q)     hear and determine all matters related to the property of the Estates from and after the Confirmation Date;

(r)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code;

(s)     enter a final order or decree concluding or closing the Chapter 11 Cases; and

(t)     hear any other matter not inconsistent with the Bankruptcy Code;

*provided, however*, that the Bankruptcy Court shall not retain jurisdiction after the Effective Date over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court, including, for the avoidance of doubt, and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

## ARTICLE XII:
## MISCELLANEOUS PROVISIONS

12.1.  <u>Effectuating Documents and Further Transactions</u>.  Each of the Debtors and the Reorganized Debtors is authorized to execute, deliver, file or record such contracts, instruments, certificates, notes, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, and the New Interests and the Reorganized CELP Interest issued under or in connection with this Plan.

12.2.  <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code:  (a) the issuance, transfer or exchange of equity securities under this Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; or (c) the making or delivery of any deed or other instrument of transfer under this Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee or other similar tax or governmental assessment in the United States.  The Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

12.3.  <u>Payment of Statutory Fees</u>.   All fees due and payable pursuant to section 1930(a)(6) of Title 28 of the United States Code ("<u>Quarterly Fees</u>") prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Reorganized Debtors shall be liable for any and all Quarterly Fees when they are due and payable after the Effective Date.  The Debtors shall file all Quarterly Reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court Quarterly Reports in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Reorganized Debtors during the applicable period, attested to by an authorized representative of the Reorganized Debtors.  The Reorganized Debtors shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the Debtors' cases being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

12.4.  <u>Amendment or Modification of this Plan</u>.   Subject to section 1127 of the Bankruptcy Code, the Debtors may alter, amend or modify this Plan or any exhibits thereto at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan, solely in accordance with the Restructuring Support Agreement.  Any holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment, or modification is made in accordance with the Restructuring Support Agreement and does not materially and adversely change the treatment of the Claim of such Holder.

12.5.  <u>Severability of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted, provided that any such holding, alteration or interpretation complies and is consistent with the Restructuring Support Agreement and does not adversely impact the holders of the Prepetition First Lien Credit Agreement Claims. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected,

impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.6.   Closing of Chapter 11 Cases; Caption Change.  The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases, *provided,* as of the Effective Date, the Reorganized Debtors may submit separate orders to the Bankruptcy Court under certification of counsel closing each of the closing cases and changing the caption of the Chapter 11 Cases accordingly, *provided further* that matters concerning Claims may be heard and adjudicated in a remaining case regardless of whether the applicable Claim is against a Debtor in a closing case. Nothing in this Plan shall authorize the closing of any case *nunc pro tunc* to a date that precedes the date any such order is entered.  Any request for *nunc pro tunc* relief shall be made on motion served on the United States Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing. Upon the filing of a motion to close the last remaining case, the Reorganized Debtors shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1(c).

12.7.   Successors and Assigns.  This Plan shall be binding upon and inure to the benefit of the Debtors, and their successors and assigns, including, without limitation, the Reorganized Debtors.  The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

12.8.   Non-Consummation.  If consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors, or any other Person, or (iii) constitute an admission of any sort by the Debtors, or any other Person.

12.9.   Notice to Debtors or Reorganized Debtors .  All notices, requests and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtor | Counsel to the Debtor |
|---|---|
| Cypress Environmental Partners, L.P.<br>Attn: Peter C. Boylan III, Chairman & CEO<br>5727 South Lewis Avenue, Suite 500<br>Tulsa, Oklahoma 74105<br>Email: pete@cypressenvironmental.biz | Justin Rawlins, Esq.<br>Paul Hastings LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, California 90067<br>Email: justinrawlings@paulhastings.com<br><br>-and-<br><br>Matthew J. Micheli, Esq.<br>Matthew Smart, Esq.<br>Michael Jones, Esq.<br>Paul Hastings LLP<br>71 S. Wacker Drive, Suite 4500<br>Chicago, Illinois 60606<br>Email: mattmicheli@paulhastings.com<br>matthewsmart@paulhastings.com<br>michaeljones@paulhastings.com |
| **Reorganized Debtors** | **Prepetition First Lien Lenders** |
| Samuel S. Ory, Esq.<br>Frederic Dorwart, Lawyers PLLC<br>124 East Fourth Street<br>Tulsa, Oklahoma 74103<br>Email: sory@fdlaw.com | Samuel S. Ory, Esq.<br>Frederic Dorwart, Lawyers PLLC<br>124 East Fourth Street<br>Tulsa, Oklahoma 74103<br>Email: sory@fdlaw.com |
| **Commitment Party** | **United States Trustee** |
| Samuel S. Ory, Esq.<br>Frederic Dorwart, Lawyers PLLC<br>124 East Fourth Street<br>Tulsa, Oklahoma 74103<br>Email: sory@fdlaw.com | Office of the United States Trustee<br>515 Rusk, Suite 3516<br>Houston, Texas 77002<br>Attn: Stephen Statham |

12.10.  <u>Governing Law</u>.  Subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, and subject further to Section 11.1 of this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with (i) the Bankruptcy Code, the Bankruptcy Rules or other federal law to the extent applicable and (ii) if none of such law is applicable, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

12.11.  <u>Tax Reporting and Compliance</u>.  The Reorganized Debtors are hereby authorized, on behalf of the Debtors, to request an expedited determination under section 505 of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

12.12.  <u>Exhibits</u>.  All exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

12.13.  <u>Filing of Additional Documents</u>.  On or before substantial consummation of this Plan, the Reorganized Debtors and the Debtor shall, as applicable, file such agreements and other documents as may be necessary or appropriate to effectuate and evidence further the terms and conditions of this Plan.

12.14.  <u>Plan Documents</u>.  The Plan and the Plan Supplement, including all exhibits, supplements, appendices and schedules thereto, and any modifications to any of the foregoing, shall be in form and substance acceptable to the Debtors and Prepetition First Lien Lenders.

12.15.  <u>Reservation of Rights</u>.  Except as expressly set forth herein, this Plan shall have no force and effect unless the Bankruptcy Court has entered the Confirmation Order.  The filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtors with respect to this Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtors, the Prepetition Agent, the Prepetition First Lien Lenders or any other Person with respect to Claims against and Interests in the Debtors.

Dated:  June 16, 2022

CYPRESS ENVIRONMENTAL PARTNERS, L.P.,
on behalf of itself and the other Debtor Entities.

_/s/ Peter C. Boylan III_
Peter C. Boylan III
Chairman and CEO