United States Bankruptcy Court
Southern District of Texas

**ENTERED**
June 21, 2022
Nathan Ochsner, Clerk

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) | Case No. 22-90039 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER (A) APPROVING THE
## DEBTORS' DISCLOSURE STATEMENT ON A FINAL
## BASIS AND (B) CONFIRMING THE SECOND MODIFIED
## JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF
## CYPRESS ENVIRONMENTAL PARTNERS, L.P. AND ITS DEBTOR AFFILIATES

The above-captioned debtors (collectively, the "<u>Debtors</u>") having:

a.  distributed, on or about May 8, 2022: (i) the *Joint Prepackaged Chapter 11 Plan of Reorganization for Cypress Environmental Partners, L.P. and Its Debtor Affiliates* [Docket No. 15] (as modified by the First Modified Plan and the Second Modified Plan (each as defined below) and as may be further modified, amended, or supplemented from time to time, the "<u>Plan</u>"), (ii) the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization for Cypress Environmental Partners, L.P. and Its Debtor Affiliates* [Docket No. 16] (the "<u>Disclosure Statement</u>"), and (iii) ballots for voting on the Plan (the "<u>Ballot</u>") to holders of Claims[2] entitled to vote on the Plan, namely holders of Class 3 Claims (Prepetition First Lien Credit Agreement Claims), in accordance with the terms of

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632). The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 500, Tulsa, Oklahoma 74105.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates* [Docket No. 55] (as amended, supplemented, or modified, the "<u>Modified Plan</u>"), the Disclosure Statement, or the Bankruptcy Code (each, as defined herein), as applicable. The rules of interpretation set forth in Article I.B. of the Plan apply.

title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "<u>Local Rules</u>"), and the Procedures for Complex Cases in the Southern District of Texas (the "<u>Complex Case Procedures</u>");

b.      commenced, beginning on May 8, 2022 (the "<u>Petition Date</u>"), these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

c.      filed, on May 9, 2022, the Plan and the Disclosure Statement;

d.      filed, on May 9, 2022, the *Debtors' Emergency Motion for Entry of an Order (I) Scheduling Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing the Plan and Disclosure Statement Objection Deadline and Related Procedures, (III) Approving Prepetition Solicitation Procedures, (IV) Approving the Form and Manner of Notice, (V) Directing That a Meeting of Creditors Not Be Convened, and (VI) Granting Related Relief* [Docket No. 17] (the "<u>Solicitation Procedures Motion</u>");

e.      filed, on May 9, 2022, the *Declaration of Peter C. Boylan III, Chairman & Chief Executive Officer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 12] (the "<u>First Day Declaration</u>"), detailing the facts and circumstances of the Debtors' Chapter 11 Cases;

f.      filed, on May 10, 2022, the *Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates* [Docket No. 55] (the "<u>First Modified Plan</u>");

g.      filed, on May 11, 2022, the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Case, (II) Combined Hearing on Disclosure Statement Approval, Plan Confirmation, and Related Matters, (III) Objection Deadline and Related Procedures, and (IV) Summary of the Plan of Reorganization* [Docket No. 67] (the "<u>Confirmation Hearing Notice</u>"), consistent with the order granting the Solicitation Procedures Motion [Docket No. 63] (the "<u>Solicitation Procedures Order</u>"), which contained notice of the commencement of these Chapter 11 Cases, the date and time set for the hearing to consider final approval of the Disclosure Statement and Confirmation of the Plan (the "<u>Confirmation Hearing</u>"), and the deadline for filing objections to the Plan and the Disclosure Statement;

h.      distributed, on May 16, 2022, in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures, the Confirmation Hearing Notice, the Notice of Non-Voting Status, and the Opt-Out Form (collectively, the "<u>Solicitation Materials</u>");

i.      caused, on May 17, 2022, the *Notice of Deadline for Filing Proofs of Claim* to be published in *The New York Times* (national edition), as evidenced by the *Affidavit*

*of Publication of Notice of Deadline for Filing Proofs of Claim in the New York Times* [Docket No. 119] (the "Publication Affidavit");

j.     filed, on May 20, 2022, the *Certificate of Service* with respect to the Confirmation Hearing Notice (as well as the Opt-Out Form) [Docket No. 121] (the "Confirmation Hearing Notice Affidavit");

k.     filed, on June 3, 2022, the *Notice of Filing Plan Supplement to the Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates* [Docket No. 162] (the "Initial Plan Supplement," and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "Plan");

l.     filed, on June 8, 2022, the *Certificate of Service* with respect to the Initial Plan Supplement [Docket No. 212] (the "Initial Plan Supplement Affidavit");

m.    filed, on June 10, 2022, the *Notice of Filing Amended Plan Supplement to the Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates* [Docket No. 223], adding Exhibit C to the Plan Supplement (the "First Amended Plan Supplement");

n.     filed, on June 13, 2022, the *Certificate of Service* with respect to the Plan Supplement Amendment [Docket No. 228] (the "First Amended Plan Supplement Affidavit," and, together with the Publication Affidavit, Confirmation Hearing Notice Affidavit, and Initial Plan Supplement Affidavit, the "Affidavits"));

o.     filed, on June 14, 2022, the *Notice of Filing Second Amended Plan Supplement to the Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates* [Docket No. 232] amending Exhibit D and adding Exhibit F to the Plan Supplement (the "Second Amended Plan Supplement" and, together with the Initial Plan Supplement and the First Amended Plan Supplement, and as may be further amended, modified, or supplemented, the "Plan Supplement," which, for purposes of the Plan and this Confirmation Order, is included in the definition of "Plan");

p.     filed, on June 16, 2022, the *Second Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates* [Docket No. ____] (the "Second Modified Plan");

q.     filed, on June 16, 2022, the *Debtors' (I) Memorandum of Law in Support of Entry of an Order (A) Approving the Adequacy of the Disclosure Statement and (B) Confirming the Amended Prepackaged Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates and (II) Omnibus Reply to Objections Thereto* [Docket No. ____] (the "Confirmation Brief");

r.     filed, on June 16, 2022, the *Declaration of Peter C. Boylan III, Chairman and Chief Executive Officer of the Debtors, in Support of Debtors' (I) Memorandum of Law in Support of (A) Final Approval of Disclosure Statement and (B) Confirmation of*

*Second Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates and (II) Omnibus Reply to Objections Thereto* [Docket No. ___] (the "Boylan Declaration");

s.     filed, on June 16, 2022, the *Declaration of Larry Manning in Support of Debtors' (I) Memorandum of Law in Support of (A) Final Approval of Disclosure Statement and (B) Confirmation of Second Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates and (II) Omnibus Reply to Objections Thereto* [Docket No. ___] (the "Manning Declaration");

t.     filed, on June 16, 2022, the *Declaration of Sanjiv Shah in Support of Debtors' (I) Memorandum of Law in Support of (A) Final Approval of Disclosure Statement and (B) Confirmation of Second Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates and (II) Omnibus Reply to Objections Thereto* [Docket No. ___] (the "Shah Declaration," and together with the Boylan Declaration and Manning Declaration, the "Declarations in Support of Confirmation");

u.     filed, on June 16, 2022, the *Certification of Adam Gorman With Respect to the Tabulation of Votes on the Joint Prepackaged Chapter 11 Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates* [Docket No. ___], which detailed the results of the Plan-voting process (the "Voting Report"); and

v.     operated their businesses and managed their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Court having:

a.     entered, on May 11, 2022, the Solicitation Procedures Order;

b.     set June 13, 2022 at 4:00 p.m. (prevailing Central Time) as the deadline for filing objections to final approval of the Disclosure Statement and confirmation of the Plan (the "Plan and Disclosure Statement Objection Deadline");

c.     set June 21, 2022 at 2:30 p.m. (prevailing Central Time) as the date and time for the commencement of the Confirmation Hearing;

d.     reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Declarations in Support of Confirmation, the Voting Report, the Confirmation Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding final approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights;

e.     held the Confirmation Hearing;

    f.      heard the statements and arguments made by counsel in respect of final approval of the Disclosure Statement and Confirmation of the Plan;

    g.      considered all oral representations, testimony, documents, filings, and other evidence regarding final approval of the Disclosure Statement and Confirmation of the Plan; and

    h.      taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of final approval of the Disclosure Statement and Confirmation of the Plan and other evidence presented at the Confirmation Hearing and the record of the Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.**    **Findings and Conclusions.**

1.    The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. § 1334. The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Approval of the Disclosure Statement, including associated solicitation procedures, and Confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. § 157(b)(2).

**C.      Eligibility for Relief.**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases.**

4.      Commencing on the Petition Date, the Debtors filed voluntary cases under chapter 11 of the Bankruptcy Code.   In accordance with the *Order (I) Directing Joint Administration of Cases and (II) Granting Related Relief* [Docket No. 27], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committee has been appointed in these Chapter 11 Cases and no trustee or examiner has been appointed in the Chapter 11 Cases.

**E.      Judicial Notice.**

5.      To the extent necessary, the Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation of the Plan) the docket of the Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents

on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.

**F.      Objections.**

6.      All parties have had a fair opportunity to litigate all issues raised, or that might have been raised, in objection to final approval of the Disclosure Statement and Confirmation of the Plan and all such unresolved objections, statements, or informal objections, if any, related to the Plan, the Disclosure Statement, or Confirmation are hereby overruled as set forth and stated on the record at the Confirmation Hearing on the merits.

**G.      Bankruptcy Rule 3016.**

7.      The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).

**H.      Burden of Proof—Confirmation of the Plan.**

8.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

**I.      Notice.**

9.      As evidenced by the Confirmation Hearing Notice Affidavit and the record in these Chapter 11 Cases, the Debtors provided due, adequate, and sufficient notice of the Disclosure Statement, the Plan, the Plan Supplement, the release, exculpation, and injunction provisions contained in the Plan, the Confirmation Hearing, the Plan and Disclosure Statement Objection Deadline, and any other applicable bar dates described in the Solicitation Procedures Order to all parties in interest in the Chapter 11 Cases.   Such notice was adequate and sufficient and in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules

2002(b), 3016, 3017, 3019, and 3020(b), the Bankruptcy Local rules, the Complex Case Procedures, the Solicitation Procedures, and the Solicitation Procedures Order.  No other or further notice is or shall be required.

**J.**     **Disclosure Statement.**

10.     The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement with the clerk of the Court satisfies Bankruptcy Rule 3016(b).

**K.**     **Ballots.**

11.     The Class of Claims entitled under the Plan to vote to accept or reject the Plan (the "Voting Class") is set forth below:

| Class | Designation |
|---|---|
| 3 | Prepetition First Lien Credit Agreement Claims |

12.     The ballots the Debtors used to solicit votes to accept or reject the Plan from holders in the Voting Class adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for holders of Claims in the Voting Class to vote to accept or reject the Plan.

**L.**     **Solicitation.**

13.     As described in the Voting Report, the solicitation of votes on the Plan complied with the solicitation procedures set forth in the Solicitation Procedures Motion and approved in the Solicitation Procedures Orders (the "Solicitation Procedures"), was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with

the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and any other applicable rules, laws, and regulations.

14.     As described in the Voting Report, the Plan, the Disclosure Statement, and the applicable ballot (collectively, the "Solicitation Packages"),  and the Confirmation Hearing Notice were transmitted and served, including to all holders of Claims in the Impaired Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Complex Case Procedures, the Solicitation Procedures Orders, and any applicable nonbankruptcy law.  Transmission and service of the Solicitation Packages and the Confirmation Hearing Notice were timely, adequate, and sufficient.  No further notice is required.

15.     As set forth in the Voting Report, the Solicitation Packages were initially distributed to holders of Claims in the Voting Class that held a Claim as of May 8, 2022 (the date specified in such documents for the purpose of the solicitation).  The establishment and notice of the Voting Record Date were reasonable and sufficient.

16.     The period during which holders of Claims in the Voting Class had to submit acceptances or rejections to the Plan was a reasonable and sufficient period of time for such holders to make an informed decision to accept or reject the Plan.

17.     Under section 1126(f) of the Bankruptcy Code, the Debtors were not required to solicit votes from the holders of Claims or Interests, as applicable, in the Unimpaired Classes (defined below), each of which is conclusively presumed to have accepted the Plan.  Holders of Intercompany Claims in Class 6 and Intercompany Interests in Class 7 either are Unimpaired and conclusively presumed to have accepted the Plan or Impaired and conclusively presumed to have rejected the Plan, and, therefore, are not entitled to vote to accept or reject the Plan.  Holders of

General Unsecured Claims in Class 5, Interests in CELP in Class 8, and Section 510(b) Claims in Class 9 (collectively, the "Deemed Rejecting Classes") are Impaired under the Plan and are deemed to have rejected the Plan.

      **M.**    **Voting.**

18.    As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, the Solicitation Procedures Order, the Disclosure Statement, and any applicable nonbankruptcy law, rule, or regulation.

      **N.**    **Service of Opt-Out Form.**

19.    The Notice of Non-Voting Status included the Opt-Out Form and instructions for opting out of the Third-Party Release (as defined below) through the submission of the Opt-Out Form to the Claims and Noticing Agent for recording by the Plan and Disclosure Statement Objection Deadline. The process described in the Solicitation Procedures Order, the Solicitation Procedures, and the Confirmation Hearing Notice Affidavit that the Debtors and the Claims and Noticing Agent followed to identify the relevant parties on which to serve the Notice of Non-Voting Status and to distribute the Opt-Out Forms was reasonably calculated to ensure that each of the Holders of Claims and Interests was informed of its ability to opt of the Third-Party Release and the consequences for failing to timely do so. Transmission and service of the Opt-Out Forms was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No other or further notice is or shall be required.

      **O.**    **Plan Supplement.**

20.    The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents are good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures and no other or

further notice is required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date, subject to compliance with the Bankruptcy Code and the Bankruptcy Rules.

       **P.**       **Modifications to the Plan.**

21.     Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in the Plan and this Confirmation Order constitute technical changes, changes with respect to particular Claims by agreement with holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest.  These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and solicitation materials served pursuant to the Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases.

22.     In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that holders of Claims and Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan except to the extent any such vote has been superseded or revoked pursuant to the Solicitation Procedures.

       **Q.**       **Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

23.     The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.  In addition,

the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

### (i)       Proper Classification—Sections 1122 and 1123.

24.       The Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.  Article III of the Plan provides for the separate classification of Claims and Interests into nine Classes.   Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, holders of Claims or Interests.   Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

### (ii)      Specified Unimpaired Classes—Section 1123(a)(2).

25.       The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes 1, 2, and 4 (the "Unimpaired Classes") are Unimpaired under the Plan and Claims and Claims in Class 6 and Interests in Class 7 are either Impaired or Unimpaired under the Plan.   Additionally, Article II of the Plan specifies that Administrative Expense Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims will be paid in full in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan.

### (iii)     Specified Treatment of Impaired Classes—Section 1123(a)(3).

26.       The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in Classes 3, 5, 8, and 9 (the "Impaired Classes") are Impaired under the Plan and Claims  in Class 6 and Interests in Class 7 are either Impaired or Unimpaired under the Plan, and describes the treatment of such Classes.

### (iv)    No Discrimination—Section 1123(a)(4).

27.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

### (v)    Adequate Means for Plan Implementation—Section 1123(a)(5).

28.    The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Article V and elsewhere in the Plan, and in the exhibits and attachments to the Plan and the Disclosure Statement provide, in detail, adequate and proper means for the Plan's implementation, including regarding:  (a) the continuation of operations between the Confirmation Date and Effective Date; (b) the funding of distributions to satisfy applicable Allowed Claims with Cash on hand and proceeds of the Commitment; (c) the issuance of New Interests; (d) the selection of a New Board; (e) authorizing the Debtors and/or Reorganized Debtors to take all corporate actions contemplated by the Plan; (f) the vesting of estate assets in the Reorganized Debtors; (g) authorizing the cancellation of existing securities and agreements, and the surrender of existing securities (except as otherwise provided therein); (h) the cancellation of Liens and surrender and cancelation of notes, instruments, certificates, and other documents evidencing claims; (i) authorizing the Debtors and/or Reorganized Debtors to take any other actions as may be necessary or appropriate to Reinstate Claims or Interests or render Claims or Interests not Impaired, as provided for under the Plan; and (j) the comprehensive settlement of Claims and controversies.  Moreover, the Debtors will have sufficient Cash to make all payments required upon the Effective Date pursuant to the terms of the Plan.

### (vi)    Voting Power of Equity Securities—Section 1123(a)(6).

29.     The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. On the Effective Date, the certificates of incorporation of the Reorganized Debtors shall prohibit the issuance of non-voting equity securities, to the extent required by such section.  After the Effective Date, each of the Reorganized Debtors may amend and restate its certificates or articles of incorporation, by-laws, or similar governing documents, as applicable, as permitted by applicable law.

### (vii)    Directors and Officers—Section 1123(a)(7).

30.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Section 5.6.2 of the Plan, the New Board was selected and approved by the Supporting Party and the constitution of the New Board and the identity of the new officers were identified in the Plan Supplement.  The selection of the Reorganized Debtors' directors and officers is consistent with the interests of holders of Claims and Interests and public policy.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### (viii)    Section 1123(b)—Discretionary Contents of the Plan.

31.     The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

### a.  Impairment / Unimpairment of Classes—Section 1123(b)(1).

32.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Article III of the Plan leaves each Class of Claims and Interests Impaired or Unimpaired.

**b. Assumption and Rejection of Executory Contracts and Unexpired Leases—Section 1123(b)(2).**

33.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article VI of the Plan provides that on the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease shall be deemed rejected by the applicable Debtor, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (a) has been previously assumed or rejected; (b) previously expired or has been terminated pursuant to its own terms; (c) is subject to a motion to assume such Executory Contract or Unexpired Lease filed prior to the Effective Date; or (d) appears on the "List of Assumed Executory Contracts and Unexpired Leases" or the "List of Assumed and Assigned Executory Contracts and Unexpired Leases" filed with the Plan Supplement.

34.     The Debtors' determinations regarding the assumption (or assumption and assignment) or rejection of Executory Contracts and Unexpired Leases are based on, and within, the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest in the Chapter 11 Cases. Entry of this Order by the Court shall constitute approval of such assumptions, assumptions and assignments, and/or rejections, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**c. Settlement, Releases, Exculpation, Injunction, and Cancellation of Liens—Section 1123(b)(3).**

35.     Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including all Claims, Causes of Action, and

controversies arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against any Released Party, or holders of Claims, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtors other than Causes of Action preserved pursuant to the Plan for the benefit of the Reorganized Debtors, including as set forth in Section 5.12.1 of the Plan.

36.     The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.  The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.

37.     Section 10.4 of the Plan contains the following releases granted by the Debtors (the "Debtor Release"):

> **As of the Effective Date, each Released Party will be deemed released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates or Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, the Debtors or other entity, based on or relating to, or in any manner arising from, in whole**

**or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the DIP Credit Agreement, the Plan, the Restructuring Support Agreement, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Credit Agreement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to a Released Party's willful misconduct or intentional fraud as determined by a final order of the Bankruptcy Court; *provided* that any right to enforce the Plan and Confirmation Order is not so released by this section.**

38.     The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release.  Such releases are a necessary and integral element of the Plan. Also, the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors, the Estates, and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released pursuant to the Debtor Release.  The Debtor Releases are hereby approved as set forth in the Plan.

17

39.     The Debtors have satisfied their burden with respect to the propriety of the Debtor Release.  The Debtor Release appropriately offers protection to parties that provided consideration to the Debtors and that participated in the Debtors' restructuring process.  The Released Parties made significant concessions and contributions to the Chapter 11 Cases, including by actively supporting the Plan and the Chapter 11 Cases.  The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.

40.     Section 10.5 of the Plan contains the following releases granted by the Releasing Parties (the "Third-Party Release"):

> **As of the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, Reorganized Debtors, and each Released Party from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtors and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the DIP Credit Agreement, the Plan, the Restructuring Support Agreement, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Credit Agreement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or**

**distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to a Released Party's willful misconduct or intentional fraud as determined by a final order of the Bankruptcy Court; *provided* that any right to enforce the Plan and Confirmation Order is not so released by this section.**

41.     The Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors.  The Third-Party Release is consensual with respect to the Releasing Parties and is necessary and integral to the Plan.  Also, the Third-Party Release is: (a) given in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by the Third-Party Release; (c) in the best interests of the Debtors and, the Estates, and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.  The Third-Party Release is hereby approved as set forth in the Plan.

42.     The Releasing Parties were provided proper and sufficient notice of these Chapter 11 Cases, the Plan, the Third-Party Release, and the Plan and Disclosure Statement Objection Deadline through the service of the Solicitation Materials and distribution of the Ballot.  No further notice is necessary.  The Plan and each of the Solicitation Materials included the Third-Party Release provision in conspicuous, boldface type, and the Notice of Non-Voting Status informed Holders of Claims or Interests in the Debtors that they would be deemed to have consented to the Third-Party Release if they did not (a) timely return the Opt-Out Form included in the Notice of Non-Voting Status by the Voting Deadline or (b) object to their inclusion as a Releasing Party by

the Objection Deadline.  The Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure is necessary.  The Third-Party Release is specific in language, integral to the Plan, and given for substantial consideration.

43.     The exculpation, described in Section 10.6 of the Plan (the "Exculpation"), is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and, except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability to any Entity for any exculpated Claims, and each Exculpated Party is hereby released and exculpated as set forth in the Plan; *provided* that the foregoing "Exculpation" shall have no effect on the liability of any entity that results from any such act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.  The Exculpated Parties have participated in any and all activities potentially underlying any Exculpated Claim in good faith and in compliance with the applicable laws.  The Exculpation, including its carve-out for actual fraud, gross negligence, or willful misconduct, is consistent with established practice in this jurisdiction and others.

44.     The injunction provision set forth in Section 10.7 of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Releases, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve these purposes.

45.     The cancelation of Liens described in Section 5.8 of the Plan (the "Lien Cancelation") is necessary to implement the Plan.  The provisions of the Lien Cancelation are

appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and holders of Claims and Interests.

46.     Section 5.12.1 of the Plan appropriately provides for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  Causes of Action not released or exculpated by the Debtors will be preserved and transferred to, and vest in, the Reorganized Debtors in accordance with section 1123(b) and 1141 of the Bankruptcy Code, as provided by the Plan.  The Plan is specific and unequivocal with respect to Causes of Action to be preserved and retained by the Debtors and complies with the standards set forth in *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Op., LLC)*, 540 F.3d 351, 355 (5th Cir. 2008) and its progeny.  All parties in interest received adequate notice with respect to such Retained Causes of Action.  The provisions regarding Retained Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests.  For the avoidance of doubt, Causes of Action released or exculpated under the Plan will not be retained by the Reorganized Debtors.

### d.  Modification of Rights—Section 1123(b)(5).

47.     The Plan is consistent with 1123(b)(5) of the Bankruptcy Code.  Article III of the Plan modifies or leaves unaffected, as the case may be, the rights of certain Holders of Claims or Interests.

### e.  Additional Plan Provisions—Section 1123(b)(6).

48.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(ix)     Cure of Defaults—Section 1123(d).

49.     The Plan is consistent with section 1123(d) of the Bankruptcy Code.  Section 6.2 of the Plan provides for the satisfaction of any cure amounts associated with Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.

**R.     Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

50.     The Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019, except as otherwise provided or permitted by orders of the Court, and thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Each Debtor:

a.   is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code; and

b.   complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, any applicable nonbankruptcy law, rule and regulation, the Solicitation Procedures Orders, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**S.     Plan Proposed in Good Faith—Section 1129(a)(3).**

51.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the Restructuring Support Agreement, and the process leading to Confirmation of the Plan, including the support of holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.  These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with a capital and organizational structure that will allow them to

conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources. All unresolved objections, statements, or informal objections, if any, related to the Plan, the Disclosure Statement, or Confirmation of the Plan are overruled on the merits.

52. The Debtors and each of the constituents who negotiated the Plan, and each of their respective officers, directors, managers, members, employees, advisors, and professionals (a) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan and (b) will be acting in good faith in proceeding to (i) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan, and (ii) take any actions authorized and directed or contemplated by this Confirmation Order.

**T.   Payment for Services or Costs and Expenses—Section 1129(a)(4).**

53. The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**U.   Directors, Officers, and Insiders—Section 1129(a)(5).**

54. The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. Pursuant to Section 5.6.2 of the Plan, the Debtors disclosed in the Plan Supplement in advance of the Confirmation Hearing the identity and affiliations of the members of the New Board, as well as those Persons that will serve as an officer of any of the Reorganized Debtors. To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New

Organizational Documents and other constituent documents of the Reorganized Debtors. The method of appointment of members of the New Board was, is, and will be consistent with the interests of holders of Claims and public policy. The proposed officers and directors for the Reorganized Debtors are qualified, and their appointment to, or continuance in, such roles is consistent with the interests of holders of Claims and with public policy.

### V.     No Rate Changes—Section 1129(a)(6).

55.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

### W.     Best Interest of Creditors—Section 1129(a)(7).

56.     The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that were proffered or adduced in the Declarations in Support of Confirmation or at, prior to, or in connection with the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

### X.     Acceptance by Certain Classes—Section 1129(a)(8).

57.     Classes 1, 2, and 4, and Classes 6 and 7 to the extent Unimpaired under the Plan, are each Classes of Unimpaired Claims or Interests under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Nevertheless,

because the Plan has not been accepted by the Deemed Rejecting Classes the Debtors seek Confirmation of the Plan under section 1129(b). Although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**Y.      Treatment of Claims Entitled to Priority under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

58.      The treatment of Administrative Expense Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims, under Article II of the Plan, and of Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**Z.      Acceptance by at Least One Impaired Class—Section 1129(a)(10).**

59.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Reports, Class 3 voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**AA.      Feasibility—Section 1129(a)(11).**

60.      The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. Although the Debtors' businesses operate in a highly competitive industry and market, and although it is impossible to predict with certainty the precise future profitability of the Debtors' financial projections, as demonstrated by the evidence in the record, including the Declarations in

Support of Confirmation, Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors, the Reorganized Debtors, or any successor to the Reorganized Debtors under the Plan, except as provided under the Plan. Furthermore, the evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in the Declarations in Support of Confirmation filed in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.  Therefore, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**BB.     Payment of Fees—Section 1129(a)(12).**

61.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Section 12.3 of the Plan provides for the payment of all fees due and payable by the Debtors under 28 U.S.C. § 1930.

**CC.     Non-Applicability of Certain Sections—Sections 1129(a)(13), (14), (15), and (16).**

62.     Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors do not provide retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), do not owe domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.     "Cram Down" Requirements—Section 1129(b).**

63.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan

may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that no holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. To the extent Class 6 Intercompany Claims or Class 7 Intercompany Interests are Reinstated, such treatment is provided for administrative convenience and efficiency, and not on account of such Claims and/or Interests, and will not alter the treatment provided for any other holder of any Claim or Interest. Accordingly, the Plan is fair and equitable towards all holders of Claims or Interests in the Deemed Rejecting Classes (and, if applicable, Class 6). *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated holders will receive substantially similar treatment on account of their Claims or Interests in such class. Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

### EE.  Only One Plan—Section 1129(c).

64. The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

### FF.  Principal Purpose of the Plan—Section 1129(d).

65. The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**GG.     Good Faith Solicitation—Section 1125(e).**

66.     The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the execution, delivery, and performance of the Restructuring Support Agreement and solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**HH.     Satisfaction of Confirmation Requirements.**

67.     Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**II.     Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

68.     Each of the conditions precedent to the Effective Date, as set forth in Section 9.1 of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Section 9.2 of the Plan.

**JJ.     Implementation.**

69.     All documents necessary to implement the Plan and all other relevant and necessary documents (including, without limitation, the Commitment documentation and the New Organizational Documents) have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

**KK.     Disclosure of Facts.**

70.     The Debtors have disclosed all material facts regarding the Plan and the transactions contemplated therein.

**LL.**     **Good Faith.**

71.     The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to reorganize the Debtors' businesses and effect the Commitment and the New Organizational Documents.  The Released Parties have made a substantial contribution to the Debtors' reorganization.

**MM.**     **Essential Element of the Plan.**

72.     The Commitment is an essential element of the Plan, and entry into the Commitment is in the best interests of the Debtors, their estates, and their creditors.  The Debtors have exercised sound business judgment in determining to enter into the Commitment and have provided adequate notice thereof.  The Commitment documentation has been negotiated in good faith and at arm's length among the Debtors and the lenders thereto, and any credit extended and loans made to the Reorganized Debtors pursuant to the Commitment, as applicable, and any fees paid thereunder are deemed to have been extended, issued, and made in good faith.

**NN.**     **Objections.**

73.     All parties have had a full and fair opportunity to litigate all issues raised in the objections to Confirmation of the Plan, or which might have been raised, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

<u>**ORDER**</u>

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

74.     **Findings of Fact and Conclusions of Law**.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and

constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

75.     **Disclosure Statement**.  The information provided in the Disclosure Statement is adequate and the Disclosure Statement is approved in all respects on a final basis.

76.     **Solicitation**.  To the extent applicable, the solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

77.     **Notice of Confirmation Hearing**.  The Notice of Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

78.     **Confirmation of the Plan**.  The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement and amendments thereto, are incorporated by reference into and are an integral part of this Confirmation Order.

79.     **Objections**.  All objections, responses, statements, reservation of rights, and comments in opposition, if any, to final approval of the Disclosure Statement or Confirmation of the Plan that have not been withdrawn, waived, settled, resolved prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing or in this Confirmation Order are hereby overruled and denied on the merits, with prejudice.  All objections to the entry of this Confirmation Order or to the relief granted herein that were not timely filed and served prior to the Plan and Disclosure Statement Objection Deadline are deemed waived and forever barred.

80.    **Plan Modifications**.  Subsequent to filing the Plan on May 10, 2022, the Debtors made certain modifications to the Plan (the "Plan Modifications").  The Plan Modifications comply with the requirements under the Restructuring Support Agreement and do not materially and adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan, and are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019.  After giving effect to the Plan Modifications, the Plan continues to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.  The filing with the Court on May 10, 2022 of the Plan Modifications, the notice provided to parties in interest, and the disclosure of the Plan Modifications, including on the record at the Confirmation Hearing, constitute due and sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

81.    **Plan Classification Controlling**.  The terms of the Plan shall solely govern classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classification set forth on the ballots tendered to or returned by the holders of Claims in connection with voting on the Plan:  (a) were set forth thereon solely for the purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

82.    **Deemed Acceptance of Plan**.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified by the Plan Modifications.  No holder of a Claim or Interest shall be permitted to change its vote to accept the Plan as a consequence of the Plan Modifications.

83.    **No Action Required**.  Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Partnership Act, Delaware Limited Liability Company Act, or any other comparable state law, and section 1142(b) of the Bankruptcy Code, no action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Commitment documentation and the New Organizational Documents, documents in connection with the issuance of New Interests, and the appointment and election of the members of the New Board and the officers, directors, and/or managers of each of the Reorganized Debtors.

84.    **Binding Effect**.  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (regardless of whether such holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

85.    **Procedures for Resolving Claims**.    The procedures for resolving contingent, unliquidated, and disputed Claims contained in Article VIII of the Plan shall be, and hereby are, approved in their entirety.

86.    **Certificate of Incorporation; By-Laws.**  On the Effective Date, the Reorganized CEP Operating Agreement and the amended operating agreements of the Reorganized Debtors shall go into effect.  Consistent with, but only to the extent required by, section 1123(a)(6) of the Bankruptcy Code, on the Effective Date, the certificates of incorporation or operating agreements of the Reorganized Debtors shall prohibit the issuance of non-voting equity securities.  After the Effective Date, each of the Reorganized Debtors may amend and restate its certificates, articles of incorporation, operating agreements, by-laws, or similar governing documents, as applicable, as permitted by applicable law.

87.    **Corporate Action**.  On the Effective Date, (a) the selection of directors and officers for the Reorganized Debtors, (b) the issuance and distribution of the New Interests, and (c) all other actions and transactions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of the Plan).  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirement of further action by the security holders or directors of the Debtors or the Reorganized Debtors in accordance with section 303 of the Delaware General Corporation Law and the provisions of the Bankruptcy Code.  On and after the Effective Date, the appropriate officers of the Reorganized Debtors and members of the boards of directors or managers of the Reorganized Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents,

securities, and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors.

88. **Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors**. On and after the Effective Date, after giving effect to each of the actions contemplated under the Plan, each of the Reorganized Debtors shall continue to exist in accordance with the applicable law in the jurisdiction in which it is formed. Pursuant to section 1141(b) of the Bankruptcy Code, except as otherwise provided under the Plan, all property of the Estates, including all claims, rights, and causes of action and any property acquired by the Debtors or the Reorganized Debtors under or in connection with the Plan, together with any property of the Debtors that is not property of their Estates and that is not specifically disposed of pursuant to the Plan, shall revest in the Reorganized Debtors on the Effective Date free and clear of all Claims, Liens, charges, other encumbrances, and Interests, except as specifically provided in the Plan or this Confirmation Order. Thereafter, the Reorganized Debtors may operate their business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules. As of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Liens and non-Reinstated Claims, except as specifically provided in the Plan or this Confirmation Order.

89. **Cancelation of Liens; Surrender and Cancelation of Notes, Instruments, Certificates, and Other Documents Evidencing Claims**. Except as otherwise provided in the Plan, on the Effective Date, in consideration for the distributions to be made on the Effective Date pursuant to the Plan, all Liens, charges, and encumbrances related to any Claim or Interest, other than any Lien securing a Claim that is Reinstated pursuant to the Plan, shall be terminated, null and void and of no effect. The holders of Other Secured Claims (other than Other Secured Claims

that are Reinstated pursuant to the Plan) and Prepetition First Lien Credit Agreement Claims (other than Prepetition First Lien Credit Agreement Claims that are Reinstated pursuant to the Plan) shall be authorized and directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such Holder and to take such actions as may be requested by the Debtors (or the Reorganized Debtors, as the case may be) to evidence the release of any Liens, including the execution, delivery, and filing or recording of such release documents as may be requested by the Debtors (or the Reorganized Debtors, as the case may be).  On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims shall be cancelled and the obligations of the Debtors discharged in accordance with section 1141(d)(1) of the Bankruptcy Code.

90. **Additional Transactions Authorized under the Plan**.  On or after the Effective Date, the Reorganized Debtors shall be authorized to take any such actions as may be necessary or appropriate to Reinstate Claims or Interests or render Claims or Interests not Impaired, as provided for under the Plan.

91. **Provisions Governing Distributions**.  The distribution provisions of Article VII of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Disbursing Agent shall make all distributions required under the Plan.  The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

92. **Comprehensive Settlement of Claims and Controversies.**  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with

respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest.  The entry of this Confirmation Order constitutes the Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Court's finding that all such compromises or settlements are in the best interests of (a) the Debtors, the Reorganized Debtors, the Estates, and their respective property and (b) Claim and Interest holders, and are fair, equitable, and reasonable.

93.     **Assumption or Rejection of Contracts and Leases**.  On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, <u>unless</u> such Executory Contract or Unexpired Lease (a) was previously assumed or rejected by the Debtors, (b) previously expired or terminated pursuant to its own terms, (c) is subject to a motion to assume such Executory Contract or Unexpired Lease filed prior to the Effective Date, or (d) appears on the "List of Assumed Executory Contracts and Unexpired Leases" or "List of Assumed and Assigned Executory Contracts and Unexpired Leases" filed with the Plan Supplement.  Each Executory Contract and Unexpired Lease assumed pursuant to Article VI of the Plan shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption.

94.     To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, including any "change of control" provision, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not

entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

95.     Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan or otherwise shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitations described in the Solicitation Procedures Order with respect to any disputes regarding amounts of cure claims or any other matter pertaining to assumption or assumption and assignment, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption, assumption and assignment, or cure amount will be deemed to have assented to such assumption, assumption and assignment, or cure amount.

96.     Subject to the occurrence of the Effective Date, the entry of this Confirmation Order shall constitute a finding by the Bankruptcy Court that (a) each such assumption is in the best interest of the Debtors and their Estates, (b) the requirements of section 365(b)(1) of the Bankruptcy Code are deemed satisfied, and (c) the assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether money or nonmonetary, as of the Effective Date.

97.     All contracts, agreements and leases that were entered into by the Debtors or assumed by the Debtors after the Petition Date shall be deemed assigned by the Debtors to the Reorganized Debtors on the Effective Date.

98.     Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or

other agreements that in any manner affect such Executory Contracts or Unexpired Leases including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

99.     **Survival of Indemnification and Exculpation Obligations**.  The obligations of the Debtors to indemnify and exculpate any officers of the Debtors that are officers of the Reorganized Debtors immediately following the occurrence of the Effective Date, pursuant to certificates or articles of incorporation, by-laws, contracts, and/or applicable statutes, in respect of all actions, suits, and proceedings against any such officers based upon any act or omission related to service with, for, or on behalf of the Debtors, shall not be discharged or Impaired by Confirmation or consummation of the Plan and shall be assumed by the Reorganized Debtors.  For the avoidance of doubt, this paragraph and Section 10.8 of the Plan affect only the obligations of the Debtors and Reorganized Debtors with respect to any indemnity or exculpation owed to or for the benefit of officers of the Debtors that are officers of the Reorganized Debtors immediately following the occurrence of the Effective Date, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Person, including any provider of director and officer insurance, owed to or for the benefit of past and present directors, officers, agents, employees, and representatives of the Debtors.

100. **Authorization to Consummate**. The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.

101. **Final Fee Applications**. All Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503, and/or 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any Professional or any other entity for making a substantial contribution in the Chapter 11 Cases) shall file and serve final requests for payment of Professional Fee Claims no later than the first Business Day that is 45 days after the Effective Date. Objections to any Professional Fee Claim must be filed within 21 days after the filing of the final fee application with respect to the Professional Fee Claim. Any such objections that are not consensually resolved may be set for hearing on 21 days' notice by the Professional asserting such Professional Fee Claim. The Professional Fee Escrow Account shall in no way limit or act as a cap on Professional Fee Claims.

102. **Release, Exculpation, Discharge, and Injunction Provisions**. The release, exculpation, discharge, injunction, and related provisions set forth in the Plan are approved and authorized as set forth on the record of the Confirmation Hearing, and such provisions are effective and binding on all Persons and Entities to the extent provided therein.

103. **Management Incentive Plan**. Following the Effective Date, the Reorganized Debtors are authorized (but not directed) to (a) reserve a certain percentage of New Interests as determined by the Reorganized Debtors and the Commitment Party, on a fully diluted, fully distributed basis, for grants made from time to time to employees, officer, directors, or consultants

of the Reorganized Debtors and (b) otherwise contain terms and conditions (including with respect to participants, allocation, structure, and timing of issuance) generally consistent with those prevailing in the market at the discretion of the New Board.  For the avoidance of doubt, this Confirmation Order, by its terms, does not approve any such employee incentive plan.

104.    **Compliance with Tax Requirements**.  In connection with the Plan and all distributions thereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing such other mechanisms that the Reorganized Debtors believes are reasonable and appropriate.   The Debtors or the Reorganized Debtors, as applicable, reserves the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and similar encumbrances.

105.    **Exemption from Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code:  (a) the issuance, transfer or exchange of equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; or (c) the making or delivery of any deed or other instrument of transfer under the Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee or

other similar tax or governmental assessment in the United States.  This Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

106.  **Insurance Policies and Agreements**.  Insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date.  To the extent that such insurance policies or agreements are considered to be Executory Contracts or Unexpired Leases, the Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of this Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors and their Estates.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy.

107.  **Documents, Mortgages, and Instruments**.  Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan and this Confirmation Order.

108.  **Continued Effect of Stays and Injunction**.  All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise,

and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

109.     **Nonseverability of Plan Provisions upon Confirmation**.  Each provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified except as provided in paragraph 110 below; and (c) nonseverable and mutually dependent.

110.     **Amendment or Modification of the Plan**.   Subject to section 1127 of the Bankruptcy Code, the Debtors may alter, amend, or modify the Plan or any exhibits thereto at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan. Any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

111.     **Governing Law**.  Subject to the provisions of any contract, certificates, or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with the Plan, and subject further to Section 10.1 of the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with (a) the Bankruptcy Code, the Bankruptcy Rules, or other federal law to the extent applicable and (b) if none of such law is applicable, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

112.     **Applicable Nonbankruptcy Law**.  The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

113.    **Governmental Approvals Not Required**.  Except as set forth in paragraph 119 below, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

114.    **Notice to Debtors, Reorganized Debtors, or Post Effective Date Committee.** All notices, requests, and demands to or upon the Debtors or the Reorganized Debtors with respect to these Chapter 11 Cases, the Plan, or this Confirmation Order to be effective shall be in writing and addressed as follows:

| To the Debtors | With a Copy to |
|---|---|
| Cypress Environmental Partners, L.P.<br>5727 South Lewis Avenue, Suite 500<br>Tulsa, Oklahoma 74105<br>Attn: Legal Department | PAUL HASTINGS LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, California 90067<br>Attn:  Justin Rawlins, Esq.<br><br>*-and-*<br><br>PAUL HASTINGS LLP<br>71 S. Wacker Drive, Suite 4500<br>Chicago, Illinois 60606<br>Attn:  Matthew J. Micheli, Esq.<br>Michael Jones, Esq. |
| **To the Reorganized Debtors** | |
| Samuel S. Ory, Esq.<br>Frederic Dorwart, Lawyers PLLC<br>124 East Fourth Street<br>Tulsa, Oklahoma 74103 | |

115.    **Section 1145 Exemption**.  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance, and distribution of the New Interests shall be exempt from, among other things, the registration and prospectus delivery requirements of section 5 of the Securities Act, and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution, or sale of securities, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act.  In addition, any securities issued under the Plan shall be freely transferable under the Securities Act by the recipients thereof, subject to compliance with any rules and regulations of the U.S. Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Interests and applicable regulatory approval, if any.

116.    **Registration of New Interests**.  On the Effective Date, the New Interests shall not be listed for public trading on any securities exchange, the Reorganized Debtors will not be a reporting company under the Securities Exchange Act of 1934, and the Reorganized Debtors shall not be required to file reports with the U.S. Securities and Exchange Commission or any other governmental entity.

117.    **New Interests**.  The New Interests to be issued as contemplated by the Plan will be duly issued, fully paid, and nonassessable and free from preemptive rights and all taxes, liens, charges, and security interests with respect to the issuance and holding thereof.

118.    **Opt-Out Parties**.  Notwithstanding anything to the contrary in this Confirmation Order, the Third-Party Release set forth in Section 10.5 of the Plan and any other provisions of the Plan invoking or effectuating the Third-Party Release set forth in Section 10.5 of the Plan, shall not apply to any holder of a Claim or Interest that (i) timely elected to opt out of the Third-Party

Release by properly completing and returning an opt-out election form, or (ii) timely objected to the Third-Party Release and such objection was not resolved as of the entry of this Confirmation Order.

119. **Governmental Units.** Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (a) any liability to a "Governmental Unit" (as defined in section 101(27) of the Bankruptcy Code) that is not a "Claim" (as defined in section 101(5) of the Bankruptcy Code); (b) any Claim of a Governmental Unit arising on or after the Effective Date; (c) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Effective Date; or (d) any liability to a Governmental Unit on the part of any non-debtor, except to the extent that such non-debtor is exculpated for acting in its fiduciary capacity to the Debtors' estates as explicitly provided for in the Bankruptcy Code. Nor shall anything in this Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence; *provided* that the Bankruptcy Court retains jurisdiction to determine whether police or regulatory liabilities asserted by any Governmental Unit or other entity are discharged or otherwise barred by this Confirmation Order. Notwithstanding any provision of the Plan or this Order, (x) the United States' setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, and recoupment rights, and (y) the Debtors', Reorganized Debtors', and/or their successors' and assigns' defenses thereto, shall be preserved and are unaffected. Nothing in this Confirmation Order or the Plan divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order or the Plan to adjudicate any defense asserted under this Confirmation Order or the Plan.

120. **SEC**. Notwithstanding any provision herein to the contrary, no provision of the Plan or this Confirmation Order (i) releases any non-Debtor Person or Entity (including any Released Party) from any Claim or Cause of Action of the United States Securities and Exchange Commission (the "SEC") or (ii) enjoins, limits, impairs, or delays the SEC from commencing or continuing any Claims, Causes of Action, proceedings, or investigations against any non-Debtor Person or Entity (including any Released Party) in any forum.

121. **Allowed Claims**. For the avoidance of doubt, a Claim shall be deemed "Allowed" under the Plan if (a) the holder of such Claim has timely and properly filed a proof of Claim pursuant to the Claims Bar Date Order (except as otherwise explicitly specified in the Plan, this Confirmation Order, or any Final Order) and neither the Debtors nor the Plan Administrator, as applicable, have objected to such Claim by the Claims Objection Bar Date, or (b) such Claim is listed on the Debtors' schedules of assets and liabilities (as amended or modified) and is not described thereon as "disputed," "contingent," or "unliquidated."

122. **James S. Allen Litigation**. Any allegations and/or statements of fact relating to James S. Allen, III, as set forth in (i) the *Declaration of Peter C. Boylan III, Chairman & Chief Executive Officer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 12], and any other declaration of Peter C. Boylan III, filed in these Chapter 11 Cases, if any, and (ii) Article IV of the Disclosure Statement, are solely the statements of Mr. Boylan and the Debtors, respectively, and neither document constitutes a binding finding of fact by the Court. Mr. Allen's election not to object to the Plan does not constitute an admission by him as to these allegations or facts, nor does it reflect his agreement with any of the allegations and/or statements of fact referenced in this paragraph.

123.     Nothing contained in this Confirmation Order or Schedule E/F, Part 2, Line 3.10 of Debtor Tulsa Inspection Resources, LLC [Docket No. 140] shall modify any rights James S. Allen, III may have under section 553 of the Bankruptcy Code with respect to the pre-petition litigation in the District Court of Tulsa County, State of Oklahoma, Case Number CJ-2022-00686.

124.     **Philips 66**.  Nothing within the Plan or this Confirmation Order relieves the Debtors or Reorganized Debtors, as applicable, from any obligation to preserve personnel files or records the Debtors or Reorganized Debtors, as applicable, are required to preserve under applicable law. Further, nothing within the Plan or the Confirmation Order, including the discharge and release provisions of Article X, precludes Phillips 66 Company from serving any subpoena or document request issued in accordance with applicable law on the Debtors or Reorganized Debtors, as applicable (or relieves the Debtors or Reorganized Debtors, as applicable, from responding to such request in accordance with applicable law), solely to the extent such subpoena or document request is directed at defending claims asserted against Phillips 66.  Nothing within this paragraph is intended to or shall limit the discharge or release of any Claim against the Released Parties; nor limit any rights of Phillips 66 to receive distributions under the Plan on account of any Allowed proof of claim.

125.     **Notice of Confirmation and Effective Date**.  The Debtors shall serve notice of the entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Order Notice") in accordance with Bankruptcy Rules 2002 and 3020(c), on all known holders of Claims and Interests and the Bankruptcy Rule 2002 service list within three Business Days after the date of the entry of this Confirmation Order.  On, or as soon as reasonably practicable after, the Effective Date, the Reorganized Debtors shall file with the Court a notice of the occurrence of the Effective Date.  Notwithstanding the above, no notice of the Confirmation

or Effective Date or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  The above referenced notices are adequate under the circumstances of these chapter 11 cases and no other or further notice is necessary.

126.   **Effect of Non-Consummation**.  If consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors, or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.

127.   **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

128.   **Waiver of Stay**.  For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

129.   **References to and Omissions of Plan Provisions**.  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer

to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

130. **Headings**.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

131. **Effect of Conflict**.  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

132. **Reservation of Rights**.  Except as expressly set forth in the Plan, the Plan shall have no force and effect unless the Bankruptcy Court has entered this Confirmation Order.  The filing of the Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtors with respect to this Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtors, the Prepetition Agent, the Prepetition First Lien Lender or any other Person with respect to Claims against and Interests in the Debtors.

133. **Final Order**.  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

134. **Retention of Jurisdiction**.  The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and

related to, these Chapter 11 Cases, including the matters set forth in Section 11.1 of the Plan and section 1142 of the Bankruptcy Code.

135.     **Conditions to Confirmation Pursuant to Plan**.  Confirmation and consummation of the Plan is subject to the terms and condition set forth in Article IX of the Plan, including, without limitation, conditions to the Effective Date, all of which is incorporated herein by reference.  For the avoidance of doubt, the DIP Orders remain in full force and effect in accordance with their terms until the Effective Date.

Signed: June 21, 2022

Marvin Isgur
United States Bankruptcy Judge

**Exhibit A**

**Plan**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) Case No. 22-90039 (MI) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## SECOND MODIFIED JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF CYPRESS ENVIRONMENTAL PARTNERS, L.P. AND ITS DEBTOR AFFILIATES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632). The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 500, Tulsa, Oklahoma 74105.

**PAUL HASTINGS LLP**
James Grogan (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Justin Rawlins (*pro hac vice* admission pending)
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:  (310) 620-5700
Facsimile:  (310) 620-5899
Email:  justinrawlins@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Matthew Smart (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
        matthewsmart@paulhastings.com
        michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in Possession*

# TABLE OF CONTENTS

PAGE

ARTICLE I : DEFINED TERMS AND RULES OF INTERPRETATION ................................. 4

ARTICLE II : TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND
PRIORITY TAX CLAIMS ................................................................................ 16

    2.1.    Administrative Expense Claims ................................................................ 16
    2.2.    Professional Fee Claims .......................................................................... 16
    2.3.    DIP Claims .............................................................................................. 17
    2.4.    Priority Tax Claims ................................................................................. 17
    2.5.    Post-Effective Date Fees and Expenses .................................................. 17

ARTICLE III : CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
AND INTERESTS .......................................................................................... 18

    3.1.    Summary of Classification and Treatment of Classified Claims and
Interests .................................................................................................. 18
    3.2.    Treatment of Claims against and Interests in the Debtors .................... 19

ARTICLE IV : ACCEPTANCE OR REJECTION OF THE PLAN ........................................... 23

    4.1.    Impaired Classes of Claims Entitled to Vote on this Plan .................... 23
    4.2.    Acceptance by an Impaired Class of Claims .......................................... 23
    4.3.    Presumed Acceptance by Unimpaired Classes ...................................... 23
    4.4.    Presumed Rejection by Certain Impaired Classes ................................ 23
    4.5.    Presumed Acceptance or Rejection of the Plan .................................... 24
    4.6.    Reservation of Rights .............................................................................. 24

ARTICLE V : MEANS FOR IMPLEMENTATION OF THE PLAN ........................................ 24

    5.1.    Restructuring Transactions ..................................................................... 24
    5.2.    Operations between the Confirmation Date and Effective Date ........... 24
    5.3.    Sources of Cash Consideration for Plan Distributions ......................... 25
    5.4.    New Interests .......................................................................................... 25
    5.5.    Section 1145 Exemption ......................................................................... 25
    5.6.    Corporate Governance, Directors, Officers, and Corporate Action ...... 25
    5.7.    Continued Corporate Existence and Vesting of Assets in the Reorganized
Debtors ................................................................................................... 26
    5.8.    Cancelation of Liens; Surrender and Cancelation of Notes, Instruments,
Certificates, and Other Documents Evidencing Claims ....................... 26
    5.9.    Registration of New Interests .................................................................. 27
    5.10.    Additional Transactions Authorized under this Plan ............................. 27
    5.11.    Management Incentive Plan ..................................................................... 27

5.12.   Comprehensive Settlement of Claims and Controversies .................................... 27
5.13.   General Unsecured Claims Pool .................................................................... 28
5.14.   Debtors' Waiver and Release of Interests in CELP .......................................... 29

ARTICLE VI : TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED
LEASES, AND INSURANCE POLICIES ........................................................ 29

6.1.   Assumption or Rejection of Executory Contracts and Unexpired Leases ........... 29
6.2.   Cure Obligations ........................................................................................ 29
6.3.   Insurance Policies and Agreements ............................................................... 30
6.4.   Postpetition Contracts and Leases ................................................................ 31
6.5.   Modifications, Amendments, Supplements, Restatements or Other
         Agreements .............................................................................................. 31
6.6.   Nonoccurrence of Effective Date .................................................................. 31

ARTICLE VII : PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 31

7.1.   Timing and Calculation of Amounts to be Distributed ...................................... 31
7.2.   Distributions on Account of Claims Allowed after the Effective Date ............... 31
7.3.   Special Rules for Distributions to Holders of Disputed Claims ......................... 32
7.4.   Means of Cash Payment ............................................................................... 32
7.5.   Minimum; De Minimis Distributions ............................................................. 32
7.6.   Withholding and Reporting Requirements ...................................................... 32
7.7.   Compliance Matters ................................................................................... 32
7.8.   Setoff and Recoupment ............................................................................... 32
7.9.   Reinstated Claims ...................................................................................... 33
7.10.  Undeliverable or Non-Negotiated Distributions .............................................. 33
7.11.  Claims Paid by Third Parties ....................................................................... 33
7.12.  Applicability of Insurance Policies ............................................................... 34

ARTICLE VIII : PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS ............................................... 34

8.1.   Allowance of Claims .................................................................................. 34
8.2.   Claims and Administration Responsibilities ................................................... 34
8.3.   Adjustment to Claims without Objection ....................................................... 34
8.4.   Time to File Objections to Claims ................................................................ 34
8.5.   Disallowance of Claims .............................................................................. 34
8.6.   Late-Filed Claims ...................................................................................... 35
8.7.   Late Claims/Amendments to Claims ............................................................. 35
8.8.   No Distributions Pending Allowance ............................................................ 35
8.9.   Distributions after Allowance ...................................................................... 35

ARTICLE IX : CONFIRMATION AND CONSUMMATION OF THE PLAN ......................... 35

9.1.   Conditions to Effective Date ....................................................................... 35
9.2.   Waiver of Conditions ................................................................................. 36
9.3.   Vacatur of Confirmation Order .................................................................... 36

9.4.    Notice of Effective Date ................................................................ 36

ARTICLE X : EFFECT OF PLAN CONFIRMATION ................................................... 36

10.1.   Binding Effect ................................................................................ 36
10.2.   Discharge ....................................................................................... 36
**10.3.   Release of Liens** ........................................................................... 38
10.4.   Releases by the Debtors ................................................................ 38
10.5.   Releases by Holders of Claims and Interests ............................... 39
10.6.   Exculpation .................................................................................... 40
10.7.   Injunctions Related to Exculpation and Releases ......................... 40
10.8.   Survival of Indemnification and Exculpation Obligations ................... 41
10.9.   Term of Bankruptcy Injunction or Stays ...................................... 42
10.10.  Liability to Governmental Units .................................................... 42

ARTICLE XI : RETENTION OF JURISDICTION ...................................................... 42

11.1.   Retention of Jurisdiction ............................................................... 42

ARTICLE XII : MISCELLANEOUS PROVISIONS ................................................... 44

12.1.   Effectuating Documents and Further Transactions....................... 44
12.2.   Exemption from Transfer Taxes ................................................... 45
12.3.   Payment of Statutory Fees ............................................................ 45
12.4.   Amendment or Modification of this Plan ...................................... 45
12.5.   Severability of Plan Provisions ..................................................... 45
12.6.   Closing of Chapter 11 Cases; Caption Change............................. 46
12.7.   Successors and Assigns................................................................. 46
12.8.   Non-Consummation ...................................................................... 46
12.9.   Notice ............................................................................................ 46
12.10.  Governing Law .............................................................................. 47
12.11.  Tax Reporting and Compliance ..................................................... 47
12.12.  Exhibits ......................................................................................... 47
12.13.  Filing of Additional Documents .................................................... 48
12.14.  Plan Documents ............................................................................ 48
12.15.  Reservation of Rights.................................................................... 48

## INTRODUCTION

Each of Cypress Environmental Partners, L.P. ("CELP"), Cypress Municipal Water Services, LLC, Cypress Environmental Partners, LLC, Cypress Brown Integrity, LLC, Cypress Energy Partners - 1804 SWD, LLC, Cypress Energy Partners - Bakken, LLC, Cypress Energy Partners - Grassy Butte SWD, LLC, Cypress Energy Partners - Green River SWD, LLC, Cypress Energy Partners - Manning SWD, LLC, Cypress Energy Partners - Mork SWD, LLC, Cypress Energy Partners - Mountrail SWD, LLC, Cypress Energy Partners - Tioga SWD, LLC, Cypress Energy Partners - Williams SWD, LLC, Cypress Environmental - PUC, LLC, Cypress Environmental Management - TIR, LLC, Cypress Environmental Management, LLC, Cypress Environmental Services, LLC, Tulsa Inspection Resources - PUC, LLC, and Tulsa Inspection Resources, LLC (each, a "Debtor" and, collectively, the "Debtors") jointly propose the following joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code for the resolution of the outstanding Claims and Interests. Capitalized terms used but not defined in this paragraph have the meanings assigned to them in Article I. The classification and treatment of Claims and Interests are set forth in Articles II and III. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the accompanying Disclosure Statement for a discussion of the Debtors' history, business, properties, operations, projections for those operations, risk factors, a summary and analysis of the Plan, and related matters.

## ARTICLE I:
## DEFINED TERMS AND RULES OF INTERPRETATION

A.      Defined Terms.  As used in this Plan, capitalized terms shall have the meanings set forth in this Article I.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1.    Administrative Expense Claim means a Claim for costs and expenses of administration of the Chapter 11 Cases arising after the Petition Date and prior to the Effective Date under sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including, without limitation:  (a) any actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors after the Petition Date and Claims of Governmental Units for taxes (including tax audit Claims) related to tax years commencing after the Petition Date, but excluding Claims related to tax periods, or portions thereof, ending on or before the Petition Date; (b) any Professional Fee Claim, to the extent Allowed by Final Order under sections 328, 330, 331 or 503 of the Bankruptcy Code; (c) with the exception of section 507(b) Claims, any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases; (d) any cash payment required to be made under this Plan and payments to cure a default under an Executory Contract or Unexpired Lease that has been or will be assumed by the Debtors; or (e) any Quarterly Fees.

1.2.    Affiliate has the meaning assigned to such term in section 101(2) of the Bankruptcy Code.

1.3.    Allowed means, with respect to a Claim or Interest, such Claim or Interest or any portion thereof that the Debtors and the Supporting Party have assented to the validity of or that has been (a) allowed by an order of the Bankruptcy Court, (b) allowed pursuant to the terms of the Plan, (c) following the Effective Date, allowed by agreement between the holder of such Claim or Interest, on one hand, and the Reorganized Debtors or the Plan Administrator, as applicable, on the other hand, or (d) allowed by an order of a court in which such Claim or Interest could have been determined, resolved, or adjudicated if the Chapter 11 Cases had not been commenced; *provided, however*, that an Administrative Expense Claim, other than Professional Fee Claim, incurred by the Debtors in the ordinary course of their business during the Chapter 11 Cases, or assumed by the Debtors during the Chapter 11 Cases, may be Allowed if the Debtors and the Supporting Party assent to the validity of such Claim; *provided, further* that, notwithstanding the foregoing, the Reorganized Debtors shall retain all Causes of Action and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan (including, for the avoidance of doubt, Administrative Expense Claims not paid prior to the Effective Date). For the avoidance of doubt, the Debtors and the Supporting Party may, together, affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable nonbankruptcy law even in the absence of a Filed Proof of Claim.

1.4.    Avoidance Actions means any and all actual or potential claims or causes of action to avoid a transfer of property or an obligation incurred by the Debtors arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, or 553(b) of the Bankruptcy Code, or under similar or related state or federal statutes or common law, including fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such claim(s) or cause(s) of action was commenced prior to the Effective Date.

1.5.    Bankruptcy Code means title 11 of the United States Code, 11 U.S.C. §§ 101 through 1532, as in effect on the Petition Date, together with any amendments and modifications thereto that may subsequently be made applicable to the Chapter 11 Cases.

1.6.    Bankruptcy Court means the United States Bankruptcy Court for the District of Texas or any other court with jurisdiction over the Chapter 11 Cases.

1.7.    Bankruptcy Rules means, collectively:  (a) the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Cases or any proceedings therein; and (c) the local rules of the Bankruptcy Court, all as in effect on the Petition Date, together with any amendments and modifications thereto that may subsequently be made applicable to the Chapter 11 Cases.

1.8.    Business Day means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.9.    Cash means legal tender of the United States of America.

1.10.    Cause of Action means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, loss,

debt, damage, judgment, account, defense, remedy, offset, power, privilege, proceeding, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws).  Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any claims under any state law or foreign law, including, without limitation, any fraudulent transfer or similar claims.

1.11.    <u>CELP</u> means Cypress Environmental Partners, L.P.

1.12.    <u>CEP</u> means Cypress Environmental Partners, LLC.

1.13.    <u>Chapter 11 Cases</u> means the voluntary cases under Chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court on the Petition Date.

1.14.    <u>Claim</u> means a "claim," as defined in section 101(5) of the Bankruptcy Code.

1.15.    <u>Claims Bar Date</u> means the applicable bar date by which Proofs of Claim must be Filed, as established by:  (a) the Claims Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) this Plan.

1.16.    <u>Claims Bar Date Order</u> means an order of the Bankruptcy Court establishing the date by which Proofs of Claim must be Filed.

1.17.    <u>Claims Objection Bar Date</u> means 120 days after the Governmental Claims Bar Date, subject to the right of the Reorganized Debtors or the Plan Administrator to seek an extension of such date by motion served on the service list.

1.18.    <u>Claims Register</u> means that certain register maintained by the Bankruptcy Court containing a list of all of the proofs of claim that have been filed with the Bankruptcy Court.

1.19.    <u>Class</u> means each category of holders of Claims or Interests established under <u>Article III</u> pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.20.    <u>Commitment</u> means a funding commitment made by the Commitment Party to the Reorganized Debtors on the Effective Date pursuant to which the Commitment Party will provide post-Effective Date funding to the Reorganized Debtor necessary to fund the operations of the Reorganized Debtors through (i) an equity investment or (ii) debt financing, on terms the terms and conditions acceptable to the Debtors and the Supporting Party.

1.21.    Commitment Letter means the funding commitment letter provided in the Plan Supplement setting forth the terms of the Commitment in a form acceptable to the Debtors and the Supporting Party.

1.22.    Commitment Party means APE V Cypress, LLC.

1.23.    Committee means any statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

1.24.    Confirmation means the entry of the Confirmation Order by the Bankruptcy Court.

1.25.    Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket.

1.26.    Confirmation Hearing means the hearing held by the Bankruptcy Court on confirmation of this Plan, as such hearing may be continued from time to time.

1.27.    Confirmation Order means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.28.    Debtor Release means the releases set forth in Section 10.4 of the Plan.

1.29.    Debtors means collectively: Cypress Environmental Partners, L.P. ("CELP"), Cypress Municipal Water Services, LLC, Cypress Environmental Partners, LLC, Cypress Brown Integrity, LLC, Cypress Energy Partners - 1804 SWD, LLC, Cypress Energy Partners - Bakken, LLC, Cypress Energy Partners - Grassy Butte SWD, LLC, Cypress Energy Partners - Green River SWD, LLC, Cypress Energy Partners - Manning SWD, LLC, Cypress Energy Partners - Mork SWD, LLC, Cypress Energy Partners - Mountrail SWD, LLC, Cypress Energy Partners - Tioga SWD, LLC, Cypress Energy Partners - Williams SWD, LLC, Cypress Environmental - PUC, LLC, Cypress Environmental Management - TIR, LLC, Cypress Environmental Management, LLC, Cypress Environmental Services, LLC, Tulsa Inspection Resources - PUC, LLC, and Tulsa Inspection Resources, LLC.

1.30.    Definitive Documentation means the definitive documents and agreements governing this Plan and the transactions contemplated hereunder (including any related orders, agreements, instruments, schedules, or exhibits) that are contemplated by and referenced in this Plan (as amended, modified, or supplemented from time to time), including: (i) the DIP Credit Agreement and related documentation, including the motion seeking approval of the DIP Credit Agreement and authority to use cash collateral and grant adequate protection and the DIP Orders entered or to be entered by the Bankruptcy Court approving such motion and all security documents and other loan documents in connection therewith; (ii) the Plan and any and all Plan Supplements (including all exhibits and modifications thereto); (iii) the Disclosure Statement and the other solicitation materials in respect of the Plan; (iv) the Confirmation Order and pleadings in support of entry of the Confirmation Order; (v) all documentation, if any, related to the Commitment and any related documents; (vi) those motions and proposed court orders that the Debtors file on or after the Petition Date and seek to have heard on an expedited basis at the "first day hearing"; (vii) the New Organizational Documents; (viii) all management or consulting

agreements of the Reorganized Debtors; (ix) all agreements relating to warrants or other interests exercisable in to shares of the Reorganized Debtors, if applicable; (x) the Plan Administration Agreement, and (xi) such other documents, pleadings, agreements or supplements as may be reasonably necessary or advisable to implement this Plan and the Restructuring Support Agreement.

1.31.   <u>DIP Claims</u> means Claims arising under the DIP Credit Agreement.

1.32.   <u>DIP Credit Agreement</u> means that certain Senior Secured Superpriority Debtor in Possession Credit and Security Agreement, by and among the Debtors and the DIP Lender, dated as of May 8, 2022, including all amendments thereto and extensions thereof and all Loan Documents (as defined therein) and all other security, guaranty, and other documents and agreements related thereto.

1.33.   <u>DIP Facility</u> means the superpriority senior secured revolving credit facility made available by the DIP Lender to certain of the Debtors to provide financing and otherwise extend credit during the pendency of the Chapter 11 Cases pursuant to and subject to the terms and conditions of the DIP Credit Agreement and the DIP Orders.

1.34.   <u>DIP Lender</u> means the Lender under and as defined in the DIP Credit Agreement from time to time party thereto.

1.35.   <u>DIP Orders</u> means, collectively, the interim and final orders of the Bankruptcy Court authorizing use of cash collateral and the DIP Facility.

1.36.   <u>Disbursing Agent</u> means (i) the Reorganized Debtors or any Entity designated by the Debtors or Reorganized Debtors, as applicable, to make or facilitate distributions that are to be made on and after the Effective Date, and (ii) the Plan Administrator for distributions to holders of Allowed General Unsecured Claims.

1.37.   <u>Disclosure Statement</u> means the Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization for Cypress Environmental Partners, L.P. and its Debtor Affiliates, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, in a manner acceptable to the Debtors and Prepetition First Lien Lenders, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

1.38.   <u>Disputed</u> means, with respect to any Claim or Interest, any Claim or Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

1.39.   <u>Effective Date</u> means, and shall occur on, the Business Day on which each of the conditions precedent to the occurrence of the Effective Date set forth in <u>Article IX</u> has been satisfied or waived in accordance with the terms thereof. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

1.40.   Entity means an entity as defined in section 101(15) of the Bankruptcy Code.

1.41.   Estates means the estates of the Debtors created in the Chapter 11 Cases under section 541 of the Bankruptcy Code.

1.42.   Exculpated Parties means collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Supporting Party, (d) the Committee, if any, and its members in their capacities as members thereof; and (e) with respect to each of the foregoing entities in clauses (a) through (d), such entity's Related Parties.

1.43.   Executory Contracts means a contract to which one or more of the Debtors are a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.44.   Final Order means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or on the docket of any other court of competent jurisdiction), which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided, however*, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not solely cause such order not to be a Final Order.

1.45.   General Claims Bar Date means the date established by the Bankruptcy Court by which Entities except for Governmental Units must file Proofs of Claim pursuant to the Claims Bar Date Order.

1.46.   General Unsecured Claims means Claims that are not (a) Administrative Expense Claims, (b) Professional Fee Claims, (c) Priority Tax Claims, (d) DIP Claims, (e) Other Priority Claims, (f) Other Secured Claims, (g) Prepetition First Lien Credit Agreement Claims, (g) Trade Claims, and (h) Intercompany Claims.

1.47.   General Unsecured Claims Pool means Cash in an amount equal to $250,000, net of Plan Administrator Expenses, to be distributed to holders of Allowed General Unsecured Claims in accordance with the terms of this Plan, which amount shall be funded on the Effective Date by the Reorganized Debtors.

1.48.   Governmental Unit has the meaning provided in section 101(27) of the Bankruptcy Code.

1.49.   <u>Governmental Claims Bar Date</u> means the date established by the Bankruptcy Court by which Governmental Units must file Proofs of Claim pursuant to the Claims Bar Date Order.

1.50.   <u>Holder</u> means an Entity holding a Claim or Interest.

1.51.   <u>Impaired</u> means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.52.   <u>Insider</u> has the meaning provided in section 101(31) of the Bankruptcy Code.

1.53.   <u>Intercompany Claim</u> means any Claim that is held by a Debtor against any other Debtor arising at any time prior to the Effective Date.

1.54.   <u>Intercompany Interests</u> means any Interest that is held by a Debtor in any other Debtor.

1.55.   <u>Interest</u> means any equity security within the meaning of section 101(16) of the Bankruptcy Code, including any issued and outstanding common stock, preferred stock, limited liability company interest, partnership interest, or any other instrument evidencing an ownership interest in the Debtors prior to the Effective Date (including prior to the Petition Date), whether or not transferable, and any restricted stock units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, rights of conversion, warrants, unvested common interests, unvested preferred interests or any other agreements of any character related to the common or preferred interests of the Debtors, obligating the Debtors to issue, transfer, purchase, redeem, or sell any equity interests or other equity securities, and any rights under any equity incentive plans, voting agreements and registration rights agreements regarding equity securities of the Debtors.

1.56.   <u>Lien</u> means, with respect to any interest in property, any mortgage, "lien" as defined in section 101(37) of the Bankruptcy Code, pledge, charge, security interest, easement, or encumbrance of any kind whatsoever affecting such interest in property.

1.57.   <u>Management Incentive Plan</u> means a management incentive plan, if any, that may be implemented by the Reorganized Debtors and will (a) reserve a certain percentage of New Interests as determined by the Reorganized Debtors and the Prepetition First Lien Lenders, on a fully diluted, fully distributed basis, for grants made from time to time to management of the Reorganized Debtors and (b) otherwise contain terms and conditions (including with respect to participants, allocation, structure, and timing of issuance) generally consistent with those customarily implemented by the Commitment Party at the discretion of the New Board.

1.58.   <u>New Board</u> means the board of directors for Reorganized CEP.

1.59.   <u>New Interests</u> means the new interests in Reorganized CEP to be issued on the Effective Date pursuant to the terms of the Plan and the New Organizational Documents.

1.60.   <u>New Organizational Documents</u> means the new bylaws, certificates of incorporation, certificates of formation, limited liability company agreements, operating

agreements, certificates of limited partnership, agreements of limited partnership, shareholder agreements, or such other organizational documents of the Reorganized Debtors.

1.61.  <u>Other Priority Claim</u> means an Allowed Claim under section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or Priority Tax Claim.

1.62.  <u>Other Secured Claim</u> means any Claim, other than the Prepetition First Lien Credit Agreement Claims, secured by a Lien on collateral in which the Estates have an interest, to the extent of such collateral (a) as agreed to by the holder of such Claim and the Debtors or (b) as determined pursuant to a Final Order of the Bankruptcy Court in accordance with section 506(a) of the Bankruptcy Code or, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.  For the avoidance of doubt, any Claims arising under the Prepetition First Lien Credit Agreement that are not held by the Prepetition First Lien Lenders shall be Other Secured Claims.

1.63.  <u>Person</u> or <u>person</u> means a person as defined in section 101(41) of the Bankruptcy Code.

1.64.  <u>Petition Date</u> means May 8, 2022, the date on which the Debtors commenced the Chapter 11 Cases.

1.65.  <u>Plan</u> means this Chapter 11 plan of reorganization, including all exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.66.  <u>Plan Administrator</u> means such Person as may be designated in the Plan Supplement by the Debtors and the Supporting Party.

1.67.  <u>Plan Administration Agreement</u> means the agreement among the Plan Administrator and the Debtors, in form reasonably acceptable to the Support Party, regarding the administration of the General Unsecured Claims Pool and other wind down matters, dated as of the Effective Date, and to be filed as part of the Plan Supplement.

1.68.  <u>Plan Administrator Expenses</u> means the expenses set forth in the Plan Administrator Agreement.

1.69.  <u>Plan Supplement</u> means the supplement to this Plan to be filed with the Bankruptcy Court no later than ten days prior to the Confirmation Hearing.

1.70.  <u>Prepetition Agent</u> means APE V Cypress, LLC, in its capacity as the administrative agent and collateral agent under the Prepetition First Lien Credit Agreement.

1.71.  <u>Prepetition First Lien Credit Agreement</u> means that certain senior secured first-lien Amended and Restated Credit Agreement, dated as of May 29, 2018, by and among certain Debtors, as borrowers or guarantors, the Prepetition Agent, the Prepetition First Lien Lenders, and the other parties thereto, including all agreements, notes, instruments, and any other

11

document delivered pursuant thereto or in connection therewith (in each case as amended, modified, or supplemented from time to time).

1.72.    Prepetition First Lien Credit Agreement Claims means all Claims (including unsecured deficiency claims) arising under the Prepetition First Lien Credit Agreement held by the Prepetition First Lien Lenders.

1.73.    Prepetition First Lien Documents means the Prepetition First Lien Credit Agreement and all other agreements, documents, and instruments with respect to the Prepetition First Lien Credit Agreement, including any security agreements, pledge and collateral agreements, guaranty agreements, and intercreditor agreements.

1.74.    Prepetition First Lien Lenders means the holders of Prepetition First Lien Credit Agreement Claims.

1.75.    Priority Tax Claim means any Claim of a Governmental Unit of the kind against the Debtors entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.76.    Pro Rata New Interest Allocation means, (i) with respect to any Holder of an Allowed DIP Claim, a percentage of New Interests equal to a fraction, the numerator of which is the amount of Allowed DIP Claims held by such Holder, and the denominator of which is the aggregate of (x) the total Allowed DIP Claims, plus (y) the total Allowed Prepetition First Lien Credit Agreement Claims, and (ii) with respect to any Holder of an Allowed First Lien Credit Agreement Claim, a percentage of New Interests equal to a fraction, the numerator of which is the amount of Allowed Prepetition First Lien Credit Agreement Claims held by such Holder, and the denominator of which is the aggregate of (x) the total Allowed DIP Claims, plus (y) the total Allowed Prepetition First Lien Credit Agreement Claims.

1.77.    Professional means any Person retained by the Debtors or a statutory committee, if any, pursuant to a Final Order of the Bankruptcy Court entered pursuant to sections 327, 328, or 1103 of the Bankruptcy Code.

1.78.    Professional Fee Claim means any Claim of a Professional for allowance of compensation and/or reimbursement of costs and expenses incurred in the Chapter 11 Cases on or before the Effective Date.

1.79.    Professional Fees Escrow Account means the account established pursuant to Section 2.2(b) of the Plan.

1.80.    Proof of Claim means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

1.81.    Quarterly Fees has the meaning given to such term in Section 12.3 of the Plan.

1.82.    Reinstate, Reinstated or Reinstatement means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim or Interest entitles the holder of such Claim or Interest, or (b) notwithstanding any contractual provision or applicable law that entitles the

holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim or Interest as such maturity existed before such default; (iii) compensating the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from any failure to perform a nonmonetary obligation other than a default arising from failure to operate under a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the holder of such Claim or Interest (other than the Debtors or an insider of the Debtors) for any actual pecuniary loss incurred by such Holder as the result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim or Interest entitles the holder thereof.

1.83.   _Related Parties_ means, with respect to an entity, such entity and its current and former affiliates, and such entities' and their current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

1.84.   _Release Opt-Out Parties_ means all holders of Claims and Interests that opted out of this Plan's third-party releases by properly completing and returning an opt-out election form pursuant to the Confirmation Order.

1.85.   _Released Parties_ means, collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition First Lien Lenders; (d) the Prepetition First Lien Agent; (e) the DIP Lender; (f) the DIP Agent; (g) the Supporting Party, and (h) with respect to each of the foregoing entities in clauses (a) through (g), such entity's Related Parties; provided that an entity shall not be a Released Party if it (x) elects to opt out of the Third-Party Release contained in the Plan or (y) timely objects to the Third-Party Release contained in the Plan and such objection is not resolved before Confirmation of the Plan.

1.86.   _Releasing Parties_ means, collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition First Lien Lenders; (d) the Prepetition First Lien Agent; (e) the DIP Lender; (f) the DIP Agent; (g) the Supporting Party, (h) all Holders of Interests; (i) all Holders of Claims; and (j) with respect to each of the foregoing entities in clauses (a) through (i), such entity's Related Parties; provided that an entity shall not be a Releasing Party if it (x) elects to opt out of the Third-Party Release contained in the Plan or (y) timely objects to the Third-Party Release contained in the Plan and such objection is not resolved before Confirmation of the Plan.

1.87.   _Reorganized CELP_ means CELP, or any successor or assign thereto, by merger, amalgamation, consolidation, or otherwise, on or after the Effective Date.

1.88.   Reorganized CELP Interest means the one (1) new interest in Reorganized CELP to be issued on the Effective Date to the Plan Administrator pursuant to the terms of the Plan and the New Organizational Documents.

1.89.   Reorganized CEP means CEP, or any successor or assign thereto, by merger, amalgamation, consolidation, or otherwise, on or after the Effective Date.

1.90.   Reorganized CEP Operating Agreement means the amended and restated limited liability company agreement of Reorganized CEP filed as an exhibit to the Plan Supplement.

1.91.   Reorganized Debtors means the Debtors and any successors thereto by merger, consolidation, conversion or otherwise, on or after the Effective Date, after giving effect to the transactions implementing this Plan.

1.92.   Restructuring Expenses means the reasonable and documented fees and expenses incurred by the Supporting Party, Pre-Petition Agent, Pre-Petition Lender, DIP Agent and DIP Lender pursuant to the terms of the respective fee and engagement letters entered into by such persons, as applicable, in connection with or arising as a result of the Restructuring, the Plan, or the Chapter 11 Cases.

1.93.   Restructuring Support Agreement means the Restructuring Support Agreement among the Debtors, the Prepetition First Lien Lenders and the DIP Lender dated as of May 6, 2022, as amended, modified, or supplemented from time to time in accordance with its terms.

1.94.   Section 510(b) Claim means a Claim that is subordinated, or subject to subordination, pursuant to section 510(b) of the Bankruptcy Code, including, without limitation, a Claim arising from the rescission or purchase of a sale or security of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such security or for reimbursement or contribution on account of such Claim pursuant to section 502 of the Bankruptcy Code.

1.95.   Securities Act means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the U.S. Securities and Exchange Commission promulgated thereunder.

1.96.   Solicitation Procedures Order means an order of the Bankruptcy Court (I) Scheduling Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing the Plan and Disclosure Statement Objection Deadline and Related Procedures, (III) Approving Prepetition Solicitation Procedures, (IV) Approving the Form and Manner of Notice, (V) Directing that a Meeting of Creditors not be Convened, and (VI) Granting Related Relief.

1.97.   Supporting Party means the Supporting Party as defined in the Restructuring Support Agreement.

1.98.   Third-Party Release means the releases set forth in Section 10.5 of the Plan.

1.99.    Trade Claims means any unsecured Claims that (i) are not (a) Claims arising from or based upon rejection of any executory contract or unexpired lease, (b) Administrative Expense Claims, (c) Professional Fee Claims, (d) Priority Tax Claims, (e) DIP Claims, (f) Other Priority Claims, (g) Other Secured Claims, (h) Prepetition First Lien Credit Agreement Claims, (i) General Unsecured Claims, and (j) Intercompany Claims, and (ii) the Holders of which agree to continue to do business with the Reorganized Debtors after the Effective Date.

1.100.    U.S. Trustee means the Office of the United States Trustee for the Southern District of Texas.

1.101.    Unexpired Lease means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.102.    Unimpaired means with respect to a Claim, a Claim that is not Impaired, including any Claim that is Reinstated.

B.    Rules of Interpretation.  For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document, schedule, or exhibit filed or to be filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections or Articles are references to Sections or Articles of this Plan or the Plan Supplement, as the same may be amended, waived or modified from time to time; (f) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Section, subsection or clause contained in this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code (other than section 102(5) of the Bankruptcy Code) will apply; and (i) any reference to an Entity's "subsidiaries" means its direct and indirect subsidiaries.

C.    Computation of Time.  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  In the event that any payment, distribution, act or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day shall be deemed to have been completed or to have occurred as of the required date.

D.     Exhibits and Plan Supplement.  All exhibits to this Plan, as well as the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein.  Holders of Claims and Interests may obtain a copy of the Plan Supplement and the filed exhibits upon written request to the Debtors.  Upon their filing, the Plan Supplement and the exhibits may be inspected (i) in the office of the Clerk of the Bankruptcy Court during normal business hours, (ii) at the Bankruptcy Court's website at http://www.deb.uscourts.gov, or (iii) free of charge on the Debtors' restructuring website at https://www.kccllc.net/cypress.

E.     Deemed Acts.  Whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred by virtue of this Plan and/or Confirmation Order without any further act by any party.

## ARTICLE II:
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

2.1.     Administrative Expense Claims.

Subject to the terms of the Confirmation Order, holders of Allowed Administrative Expense Claims other than Professional Fee Claims or Priority Tax Claims shall be paid in full in cash in accordance with the following: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable; (e) if such Allowed Administrative Claim is an Intercompany Claim (as defined below) but only to the extent that the Reorganized Debtors Reinstate any such Intercompany Claims under the terms of the Plan, in the ordinary course of their business after the Effective Date; or (f) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

2.2.     Professional Fee Claims.

(a)     Final Fee Applications.

All Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503 and/or section 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any Professional or any other entity for making a substantial contribution in the

Chapter 11 Cases) shall file and serve final requests for payment of Professional Fee Claims no later than the first Business Day that is 45 days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtors and the applicable Professional within 21 days after the filing of the final fee application with respect to the Professional Fee Claim. Any such objections that are not consensually resolved may be set for hearing on 21 days' notice by the Professional asserting such Professional Fee Claim. The Professional Fees Escrow Account shall in no way limit or act as a cap on Professional Fee Claims.

(b)    Professional Fees Escrow Account.

On or before the date that is two Business Days after the Confirmation Date, the Debtors shall establish the Professional Fees Escrow Account. On the Effective Date, the Reorganized Debtors shall fund the Professional Fees Escrow Account in an amount equal to all asserted Professional Fee Claims that are unfunded or unpaid, accounting for, and outstanding as of the Effective Date (including, for the avoidance of doubt, any reasonable estimates for unbilled amounts payable by the Reorganized Debtors); *provided, however*, that the amounts deposited in the Professional Fees Escrow Account do not represent a cap of any amounts to be paid to any Professional. Amounts held in the Professional Fees Escrow Account shall not constitute property of the Estates or of the Reorganized Debtors. No Liens, claims, or interests shall encumber the Professional Fees Escrow Account in any way. The Professional Fees Escrow Account may be an interest-bearing account. In the event there is a remaining balance in the Professional Fees Escrow Account following payment to all holders of Professional Fee Claims under the Plan, any such amounts shall be returned to the Reorganized Debtors.

2.3.    <u>DIP Claims</u>. On the Effective Date, each holder of an Allowed DIP Claim shall receive, in full and final satisfaction of its Allowed DIP Claim, New Interests equal to its Pro Rata New Interest Allocation, to be issued by Reorganized CEP, subject to dilution by the Management Incentive Plan.

2.4.    <u>Priority Tax Claims</u>. Except to the extent that a holder of an Allowed Priority Tax Claim and the Debtors agree to a less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtors either (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the initial distribution date and the date such claim becomes an Allowed Claim (or as soon thereafter as practical), (b) through equal annual installment payments in Cash, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, over a period ending not later than five years after the Petition Date, or (c) treatment in a manner not less favorable than the most favored non-priority unsecured Claim provided for by the Plan.

2.5.    <u>Post-Effective Date Fees and Expenses</u>. Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors may, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the implementation and consummation of the Plan incurred by the Reorganized Debtors following the Effective Date that are agreed to be paid by the Reorganized Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327

17

through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Reorganized Debtors may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

## ARTICLE III:
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

3.1.   <u>Summary of Classification and Treatment of Classified Claims and Interests</u>.

3.1.1   <u>General</u>.

(a)    Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests are classified for all purposes, including, without limitation, voting, Confirmation and distributions pursuant to this Plan, as set forth herein.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

(b)    <u>Grouping of Debtors for Convenience</u>.  This Plan groups certain Claims against, and Interests in, the Debtors together solely for the purpose of describing treatment under the Plan, voting on the Plan, Confirmation, and making distributions in accordance with the Plan.  Such groupings shall not, except as otherwise provided by this Plan or the Confirmation Order, affect any Debtor's status as a separate legal Entity, result in substantive consolidation of any Estates, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets.

(c)    Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

(d)    Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including all Claims, causes of action and controversies arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against any Released Party, or holders of Claims, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtors.  The entry of the Confirmation Order shall constitute the

Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness. The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

      3.1.2  <u>Identification of Classes against the Debtors</u>. The following chart assigns a number to each Class for purposes of identifying each separate Class:

| CLASS | CLAIM OR INTEREST | STATUS | VOTING RIGHTS |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Prepetition First Lien Credit Agreement Claims | Impaired | Entitled to Vote |
| 4 | Trade Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 5 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Reject) |
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Reject) |
| 8 | Interests in CELP | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

    3.2.   <u>Treatment of Claims against and Interests in the Debtors</u>.

      Each Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Reorganized Debtors and such Holder. Unless otherwise indicated, the Holder of an Allowed

Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

### 3.2.1   Class 1:  Other Priority Claims

(a)   Classification:  Class 1 consists of all Other Priority Claims.

(b)   Treatment:  Except to the extent that a holder of an Other Priority Claim agrees to a less favorable classification or treatment, each holder of an Allowed Other Priority Claim will receive, in the sole discretion of the Reorganized Debtors:

> i.   payment in full in Cash as promptly as reasonably practicable on the later of (A) the Effective Date and (B) the date on which such Other Priority Claim becomes an Allowed Claim payable under applicable law or any agreement relating thereto; or

> ii.   treatment of such Other Priority Claim in any other manner that renders the claim Unimpaired, including Reinstatement.

All Allowed Other Priority Claims not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

(c)   Voting:  Allowed Claims in Class 1 are Unimpaired.  Each holder of an Allowed Claim in Class 1 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

### 3.2.2   Class 2:  Other Secured Claims.

(a)   Classification:  Class 2 consists of all Other Secured Claims.

(b)   Treatment:  Except to the extent that a holder of an Other Secured Claim agrees to a less favorable classification or treatment, each holder of an Other Secured Claim shall, in the sole discretion of the Reorganized Debtors, receive on the Effective Date (or as promptly thereafter as reasonably practicable) or in the ordinary course of the Reorganized Debtors' business:

> i.   payment in full in Cash, including the payment of any interest Allowed and payable under section 506(b) of the Bankruptcy Code;

> ii.   delivery of the collateral securing such Allowed Other Secured Claim; or

iii.      treatment of such Allowed Other Secured Claim in any other manner that renders the Claim Unimpaired, including Reinstatement.

(c)      Voting:  Allowed Claims in Class 2 are Unimpaired.  Each holder of an Allowed Claim in Class 2 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

### 3.2.3   Class 3:  Prepetition First Lien Credit Agreement Claims.

(a)      Classification:  Class 3 consists of all Prepetition First Lien Credit Agreement Claims.

(b)      Allowance:  The Prepetition First Lien Credit Agreement Claims shall be deemed Allowed on the Effective Date in the principal amount of $59,194,225.05 including interest, fees and expenses accrued through the Effective Date.

(c)      Treatment:  On the Effective Date, each holder of an Allowed First Lien Credit Agreement Claim shall receive, in full and final satisfaction of its Allowed First Lien Credit Agreement Claim, New Interests equal to its Pro Rata New Interest Allocation, subject to potential dilution by the Management Incentive Plan.

(d)      Voting:  Claims in Class 3 are Impaired.  Therefore, each holder of an Allowed Claim in Class 3 shall be entitled to vote to accept or reject this Plan.

### 3.2.4   Class 4:  Trade Claims.

(a)      Classification:  Class 4 consists of all Trade Claims.

(b)      Treatment:  Except to the extent that a holder of a Trade Claim agrees to a less favorable treatment, each holder of a Trade Claim shall, in the sole discretion of the Reorganized Debtors, receive on the Effective Date (or as promptly thereafter as reasonably practicable) or in the ordinary course of the Reorganized Debtors' business:

i.      Reinstatement of such Allowed Trade Claim pursuant to section 1124 of the Bankruptcy Code; or

ii.      payment in full in Cash on (A) the Effective Date, or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Trade Claim.

(c)      Voting:  Allowed Claims in Class 4 are Unimpaired.  Each holder of an Allowed Claim in Class 4 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

### 3.2.5   Class 5:  General Unsecured Claims.

(a)   <u>Classification</u>:  Class 5 consists of all General Unsecured Claims.

(b)   <u>Treatment</u>:  On the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of its Allowed General Unsecured Claim, its pro rata share of the General Unsecured Claims Pool.

(c)   <u>Voting</u>:  Allowed Claims in Class 5 are Impaired.  Each holder of an Allowed Claim in Class 5 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

### 3.2.6   Class 6:  Intercompany Claims.

(a)   <u>Classification</u>:  Class 6 consists of all Intercompany Claims.

(b)   <u>Treatment</u>:  On the Effective Date, in the sole discretion of the Reorganized Debtors, all Intercompany Claims shall either be (i) Reinstated or (ii) released without any distribution on account of such Claims.

(c)   <u>Voting</u>:  Allowed Claims in Class 6 are either Unimpaired, in which case the holders of Allowed Class 6 Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and not receiving any distribution under the Plan, in which case the holders of Allowed Class 6 Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each holder of an Allowed Class 6 Claim will not be entitled to vote to accept the Plan.

### 3.2.7   Class 7:  Intercompany Interests.

(a)   <u>Classification</u>:  Class 7 consists of all Intercompany Interests.

(b)   <u>Treatment</u>:  On the Effective Date, all Intercompany Interests shall be, at the option of the Reorganized Debtors, either: (i) Reinstated; or (ii) cancelled and released without any distribution on account of such Interests.

(c)   <u>Voting</u>:  Allowed Claims in Class 7 are either Unimpaired, in which case the holders of Allowed Class 7 Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and not receiving any distribution under the Plan, in which case the holders of Allowed Class 7 Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each holder of an Allowed Class 7 Claim will not be entitled to vote to accept the Plan.

### 3.2.8   Class 8: Interests in CELP.

(a)   <u>Classification</u>:  Class 8 consists of all Interests in CELP.

          (b)    <u>Treatment</u>:  On the Effective Date, all Interests in CELP shall be cancelled and released without any distribution on account of such Interests.

          (c)    <u>Voting</u>:  Allowed Claims in Class 8 are Impaired.  Each holder of an Allowed Claim in Class 5 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

      3.2.9   Class 9:  Section 510(b) Claims.

          (a)    <u>Classification</u>:  Class 9 consists of all Section 510(b) Claims.

          (b)    <u>Treatment</u>:  On the Effective Date, all Section 510(b) Claims shall be discharged and extinguished and the holders thereof shall not receive or retain any property under this Plan on account of such Section 510(b) Claims.

          (c)    <u>Voting</u>:  Claims in Class 9 are Impaired.  Each holder of an Allowed Claim in Class 9 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

<b>ARTICLE IV:<br/>ACCEPTANCE OR REJECTION OF THE PLAN</b>

    4.1.   <u>Impaired Classes of Claims Entitled to Vote on this Plan</u>.  Claims in Class 3 (Prepetition First Lien Credit Agreement Claims) are Impaired, and the holders of such Claims are entitled to vote to accept or reject this Plan.

    4.2.   <u>Acceptance by an Impaired Class of Claims</u>.  Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class shall have accepted the Plan if, after excluding any Claims held by any Holder whose Claims have been designated pursuant to section 1126(e) of the Bankruptcy Code, (a) the holders of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept such Plan and (b) more than one-half in number of such Allowed Claims actually voting in such Class have voted to accept the Plan.

    4.3.   <u>Presumed Acceptance by Unimpaired Classes</u>.  Class 1 (Other Priority Claims), Class 2 (Other Secured Claims) and Class 4 (Trade Claims) are Unimpaired by this Plan. Pursuant to section 1126(f) of the Bankruptcy Code, the Holders in such Classes are conclusively presumed to have accepted this Plan and therefore shall not be entitled to vote to accept or reject this Plan.

    4.4.   <u>Presumed Rejection by Certain Impaired Classes</u>.  Class 5 (General Unsecured Claims), Class 8 (Interests in CELP), and Class 9 (Section 510(b) Claims) are Impaired by this Plan.  Holders in such Classes will not receive or retain any property under this Plan on account of their Claims and Interests.  Pursuant to section 1126(g) of the Bankruptcy Code, such Holders are conclusively presumed to have rejected this Plan and therefore shall not be entitled to vote to accept or reject this Plan.

23

4.5.    Presumed Acceptance or Rejection of the Plan.    To the extent Class 6 Intercompany Claims and Class 7 Intercompany Interests are extinguished, each holder of a Claim in Class 6 and Class 7 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to accept or reject the Plan.   To the extent Class 6 Intercompany Claims and Class 7 Intercompany Interests are Reinstated, each holder of a Claim in Class 6 and Class 7 is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

4.6.    Reservation of Rights.    The Debtors reserve the right to amend, modify, or supplement this Plan for any reason but in accordance with the Restructuring Support Agreement.

## ARTICLE V:
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1.    Restructuring Transactions .   On the Effective Date, the applicable Debtors or the Reorganized Debtors shall enter into any transaction, including those transactions set forth in or contemplated by the Restructuring Support Agreement, including, as applicable, the issuance, transfer, or cancellation of any securities, notes, instruments, certificates, and other documents required to be issued, transferred, or cancelled pursuant to the Plan, subject to the terms of the Restructuring Support Agreement. Reorganized CEP shall be the recipient of the credit or equity commitment provided in the Commitment, and Reorganized CEP shall be the issuer of New Interests to the applicable Holders of Claims and Interests as set forth herein and in the applicable Definitive Documentation.   Reorganized CELP shall be the issuer of the Reorganized CELP Interest to the Plan Administrator as set forth herein and in the applicable Definitive Documentation.   The actions to implement this Plan and the Restructuring Support Agreement may include, in accordance with the consent rights in the Restructuring Support Agreement: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; (4) the execution and delivery of contracts or agreements, including, without limitation, transition services agreements, employment agreements, or such other agreements as may be deemed reasonably necessary by the Commitment Party to effectuate the Plan and the Restructuring Support Agreement; and (5) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan.

5.2.    Operations between the Confirmation Date and Effective Date.   During the period from the Confirmation Date through and until the Effective Date, the Debtors may continue to operate their businesses as Debtors in possession in the ordinary course in a manner consistent with their obligations under the Restructuring Support Agreement and the transactions

contemplated by the Plan and the Restructuring Support Agreement, subject to all applicable orders of the Bankruptcy Court and the provisions of the Bankruptcy Code.

5.3.    <u>Sources of Cash Consideration for Plan Distributions</u>.  The Reorganized Debtors shall fund distributions and satisfy applicable Allowed Claims under the Plan with Cash on hand and the proceeds of the Commitment.

5.4.    <u>New Interests</u>.  On the Effective Date, holders of Prepetition First Lien Credit Agreement Claims or their designee(s) or holders of DIP Claims or their designee(s) shall receive, and the Reorganized Debtors shall issue, transfer, and deliver to such Holders or their designee(s), the newly issued New Interests, which shall constitute all of the issues and outstanding interests and rights to purchase or otherwise acquire interests in the Reorganized Debtors (subject to potential dilution by the Management Incentive Plan), free and clear of any lien, charge, pledge, security interest, claim, or other encumbrance.  For the avoidance of doubt, the acceptance of New Interests by any Holder pursuant to the treatment of such Holder's Claims under the Plan shall be deemed as such Holder's agreement to the New Organizational Documents, each as may be amended or modified from time to time following the Effective Date in accordance with its terms.

5.5.    <u>Section 1145 Exemption</u>.  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance and distribution of the New Interests and the Reorganized CELP Interest shall be exempt from, among other things, the registration and prospectus delivery requirements of section 5 of the Securities Act, and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution or sale of securities, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act.  In addition, any securities issued under the Plan shall be freely transferable under the Securities Act by the recipients thereof, subject to compliance with any rules and regulations of the U.S. Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Interests and applicable regulatory approval, if any.

5.6.    <u>Corporate Governance, Directors, Officers, and Corporate Action</u>.

5.6.1    <u>Certificate of Incorporation; Reorganized CEP Operating Agreement</u>.  On the Effective Date, the Reorganized CEP Operating Agreement and certificates of incorporation of Reorganized CEP shall go into effect.  Consistent with, but only to the extent required by, section 1123(a)(6) of the Bankruptcy Code, on the Effective Date, the certificates of incorporation of the Reorganized Debtors shall prohibit the issuance of non-voting equity securities.  After the Effective Date, each of the Reorganized Debtors may amend and restate its certificates or articles of incorporation, by-laws, or similar governing documents, as applicable, as permitted by applicable law.

5.6.2    <u>The New Board</u>.  Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the number and identity of the members of the New Board shall be selected and approved by the Supporting Party, with the constitution of the New Board to be identified in the Plan Supplement prior to the Confirmation

Hearing.  After the Effective Date, the New Organizational Documents, as each may be amended thereafter from time to time, shall govern the designation and election of directors.

5.6.3   <u>Corporate Action</u>.  On the Effective Date, (i) the selection of directors and officers for the Reorganized Debtors, (ii) the issuance and distribution of the New Interests and the Reorganized CELP Interest, and (iii) all other actions and transactions contemplated by this Plan shall be deemed authorized and approved in all respects (subject to the provisions of this Plan).  All matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with this Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirement of further action by the security holders or directors of the Debtors or the Reorganized Debtors in accordance with section 303 of the Delaware General Corporation Law and the provisions of the Bankruptcy Code.  On and after the Effective Date, the appropriate officers of the Reorganized Debtors and members of the boards of directors or managers of the Reorganized Debtors shall be authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by this Plan in the name of and on behalf of the Reorganized Debtors.

5.7.   <u>Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors</u>.  On and after the Effective Date, after giving effect to each of the actions contemplated under this Plan, the Reorganized Debtors shall continue to exist in accordance with the applicable law in the jurisdiction in which it is formed.  Pursuant to section 1141(b) of the Bankruptcy Code, except as otherwise provided under this Plan, all property of the Estates, including all claims, rights, and Causes of Action and any property acquired by the Debtors or the Reorganized Debtors under or in connection with this Plan, together with any property of the Debtors that is not property of their Estates and that is not specifically disposed of pursuant to this Plan, shall revest in the Reorganized Debtors on the Effective Date free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as specifically provided in this Plan or the Confirmation Order.  Thereafter, the Reorganized Debtors may operate their business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules.  As of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Liens and non-Reinstated Claims, except as specifically provided in this Plan (including <u>Sections 3.2.3(b)</u> and <u>3.2.4(b)</u> herein) or the Confirmation Order.

5.8.   <u>Cancelation of Liens; Surrender and Cancelation of Notes, Instruments, Certificates, and Other Documents Evidencing Claims</u>.  Except as otherwise provided in this Plan, on the Effective Date, in consideration for the distributions to be made on the Effective Date pursuant to this Plan, all Liens, charges, and encumbrances related to any Claim or Interest, other than any Lien securing an Other Secured Claim or a First Lien Credit Agreement Claim that is, in each case, Reinstated pursuant to this Plan, shall be terminated, null and void and of no effect.  The holders of Other Secured Claims (other than Other Secured Claims that are Reinstated pursuant to this Plan) shall be authorized and directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such Holder and to take such actions as may be requested by the Debtors (or the Reorganized Debtors, as the case may be) to evidence the release of any Liens, including the execution, delivery, and filing or recording of such release documents as may be requested by the Debtors (or the Reorganized Debtors, as the case may be).  On the Effective Date, except to the extent otherwise provided in

the Plan, all notes, instruments, certificates, and other documents evidencing Claims shall be cancelled and the obligations of the Debtors discharged in accordance with section 1141(d)(1) of the Bankruptcy Code.

5.9.     <u>Registration of New Interests</u>.  On the Effective Date, the New Interests and the Reorganized CELP Interest shall not be listed for public trading on any securities exchange, the Reorganized Debtors will not be a reporting company under the Securities Exchange Act of 1934, and the Reorganized Debtors shall not be required to file reports with the U.S. Securities and Exchange Commission or any other governmental entity.

5.10.    <u>Additional Transactions Authorized under This Plan</u>.

5.10.1 On or after the Effective Date, the Reorganized Debtors shall be authorized to take any such actions as may be necessary or appropriate to Reinstate Claims or Interests or render Claims or Interests not Impaired, as provided for under this Plan.

5.10.2 On or after the Effective Date, the Reorganized Debtors shall be authorized to pay the Restructuring Expenses.

5.11.    <u>Management Incentive Plan</u>.  Following the Effective Date, the Reorganized Debtors may (a) reserve a certain percentage of New Interests as determined by the Reorganized Debtors and the Commitment Party, on a fully diluted, fully distributed basis, for grants made from time to time to employees of the Reorganized Debtors and (b) otherwise contain terms and conditions (including with respect to participants, allocation, structure, and timing of issuance) generally consistent with those prevailing in the market at the discretion of the New Board.

5.12.    <u>Comprehensive Settlement of Claims and Controversies</u>.  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are in the best interests (i) of the Debtors, the Reorganized Debtors, the Estates, and their respective property and (ii) Claim and Interest holders, and are fair, equitable, and reasonable.

5.12.1 <u>Preservation of Causes of Action</u>.

(a)     In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article X hereof, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article X.

(b)      The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article X of the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

(c)      The Reorganized Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor, except as otherwise expressly provided in the Plan, including Article X of the Plan. The Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

5.13.   <u>General Unsecured Claims Pool</u>.  On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors shall deposit the General Unsecured Claims Pool into an account maintained by the Plan Administrator, for the benefit of the holders of Allowed General Unsecured Claims.  On the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed General Unsecured Claim shall receive its pro rata share (based upon the total amount of such Holder's Allowed Claim relative to the total amount of all Allowed General Unsecured Claims) of the General Unsecured Claims Pool.

5.13.1  <u>Deficiency Claims Waiver</u>.  Solely for the purposes of the classification and treatment provisions under this Plan, each of the Prepetition First Lien Lenders agrees to waive and shall receive no distribution on account of its unsecured deficiency claims arising under the Prepetition First Lien Credit Agreement.

5.13.2  <u>Debtors' Waiver and Release of Certain Causes of Action</u>.  On the Effective Date, the Debtors and their Estates shall forever waive, relinquish, and release any and all Causes of Action arising under Chapter 5 of the Bankruptcy Code and similar state law, the Debtors and their Estates had, have, or may have had against any Holder of a Class 5 General Unsecured Claim that (i) does not elect to opt out of the Third-Party Release contained in the Plan, (ii) does not timely object to the Third-Party Release contained in the Plan, or (iii) does

timely object to the Third-Party Release contained in the Plan but such objection is resolved before Confirmation of the Plan.

            5.13.3  <u>Costs of Administering the General Unsecured Claims Pool</u>.  Any costs, fees, expenses, and the like anticipated to be incurred by the Plan Administrator in connection with administering the General Unsecured Claims Pool, reconciling and Filing objections to General Unsecured Claims, settling, compromising, withdrawing, or litigating to judgment such objections, and making or causing distributions to holders of General Unsecured Claims pursuant to this Plan shall be paid from the General Unsecured Claims Pool.

       5.14.  <u>Debtors' Waiver and Release of Interests in CELP</u>.  On the Effective Date, the Debtors and their Estates shall forever waive, relinquish, and release any and all Causes of Action related to distributions made to any Holder of a Class 8 Interest in CELP, including any avoidance actions under Chapter 5 of the Bankruptcy Code and similar state law, the Debtors and their Estates had, have, or may have had against any such Holder of a Class 8 Interest in CELP that (i) does not elect to opt out of the Third-Party Release contained in the Plan, (ii) does not timely object to the Third-Party Release contained in the Plan, or (iii) does timely object to the Third-Party Release contained in the Plan but such objection is resolved before Confirmation of the Plan.

## ARTICLE VI:
## TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND INSURANCE POLICIES

      6.1.  <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.  On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, <u>unless</u> such Executory Contract or Unexpired Lease (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is subject to a motion to reject such Executory Contract or Unexpired Lease filed prior to the Effective Date, or (iv) appears on the "List of Executory Contracts and Unexpired Leases to be Assumed at the Confirmation Hearing" that will be filed with the Plan Supplement.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections and the assumptions of any Executory Contract or Unexpired Lease for which a motion to assume has been filed, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any motions to assume or reject Executory Contracts of Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date.  To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, including any "change of control" provision, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

      6.2.  <u>Cure Obligations</u>.

6.2.1   Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan or otherwise shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitations described in below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Bankruptcy Court shall hear such dispute prior to the assumption becoming effective.  The Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

6.2.2   Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute a finding by the Bankruptcy Court that (i) each such assumption is in the best interest of the Debtors and their Estates, (ii) the requirements of section 365(b)(1) of the Bankruptcy Code are deemed satisfied, and (iii) the assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether money or nonmonetary, as of the Effective Date.

6.2.3   Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article VI shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article VI shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

6.3.   <u>Insurance Policies and Agreements</u>.  Insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date.  To the extent that such insurance policies or agreements are considered to be Executory Contracts or Unexpired Leases, this Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors and their Estates.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy.

6.4.  Postpetition Contracts and Leases.  All contracts, agreements and leases that were entered into by the Debtors or assumed by the Debtors after the Petition Date in compliance with the terms of the Restructuring Support Agreement shall be deemed assigned by the Debtors to the Reorganized Debtors on the Effective Date.

6.5.  Modifications, Amendments, Supplements, Restatements, or Other Agreements. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contracts or Unexpired Leases including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.  Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claims that may arise in connection therewith.

6.6.  Nonoccurrence of Effective Date.  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

# ARTICLE VII:
## PROVISIONS GOVERNING DISTRIBUTIONS

7.1.  Timing and Calculation of Amounts to Be Distributed.  Except as otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII. Except as otherwise provided in the Plan, holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. Notwithstanding anything to the contrary in this Plan or the Confirmation Order, no holder of an Allowed Claim shall, on account of such Allowed Claim or Allowed Interest, receive a distribution in excess of the Allowed amount of such Claim. All distributions under the Plan shall be made by the Disbursing Agent.

7.2.  Distributions on Account of Claims Allowed after the Effective Date.  Except as otherwise provided in this Plan, the Confirmation Order, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of a Disputed Claim that becomes an

Allowed Claim after the Effective Date shall be made as soon as reasonably practicable after the Disputed Claim becomes an Allowed Claim.

7.3.   Special Rules for Distributions to Holders of Disputed Claims.  Notwithstanding any provision to the contrary in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the relevant Disbursing Agent shall establish appropriate reserves for potential payment of such Claims.

7.4.   Means of Cash Payment.  Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of relevant Disbursing Agent by (a) checks drawn on or (b) wire transfers.  Cash payments to foreign creditors may be made, at the option of the relevant Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

7.5.   Minimum; De Minimis Distributions.  No Cash payment of less than $25.00, in the reasonable discretion of the relevant Disbursing Agent, shall be made to a holder of an Allowed Claim on account of such Allowed Claim.

7.6.   Withholding and Reporting Requirements.  In connection with this Plan and all distributions thereunder, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing such other mechanisms that the Reorganized Debtors, as appropriate, believes are reasonable and appropriate.  All persons holding Claims or Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes.  Each holder of an Allowed Claim that is to receive a distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution.  No distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtors, as appropriate, for the payment and satisfaction of such tax obligations.

7.7.   Compliance Matters.  The Disbursing Agent shall be entitled to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and similar encumbrances.

7.8.   Setoff and Recoupment.  The Disbursing Agent may, pursuant to sections 553 and/or 558 of the Bankruptcy Code or applicable non-bankruptcy laws, but shall not be required to, set off and/or recoup against any Claim the payments or other distributions to be made pursuant to this Plan in respect of such Claim, or claims of any nature whatsoever that the

32

Debtors or the Reorganized Debtors may have against the holder of such Claim; *provided, however*, that neither the failure to assert such rights of setoff and/or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any claim that the Debtors or the Reorganized Debtors may assert against any holder of an Allowed Claim.

7.9.    <u>Reinstated Claims</u>.  Notwithstanding anything contained herein to the contrary, nothing shall affect, diminish or impair the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Reinstated Claim, including, but not limited to, legal and equitable rights of setoff and/or recoupment against the holders of any Reinstated Claims.

7.10.    <u>Undeliverable or Non-Negotiated Distributions and Unclaimed Property</u>.  If any distribution is returned as undeliverable, no further distributions to the applicable Holder shall be made unless and until the relevant Disbursing Agent is notified in writing of such Holder's then-current address, at which time the undelivered distribution shall be made to such Holder without interest or dividends *provided, however*, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the distribution is made.  Notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary, all undeliverable distributions under the Plan that remain unclaimed for one year after attempted distribution shall indefeasibly revert to the Reorganized Debtors or, if such undeliverable distribution was to a holder of a Class 5 Claim, be distributed *pro rata* to the remaining holders of Class 5 Allowed Claims.  Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety calendar days from and after the date of issuance thereof.  Requests for reissuance of any check must be made directly and in writing to the relevant Disbursing Agent by the holder of the relevant Allowed Claim within the 90-calendar-day period.  If a request for reissuance is not timely made within the 90-calendar-day period in accordance with the preceding sentence, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be deemed undeliverable as of the date of the original issuance of the check and shall indefeasibly revert to the Reorganized Debtors in accordance with the terms hereof or, if such unnegotiated check was on account of a Class 5 Claim, be distributed *pro rata* to the remaining holders of Allowed Claims in Class 5, notwithstanding any federal or state escheat laws to the contrary.  If at the end of the process, less than $5,000 is left in the General Unsecured Claims Pool, the Plan Administrator can vote to donate the remaining funds to a charity.

7.11.    <u>Claims Paid by Third Parties</u>.  To the extent a Holder receives a distribution on account of a Claim and also receives payment from a party that is not the Disbursing Agent on account of such Claim, such Holder shall, within thirty calendar days of receipt thereof, repay or return the distribution to the Disbursing Agent, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of the Claim as of the date of any such distribution under the Plan.

7.12.    Applicability of Insurance Policies.  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VIII:
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

8.1.    Allowance of Claims.  After the Effective Date, the Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

8.2.    Claims Administration Responsibilities.   Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors, or the Plan Administrator solely with respect to Class 5 Claims, shall have the sole authority to:  (1) reconcile, file, withdraw, or litigate to judgment objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor or the Plan Administrator, as applicable, shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest.

8.3.    Adjustment to Claims without Objection.   Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Reorganized Debtors, as applicable, without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

8.4.    Time to File Objections to Claims.  Any objections to Claims shall be filed on or before the Claims Objection Bar Date.

8.5.    Disallowance of Claims.  Any Claims held by an Entity that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order

with respect thereto has been entered and all sums due, if any, to the Debtors or the Reorganized Debtors by that Entity have been turned over or paid to the applicable Entity.

8.6.    <u>Late-Filed Claims</u>.  Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims will not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late-filed Claims have been deemed timely filed by a Final Order.

8.7.    <u>Late Claims/Amendments to Claims</u>.  On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be filed without the prior authorization of the Bankruptcy Court following notice and a hearing. Any Claim filed in contravention of this <u>Section 8.7</u> shall be deemed disallowed in full and expunged without any further action. A Claim may be amended only in accordance with the Bankruptcy Code and the Bankruptcy Rules.

8.8.    <u>No Distributions Pending Allowance</u>.  If an objection to a Claim or Interest or portion thereof is filed as set forth in <u>Article VIII</u> of this Plan, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

8.9.    <u>Distributions after Allowance</u>.  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim.

## ARTICLE IX:
## CONFIRMATION AND CONSUMMATION OF THE PLAN

9.1.    <u>Conditions to Effective Date</u>.  This Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived in accordance with <u>Section 9.2</u> of this Plan:

9.1.1    The Bankruptcy Court shall have entered the Confirmation Order, in form and substance satisfactory to (a) the Debtors, (b) the Supporting Party, and (c) the DIP Lender, and the Confirmation Order shall be a Final Order.

9.1.2    Simultaneously with the occurrence of the Effective Date, the Commitment shall be in form and substance acceptable to (a) the Debtors, (b) the Commitment Party, and (c) the DIP Lender.

9.1.3    Issuance of the New Interests and Reorganized CELP Interest (with all conditions precedent thereto having been satisfied or waived).

9.1.4    All requisite governmental authorities and third parties shall have approved or consented, or such time period to object, stay, or limit shall have expired, to the transactions contemplated by this Plan, to the extent reasonably required.

9.1.5    Negotiation, execution, and delivery of the Definitive Documentation.

9.1.6    All amounts required to be funded or paid on or before the Effective Date pursuant to this Plan or the Confirmation Order shall have been funded or paid.

9.2.    Waiver of Conditions.  Each of the conditions set forth in Section 9.1 of this Plan may be waived in whole or in part with the consent of both the Debtors and Supporting Party, in their respective sole discretion.

9.3.    Vacatur of Confirmation Order.  If the Confirmation Order is vacated, which shall occur automatically upon failure of the Effective Date:  (a) this Plan shall be null and void in all respects; (b) any settlement of Claims or Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) the time within which the Debtors may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of 120 days after the date the Confirmation Order is vacated.

9.4.    Notice of Effective Date.  The Debtors shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date on the Effective Date or as soon as practicable thereafter.

## ARTICLE X:
## EFFECT OF PLAN CONFIRMATION

10.1.    Binding Effect.    On the Effective Date, except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, all provisions of this Plan or the Plan Supplement, including all agreements, instruments, and other documents filed in connection with this Plan and executed by the Debtors or the Reorganized Debtors in connection with this Plan or the Plan Supplement, shall be binding upon the Debtors, the Reorganized Debtors, and all holders of Claims against and Interests in the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted this Plan, and all other parties that are affected in any manner by this Plan.  Except as expressly provided otherwise in the Plan, all agreements, instruments, and other documents filed in connection with this Plan shall be given full force and effect, and shall bind all parties referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement.

10.2.    Discharge.

10.2.1    Discharge of Claims and Termination of Interests.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date,

of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

10.2.2 <u>Discharge Injunction</u>.   As of the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, all Entities (other than holders of Reinstated Claims solely in their capacities as such) shall be precluded from asserting against the Debtors or the Reorganized Debtors and their respective assets and property or the Estates, any other or further Claims (other than those Reinstated under this Plan), or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, relating to the Debtors or Reorganized Debtors or any of their respective assets and property or the Estates, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as expressly provided in this Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all non-Reinstated Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors, the Reorganized Debtors, or their respective assets, property and Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability.  Except as otherwise specifically provided in this Plan or the Confirmation Order, all Persons or Entities who have held, hold or may hold Claims or Interests that arose prior to the Effective Date and all other parties-in-interest, along with their respective present or former employees, agents, officers, directors, principals, representatives and Affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim (including a Section 510(b) Claim) against or Interest in the Reorganized Debtors or property of the Reorganized Debtors, other than to enforce any right to a distribution pursuant to the Plan, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Reorganized Debtors or property of the Reorganized Debtors, other than to enforce any right to a distribution pursuant to this Plan, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Reorganized Debtors or against the property or interests in property of the Reorganized Debtors, other than to enforce any right to a distribution pursuant to this Plan or (iv) asserting any right of

setoff, subrogation or recoupment of any kind against any obligation due from the Reorganized Debtors or against the property or interests in property of the Reorganized Debtors, with respect to any such Claim or Interest.  Such injunction shall extend to any successors or assignees of the Reorganized Debtors and their respective properties and interest in properties.  For the avoidance of doubt, the provisions of this <u>Section 10.2.2</u> shall not apply with respect to Claims that are Reinstated under this Plan, including, without limitation, the Prepetition First Lien Credit Agreement Claims.

10.3.    **<u>Release of Liens</u>.  Release of Liens. Except as otherwise provided in this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with <u>Section 3.2.2</u> hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

10.4.    **<u>Releases by the Debtors</u>.  As of the Effective Date, each Released Party will be deemed released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates or Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, the Debtors or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the**

Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the DIP Credit Agreement, the Plan, the Restructuring Support Agreement, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Credit Agreement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to a Released Party's willful misconduct or intentional fraud as determined by a final order of the Bankruptcy Court; *provided* that any right to enforce the Plan and Confirmation Order is not so released by this section.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released pursuant to the Debtor Release.

10.5.   <u>Releases by Holders of Claims and Interests</u>.  As of the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, Reorganized Debtors, and each Released Party from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtors and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the DIP Credit Agreement, the Plan, the Restructuring Support Agreement, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Credit Agreement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or

upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to a Released Party's willful misconduct or intentional fraud as determined by a final order of the Bankruptcy Court; *provided* that any right to enforce the Plan and Confirmation Order is not so released by this section.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

10.6.   <u>Exculpation</u>.   From and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to, or be subject to any right of action by, any holder of a Claim or an Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating, or implementing this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the solicitation of acceptances of this Plan, Confirmation, and the pursuit thereof, the consummation of this Plan, the administration of this Plan, the property to be distributed under this Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases or implementation of this Plan.

Notwithstanding the foregoing, solely to the extent provided by section 1125(e) of the Bankruptcy Code, the Debtors and the Reorganized Debtors shall neither have, nor incur any liability to any Entity for any exculpated Claim; *provided, however*, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, willful misconduct or gross negligence.

Any of the Exculpated Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under this Plan.

10.7.   <u>Injunctions Related to Exculpation and Releases</u>.

(a)   Except as expressly provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons and Entities that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, Cause of Action, or liability of any nature whatsoever, of the types described in <u>Section 10.6</u> of this Plan and relating to the Debtors, the Reorganized Debtors or any of their respective assets and property and/or the

Estates, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred, and enjoined from taking any of the following actions against any Exculpated Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action, or liabilities: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting, or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Section 10.2 of this Plan; and/or (v) commencing or continuing in any manner any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.

(b)     Except as expressly provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons and Entities that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, Cause of Action, or liability of any nature whatsoever, of the types described in Section 10.5 of this Plan and relating to the Debtors, the Reorganized Debtors or any of their respective assets and property and/or the Estates, the Chapter 11 Cases, this Plan, the Plan Supplement, and/or the Disclosure Statement are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities:  (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting, or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Section 10.2 of this Plan; and/or (v) commencing or continuing in any manner any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.

10.8.    Survival of Indemnification and Exculpation Obligations.  The obligations of the Debtors to indemnify and exculpate any past and present directors, officers, agents, employees and representatives who provided services to the Debtors prior to or after the Petition Date, pursuant to certificates or articles of incorporation, by-laws, contracts, and/or applicable statutes, in respect of all actions, suits, and proceedings against any of such officers, directors, agents, employees, and representatives, based upon any act or omission related to service with, for or on behalf of the Debtors, shall not be discharged or Impaired by Confirmation or consummation of

41

this Plan and shall be assumed by the Reorganized Debtors.  For the avoidance of doubt, this Section 10.8 affects only the obligations of the Debtors and Reorganized Debtors with respect to any indemnity or exculpation owed to or for the benefit of past and present directors, officers, agents, employees, and representatives of the Debtors, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Person, including any provider of director and officer insurance, owed to or for the benefit of such past and present directors, officers, agents, employees, and representatives of the Debtors.

10.9.   Term of Bankruptcy Injunction or Stays.  All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.10.   Liability to Governmental Units.  Nothing in the Confirmation Order or the Plan discharges, releases, resolves, precludes, exculpates, or enjoins:  (i) any liability to any Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any police or regulatory liability to a Governmental Unit to the extent of such entity's liability under non-bankruptcy law on account of its status as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors.  For the avoidance of doubt, the foregoing shall not limit the scope of discharge of all Claims and equity interests arising prior to the Effective Date under sections 524 and 1141 of the Bankruptcy Code, or limit the Debtors' or Reorganized Debtors' rights under section 525 of the Bankruptcy Code.  Nothing in the Confirmation Order or this Plan shall affect any setoff or recoupment rights of any Governmental Unit.

## ARTICLE XI:
## RETENTION OF JURISDICTION

11.1.   Retention of Jurisdiction.  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to: allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim or Priority Tax Claim, and the resolution of any objections to the secured or unsecured status, allowance, priority, or amount of Claims or Interests;

(a)   resolve any matters related to the assumption or rejection of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors or Reorganized Debtors may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)   ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes from, or relating to distributions under, the Plan;

(c)      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(d)      enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, the Restructuring Support Agreement, and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Plan Supplement or the Confirmation Order, and issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(e)      resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan, the Restructuring Support Agreement, or any contract, instrument, release or other agreement or document that is executed or created pursuant to this Plan, or any Entity's rights arising from or obligations incurred in connection with this Plan or such documents, including hearing and determining disputes, cases, or controversies arising in connection with the interpretation, implementation or enforcement of the Plan, Restructuring Support Agreement or the Confirmation Order;

(f)      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(g)      adjudicate, decide, or resolve any and all disputes as to the ownership of any Claim or Interest;

(h)      approve any modification of this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or approve any modification of the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, the Plan Supplement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, the Plan Supplement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(i)      hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

(j)      subject to Section 8.1, hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 363, 503(b), 1103, and 1129(a)(9) of the Bankruptcy Code, which shall be payable by the Debtors only upon allowance thereof pursuant to an order of the Bankruptcy Court;

(k)      hear and determine Causes of Action by or on behalf of the Debtors or the Reorganized Debtors;

43

(l)       hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(m)       hear and determine any issues arising under, or violations of, section 525 of the Bankruptcy Code;

(n)       enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or if distributions pursuant to this Plan are enjoined or stayed;

(o)       determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Order, the Restructuring Support Agreement, or any contract, instrument, release, or other agreement, or document created in connection with this Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order;

(p)       enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

(q)       hear and determine all matters related to the property of the Estates from and after the Confirmation Date;

(r)       hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code;

(s)       enter a final order or decree concluding or closing the Chapter 11 Cases; and

(t)       hear any other matter not inconsistent with the Bankruptcy Code;

*provided, however*, that the Bankruptcy Court shall not retain jurisdiction after the Effective Date over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court, including, for the avoidance of doubt, and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

## ARTICLE XII:
## MISCELLANEOUS PROVISIONS

12.1.   Effectuating Documents and Further Transactions.   Each of the Debtors and the Reorganized Debtors is authorized to execute, deliver, file or record such contracts, instruments, certificates, notes, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, and the New Interests and the Reorganized CELP Interest issued under or in connection with this Plan.

12.2.   <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code:  (a) the issuance, transfer or exchange of equity securities under this Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; or (c) the making or delivery of any deed or other instrument of transfer under this Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee or other similar tax or governmental assessment in the United States.  The Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

12.3.   <u>Payment of Statutory Fees</u>.   All fees due and payable pursuant to section 1930(a)(6) of Title 28 of the United States Code ("<u>Quarterly Fees</u>") prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Reorganized Debtors shall be liable for any and all Quarterly Fees when they are due and payable after the Effective Date.  The Debtors shall file all Quarterly Reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee.  After the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court Quarterly Reports in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Reorganized Debtors during the applicable period, attested to by an authorized representative of the Reorganized Debtors.  The Reorganized Debtors shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the Debtors' cases being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

12.4.   <u>Amendment or Modification of this Plan</u>.   Subject to section 1127 of the Bankruptcy Code, the Debtors may alter, amend or modify this Plan or any exhibits thereto at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan, solely in accordance with the Restructuring Support Agreement.  Any holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment, or modification is made in accordance with the Restructuring Support Agreement and does not materially and adversely change the treatment of the Claim of such Holder.

12.5.   <u>Severability of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted, provided that any such holding, alteration or interpretation complies and is consistent with the Restructuring Support Agreement and does not adversely impact the holders of the Prepetition First Lien Credit Agreement Claims.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected,

impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.6.   <u>Closing of Chapter 11 Cases; Caption Change</u>.   The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases, *provided,* as of the Effective Date, the Reorganized Debtors may submit separate orders to the Bankruptcy Court under certification of counsel closing each of the closing cases and changing the caption of the Chapter 11 Cases accordingly, *provided further* that matters concerning Claims may be heard and adjudicated in a remaining case regardless of whether the applicable Claim is against a Debtor in a closing case. Nothing in this Plan shall authorize the closing of any case *nunc pro tunc* to a date that precedes the date any such order is entered.   Any request for *nunc pro tunc* relief shall be made on motion served on the United States Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing. Upon the filing of a motion to close the last remaining case, the Reorganized Debtors shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1(c).

12.7.   <u>Successors and Assigns</u>.   This Plan shall be binding upon and inure to the benefit of the Debtors, and their successors and assigns, including, without limitation, the Reorganized Debtors.   The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

12.8.   <u>Non-Consummation</u>.   If consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors, or any other Person, or (iii) constitute an admission of any sort by the Debtors, or any other Person.

12.9.   <u>Notice to Debtors or Reorganized Debtors</u> .   All notices, requests and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtor | Counsel to the Debtor |
|---|---|
| Cypress Environmental Partners, L.P. Attn: Peter C. Boylan III, Chairman & CEO 5727 South Lewis Avenue, Suite 500 Tulsa, Oklahoma 74105 Email: pete@cypressenvironmental.biz | Justin Rawlins, Esq. Paul Hastings LLP 1999 Avenue of the Stars, 27th Floor Century City, California 90067 Email: justinrawlings@paulhastings.com -and- Matthew J. Micheli, Esq. Matthew Smart, Esq. Michael Jones, Esq. Paul Hastings LLP 71 S. Wacker Drive, Suite 4500 Chicago, Illinois 60606 Email: mattmicheli@paulhastings.com matthewsmart@paulhastings.com michaeljones@paulhastings.com |
| **Reorganized Debtors** | **Prepetition First Lien Lenders** |
| Samuel S. Ory, Esq. Frederic Dorwart, Lawyers PLLC 124 East Fourth Street Tulsa, Oklahoma 74103 Email: sory@fdlaw.com | Samuel S. Ory, Esq. Frederic Dorwart, Lawyers PLLC 124 East Fourth Street Tulsa, Oklahoma 74103 Email: sory@fdlaw.com |
| **Commitment Party** | **United States Trustee** |
| Samuel S. Ory, Esq. Frederic Dorwart, Lawyers PLLC 124 East Fourth Street Tulsa, Oklahoma 74103 Email: sory@fdlaw.com | Office of the United States Trustee 515 Rusk, Suite 3516 Houston, Texas 77002 Attn: Stephen Statham |

12.10.  Governing Law.  Subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, and subject further to Section 11.1 of this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with (i) the Bankruptcy Code, the Bankruptcy Rules or other federal law to the extent applicable and (ii) if none of such law is applicable, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

12.11.  Tax Reporting and Compliance.  The Reorganized Debtors are hereby authorized, on behalf of the Debtors, to request an expedited determination under section 505 of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

12.12.  Exhibits.  All exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

12.13.  <u>Filing of Additional Documents</u>.  On or before substantial consummation of this Plan, the Reorganized Debtors and the Debtor shall, as applicable, file such agreements and other documents as may be necessary or appropriate to effectuate and evidence further the terms and conditions of this Plan.

12.14.  <u>Plan Documents</u>.  The Plan and the Plan Supplement, including all exhibits, supplements, appendices and schedules thereto, and any modifications to any of the foregoing, shall be in form and substance acceptable to the Debtors and Prepetition First Lien Lenders.

12.15.  <u>Reservation of Rights</u>.  Except as expressly set forth herein, this Plan shall have no force and effect unless the Bankruptcy Court has entered the Confirmation Order.  The filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtors with respect to this Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtors, the Prepetition Agent, the Prepetition First Lien Lenders or any other Person with respect to Claims against and Interests in the Debtors.

Dated:  June 16, 2022

CYPRESS ENVIRONMENTAL PARTNERS, L.P.,
on behalf of itself and the other Debtor Entities.


 */s/ Peter C. Boylan III*
Peter C. Boylan III
Chairman and CEO

**Exhibit B**

**Notice of Confirmation Order**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CYPRESS ENVIRONMENTAL PARTNERS, L.P., *et al.*,[1] | ) | Case No. 22-90039 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | **Re: Docket Nos. __** |

## NOTICE OF ENTRY OF CONFIRMATION ORDER CONFIRMING THE SECOND MODIFIED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF CYPRESS ENVIRONMENTAL PARTNERS, L.P. AND ITS DEBTOR AFFILIATES

**TO CREDITORS, EQUITY HOLDERS, AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on June [__], 2022, the Honorable Marvin Isgur, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), entered an order [Docket No. [___]] (the "Confirmation Order") confirming the *Second Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Cypress Environmental Partners, L.P. and Its Debtor Affiliates* [Docket No. [___], Ex. A] (as amended, modified, or supplemented, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that, except as provided in the Plan, the rights afforded and the payments and distributions to be made under the Plan will (a) terminate and extinguish all Interests in the Debtors and (b) discharge all existing liabilities and Claims of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided in the Plan, on the Effective Date, all existing Claims and Interests against the Debtors will be, and will be deemed to be, released, terminated, extinguished, and discharged, and all holders of such Claims and Interests will be precluded and enjoined from asserting against the Reorganized Debtors, their successors and assigns, or any of their respective assets or properties, any other or further Claims or Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to

---

1    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cypress Environmental Partners, L.P. (1523); Cypress Municipal Water Services, LLC (5974); Cypress Environmental Partners, LLC (7385); Cypress Brown Integrity, LLC (3455); Cypress Energy Partners - 1804 SWD, LLC (9110); Cypress Energy Partners - Bakken, LLC (9092); Cypress Energy Partners - Grassy Butte SWD, LLC (9047); Cypress Energy Partners - Green River SWD, LLC (1534); Cypress Energy Partners - Manning SWD, LLC (4247); Cypress Energy Partners - Mork SWD, LLC (0761); Cypress Energy Partners - Mountrail SWD, LLC (4977); Cypress Energy Partners - Tioga SWD, LLC (3230); Cypress Energy Partners - Williams SWD, LLC (3840); Cypress Environmental - PUC, LLC (8637); Cypress Environmental Management - TIR, LLC (5803); Cypress Environmental Management, LLC (4753); Cypress Environmental Services, LLC (7770); Tulsa Inspection Resources - PUC, LLC (2514); and Tulsa Inspection Resources, LLC (4632).  The Debtors' service address for the purposes of these chapter 11 cases is 5727 South Lewis Avenue, Suite 500, Tulsa, Oklahoma 74105.

2    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms by the Plan.

the Effective Date, whether or not such holder has filed a proof of Claim or proof of Interest and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that on the Effective Date, in consideration of the distributions to be made under the Plan and except as otherwise expressly provided in the Plan, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Interest and any Affiliate of such Holder will be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such Persons will be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against, or terminated Interest in, the Debtors.

**PLEASE TAKE FURTHER NOTICE** that from and after the Effective Date, all Persons shall be permanently enjoined from commencing or continuing in any manner against the Debtors or the Reorganized Debtors, their successors and assigns, or their assets and properties, as the case may be, any suit, action, or other proceeding, on account of or respecting any Claim, liability, Cause of Action, Interest, or remedy released or to be released pursuant to the Plan or the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that except as otherwise expressly provided for in the Plan, from and after the Effective Date, all Persons shall be permanently enjoined from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, the Released Parties, or their respective assets and properties, any other Claims or Interests in connection with, relating to, or arising out of any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature relating to the Debtors that occurred before the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that, upon the occurrence of the Effective Date, the Plan and its provisions are binding on the Debtors, the Reorganized Debtors, any holder of a Claim or Interest, and such Holder's successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, and whether or not such Holder or Entity voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Order (including the Plan attached as an exhibit thereto) as well as copies of all documents are available free of charge by visiting the case website maintained by Debtors' notice and claims agent, Kurtzman Carson Consultants LLC, available at www.kccllc.net/cypress or by calling (866) 967-1785 (U.S./Canada) or (310) 751-2685 (international). You may also obtain copies of any pleadings by visiting pacer.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that, to the extent you wish to receive notice of pleadings filed in these chapter 11 cases after the Effective Date, you must request notice pursuant to Bankruptcy Rule 2002.

*[Remainder of Page Intentionally Left Blank]*

Dated: _____, 2022
Houston, Texas

/s/ _____

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Justin Rawlins (admitted *pro hac vice*)
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:  (310) 620-5700
Facsimile:  (310) 620-5899
Email:  justinrawlins@paulhastings.com

-and-

Matthew Micheli (admitted *pro hac vice*)
Matthew Smart (admitted *pro hac vice*)
Michael Jones (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
            matthewsmart@paulhastings.com
            michaeljones@paulhastings.com


*Proposed Counsel to the Debtors and Debtors in Possession*